# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROCKTON CONTRIBUTORY RETIREMENT SYSTEM 15 Christy Drive, Suite 2 Brockton, MA 02301 Derivatively on behalf of Nominal Defendant SUNRISE SENIOR LIVING INCORPORATED, <br><br> Plaintiff, <br><br> v. <br><br> PAUL J. KLAASSEN, J. DOUGLAS HOLLADAY, THOMAS J. DONOHUE, RONALD V. APRAHAMIAN, WILLIAM G. LITTLE, TERESA M. KLAASSEN, CRAIG R. CALLEN,  BRADLEY B. RUSH and THOMAS B. NEWELL, <br><br> Defendants, <br><br> and <br><br> SUNRISE SENIOR LIVING INCORPORATED, <br><br> Nominal Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> DEMAND FOR JURY TRIAL |

## VERIFIED DERIVATIVE COMPLAINT

Plaintiff, by its attorneys, submits this Verified Derivative Complaint (the "Complaint") against the Defendants named herein.

## NATURE OF THE ACTION

1.    This is a shareholder's derivative action brought for the benefit of nominal Defendant Sunrise Senior Living Incorporated ("Sunrise" or the "Company") against certain

1

members of its Board of Directors (the "Board") and certain of its executive officers seeking to remedy Defendants' violations of federal and state law, including breaches of fiduciary duty, abuse of control, constructive fraud, corporate waste, unjust enrichment and gross mismanagement. Defendants' violations arise from a scheme whereby Defendants allowed senior Sunrise executives to divert millions of dollars of corporate assets to themselves via the manipulation of grant dates associated with stock options granted to Sunrise insiders. Each of the Defendants also failed to seek disgorgement of the senior insiders' illegally obtained compensation.

2.    In breach of their fiduciary duties as officers and/or directors of Sunrise, the Individual Defendants (as defined herein) conspired with one another to improperly backdate their awards of stock options. "Backdating" refers to the intentional setting of a grant date that precedes the actual date of the corporate action that effected the grant, in order to achieve a lower option exercise price and hence a higher value to the recipient. Backdating results in an option already being "in the money" at the time of the grant. This improper practice not only violated Company policy, but caused Sunrise to improperly account for the backdated options in violation of Generally Accepted Accounting Principles ("GAAP") and to file false financial statements with the SEC.

3.    In particular, from 2000 to 2006, Defendants issued materially false and misleading statements to the public regarding the Company's stock option plans. Defendants regularly emphasized in the Company's Proxy Statements that "stock options are granted by the stock option committee at an exercise price equal to the market price of the common stock at the date of the grant." In fact, Defendants were manipulating the stock options to enrich themselves

by backdating the options executives were granted to set the options at a much lower exercise price.

4.      In addition, Defendants engaged in accounting fraud and Sunrise has been forced to restate its financial statements going back to at least fiscal year 1999. Defendants falsified Sunrise's financial results during this period by hiding significant joint venture losses, enabling the stock to trade at artificially inflated levels, and allowing Sunrise insiders to sell large quantities of their own stock prior to the disclosure the restatement. On May 19, 2006, Defendants revealed that Sunrise was changing its accounting practices and delaying its financial filings. Shockingly, before the Company revealed that its previously issued financial statements were false and required restatement, Sunrise executives sold $32 million worth of stock.

5.      On November 26, 2006, an article in the *New York Times* describing the Sunrise scandal stated:

> Shareholders of Sunrise Senior Living, a provider of residential communities and services for the elderly, have seen their holdings decline 17 percent since last spring. Problematic bookkeeping kept the company from filing three quarterly financial statements on time, forced it to restate earnings for 2003 through 2005, drew Securities and Exchange Commission inquires about its accounting and let it to warn that its internal controls were probably inadequate.

> All of that resulted in a $342 million hit to the market value of the company, based in McLean, Va. *But a raft of insiders escaped some of that damage. Three of the company's directors and its two founders sold $32 million worth of Sunrise stock in the six months leading up to the May 9 announcement that it was changing its accounting practices and delaying its financial filing.*[1]

> Selling during the period were Paul J. Klaassen, the founder and chief executive; Theresa M. Klaassen, his wife and Sunrise's chief cultural officer; Ronald V. Aprahamian, a consultant and investor who is chairman of Sunrise's audit committee; Thomas J. Donohue, a Sunrise director who is chairman of the

---

[1] Emphasis is added throughout unless otherwise indicated.

United States Chamber of Commerce; and J. Douglas Holloday, a founder of private equity firm and a director.

Mr. Donohue's sales are of particular interest, given his day job. He has been a force behind the Chamber of Commerce's efforts to defang Sarbanes-Oxley, the Enron-era law designed to clean up corporate accounting and governance. The chamber also has the S.E.C's enforcement division in its sights; one chamber priority is to curtail the S.E.C's overly broad authority to launch investigations," according to its website.

Insider sales at Sunrise, in the face of accounting troubles that could clip $100 million from the company's net income for 1999 through 2005—equal to 29 percent of its earnings—have spurred a shareholder to demand the appointment of an independent monitor to investigate the accounting. The shareholder has also asked that a monitor scrutinize the timing of large option grants to the company's top executives from June 1996 to October 2005. Five of those grants were dispensed at or near periodic lows in Sunrise's stock.

6.      In addition to the significant expense and potential penalties stemming from Defendants' stock option manipulation, the Company and certain executives have now been sued by shareholders in a class action lawsuit alleging that Defendants engaged in accounting fraud and violated federal securities laws.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under §14(a) of the Exchange Act, 15 U.S.C. §78n(a), and under state law for breach of fiduciary duty, abuse of control, constructive fraud, corporate waste, gross management and unjust enrichment. In connection with the acts, conduct and other wrongs complained of herein, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, the United States mail and the facilities of a national securities market.

8.      This Court has subject matter jurisdiction pursuant to §27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. §1331. This Court also has supplemental jurisdiction over

the state law claims asserted herein pursuant to 28 U.S.C § 1367. The action is not a collusive one to confer jurisdiction on a court of the United States which it would not otherwise have.

## PARTIES

9.    Plaintiff is, and at all relevant times was, a shareholder of nominal Defendant Sunrise. Brockton Contributory Retirement System is one of 106 contributory retirement systems for public employees within the Commonwealth of Massachusetts.

10.    Nominal Defendant Sunrise operates communities in North America, Germany and the United Kingdom that offer senior living services and assisted living for individuals with Alzheimers, as well as nursing and rehabilitative care.

11.    Defendant Paul J. Klaassen was at all relevant times Chairman of the Board and CEO of Sunrise. Klaassen signed or was associated with the 2000-2006 Proxy Statements.

12.    Defendant J. Douglas Holladay was at all relevant times a director of Sunrise. Holladay signed or was associated with the 2000-2006 Proxy Statements.

13.    Defendant Thomas J. Donohue was at all relevant times a director of Sunrise and Chairman of the Compensation Committee and was on the Audit Committee. Donohue signed or was associated with the 2000-2006 Proxy Statements.

14.    Defendant Ronald V. Aprahamian was at all relevant times a director of Sunrise and Chairman of the Sunrise Audit Committee. He signed or was associated with the 2000-2006 Proxy Statements.

15.    Defendant William G. Little was at all relevant times a director of Sunrise. He signed or was associated with the 2005-2006 Proxy Statements.

5

16.     Defendant Teresa M. Klaassen was at all relevant times a director of Sunrise. She signed or was associated with the 2000-200 Proxy Statements.

17.     Defendant Craig R. Callen was at all relevant times a director of Sunrise and on its Audit and Compensation Committees. He signed or was associated with the 2000-2006 Proxy Statements.

18.     Defendant J. Barron Anschutz was at all relevant times Chief Accounting Officer of Sunrise, and is directly responsible for the issuance of Sunrise's false financial statements including those included in the Company's year end Form 10-Ks.

19.     Defendant Bradley B. Rush was at all relevant times Chief Financial Officer of Sunrise, and is also responsible for the issuance of the Company's false financial results.

20.     These Defendants are collectively referred to as the "Individual Defendants."

## DUTIES OF THE DEFENDANTS

21.     By reason of their positions as officers and/or directors of the Company and because of their ability to control the business and corporate affairs of the Company, the Individual Defendants owed the Company and its shareholders the fiduciary obligations of good faith, trust, loyalty and due care, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner.

22.     The Individual Defendants, because of their positions of control and authority as directors and/or officers of the Company, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein.

23.     To discharge their duties, the officers and directors of the Company were required to exercise reasonable and prudent supervision over the management, policies, practices and

controls of the Company. By virtue of such duties, the officers and directors of the Company were required to, among other things:

a.  exercise good faith in ensuring that the affairs of the Company were conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business;

b.  exercise good faith in ensuring that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, including acting only within the scope of its legal authority;

c.  exercise good faith in supervising the preparation, filing and/or dissemination of financial statements, press releases, audits, reports or other information required by law, and in examining and evaluating any reports or examinations, audits, or other financial information concerning the financial condition of the Company;

d.  exercise good faith in ensuring that the Company's financial statements were prepared in accordance with GAAP; and

e.  refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

24.  The Individual Defendants breached their duties of loyalty and good faith by allowing and/or causing the Company to represent its financial results, and by failing to prevent the Sunrise executives from taking illegal actions. As a result, Sunrise will expend significant sums of money such as: (a) illegally paid executive compensation; (b) increased capital costs as a result of the loss of market capitalization and the Company's damaged reputation; (c) costs incurred to carry out internal investigations; and (d) incurring possible IRS penalties for improperly reporting compensation.

25.  The Individual Defendants were and are responsible for maintaining and establishing adequate internal accounting controls for the Company and to ensure that the

7

Company's financial statements were based on accurate financial information. According to GAAP, to accomplish the objectives of accurately recording, processing, summarizing, and reporting financial data, a corporation must establish an internal accounting control structure. Among other things, the Individual Defendants were and are required to:

a. make and keep books, records, and accounts, which, in reasonable detail, accurately and fairly reflect the transactions and dispositions of the assets of the issuer; and

b. devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that

(i) transactions are executed in accordance with management's general or specific authorization;

(ii) transactions are recorded as necessary to permit preparation of financial statements in conformity with [GAAP].

## AIDING AND ABETTING AND CONCERTED ACTION

26. In committing the wrongful acts alleged herein, the Individual Defendants have pursued a common course of conduct and acted in concert with one another in furtherance of their common plan.

27. During all times relevant hereto, the Individual Defendants collectively and individually initiated a course of conduct that was designed to and did: (a) conceal the fact that the Company was allowing its directors and senior officers to divert material amounts of money to insiders and was misrepresenting its financial results; (b) maintain the Individual Defendants' executive and directorial positions at Sunrise and the benefits associated with those positions; and (c) deceive the investing public regarding Sunrise's compensation practices and Sunrise's financial performance.

28. The purpose and effect of the Individual Defendants' common course of conduct

was, among other things, to disguise the Individual Defendants' violations of law, breaches of fiduciary duty, abuse of control, gross mismanagement, corporate waste and unjust enrichment; to conceal adverse information concerning the Company's operation and financial condition; and to artificially inflate the price of Sunrise stock so the Individual Defendants could dispose of millions of dollars of their own Sunrise stock.

29.    The Individual Defendants accomplished their common enterprise and/or common course of conduct by causing the Company to purposefully and/or recklessly engage in the option backdating scheme alleged herein and misrepresent Sunrise's financial results. Each of the Individual Defendants was a direct, necessary and substantial participant in the common enterprise and/or common course of conduct complained of herein.

30.    Each of the Individual Defendants aided and abetted and rendered substantial assistance in the wrongs complained of herein. In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each of the Individual Defendants acted with knowledge of the primary wrongdoing, substantially assisted the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

## FACTUAL ALLEGATIONS

31.    On March 13, 2006, Defendants filed Sunrise's Form 10-K for the fiscal year ended December 31, 2005. Note 13 to the financial statements stated:

> Sunrise has stock option plans providing for the grant of incentive and nonqualified stock options to employees, directors, consultants and advisors. . . . Under the terms of the plans, the option exercise price and vesting provisions of the options are fixed when the option is granted . . . *[T]he option exercise price was not less than the fair market value of a share of common stock on the date the option was granted. . .*

9

32.     Each of Sunrise's Proxy Statements between 2000 and 2006 contained similar representations concerning Defendants' stock option policy. For example, the 2001 Proxy stated:

> Stock options are considered an effective long-term incentive because gains are linked to increases in the stock value, which in turn provides stockholder gains. Stock options are granted by the stock option committee at an exercise price equal to the market price of the common stock at the date of the grant.

33.     Pursuant to APB 25, the applicable GAAP provision at the time of the foregoing stock option grants, if the market price on the date of grant exceeds the exercise price of the options, the company must recognize the difference as an expense.

34.     The dates that Sunrise elected for its option grants to top officers present a striking pattern that could not be the result of chance. For example, between February and March of 2000, 550,000 share grants were recorded to Sunrise Officers Newell, Slavin, Swinton and Tomasso. The date selected for these options immediately preceded a significant rise in Sunrise's share price. Similar patterns are found with option grants in 2001, where more than 200,000 shares were granted right before the stock price surged by over $5 a share.

35.     The reason for the extraordinary pattern set forth in the preceding paragraph is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of the Individual Defendants, the stock option grants were improperly backdated to make it appear as though the grants were made on dates when the market price of Sunrise stock was lower than the market price on the actual grant dates. This improper backdating, which violated the terms of the Company's stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options to the Individual Defendants and improperly reduced the amounts they had to pay the

Company upon exercise of the options. Accordingly, Defendants' assurances that the option exercise price was not less than the fair market value on the date they were granted were false and misleading.

## DISSEMINATION OF FALSE FINANCIAL STATEMENTS

36.     As a result of the improper backdating of stock options, the Company, with the knowledge, approval, and participation of each of the Individual Defendants:

    a.    violated the terms of the Company's shareholder-approved stock option plans;

    b.    violated GAAP by failing to recognize compensation expenses incurred when the improperly backdated options were granted;

    c.    produced and disseminated to Sunrise shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants.

37.     Furthermore, from at least 1999 to 2002, the Company, with the knowledge, approval, and participation of each of the Individual Defendants, for the purpose and with the effect of concealing the improper option backdating, disseminated to shareholders and filed with the SEC annual proxy statements that falsely reported the dates of stock option grants to the Officer Defendants.

## THE INDIVIDUAL DEFENDANTS' BREACHES OF FIDUCIARY DUTIES

38.     The Individual Defendants breached their fiduciary duties by:

    a.    backdating stock option grants in violation of applicable laws and the Company's stated policies;

    b.    violating GAAP by improperly accounting for their joint ventures and their accounting for stock options;

    c.    producing and disseminating to Sunrise shareholders and the market false financial statements that improperly recorded and accounted for the

backdated option grants and concealed the improper backdating of stock options; and

d.    filing false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

39.    The Individual Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Individual Defendants at the expense of the Company.

40.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## DERIVATIVE AND DEMAND EXCUSED ALLEGATIONS

41.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress the Individual Defendants' breaches of fiduciary duties and unjust enrichment.

42.    Plaintiff is an owner of Sunrise common stock and was an owner of Sunrise common stock at all times relevant hereto.

43.    Plaintiff will adequately and fairly represent the interests of the Company and its shareholders in enforcing and prosecuting its rights.

44.    As a result of the facts set forth herein, Plaintiff has not made any demand on the Sunrise Board of Directors to institute this action against the Individual Defendants. Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

12

45.    Furthermore, demand is excused because the misconduct complained of herein was not, and could not have been, an exercise of good faith business judgment.

## COUNT I

## VIOLATIONS OF § 14(a) OF THE EXCHANGE ACT AGAINST ALL DEFENDANTS

46.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

47.    Rule 14a-9, promulgated pursuant to §14(a) of the Exchange Act, provides that no proxy statement shall contain "any statement which, at the time an in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. §240.14a-9. Specifically, the Proxy statements during the relevant period violated §14(a) and Rule 14a-9 because they omitted material facts, including the fact that the Individual Defendants were causing the Company to engage in an option backdating scheme, a fact that the Individual Defendants were aware of and participated in. The Proxy Statements during the relevant period indicated that "the exercise price for each option is the fair market value per share of Common Stock on the date of the grant."

48.    In the exercise of reasonable care, Defendants should have known that the Proxy Statements were materially false and misleading.

49.    The misrepresentations and omissions in the Proxy Statements were material to Plaintiff in voting on each Proxy Statement. The Proxy Statements were an essential link in the accomplishment of the continuation of the Individual Defendants' unlawful stock option backdating scheme, as revelations of the truth would have immediately thwarted a continuation

13

of shareholders' endorsement of the directors' positions, the executive officers' compensation, and the Company's compensation policies.

50.    The Company was damaged as a result of the material misrepresentations and omissions in the Proxy Statements.

## COUNT II

## AGAINST THE INDIVIDUAL DEFENDANTS
## FOR BREACH OF FIDUCIARY DUTY

51.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

52.    As alleged in detail herein, each of the Individual Defendants had a fiduciary duty to refrain from unduly benefiting themselves and other Company insiders at the expense of the Company.

53.    As alleged in detail herein, the Individual Defendants breached their fiduciary duties by:

    a.    backdating stock option grants in violation of applicable laws and their own stated policies;

    b.    violating GAAP by improperly accounting for their joint ventures and their accounting for stock options;

    c.    producing and disseminating to Sunrise shareholders and the market false financial statements that improperly recorded and accounted for the backdated option grants and concealed the improper backdating of stock options; and

    d.    filing false proxy statements and false financial statements in order to conceal the improper backdating of stock options.

54.    The Individual Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly

benefit the Individual Defendants at the expense of the Company.

55.    The Individual Defendants' foregoing misconduct was not, and could not have been, an exercise of good faith business judgment. Rather, it was intended to, and did, unduly benefit the Individual Defendants at the expense of the Company.

56.    As a direct and proximate result of the Individual Defendants' foregoing breaches of fiduciary duties, the Company has sustained millions of dollars in damages, including, but not limited to, the additional compensation expenses and tax liabilities the Company was required to incur and loss of funds paid to the Company upon exercise of options.

## COUNT III

### AGAINST THE INDIVIDUAL DEFENDANTS
### FOR UNJUST ENRICHMENT

57.    Plaintiff incorporates by reference all preceding and subsequent paragraphs as if set forth fully herein.

58.    The Individual Defendants were unjustly enriched by their receipt and retention of backdated stock option grants, as alleged herein, and it would be unconscionable to allow them to retain the benefits thereof.

59.    To remedy the Individual Defendants' unjust enrichment, the Court should order them to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized.

## COUNT IV

## ACCOUNTING

60.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

61.    At all relevant times, the Individual Defendants, as directors and/or officers of Sunrise, owed the Company and its shareholders fiduciary duties of good faith, care, candor and loyalty.

62.    In breach of their fiduciary duties owed to Sunrise and its shareholders, the Individual Defendants caused Sunrise to grant backdated stock options to themselves and/or certain other officers and directors of Sunrise.

63.    The Individual Defendants possess complete control over their improperly issued stock option grants and the books and records of the Company concerning the details of such improperly backdated stock option grants to the Individual Defendants.

64.    As a result of the Individual Defendants' misconduct, Sunrise has been substantially injured and damaged financially and is entitled to a recovery as a result thereof, including the proceeds of those improperly granted options that have been exercised and sold.

65.    Plaintiff demands an accounting be made of all stock options grants made to the Individual Defendants, including without limitation, the dates of the grants, the amounts of the grants, the value of the grants, the recipients of the grants, the exercise date of stock options granted to the Individual Defendants, as well as the disposition of any proceeds received by the Individual Defendants via sale or other exercise of backdated stock option grants received by the Individual Defendants.

## COUNT V

### AGAINST THE INDIVIDUAL DEFENDANTS
### ABUSE OF CONTROL

66.    Plaintiff incorporates by reference and realleges each and every allegation set forth above as though fully set forth herein.

67.    The Individual Defendants employed the alleged scheme for the purpose of maintaining and entrenching themselves in their positions of power, prestige, and profit at, and control over, Sunrise, and to continue to receive the substantial benefits and salaries associated with their positions at Sunrise.

68.    The Individual Defendants' conduct constituted an abuse of their ability to control and influence Sunrise.

69.    By reason of the foregoing, Sunrise has been damaged.

## COUNT VI

### AGAINST THE INDIVIDUAL DEFENDANTS
### GROSS MISMANAGEMENT

70.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

71.    The Individual Defendants had a duty to Sunrise and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of Sunrise.

72.    The Individual Defendants, by their actions and by engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of Sunrise in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of due care, diligence, and candor in the management and administration of Sunrise's affairs and in the use and preservation of Sunrise's assets.

73.    During the course of the discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet

17

the Individual Defendants caused Sunrise to engage in the scheme complained of herein which they knew had an unreasonable risk of damage to Sunrise, thus breaching their duties to the Company. As a result, the Individual Defendants grossly mismanaged Sunrise.

74.    By reason of the foregoing, Sunrise has been damaged.

## COUNT VII

## AGAINST THE INDIVIDUAL DEFENDANTS
## CONSTRUCTIVE FRAUD

75.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

76.    As corporate fiduciaries, the Individual Defendants owed Sunrise and its shareholders a duty of candor and full accurate disclosure regarding the true state of Sunrise's business and assets and their conduct with regard thereto.

77.    As a result of the conduct complained of, the Individual Defendants made, or aided and abetted the making of, numerous misrepresentations to and/or concealed material facts from Sunrise's shareholders despite their duties to disclose the true facts regarding their stewardship of Sunrise. Thus they have committed constructive fraud and violated their duty of candor.

78.    By reason of the foregoing, Sunrise has been damaged.

## COUNT VIII

## AGAINST THE INDIVIDUAL DEFENDANTS
## CORPORATE WASTE

79.    Plaintiff incorporates by reference and realleges each and every allegation set forth above, as though fully set forth herein.

80.    By failing to properly consider the interests of the Company and its public shareholders, by failing to conduct proper supervision, and by giving away millions of dollars to the Individual Defendants via the options backdating scheme, the Individual Defendants have caused Sunrise to waste valuable corporate assets.

81.    As a result of the Individual Defendants' corporate waste, they are liable to the Company.

## COUNT IX

### AGAINST THE INDIVIDUAL DEFENDANTS
### RECISSION

82.    Plaintiff incorporates by reference and realleges each and every allegation contained above as though fully set forth herein.

83.    As a result of the acts alleged herein, the stock option contracts between the Individual Defendants and Sunrise entered into during the relevant period were obtained through Defendants' fraud, deceit, and abuse of control. Further, the backdated stock options were illegal grants and thus invalid as they were not authorized in accordance with the terms of the publicly filed contracts regarding the Individual Defendants' employment agreements and the Company's stock option plan which was also approved by Sunrise shareholders and filed with the SEC.

84.    All contracts which provide for stock option grants between the Individual Defendants and Sunrise and were entered into during the relevant period should, therefore, be rescinded, with all sums paid under such contracts returned to the Company, and all such executory contracts cancelled and declared void.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

19

(a)    Against all of the Individual Defendants and in favor of the Company for the amount of damages sustained by the Company as a result of the Individual Defendants' breaches of fiduciary duties;

(b)    Ordering the Individual Defendants to disgorge to the Company all of the backdated stock options they received, including the proceeds of any such options that have been exercised, sold, pledged, or otherwise monetized;

(c)    Granting appropriate equitable relief to remedy Defendants' breaches of fiduciary duties;

(d)    For attorneys' fees and costs incurred in this action; and

(e)    For such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury.

Dated: January 19, 2997

**SAXENA WHITE P.A**
Maya Saxena
Joseph White
2424 North Federal Highway
Suite 257
Boca Raton, FL 33431
Tel: (561) 394-3399
Fax: (561) 394-3382

**DAVIS, COWELL & BOWE, LLP**
George R. Murphy (DC Bar 75200)
Mark Hanna (DC Bar 471960)
Joni S. Jacobs (DC Bar 493846)
1701 K Street NW, Suite 210
Washington, DC  20006
Tel: (202) 223-2620
Fax: (202) 223-8651

By _____
        Joni S. Jacobs (DC Bar 493846)
Attorneys for Plaintiff

20

## SUNRISE SENIOR LIVING INCORPORATED VERIFICATION

I, Harold Hanna, Executive Director of the Brockton Contributory Retirement System, hereby verify under the penalty of perjury that I am familiar with the allegations in the Complaint, and that I have authorized the filing of the Complaint, and that the foregoing is true and correct to the best of my knowledge, information and belief.

Date: 1/19/07

Harold Hanna

E
07-143
RBW

JS-44
(Rev.1/05 DC)

## CIVIL COVER SHEET

### I (a) PLAINTIFFS

Brockton Contributory Retirement System, et al.,
Derivatively on behalf of Sunrise Senior Living Inc.

### DEFENDANTS

Paul J. Klaassen, J. Douglas Holladay, Thomas J.
Donohue, Ronlad V. Aprahamian, etc.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF  Plymouth Co., MA
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT  Fairfax County, VA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE CT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Davis, Cowell & Bowe, LLP
1701 K Street NW, Suite 210
Washington, DC  20006
Tel. (202) 223-2620

ATTORNEYS (IF KNOWN)

CASE NUMBER   1:07CV00143

JUDGE: Reggie B. Walton

DECK TYPE: General Civil

DATE STAMP: 01/19/2007

### II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- ○ 1 U.S. Government Plaintiff
- Ⓧ 3 Federal Question (U.S. Government Not a Party)
- ○ 2 U.S. Government Defendant
- ○ 4 Diversity (Indicate Citizenship of Parties in item III)

### III CITIZENSHIP OF PRINCIPAL PARTIES
FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

### IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

| ○ A. Antitrust | ○ B. Personal Injury/ Malpractice | ○ C. Administrative Agency Review | ○ D. Temporary Restraining Order/Preliminary Injunction |
|---|---|---|---|
| ☐ 410 Antitrust | ☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Medical Malpractice<br>☐ 365 Product Liability<br>☐ 368 Asbestos Product Liability | ☐ 151 Medicare Act<br><br>**Social Security:**<br>☐ 861 HIA ((1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g)<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)<br>**Other Statutes**<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 890 Other Statutory Actions (If Administrative Agency is Involved) | Any nature of suit from any category may be selected for this category of case assignment.<br><br>*(If Antitrust, then A governs)* |

| Ⓞ E. General Civil (Other) | OR | ○ F. Pro Se General Civil |
|---|---|---|

| **Real Property**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent, Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property<br><br>**Personal Property**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **Bankruptcy**<br>☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**Prisoner Petitions**<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**Property Rights**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**Federal Tax Suits**<br>☐ 870 Taxes (US plaintiff or defendant<br>☐ 871 IRS-Third Party 26 USC 7609 | **Forfeiture/Penalty**<br>☐ 610 Agriculture<br>☐ 620 Other Food &Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 RR & Truck<br>☐ 650 Airline Regs<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**Other Statutes**<br>☐ 400 State Reapportionment<br>☐ 430 Banks & Banking<br>☐ 450 Commerce/ICC Rates/etc.<br>☐ 460 Deportation | ☐ 470 Racketeer Influenced & Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Satellite TV<br>☐ 810 Selective Service<br>Ⓧ 850 Securities/Commodities/ Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 900 Appeal of fee determination under equal access to Justice<br>☐ 950 Constitutionality of State Statutes<br>☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act |

| O  G. *Habeas Corpus/ 2255* | O  H. *Employment Discrimination* | O  I. *FOIA/PRIVACY ACT* | O  J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| O  K. *Labor/ERISA (non-employment)* | O  L. *Other Civil Rights (non-employment)* | O  M. *Contract* | O  N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

15 USC sec. 78n; Derivate shareholder action for option back-dating

**VII. REQUESTED IN COMPLAINT**  ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23    DEMAND $ _____  Check YES only if demanded in complaint
JURY DEMAND:    YES ☒    NO ☐

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☒   NO ☐   If yes, please complete related case form.

DATE  January 19, 2006    SIGNATURE OF ATTORNEY OF RECORD   _____

---

### INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII.  RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.