## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BROCKTON CONTRIBUTORY RETIREMENT SYSTEM, Derivatively on Behalf of Nominal Defendant SUNRISE SENIOR LIVING, INC., | ) ) ) ) | Case No. 1:07-cv-00143-RBW |
| | ) | Judge Walton |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) ) | |
| | ) | |
| PAUL J. KLAASSEN, DAVID W. FAEDER, TIMOTHY S. SMICK, THOMAS B. NEWELL, BRIAN C. SWINTON, CHRISTIAN B.A. SLAVIN, LARRY E. HULSE, TIFFANY L. TOMASSO, ROBERT R. SLAGER, CARL ADAMS, RONALD V. APRAHAMIAN, CRAIG R. CALLEN, DAVID G. BRADLEY, J. DOUGLAS HOLLADAY and THOMAS J. DONOHUE, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants, | ) ) | |
| | ) | |
| and | ) ) | |
| | ) | |
| SUNRISE SENIOR LIVING, INC., | ) ) | |
| | ) | |
| Nominal Defendant. | ) ) | |

*To Be Consolidated With:*

CATHERINE MOLNER, Derivatively on )
Behalf of Nominal Defendant SUNRISE )
SENIOR LIVING, INC., )
                                           )
             Plaintiff, )
                                           )
             v. )
                                           )
PAUL J. KLAASSEN, DAVID W. )
FAEDER, TIMOTHY S. SMICK, )
THOMAS B. NEWELL, BRIAN C. )
SWINTON, CHRISTIAN B.A. SLAVIN, )
LARRY E. HULSE, TIFFANY L. )
TOMASSO, ROBERT R. SLAGER, CARL )
ADAMS, RONALD V. APRAHAMIAN, )
CRAIG R. CALLEN, DAVID G. )
BRADLEY, J. DOUGLAS HOLLADAY )
and THOMAS J. DONOHUE, )
                                          )
           Defendants, )
                                           )
       and )
                                           )
SUNRISE SENIOR LIVING, INC., )
                                           )
    Nominal Defendant. )

Case No. 1:07-cv-00227-RBW

Judge Walton

## MOTION TO CONSOLIDATE RELATED CASES AND
## TO APPOINT A LEADERSHIP STRUCTURE

Derivative Plaintiffs Brockton Contributory Retirement System ("Brockton") and Catherine Molner ("Molner") move this Court for an order to: (i) consolidate the above-captioned related shareholder derivative actions and (ii) establish a leadership structure by appointing Brockton and Molner as Lead Plaintiffs, appointing Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin Barroway") and Saxena White P.A. as Lead Counsel, and Davis, Cowell & Bowe, LLP as Liaison Counsel.

Dated: February 13, 2007

Respectfully submitted,

DAVIS, COWELL & BOWE, LLP

George R. Murphy (DC Bar 75200)
Mark Hanna (DC Bar 471960)
Joni S. Jacobs (DC Bar 493846)
1701 K Street NW, Suite 210
Washington, DC 20006
Tel. (202) 223-2620
Fax: (202) 223-8651

*Attorneys for Plaintiff Brockton Contributory
Retirement System and Proposed Liaison Counsel*


SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP
Eric L. Zagar
Robin Winchester
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiff Catherine Molner and Proposed
Lead Counsel*


SAXENA WHITE P.A.
Maya Saxena
Joseph White
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

*Attorneys for Plaintiff Brockton Contributory
Retirement System and Proposed Lead Counsel*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROCKTON CONTRIBUTORY RETIREMENT SYSTEM, Derivatively on Behalf of Nominal Defendant SUNRISE SENIOR LIVING, INC., ) ) ) ) | Case No. 1:07-cv-00143-RBW |
| Plaintiff, ) ) ) | Judge Walton |
| v. ) ) ) | |
| PAUL J. KLAASSEN, DAVID W. FAEDER, TIMOTHY S. SMICK, THOMAS B. NEWELL, BRIAN C. SWINTON, CHRISTIAN B.A. SLAVIN, LARRY E. HULSE, TIFFANY L. TOMASSO, ROBERT R. SLAGER, CARL ADAMS, RONALD V. APRAHAMIAN, CRAIG R. CALLEN, DAVID G. BRADLEY, J. DOUGLAS HOLLADAY and THOMAS J. DONOHUE, ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, ) ) ) | |
| and ) ) ) | |
| SUNRISE SENIOR LIVING, INC., ) ) ) | |
| Nominal Defendant. ) ) | |

1

*To Be Consolidated With:*

| | |
|---|---|
| CATHERINE MOLNER, Derivatively on Behalf of Nominal Defendant SUNRISE SENIOR LIVING, INC., ) ) ) )| Case No. 1:07-cv-00227-RBW Judge Walton |

CATHERINE MOLNER, Derivatively on )
Behalf of Nominal Defendant SUNRISE )
SENIOR LIVING, INC., )
              )
       Plaintiff, )
              )
    v. )
              )
PAUL J. KLAASSEN, DAVID W. )
FAEDER, TIMOTHY S. SMICK, )
THOMAS B. NEWELL, BRIAN C. )
SWINTON, CHRISTIAN B.A. SLAVIN, )
LARRY E. HULSE, TIFFANY L. )
TOMASSO, ROBERT R. SLAGER, CARL )
ADAMS, RONALD V. APRAHAMIAN, )
CRAIG R. CALLEN, DAVID G. )
BRADLEY, J. DOUGLAS HOLLADAY )
and THOMAS J. DONOHUE, )
              )
       Defendants, )
              )
    and )
              )
SUNRISE SENIOR LIVING, INC., )
              )
       Nominal Defendant. )
              )

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO CONSOLIDATE RELATED CASES AND TO APPOINT A LEADERSHIP STRUCTURE

## I.    INTRODUCTION

Derivative Plaintiffs Brockton Contributory Retirement System ("Brockton") and Catherine Molner ("Molner") submit this motion to: (i) consolidate the above-captioned related shareholder derivative actions and (ii) establish a leadership structure by appointing Brockton and Molner as Lead Plaintiffs, appointing Schiffrin Barroway Topaz & Kessler, LLP ("Schiffrin Barroway") and Saxena White LLP as Lead Counsel, and Davis, Cowell & Bowe, LLP as Liaison Counsel.

## II.    BACKGROUND AND PROCEDURAL HISTORY

This is a shareholder's derivative action brought for the benefit of nominal defendant Sunrise Senior Living, Inc. ("Sunrise" or the "Company") against certain members of its Board of Directors (the "Board"), and certain of its executive officers seeking to remedy defendants' breaches of fiduciary duties and unjust enrichment, statutory violations, and other violations of law. For at least five years, a majority of Sunrise directors, together with its top officers, (collectively referred to herein as the "Individual Defendants") engaged in a secret scheme to grant undisclosed, in-the-money stock options[1] to themselves and others by backdating stock option grants to coincide with historically low closing prices of Sunrise's common stock, thus manufacturing artificially low option exercise prices. In fact, in a striking pattern over four consecutive years – from 1997 through 2000 – Sunrise's Board purportedly granted options on the same day when Sunrise stock was trading at or near its yearly low price. Moreover, eleven out of thirteen option grants dated from May 1997 through November 2001 were backdated,[2] eight of which were granted to some, if not all, of Sunrise's five highest compensated executives.

For example, on May 2, 1997, Sunrise granted 525,000 stock options to five defendants, including four of the five highest compensated executives as disclosed in the Company's proxy statement. These stock options were backdated to the **second lowest price of Sunrise stock for the entire year**, as demonstrated below:[3]

---

[1] A "stock option" is a contract that gives the holder the option to purchase a designated quantity of shares of a company's stock at a set price. When the option is exercised, the holder acquires the designated number of shares at the stated price, regardless of the stock's contemporaneous market price. "In-the-money" refers to when the exercise price of an option is below the market price of the underlying stock, resulting in an immediate gain for the option holder upon the exercise of the option.

[2] Automatic grants to directors on or near the date of the annual stockholders' meeting or pursuant to their appointment/election as directors are excluded from this pattern, as are option grants that were later exchanged pursuant to Sunrise's stock option re-pricing plan implemented by the Stock Option Committee on September 14, 1998.

[3] All graphs in the Complaint use adjusted exercise prices and adjusted closing prices.



On September 14, 1998, Sunrise granted a total of 755,000 stock options to five defendants, including four of the five highest compensated executives as disclosed in the Company's proxy statement.  These grants, pursuant to a re-pricing plan to give the defendants additional profits, were backdated to one of the lowest prices of Sunrise stock for the fiscal year.  Additionally, all the underwater options[4] that were re-priced in favor of the defendants were profitable again by the end of the year, as demonstrated below:

---

[4] An underwater option is a term used for options whose exercise price is above the current market stock price, and as such would be useless to exercise because the grantee would have to pay more to obtain the stock than the for what the grantee could sell the stock.

4



On February 25, 2000 and March 28, 2000, Sunrise granted a total of over 420,000 options to eleven defendants, including four of the five highest compensated executives as disclosed in the Company's proxy statement, as demonstrated below:



Each and every one of the aforementioned stock option grants were dated just before a significant increase in Sunrise stock price and/or at or near Sunrise's lowest closing price of the

5

pertinent fiscal quarter or year. The reason for the extraordinary patterns set forth in the preceding paragraphs is that the purported grant dates set forth therein were not the actual dates on which the stock option grants were made. Rather, at the behest of some of the defendants, the Stock Option Committee, with the knowledge and approval of the other members of the Board, knowingly and deliberately backdated the stock option grants to make it appear as though the grants were made on dates when the market price of Sunrise stock was lower than the market price on the actual grant dates, thereby unduly benefiting those defendants who received options. This improper backdating scheme, which violated the terms of the Company's stock option plans, resulted in option grants with lower exercise prices, which improperly increased the value of the options and improperly reduced the amounts these defendants were required to pay the Company upon exercise of the options.

By engaging in this unlawful scheme, the Individual Defendants were able to conceal that Sunrise was not recording material compensation expenses and was materially overstating the Company's net income and earnings from at least 1997 through 2006. Moreover, from 1997 to 2006, the Individual Defendants collectively realized *over $172 million* in illicit proceeds through the sale of Sunrise stock based upon their knowledge of material non-public information regarding the Company's backdating scheme. By contrast, Sunrise has suffered, and will continue to suffer, significant financial and non-monetary damages and injuries.

The Individual Defendants' illegal backdating scheme not only lined the pockets of the recipients of the backdated options and caused Sunrise to issue materially false financial statements, but also undermined the key purpose of stock option-based executive compensation: to provide incentive to improve the Company's performance and increase the Company's stock price and market capitalization. By manipulating options such that they carried an exercise price lower than the trading price of the stock on the date of grant, Sunrise insiders profited immediately upon the

award of the options without doing anything to improve the Company's business or financial condition. As a result of the Individual Defendants' egregious misconduct, Sunrise has sustained millions of dollars in damages, and the recipients of the backdated stock options have garnered millions of dollars in unlawful profits.

On December 11, 2006, Sunrise announced an investigation of the Company by the Securities and Exchange Commission ("SEC") as well as the appointment of a special committee to review insider sales of Sunrise stock and the Company's historical practices relating to stock option grants. Sunrise has not released any further information about its pending investigation, however on January 15, 2007, the Company admitted that Sunrise will not be current in all of its filings with the SEC by March 1, 2007.

## III.    THIS COURT SHOULD CONSOLIDATE THE RELATED ACTIONS

The Proposed Derivative Lead Plaintiffs request that the following actions (hereafter, collectively referred to as "the Related Derivative Actions") be consolidated:

| Case Name | Case No. | Filing Date |
|---|---|---|
| *Brockton v. Klassman, et. al.* | 1:07-cv-00143-RBW | January 19, 2007 |
| *Molner v. Klassman, et. al.* | 1:07-cv-00227-RBW | January 31, 2007 |

The consolidation of actions in federal court is governed by Rule 42 of the Federal Rules of Civil Procedure which provides:

> When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay.

Fed.R.Civ.P. 42(a). *See also Rankin v. Shayne Brothers*, 234 F. 2d 35, 39 (D.C. Cir. 1955). This rule is invoked "in furtherance of convenience to avoid [the] prejudice [of]...separate trials." *Id*. This Court is granted broad discretion under Fed. R. Civ. P.

42(a) to consolidate cases. *Santucci v. Pignatello*, 188 F. 2d 643, 645 (D.C. Cir. 1951).

Here, consolidation of the Related Derivative Actions is warranted as both of these actions are dependant on proof of the same facts. Specifically, whether Sunrise's Board of Directors improperly authorized the backdating of stock options awarded to top company executives. Since the Related Derivative Actions currently pending before this Court present virtually identical factual and legal issues, involve the exact same defendants, and will involve the same discovery, consolidation is appropriate. *See Millman v. Brinkley*, 2004 U.S. Dist. LEXIS 20113, at *7 (N.D. Ga. Oct. 1, 2004) (consolidating derivative actions where the same defendants were alleged to have committed the same acts and caused the same damage to the same company during the same time period). Indeed, if not consolidated, the ensuing separate derivative actions will result in virtually identical discovery requests, motions practice, and the like, and will thus cause an unnecessary drain on judicial resources.

Moreover, Defendants will suffer no prejudice by litigating one consolidated action rather than two separate suits. Indeed, consolidation would ensure that this litigation, brought for the benefit of the Company, is disposed of in the most cost-effective manner for the Company. *See Millman*, 2004 U.S. Dist. LEXIS 20113, at *7 (holding that consolidation of derivative actions is particularly appropriate because the "cost of defending these multiple actions may well do serious harm to the very corporation in whose interest they are supposedly brought"). Consolidation would therefore inure to the benefit of all parties involved.

## IV. THE COURT SHOULD APOINT A LEADERSHIP STRUCTURE

### A. Brockton and Molner, the Leaders of this Litigation, Should be Appointed Lead Plaintiffs

As the Supreme Court recognized in *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541 (1949), a plaintiff who leads a shareholder's derivative suit occupies a position "of a fiduciary character," in which "[t]he interests of all in the redress of the wrongs are taken into his hands, dependent upon

his diligence, wisdom and integrity." *Id.* Additionally, Rule 23.1 of the Federal Rules of Civil

Procedure provides that a plaintiff must fairly and adequately represent the interests of the

shareholders in enforcing the rights of the corporation. Thus, when considering the appointment of

lead plaintiffs in shareholder derivative actions, courts look to which shareholders will adequately

serve the interests of the derivative plaintiffs and the nominal defendant. *See Millman*, 2004 U.S.

Dist. LEXIS 20113, at *8; *Dollens v. Zionts* 2001 U.S. Dist. LEXIS 19966, at *5 (N.D. Ill. Dec. 4,

2001) ("courts should appoint a derivative plaintiff that's likely to benefit the plaintiffs the most").

Plaintiffs Brockton and Molner clearly satisfy these criteria, as they have both been long-

term holders and currently maintain shares of Sunrise stock. Brockton and Molner have taken

significant steps in order to protect the best interests of Sunrise and its shareholders. For instance,

Brockton and Molner have directed their counsel to file the first derivative complaints against the

defendants, taking the initiative to hold the defendants accountable for their misconduct of

backdating stock options granted to top executives at the expense of the Company.[5] Moreover, as an

institutional investor responsible for providing retirement benefits to municipal employees of the

City of Brockton, Brockton actively protects its assets, which includes exercising its legal rights to

recoup into Company coffers money illicitly paid to executives through the backdating of options.

Further, Brockton and Molner have retained competent and experienced counsel as proposed

Lead Counsel, the law firms of Schiffrin Barroway and Saxena White. These firms have advanced

---

[5] After a lengthy investigation performed by Molner's counsel with the assistance of a forensic investigator who analyzed the past stock option granting patterns at Sunrise, Molner was one of the Sunrise shareholders who filed one of the first derivative lawsuits concerning the Company's stock option granting practices against certain of the Company's officers and directors on September 5, 2006, in the Circuit Court of Fairfax County, Virginia. Several months after Molner filed her complaint, Sunrise's Board subsequently appointed undisclosed persons to a special independent committee to review recent insider sales of Sunrise stock and the Company's historical practices related to stock option grants. Molner recently dismissed her state court action in order to prosecute her claims in federal court.

the litigation in a number of other ways, including effectuating service of process and hiring a forensic investigator to assist in litigation strategy, and have extensive experience with shareholder litigation. Therefore, for all of the foregoing reasons, Brockton and Molner should be appointed as Lead Plaintiffs and their choice of counsel should be approved.

**B.     Appointment of Lead Counsel is Necessary to Effectively Prosecute the Consolidated Action**

A court which has consolidated actions may at its discretion appoint Lead Counsel to prosecute the consolidated cases. 9 Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 2385 (2d ed. 1987) *cited in Walker v. Deutsche Bank, AG,* 2005 U.S. Dist. LEXIS 19776, at * 8 (S.D.N.Y. Sept. 6, 2005). *MacAlister v. Guterma,* 263 F.2d 65 (2d Cir. 1958) is the seminal case on this point. In that case, the court recognized that "[t]he benefits achieved by consolidation and the appointment of general counsel, *i.e.* elimination of duplication and repetition and in effect the creation of a coordinator of diffuse plaintiffs through whom motions and discovery proceedings will be channeled, will most certainly redound to the benefit of all parties to the litigation." *MacAlister v. Guterma,* 263 F.2d 65 (2d Cir. 1958) at 69. *See also Vincent v. Hughes Air West, Inc.,* 557 F.2d 759, 774-75 (9th Cir. 1977) (affirming district court's appointment of Lead Counsel, stating that "[t]he authority recognized in *MacAlister* has never been seriously disputed"). Moreover, the *Manual for Complex Litigation* recognizes the benefits of appointing Lead Counsel in complex, multiparty litigation:

> Complex litigation often involves numerous parties with common or similar interests but separate counsel. Traditional procedures in which all papers and documents are served on all attorneys, and each attorney files motions, presents arguments, and examines witnesses, may waste time and money, confuse and misdirect the litigation, and burden the court unnecessarily. Instituting special procedures for coordination of counsel early in the litigation will help to avoid these problems.

*Manual for Complex Litigation* (Fourth) §10.22 (2004).

1.      **Saxena White and Schiffrin Barroway**
        **Should be Appointed as Lead Counsel**

In selecting Lead Counsel, the "guiding principle" is who will "best serve the interest of the

plaintiffs." *Millman*, 2004 U.S. Dist. LEXIS 20113, at * 9.  The criteria for selecting counsel

include factors such as "experience and prior success record, the number, size, and extent of

involvement of represented litigants, the advanced stage of proceedings in a particular suit, and the

nature of the causes of action alleged." *Id.* (citations omitted).  In addition, courts have also

considered the quality of the pleadings that have been filed as a factor to be weighed.  *Millman*,

2004 U.S. Dist. LEXIS 20113, at * 9.  Each of these factors weighs in favor of appointing Saxena

White and Schiffrin Barroway as Lead Counsel.

a.      **Schiffrin Barroway's Experience and**
        **Prior Success is Unassailable**

Schiffrin Barroway is a Martindale Hubbell "AV" rated law firm which has focused its

practice in the securities fraud class action and shareholder derivative areas over the past 20 years.

*See* Schiffrin Barroway Firm Biography.[6]  With more than 60 attorneys specializing in complex

shareholder litigation, Schiffrin Barroway has served as Lead or Co-Lead Counsel in numerous

securities and complex litigation matters, including serving as Lead or Co-Lead Counsel in more

than 150 shareholder derivative actions in state and federal courts across the country.  In addition to

the significant recoveries that Schiffrin Barroway has achieved on behalf of shareholders in

securities fraud cases, they have had similar success in shareholder derivative litigation.

As Lead Counsel in *Klotz v. Parfet, et al.*, Case No. 03-06483-CK (Jackson County, MI

2001), Schiffrin Barroway achieved a settlement in which CMS Energy Corporation recovered a

---

[6] Attached hereto as Exhibit A to the Declaration of Robin Winchester in Support of Brockton and Molner's Motion to Consolidate the Related Cases and to Appoint a Leadership Structure ("Winchester Decl.").

cash payment of $12 million from its directors' and officers' liability insurance and instituted a comprehensive overhaul of the Company's corporate governance program.  Among other things, CMS:

- added five new independent directors, reconstituted the committees of the board of directors, and separated the roles of Chairman and CEO;
- created the position of Chief Compliance Officer to oversee and administer the Company's ethics and corporate compliance program;
- enhanced the responsibilities and procedures of the Audit Committee;
- adopted an enhanced insider trading policy and stock ownership guidelines for officers and directors; and
- reformed the Company's executive compensation practices by eliminating the use of stock options and instituting new performance criteria for cash bonuses.

As Lead Counsel in *In re Fairchild Corp. Shareholder Derivative Litigation*, Consol. C.A. No. 871-N (Del. Ch. 2004), Schiffrin Barroway recovered a cash payment of $3.76 million from Fairchild's Chairman/CEO and the Company's directors' and officers' liability insurance and instituted a broad array of corporate governance enhancements.  Among other things, Fairchild:

- added two new independent directors and adopted policies increasing the responsibilities of the independent members of the board;
- created a new Oversight Committee to oversee and pre-approve related-party transactions; and
- reformed the Company's executive compensation practices by requiring that regular and bonus compensation be directly related to the Company's performance and prohibiting senior executives from receiving non-compete and consulting payments.

These are but a few examples of many in which Schiffrin Barroway, serving in a Lead Counsel capacity, achieved outstanding results for shareholders in complex derivative shareholder litigation.

>        **b.    Schiffrin Barroway Has Been a Pioneer In
>               Prosecuting Options Backdating Cases**

By way of further example of Schiffrin Barroway's commitment to vigorously serving the interests of shareholders, the firm has been at the forefront of litigation concerning the alleged backdating of stock options and is currently serving as lead counsel in numerous backdating cases, including the *Comverse* derivative litigation in New York state court, widely regarded as one of the

most prominent derivative litigations stemming from alleged backdating by corporate insiders.

Thus, in addition to establishing a proven track record of success in shareholder derivative actions generally, Schiffrin Barroway has also led the way in shareholder derivative actions alleging the exact conduct that Plaintiffs allege in the instant actions. This breadth of success should weigh heavily in favor of appointing Schiffrin Barroway as Lead Counsel. *See Manual for Complex Litigation* (Fourth) §10.224 (2004) (the court's responsibilities in appointing Lead Counsel include an assessment of counsel's qualifications, experience, competence, and commitment to prosecuting action on behalf of plaintiffs).

### c.    Saxena White Has Extensive Experience in Complex Class and Derivative Litigation

Saxena White is a boutique firm specializing in securities and complex litigation, with offices in Boca Raton, San Francisco and Boston. The firm is lead or co-lead counsel in major securities fraud and complex class action cases nationwide, and also has significant experience prosecuting shareholder derivative and breach of fiduciary cases. Indeed, the expertise of Saxena White attorneys in achieving corporate governance changes through derivative litigation has been recognized by courts. For example, in approving the settlement in *Klien v. FPL Group, Inc.*, United States District Court Judge Alan S. Gold recognized that the action presented "complex and novel legal issues…[where] the likelihood of success for Plaintiffs at the outset of the case was very low." In approving the exceptional settlement that was eventually reached after years of hard fought litigation, Judge Gold stated:

> Plaintiffs' counsel, a highly experienced group of lawyers with national reputations in larges securities class actions, recovered an unprecedented amount of money for shareholders as a result of this settlement - $22.25 million in addition to sweeping corporate governance changes which FPL Group has agreed to implement.

*Klien v. FPL Group, Inc.* Case # 02-20170-civ-Gold, (SD Fla. Nov. 23, 2004) (Order and Final Judgment of Dismissal) at 9.

Saxena White is appointed lead or co-lead counsel in derivative actions containing similar allegations of options backdating as this case, including actions against Jabil Circuit, Cablevision and Finisar Corp. A firm resume detailing the backgrounds and experience of Saxena White lawyers is attached as Exhibit B to Winchester Decl.

### 3.    Davis, Cowell & Bowe, LLP Should be Appointed as Liaison Counsel

The appointment of Liaison Counsel would further assist in ensuring the effective and efficient management of the consolidated derivative action. Liaison Counsel will assist with and coordinate administrative matters, such as communications between the court and other counsel (including receiving and distributing notices, orders, motions, and briefs on behalf of the group), convene meetings of counsel, advise parties of the developments in the case, and otherwise assist in the coordination of activities and positions. Such counsel may also manage document depositories and assist in resolving scheduling conflicts.

Here, Davis, Cowell & Bowe, LLP, a firm with an outstanding professional reputation, is familiar with the pertinent local rules of civil procedure and will be able to efficiently communicate with the Court and all parties as Liaison Counsel. Having served as Liaison Counsel for Saxena White in many complex actions, the firm has more than adequately discharged these duties in the past. In addition, Davis, Cowell & Bowe has been certified as class counsel in the Wal-mart and Costco gender class action cases, among others. *Dukes v. Wal-mart Stores* Case # C-01-2252, (ND Cal. June 22, 2004) (Order); *Ellis v. Costco Wholesale Corp.* Case # C-04-3341, (ND Cal. January 11, 2007) (Order). The Wal-mart case is the largest class action ever certified. As such, Davis, Cowell & Bowe, LLP is amply suited to serve as Liaison Counsel in the instant litigation.

## V.    CONCLUSION

For the reasons set forth above, the Court should grant this Motion to: (i) consolidate the

above-captioned related shareholder derivative actions and (ii) establish a leadership structure by appointing Brockton and Molner as Lead Plaintiffs, appointing Schiffrin Barroway and Saxena White P.A. as Lead Counsel, and Davis, Cowell & Bowe, LLP as Liaison Counsel.

Dated: February *13*, 2007

Respectfully submitted,

DAVIS, COWELL & BOWE, LLP

George R. Murphy (DC Bar 75200)
Mark Hanna (DC Bar 471960)
Joni S. Jacobs (DC Bar 493846)
1701 K Street NW, Suite 210
Washington, DC 20006
Tel. (202) 223-2620
Fax: (202) 223-8651

*Attorneys for Plaintiff Brockton Contributory Retirement System and Proposed Liaison Counsel*

SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP
Eric L. Zagar
Robin Winchester
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

*Attorneys for Plaintiff Catherine Molner and Proposed Lead Counsel*

SAXENA WHITE P.A.
Maya Saxena
Joseph White
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

*Attorneys for Plaintiff Brockton Contributory Retirement System and Proposed Lead Counsel*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BROCKTON CONTRIBUTORY RETIREMENT SYSTEM, Derivatively on Behalf of Nominal Defendant SUNRISE SENIOR LIVING, INC., | ) ) ) ) |
| | ) |
| Plaintiff, | ) ) |
| | ) |
| v. | ) ) |
| PAUL J. KLAASSEN, DAVID W. FAEDER, TIMOTHY S. SMICK, THOMAS B. NEWELL, BRIAN C. SWINTON, CHRISTIAN B.A. SLAVIN, LARRY E. HULSE, TIFFANY L. TOMASSO, ROBERT R. SLAGER, CARL ADAMS, RONALD V. APRAHAMIAN, CRAIG R. CALLEN, DAVID G. BRADLEY, J. DOUGLAS HOLLADAY and THOMAS J. DONOHUE, | ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants, | ) ) |
| | ) |
| and | ) ) |
| | ) |
| SUNRISE SENIOR LIVING, INC., | ) ) |
| | ) |
| Nominal Defendant. | ) ) |

Case No. 1:07-cv-00143-RBW

Judge Walton



EXHIBIT
A

*To Be Consolidated With:*

| | |
|---|---|
| CATHERINE MOLNER, Derivatively on Behalf of Nominal Defendant SUNRISE SENIOR LIVING, INC., ) ) ) ) | Case No. 1:07-cv-00227-RBW |
| Plaintiff, ) ) | Judge Walton |
| v. ) ) | |
| PAUL J. KLAASSEN, DAVID W. FAEDER, TIMOTHY S. SMICK, THOMAS B. NEWELL, BRIAN C. SWINTON, CHRISTIAN B.A. SLAVIN, LARRY E. HULSE, TIFFANY L. TOMASSO, ROBERT R. SLAGER, CARL ADAMS, RONALD V. APRAHAMIAN, CRAIG R. CALLEN, DAVID G. BRADLEY, J. DOUGLAS HOLLADAY and THOMAS J. DONOHUE, ) ) ) ) ) ) ) ) ) ) | |
| Defendants, ) ) | |
| and ) ) | |
| SUNRISE SENIOR LIVING, INC., ) ) | |
| Nominal Defendant. ) ) | |

## DECLARATION OF ROBIN WINCHESTER IN SUPPORT OF BROCKTON CONTRIBUTORY RETIREMENT SYSTEM'S AND CATHERINE MOLNER'S MOTION TO CONSOLIDATE RELATED CASES AND TO APPOINT A LEADERSHIP STRUCTURE

Robin Winchester declares under penalty of perjury this 13th day of February, 2007:

1.    I am an Associate at the law firm of Schiffrin Barroway Topaz & Kessler, LLP. The following facts are true to my own personal knowledge and, if called upon to do so, I could and would completely testify to their truth. I submit this Declaration in Support of Brockton Contributory Retirement System's and Catherine Molner's Motion

to Consolidate Related Cases and to Appoint a Leadership Structure.

      2.      Attached hereto as Exhibit A is a true and correct copy of the firm

biography for Schiffrin Barroway Topaz & Kessler, LLP, the firm seeking the Court's

approval to be appointed as Lead Counsel.

      3.      Attached hereto as Exhibit B is a true and correct copy of the firm

biography for Saxena White P.A., the firm seeking the Court's approval to be appointed

as Lead Counsel.

      I declare under penalty of perjury of the laws of the United States of America

that the foregoing is true and correct and that this Declaration was executed on February

13, 2007, at Radnor, Pennsylvania.


              /s/_____

              ROBIN WINCHESTER



## SCHIFFRIN BARROWAY TOPAZ & KESSLER, LLP
### Attorneys at Law

**280 King of Prussia Road ● Radnor, PA 19087**
**Phone: 610-667-7706 ● Fax: 610-667-7056**

---

# FIRM PROFILE

Schiffrin Barroway Topaz & Kessler, LLP, located just outside of Philadelphia, Pennsylvania, specializes in representing shareholders and consumers in complex class action litigation in state and federal courts throughout the United States. Since our inception, SBTK has recovered billions of dollars on behalf of defrauded shareholders and aggrieved consumers. The firm is led by its senior partners, Richard S. Schiffrin, Andrew L. Barroway, Marc A. Topaz, and David Kessler, with assistance from partners Stuart L. Berman, Katharine M. Ryan, Gregory M. Castaldo, Michael K. Yarnoff, Joseph H. Meltzer, Darren J. Check, Tobias L. Millrood, Andrew L. Zivitz, Sean M. Handler, John A. Kehoe, Lee D. Rudy, Kay E. Sickles, Eric L. Zagar and numerous experienced associates and staff.

SBTK focuses on the prosecution of securities fraud actions and derivative and transactional litigation brought against public companies, their officers and directors, and their auditors and investment banking firms. In addition, SBTK represents employees in ERISA/401 K actions, as well as individuals and institutions in consumer litigation, product liability and antitrust actions.

Throughout our history, SBTK has represented various private institutional investors, including public and Taft-Hartley pension funds, hedge funds, mutual fund managers, investment advisors, and insurance companies, as well as thousands of individual investors in securities fraud class actions. Currently, SBTK is serving as Lead or Co-Lead Counsel in several high profile securities class actions against companies such as Tyco, Delphi Corp., Tenet Healthcare, Sprint Corp. and PNC Bank. In addition, SBTK has played a prominent role in the following precedent setting actions:

**In re Tenet Healthcare Corp. Securities Litigation,**
**No. CV-02-8462-RSWL (Rx) (C.D. Cal. 2002)**

SBTK serves as co-lead counsel on behalf of the State of New Jersey and its Division of Investment against Tenet Healthcare Corp. and certain of its former officers and directors. Among other things, the Lead Plaintiff alleges that defendants made a series of materially false or misleading statements and omissions concerning Tenet's business model and financial health from January 11, 2000 through November 7, 2002. After defeating defendants' motions to



EXHIBIT
A(A)
tabbies

dismiss and performing substantial document and deposition discovery, a partial settlement has been reached in the amount of $216.5 million in cash which will be submitted for preliminary approval by the Court in the coming weeks. The Partial Settlement is being funded primarily by Tenet and its insurance carriers ($215 million), with personal contributions in the aggregate amount of $1.5 million being made by two of Tenet's former officers, Jeffrey Barbakow and Thomas Mackey. In addition to the substantial cash recovery, the prosecution of this action has played a prominent role in Tenet's initiation of sweeping corporate governance reforms which have led to Tenet being ranked by various institutional rating entities as among the best corporations in America for its corporate governance. The case will continue against KPMG as the Court denied KPMG's motion to dismiss the action in its entirety in December, 2005.

**In re AremisSoft Corp. Securities Litigation,**
**C.A. No. 01-CV-2486 (D.N.J. 2002):**

SBTK is particularly proud of the results achieved in this case before the Honorable Joel A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom remain fugitives. In settling the action, SBTK, as sole Lead Counsel, assisted in reorganizing the Company as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The Settlement, approved by the court, enabled the class to receive the majority of the equity in the new Company, as well as their pro rata share of all amounts recovered by the litigation trust. The court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained SBTK to further assist with prosecuting the actions on behalf of the litigation trust. After filing an action in the Isle of Man, where the trust successfully froze more than $200 million of stolen funds from one of the fugitives, the trust achieved a settlement of this action for $200 million, which was returned to the United States and paid to the trust. Recently, the trust commenced another action in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against bank accounts and assets owned and/or controlled by the other principal wrongdoer. Thus far, counsel on behalf of the trust and its beneficiaries have achieved settlements with the Company and certain of its directors and officers as well as the Company's auditors, lawyer and underwriters for a total of more than $250 million. The beneficiaries of the trust have already received in excess of 28% of their recognized losses.

**In re Initial Public Offering Securities Litigation,**
**Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002):**

SBTK is one of only six law firms comprising Plaintiffs' Counsel's Executive Committee, and was selected from over sixty law firms which had brought such actions. This litigation challenges the legality of the IPO allocations practices of virtually all of the major investment banking firms from 1998 through 2000, and encompasses over 300 coordinated actions.

# PARTNERS

**RICHARD S. SCHIFFRIN**, founding partner of the firm, is licensed to practice law in Illinois and Pennsylvania, and has been admitted to practice before numerous United States District Courts. In his seven years of practice with the Office of the Public Defender of Cook County, Illinois, Mr. Schiffrin represented hundreds of clients in both bench and jury trials, as well as appeals. Mr. Schiffrin has also taught legal writing and appellate advocacy at John Marshall Law School and has served as a faculty member at numerous legal seminars, including the Annual Institute on Securities Regulation, NERA: Finance, Law & Economics — Securities Litigation Seminar, the Tulane Corporate Law Institute, and the CityBar Center for CLE (NYC): Ethical Issues in the Practice of Securities Law.

Most recently, Mr. Schiffrin spoke at the MultiPensions 2005 Conference in Amsterdam, Netherlands; the Public Funds Symposium 2005 in Washington, D.C.; the European Pension Symposium in Florence, Italy; and the Pennsylvania Public Employees Retirement Summit (PAPERS) in Harrisburg, Pennsylvania. Mr. Schiffrin oversees all aspects of litigation on behalf of the firm. Mr. Schiffrin has been recognized for his expertise in numerous cases, including most prominently:

*In re AremisSoft Corp. Securities Litigation, C.A. No. 01-CV-2486 (D.N.J. 2002):*

SBTK is particularly proud of the results achieved in this case before the Honorable Joel A. Pisano. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom remain fugitives. In settling the action, SBTK, as sole Lead Counsel, assisted in reorganizing the Company as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The Settlement, approved by the court, enabled the class to receive the majority of the equity in the new Company, as well as their pro rata share of all amounts recovered by the litigation trust. The court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained SBTK to further assist with prosecuting the actions on behalf of the litigation trust.

After filing an action in the Isle of Man, where the trust successfully froze more than $200 million of stolen funds from one of the fugitives, the trust achieved a settlement of this action for $200 million, which was returned to the United States and paid to the trust. Recently, the trust commenced another action in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against bank accounts and assets owned and/or controlled by the other principal wrongdoer.

Thus far, counsel on behalf of the trust and its beneficiaries have achieved settlements with the Company and certain of its directors and officers as well as the Company's auditors, lawyer and underwriters, for a total of more than $250 million. The beneficiaries of the trust have already received in excess of 28% of their recognized losses.

*Henry v. Sears, et al., Case No. 98 C 4110 (N.D. Ill. 1999):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel on behalf of the largest class of credit card holders in history. At stake was the right of Sears and its newly formed affiliate, Sears National Bank ("SNB"), to retroactively increase the interest rates on eleven million credit card accounts with outstanding balances resulting from purchases made prior to the accounts being transferred to SNB. Schiffrin Barroway Topaz & Kessler alleged that such conduct violated the Truth-in-Lending Act, the National Banking Act and state consumer fraud statutes. After extensively litigating various aspects of liability, an additional nine months were then spent determining damages. The extraordinary complexity of the damage calculations required Mr. Schiffrin and experts from both parties to develop, test and utilize a novel computer model to ascertain total damages for the class and individualized damages for each class member. Ultimately, Mr. Schiffrin and his partner, Mr. Kessler, were able to negotiate a $156 million settlement, which represented approximately 66% of total damages. In approving the settlement, District Court Judge Leinenwebber of the Northern District of Illinois stated:

. . . I am pleased to approve the settlement. I think it does the best that could be done under the circumstances on behalf of the class. . . . The litigation was complex in both liability and damages and required both professional skill and standing which class counsel demonstrated in abundance.

The entire settlement fund of $156 million was distributed without the filing of a single proof of claim form by any class member.

*Wanstrath v. Doctor R. Crants, et al., C.A. No. 99-1719-III*
*(Tenn. Chan. Ct., 20th Judicial District, 1999):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel in a derivative action filed against the officers and directors of Prison Realty Trust, Inc., challenging the transfer of assets from the Company to a private entity owned by several of the Company's top insiders. Numerous federal securities class actions were pending against the Company at this time. Through the derivative litigation, the Company's top management was ousted, the composition of the Board of Directors was significantly improved and important corporate governance provisions were put in place to prevent future abuse. Mr. Schiffrin, in addition to achieving these desirable results, was able to personally effectuate a global settlement of all pending litigation against the backdrop of an almost certain bankruptcy. The case was resolved in conjunction with the federal securities cases for the payment of approximately $50 million by the Company's insurers and the issuance of over 46 million shares to the class members.

*Jordan v. State Farm Insurance Company, Case No. 97 CH 11*
*(Cir. Ct., McLean County, Ill. 1998):*

Schiffrin Barroway Topaz & Kessler brought a claim on behalf of multiple plaintiffs alleging that State Farm had engaged in fraudulent sales practices by "churning" policies and marketing and selling "vanishing premium" policies that never "vanished." After several years of discovery, motion practice and settlement negotiations, Mr. Schiffrin played a critical role in resolving the action for $225 million in cash, dividend enhancements and other monetary benefits for current and former State Farm policyholders. Schiffrin Barroway Topaz & Kessler

also has achieved substantial settlements in 20 additional cases alleging fraudulent sales practices by various insurance companies.

Mr. Schiffrin has also represented defrauded shareholders and companies in complex class and derivative actions, including the following:

*Huscher v. Curley, et al., No. 00 Civ. 21379 (Mich. Cir. Ct., 2000) (In re Sotheby's Holdings, Inc. Derivative Litigation):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel in a derivative action arising out of Sotheby's alleged antitrust price fixing conspiracy with auction house rival Christie's International PLC. A multi-million dollar settlement was negotiated by Mr. Schiffrin whereby Diana Brooks (Sotheby's President at the time of the alleged wrongdoing) agreed to relinquish all of her Sotheby's stock options, and the Company's insurance carrier made a substantial monetary payment to the Company. In addition, significant changes in the Company's top management and Board of Directors were achieved in conjunction with the settlement of the litigation.

**ANDREW L. BARROWAY**, managing partner of the firm, received his law degree from the University of Pennsylvania Law School, where he was a member of the ABA Negotiation team. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Barroway frequently lectures on securities class action and lead plaintiff issues, and recently spoke at the 2005 Institutional Investor Hedge Fund Workshop in New York City and the Public Funds Summit 2005 in Phoenix, Arizona. Mr. Barroway has been actively involved in all aspects of litigation on behalf of the firm, and co-manages the firm's securities department. Of his numerous successful representations of shareholders, the following stand out as exceptional:

*In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002):*

Schiffrin Barroway Topaz & Kessler served as sole Lead Counsel in this action on behalf of an institutional investor and recently received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of February 2005, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised Schiffrin Barroway Topaz & Kessler for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result.

*In re Digital Lightwave, Inc. Securities Litigation, Consolidated Case No. 98-152-CIV-T-24E (M.D. Fla. 1999):*

The firm served as Co-Lead Counsel in one of the nation's most successful securities class actions. After extensive litigation and negotiations, a settlement consisting primarily of stock ultimately grew to a value of over $170 million between the time in which the settlement was negotiated and the time at which it was distributed. Schiffrin Barroway Topaz & Kessler took on the primary role in negotiating the terms of the equity component, insisting that the class have

the right to share in any upward appreciation in the value of the stock after the settlement was reached. This recovery represented an astounding approximately two hundred percent (200%) of class members' losses. Schiffrin Barroway Topaz & Kessler believes that this represents the largest percentage recovery for shareholders in securities class action history.

Mr. Barroway, along with his partner, Mr. Kessler, has also negotiated substantial settlements of securities class actions in which Schiffrin Barroway Topaz & Kessler was Lead or Co-Lead Counsel against Pinnacle Holdings, Cell Pathways, Gateway, Mercator and NetSolve. Mr. Barroway currently represents numerous public pension funds, private investment funds, money management firms, and individuals in securities fraud litigation as Lead or Co-Lead Counsel.

**MARC A. TOPAZ**, a senior partner of the firm, received his law degree from Temple University School of Law, where he was an editor of the Temple Law Review and a member of the Moot Court Honor Society. He also received his Master of Law (L.L.M.) in taxation from the New York University School of Law, where he served as an editor of the New York University Tax Law Review. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Topaz manages the firm's derivative, transactional and antitrust departments. In this regard, Mr. Topaz has been actively involved in litigating the following prominent cases:

*In re MTC Electronic Shareholder Litigation, No. CV-93-0876 (E.D.N.Y. 1993):*

Schiffrin Barroway Topaz & Kessler served as Co-Counsel in a case involving securities fraud by MTC, its officers and directors, underwriters and accountants. The case presented novel issues of Chinese law, and required the construction of a database of hundreds of thousands of documents utilized in numerous party and non-party depositions. A $72 million settlement was achieved on the eve of trial.

*In re Oppenheimer Capital, L.P., Unitholders Litigation, Consolidated No. 16022NC (Del. Ch. 1997):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs alleging that a merger proposed by Pimco Advisors benefitted certain Pimco insiders by disproportionately allocating tax benefits achieved from the restructuring of a limited partnership, and failing to provide adequate compensation to the Oppenheimer shareholders. Plaintiffs moved to enjoin the transaction and a settlement was reached whereby defendants agreed to pay a special dividend to Oppenheimer limited partners of approximately $16 million.

*Wanstrath v. Doctor R. Crants, et al., C.A. No. 99-1719-III*
*(Tenn. Chan. Ct., 20th Judicial District, 1999):*

*(See description under Richard S. Schiffrin)*

**DAVID KESSLER**, a senior partner of the firm, graduated with distinction from the Emory School of Law. He is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. He is also a

Certified Public Accountant in Pennsylvania. Mr. Kessler co-manages the firm's nationally recognized securities department and assists in the management of the mass tort department. In addition, Mr. Kessler often lectures on securities litigation and was a featured speaker on hot topics in securities litigation in a seminar entitled "The Explosion and Evolution of Class Action Law" in December 2004 in Philadelphia, Pennsylvania, and the Corporate Governance Summit on Corporate Accountability in July 2003 in New York City. Mr. Kessler has achieved the following outstanding results in federal securities cases:

*In re Initial Public Offering Securities Litigation,*
*Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002):*

Mr. Kessler, along with Mr. Schiffrin, is presently heading up the firm's litigation efforts in its prominent position as an Executive Committee member in this action. Of the sixty plaintiffs firms which originally filed actions in these coordinated proceedings, Schiffrin Barroway Topaz & Kessler was one of only six selected to serve on the Executive Committee. The coordinated actions, which have been filed against 309 separate issuers of publicly traded securities, challenge the legality of the practices which company the allocations of shares in initial public offerings. In addition to suing the issuers of such securities, the 309 coordinated actions also name as defendants the primary investment banking firms which underwrote the offerings. This case, which has received a great deal of national and international media attention, is widely considered the largest securities class action litigation in history. At the present time, the court has preliminarily approved a $1 billion settlement with the issuers and their officers and directors. The case is proceeding against the underwriting defendants.

*In re Assisted Living Concepts, Inc. Securities Litigation, Lead Case No. 99-167-AA (D. Or. 1999):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel and was instrumental in obtaining a $30 million recovery for class members from the Company, its executive officers and directors, and several underwriters for their role in an alleged complex accounting fraud involving the use of a purportedly independent joint venture to absorb the Company's startup losses. Even after this $30 million recovery, through counsel's efforts, an additional $12.5 million was obtained from the auditors providing for a total recovery of $42.5 million.

*In re Twinlab Corporation Securities Litigation, Master File*
*No. 98-CV-7425 (E.D.N.Y. 1998):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel and successfully litigated the action and was able to negotiate a settlement in the amount of $26 million plus interest.

*In re Cumulus Media Inc. Securities Litigation, Lead Case*
*No. 00-C-391 (E.D. Wis. 2000):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel and successfully litigated the action and negotiated a settlement of $13 million in cash and 240,000 shares of freely tradable

stock in Cumulus Media, which traded for approximately $19 per share, for a total settlement value of $17.5 million at the time the settlement was approved by the Court.

**STUART L. BERMAN**, a partner of the firm, received his law degree from George Washington University National Law Center, and his undergraduate degree from Brandeis University. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Berman manages the firm's lead plaintiff department and has been instrumental in courts appointing many of the firm's institutional and individual clients as lead plaintiffs in important cases, such as:

*In re Tenet Healthcare Corp. Securities Litigation, No. CV-02-8462- RSWL (C.D. Cal. 2002),*

*In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002), State of New Jersey and Its Division of Investment v. Sprint Corporation, et al., No. 03-2071-JWL (D. Kan. 2003),*

*In re DreamWorks Animation SKG, Inc. Sec. Litig., CV-05-03966 MRP (VBKx) (C.D. Cal. 2005),*

*In re Delphi Corp. Sec. Litig., 1:05-CV-2637 (NRB) (S.D.N.Y. 2005);*

*In re Star Gas Sec. Litig., 3:04-CV-01766-JBA (D. Conn. 2004), Witriol v. Conexant Systems, Inc., 04-CV-6219 (SRC/TJB) (D.N.J. 2004),*

*In re Vaxgen Inc. Securities Litigation, No. C 03-01129 JSW (N.D. Cal. 2003),*

*In re American Business Financial Services, Inc., No. 04- 0265 (E.D. Pa. 2004)*

*and In re Autobytel, Inc. Securities Litigation, No. CV04-8987 MMM (JWJx) (C.D. Cal. 2004).*

Mr. Berman represents institutional investors worldwide in securities litigation and other related matters. In addition, Mr. Berman is a frequent speaker on securities issues, especially as they relate to institutional investors, at The European Pension Symposium in Florence, Italy; the Public Funds Symposium 2005 in Washington, D.C.; the *Pennsylvania Public Employees Retirement (PAPERS) Summit* in Harrisburg, Pennsylvania; and the New England Pension Summit in Newport, Rhode Island. He speaks with institutional investors located around the world regarding their rights and obligations associated with securities fraud class actions and individual actions. Mr. Berman works closely with the firm's institutional investors and counsels

them on fulfilling their fiduciary obligations and exercising their rights in all types of securities related actions.

Mr. Berman has specialized in the area of securities litigation for the past nine years. He is particularly proud of the results achieved in *In re AremisSoft Corp. Sec. Litig., C.A. No. 01-CV-*

*2486 (D.N.J. 2002)*, a case on which Mr. Berman and his partner, Richard Schiffrin, have worked extensively. This case was exceedingly complicated, as it involved the embezzlement of hundreds of millions of dollars by former officers of the Company, some of whom are now fugitives. In settling the action, Schiffrin Barroway Topaz & Kessler, as sole Lead Counsel, assisted in reorganizing AremisSoft as a new Company which allowed for it to continue operations, while successfully separating out the securities fraud claims and the bankrupt Company's claims into a litigation trust. The Settlement, which was approved by the Court, called for the class to receive the majority of the equity in the new Company, as well as their pro rata share of all amounts recovered by the litigation trust. The Court-appointed co-trustees, Joseph P. LaSala, Esq. and Fred S. Zeidman, retained Schiffrin Barroway Topaz & Kessler to continue prosecuting the actions on behalf of the litigation trust. After extensive litigation in the Isle of Man, including the successful freezing of more than $200 million of stolen funds, the trust recently settled its action against one of the principal wrongdoers and recovered approximately $200 million. Thus far, the trust has distributed to beneficiaries of the trust more than 28% of their recognized losses (excluding the value of the equity of the new Company), and is poised to recover even more. Recently, the trust commenced further litigation in Cyprus, where it obtained a Mareva injunction and interim ancillary relief against bank accounts and assets owned and/or controlled by the other principal wrongdoer.

**KATHARINE M. RYAN,** a partner of the firm, graduated *cum laude* from Villanova University School of Law in May 1984. Ms. Ryan is admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the Court of Appeals for the Third Circuit and the United States Supreme Court. Ms. Ryan recently participated as a speaker in a legal teleconference entitled "Is the PSLRA's Safe Harbor Provision Safe?" Ms. Ryan is actively involved in litigating several of the firm's most prominent cases and was integral in the excellent results achieved in the following cases:

*In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002):*

Schiffrin Barroway Topaz & Kessler served as sole Lead Counsel in this action on behalf of an institutional investor and recently received final approval of a settlement consisting of $20 million in cash and 6,551,725 shares of IPG common stock. As of February 2005, the stock had an approximate value of $87 million, resulting in a total settlement value of approximately $107 million. In granting its approval, the Court praised Schiffrin Barroway Topaz & Kessler for acting responsibly and noted the firm's professionalism, competence and contribution to achieving such a favorable result.

*In re New Power Holdings, Inc. Securities Litigation, No. 02 Civ. 1550 (S.D.N.Y. 2002):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel and was instrumental in obtaining a recovery of $41 million in cash for class members against a bankrupt company, certain of its officers and directors and the underwriters of the Company's offering. Claims involved New Power, an offshoot of Enron, that was formed to re-enter the deregulated energy market and pursued an IPO with no viable plan to hedge against volatile energy prices.

**GREGORY M. CASTALDO**, a partner of the firm, received his law degree from Loyola Law School, where he received the American Jurisprudence award in legal writing. He received his undergraduate degree from the Wharton School of Business at the University of Pennsylvania. He is licensed to practice law in Pennsylvania and New Jersey. Mr. Castaldo has been actively involved in litigating the following cases:

*In re Liberate Technologies Securities Litigation, No. C-02-5017 (MJJ) (N.D. Cal. 2005):*

Plaintiffs alleged that Liberate engaged in fraudulent revenue recognition practices to artificially inflate the price of its stock, ultimately forcing it to restate its earnings. As sole Lead Counsel, Schiffrin Barroway Topaz & Kessler successfully negotiated a $13.8 million settlement, which represents almost 40% of the damages suffered by the class. In approving the settlement, the district court complimented Lead Counsel for its "extremely credible and competent job."

*In re Unigraphics Solutions Inc. Shareholders Litigation, Consol. C.A. No. 18916,*

Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $35 million for members of the class;

*In re Prodigy Communications Corp. Shareholders Litigation, Consol. C.A. No. 19113-NC,*

Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $36 million for members of the class; and

*In re Sodexho Marriott Shareholders Litigation, Consol. C.A. No. 18640-NC,*

Delaware Chancery Court, in which Class Counsel was partially responsible for creating an aggregate financial benefit of approximately $166 million for members of the class.

Mr. Castaldo is also presently litigating *In re Tenet Healthcare Corp. Securities Litigation, No. CV-02-8462-RSWL (C.D. Cal. 2002), and State of New Jersey and Its Division of Investment v. Sprint Corporation, et al., No. 03-2071-JWL (D. Kan. 2003).*

**MICHAEL K. YARNOFF**, a partner of the firm, received his law degree from Widener University School of Law. Mr. Yarnoff is licensed to practice law in Pennsylvania, New Jersey, and Delaware and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey. He serves in the firm's securities litigation department and has been actively involved in a number of federal securities cases in which outstanding results were achieved, including the following:

*In re CVS Corporation Securities Litigation, C.A. No. 01-11464 JLT (D.Mass.):*

After more than three years of contentious litigation and a series of protracted mediation sessions, Schiffrin Barroway Topaz & Kessler, LLP, serving as co-lead counsel, secured a $110 million recovery for class members in the CVS Securities Litigation. Specifically, the suit alleged that CVS violated accounting practices by delaying discounts on merchandise in an effort

to prop up its earnings. In addition, the suit charged that in 2001, the Company and its Chief Executive Officer, Thomas M. Ryan, improperly delayed announcement of its intention to close approximately 200 underperforming stores, and that an industry-wide pharmacist shortage would have a materially negative impact on the Company's performance. Settlement was reached just days prior to the commencement of trial, and shortly after the district court had denied the defendants' motions for summary judgment. This substantial recovery, which represents the third-largest settlement in a securities class action case in the First Circuit, received final approval from District Judge Joseph Tauro on September 27, 2004.

*In re InfoSpace, Inc. Securities Litigation, Master File No. C-01-0913-Z (D. Wash. 2001):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs alleging that InfoSpace and certain of its officers and directors overstated revenues by using improper accounting methods, overstated the demand for InfoSpace's wireless services, misstated InfoSpace's financial relationships with major customers, and falsely represented that InfoSpace would receive subscription fees from users of web-enabled cell phones. After two years of hard-fought litigation and complex mediation, a settlement of $34.3 million was obtained for members of the class.

*In re Riverstone Networks, Inc. Securities Litigation, Case No. CV-02-3581 (N.D. Cal. 2002):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel on behalf of plaintiffs alleging that Riverstone and certain of its officers and directors sought to create the impression that the Company, despite the industry-wide downturn in the telecom sector, had the ability to prosper and succeed and was actually prospering. In that regard, plaintiffs alleged that defendants issued a series of false and misleading statements concerning the Company's financial condition, sales and prospects, and used inside information to personally profit. After extensive litigation, the parties entered into formal mediation with the Honorable Charles Legge (Ret.). Following five-months of mediation, the parties reached a settlement of $18.5 million.

**JOSEPH MELTZER,** a partner of the firm, received his law degree, with honors, from Temple University School of Law. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Court of Appeals for the Third Circuit.

Mr. Meltzer concentrates his practice in the areas of ERISA and antitrust complex litigation, and manages the firm's ERISA litigation department, which has excelled in the highly specialized area of prosecuting claims on behalf of retirement savings plans. Mr. Meltzer is Lead Counsel in several pending nationwide class actions brought under ERISA.

Mr. Meltzer has helped obtain several multi-million dollar settlements on behalf of class members, including the recent settlements in *In re Global Crossing ERISA Litigation, No. 02 Civ. 7453 (S.D.N.Y.)* ($79 million settlement) and In re Augmentin Antitrust Litigation, No. 02-442 (E.D. Va.) ($29 million settlement). Mr. Meltzer also prosecutes claims on behalf of third-party payors and consumers and is currently serving as Lead Counsel in *In re Remeron Antitrust Litigation, No. 02-CV-2007 (D.N.J.)* and In *re Wellbutrin SR/Zyban Antitrust Litigation (E.D. Pa.).*

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Meltzer practiced at Barrack, Rodos & Bacine in Philadelphia, where he had prominent roles in prosecuting several complex class actions to successful conclusions, including *In re Sorbates Direct Purchaser Antitrust Litigation, No. C 98-4886 (N.D. Cal. 2001)* ($92 million settlement) and also defended clients in antitrust and commercial litigation.

**ANDREW L. ZIVITZ,** a partner of the firm, received his law degree from Duke University School of Law, and received a Bachelor of Arts degree, with distinction, from the University of Michigan, Ann Arbor. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Zivitz practiced with the Philadelphia law firms of Klehr, Harrison, Harvey, Branzburg & Ellers, LLP and Drinker Biddle & Reath, LLP, where he litigated complex commercial and environmental matters.

Mr. Zivitz is admitted to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Mr. Zivitz concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in several of the largest class action securities cases currently pending nationwide. In addition, Mr. Zivitz has been actively involved in a number of federal securities cases in which outstanding results were achieved, including the following:

*In re Tenet Healthcare Corp., 02-CV-8462 (C.D.Cal.):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs, alleging that Tenet Healthcare and certain of its officers and directors defrauded Medicare out of hundreds of millions of dollars, materially overstated Tenet's revenues, and performed unnecessary cardiac surgeries to increase the Company's earnings. After three years of hard-fought litigation and complex mediation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement involving a $216.5
million payment from Tenet and the Company's former CEO and COO, and specific corporate governance improvements.

*In re Computer Associates, No. 02-CV-1226 (E.D.N.Y.):*

Schiffrin Barroway Topaz & Kessler served as Co-Lead Counsel on behalf of plaintiffs, alleging that Computer Associates and certain of its officers misrepresented the health of the company's business,
materially overstated the company's revenues, and engaged in illegal insider selling. After nearly two years of litigation, Schiffrin Barroway Topaz & Kessler helped obtain a settlement of $150 million from the company.

*In re Aon Corp., No. 02-CV-5631 (N.D. Ill.):*

Schiffrin Barroway Topaz & Kessler served as Lead Counsel and was instrumental in obtaining a recovery of $7.25 million for class members against Aon Corp. and certain of its officers. Plaintiffs brought claims against the defendants on the grounds that they touted the prospects and

successes of the company's multi-million dollar "Business Transformation Plan," when in fact they knew that the plan was damaging the company's business.

**DARREN J. CHECK**, a partner of the firm, received his law degree from Temple University School of Law and his undergraduate degree in History, with honors, from Franklin & Marshall College. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey, and the United States District Court for the District of Colorado. Mr. Check concentrates his practice in the area of securities litigation and institutional investor relations. Mr. Check began his career at Schiffrin Barroway Topaz & Kessler by working extensively with partner David Kessler on *In re Initial Public Offering Securities Litigation, No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002)*, widely considered the largest securities class action in history. Mr. Check currently concentrates his work as the firm's Director of Institutional Relations, and consults with institutional investors from around the world regarding their rights and responsibilities with respect to their investments in the U.S. market, the monitoring of their investments, and taking an active role in shareholder litigation. Mr. Check regularly meets with institutional investors and speaks at conferences and seminars to discuss class actions, corporate governance, and how Schiffrin Barroway Topaz & Kessler's services can be of use to them. Recently, Mr. Check spoke at the MultiPensions 2005 Conference in Amsterdam, Netherlands; the European Pension Symposium in Florence, Italy; the Public Funds Summit 2005 in Phoenix, Arizona; the Pennsylvania Public Employees Retirement (PAPERS) Summit in Harrisburg, Pennsylvania; and the New England Pension Summit in Newport, Rhode Island.

In addition, Mr. Check serves in the firm's lead plaintiff department, which involves litigation strategy and lead plaintiff issues.

**TOBIAS MILLROOD**, a partner of the firm, manages the mass tort department at Schiffrin Barroway Topaz & Kessler. Mr. Millrood has been actively involved in mass tort litigation involving Prempro (Hormone Therapy), Guidant Cardiac Devices, Medtronic Cardiac Devices, Vioxx, Fen-Phen, Baycol, Meridia, Thimerosal, Ephedra and Zyprexa.

Mr. Millrood has been distinguished with leadership roles in several national products liability actions. Mr. Millrood currently serves as Liaison Counsel in In Re Hormone Therapy Litigation, Philadelphia Court of Common Pleas. Mr. Millrood also serves on the Plaintiffs' Steering Committee in MDL 1507 – In Re Prempro Products Liability and is Chair of the Association of Trial Lawyers of America (ATLA) Hormone Therapy Litigation Group. Mr. Millrood served as a Co-Chair of the Expert Committee in *In Re Baycol Litigation, Philadelphia Court of Common Pleas.* In Meridia, Mr. Millrood is Co-Chair of the ATLA Meridia Litigation Group. He also served on the Executive Committee of MDL 1481, In re Meridia Products Liability. In Thimerosal, Mr. Millrood serves on the Executive Committee of the Omnibus Autism Proceedings before the National Vaccine Injury Compensation Program. In August 2003, Mr. Millrood's article on Hormone Therapy was published in Trial magazine. Mr. Millrood speaks frequently at various seminars, on the topics of Mass Tort Litigation, Hormone Therapy, Cardiac Device Litigation, Meridia, the Ethics of Settling Mass Tort Cases and Electronic Discovery. Mr.

Millrood has helped his clients to achieve millions of dollars in settlement of their product liability claims.

Prior to joining Schiffrin Barroway Topaz & Kessler, LLP, Mr. Millrood practiced at Anapol Schwartz. While at Anapol Schwartz, Mr. Millrood garnered several notable achievements, including serving as co-counsel in a $22 million medical malpractice verdict in Wallace v. Fraider (Phila. CCP Mar. 2001), one of the highest in state history. He also wrote and argued cases resulting in significant changes to Pennsylvania law: *Cullen v. Pennsylvania Prop. & Cas. Ins. Guar. Ass'n, 760 A.2d 1198 (Pa. Commw. 2000)* (Pennsylvania workers' compensation carrier could not assert a subrogated claim for benefits that its insured's employee was precluded from recovering in settlement of a related medical malpractice claim); and Estate of Magette v. Goodman, 2001 WL 218981 (Pa. Super. 2001) (failure to retain evidence of EKG strip during orthopedic surgery that resulted in death of patient required new trial where court failed to give jury adverse inference instruction).

Mr. Millrood received his law degree from University of Tulsa College of Law. He is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Court of Appeals for the Third Circuit. Mr. Millrood is a former member of the Pennsylvania Trial Lawyers Board of Governors and the Executive Committee of the Philadelphia Bar Association Young Lawyers' Division.

**SEAN M. HANDLER**, a partner of the firm, received his law degree, cum laude, from Temple University School of Law. Mr. Handler received his undergraduate degree from Colby College, with distinction in American Studies. He is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Handler practiced at Reed Smith, LLP in Philadelphia. Mr. Handler concentrates his practice in the area of securities litigation, and serves in the firm's lead plaintiff department, which involves working with clients, litigation strategy and lead plaintiff issues. In this role, Mr. Handler has assisted partner Stuart Berman in enabling various of the firm's institutional and individual clients to serve as lead plaintiffs in important cases, such as *In re Tenet Healthcare Corp. Securities Litigation, No. CV-02-8462-RSWL (C.D. Cal. 2002), In re The Interpublic Group of Companies Securities Litigation, No. 02 Civ. 6527 (S.D.N.Y. 2002), State of New Jersey and Its Division of Investment v. Sprint Corporation, et al., No. 03-2071-JWL (D. Kan. 2003), In re Ariba Inc. Securities Litigation, Master File No. 03-00277 JF (N.D. Cal. 2003), and In re Autobytel, Inc. Securities Litigation, No. CV04-8987 MMM (JWJx)(C.D. Cal. 2004).*

**JOHN A. KEHOE**, a partner of the firm, received a B.A. from Depaul University, and a Master's degree in Public Administration from the University of Vermont. He received his J.D., magna cum laude, from Syracuse University College of Law in 1997, where he was an Associate Editor of the Syracuse Law Review, an Associate Member of the Moot Court Board, and an alternate member on the National Appellate Team. Mr. Kehoe is licensed to practice law in the State of New York, and has been admitted to practice before the United States District Court for the Southern District of New York.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Kehoe had extensive securities litigation experience as an associate at Bernstein, Litowitz, Berger & Grossman, LLP, and prior to that, at Clifford Chance US LLP. Before attending law school, Mr. Kehoe worked as a police officer in Burlington and Brattleboro, Vermont, and served as the lead investigator in numerous felony and misdemeanor complaints. Mr. Kehoe concentrates his practice in the area of securities litigation, and has worked extensively with partner David Kessler on In re Initial Public Offering Securities Litigation, Master File No. 21 MC 92 (SAS) (S.D.N.Y. Dec. 12, 2002), currently pending in the Southern District of New York.

**LEE D. RUDY**, a partner of the firm, received his law degree from Fordham University in 1996. In law school he was a senior editor of the Fordham Urban Law Journal and published *A Procedural Approach to Limited Public Forum Cases*, 22 Ford. Urb. L.J. 1255 (1995). He received his undergraduate degree, *cum laude*, from the University of Pennsylvania in 1992. Mr. Rudy is licensed to practice law in Pennsylvania and New York. From 1996 to 2002, Mr. Rudy was an Assistant District Attorney in the Manhattan District Attorney's Office, where he prosecuted dozens of felony jury trials to verdict, including robbery, rape, and murder cases. From 2003 to 2005, Mr. Rudy was an Assistant United States Attorney in the District of New Jersey, where he investigated and prosecuted numerous fraud and violent crime cases, and where he tried several major fraud cases to verdict in federal court. Mr. Rudy co-manages the firm's mergers and acquisition and shareholder derivative litigation department along with Marc Topaz and Eric Zagar.

**KAY E. SICKLES**, a partner of the firm, received her law degree from the University of Pennsylvania School of Law. She received her undergraduate degree from Colgate University, graduating, *with honors,* from the History department. Prior to joining the firm, Ms. Sickles was an associate with Sandals & Langer, LLP, where she litigated complex class actions arising out of violations of the ERISA and antitrust statutes. She is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the United States District Court for the District of New Jersey. Ms. Sickles concentrates her practice in the area of securities litigation and specializes in settlement matters.

**ERIC L. ZAGAR**, a partner of the firm, received his law degree from the University of Michigan Law School, *cum laude*, where he was an Associate Editor of the Michigan Law Review. He has practiced law in Pennsylvania since 1995, and previously served as a law clerk to Justice Sandra Schultz Newman of the Pennsylvania Supreme Court. He is admitted to practice in Pennsylvania.

Mr. Zagar concentrates his practice in the area of shareholder derivative litigation. Mr. Zagar has served as Lead or Co-Lead counsel in numerous derivative actions in courts throughout the nation, including *David v. Wolfen,* Case No. 01- CC-03930 (Orange County, CA) (Broadcom Corp. Derivative Action); *In re PolyMedica Corporation Shareholder Derivative Litigation,* Case No. 01-3446 (Middlesex County, MA); *In Re Dynacq Int'l. Shareholder Derivative Litigation,* Case No. 2002- 07135 (Harris County, TX); and *Castillo v. Cavallaro, et al.,* Case No. A467663 (Clark County, NV) (Station Casinos, Inc. Class and Derivative Action). Mr.

Zagar has successfully achieved significant monetary and corporate governance relief for the benefit of shareholders, and has extensive experience litigating matters involving Special Litigation Committees.

# ASSOCIATES AND OTHER PROFESSIONALS

**KATIE L. ANDERSON**, an associate of the firm, received her law degree from Widener University School of Law in 2002. She received her undergraduate degree from the University of Pittsburgh in 1999. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Anderson served as a Deputy Attorney General for the Pennsylvania Office of Attorney General, Bureau of Consumer Protection, where she was responsible for enforcing a wide range of consumer oriented laws.

Ms. Anderson is licensed to practice law in Pennsylvania and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. She concentrates her practice in the area of antitrust litigation.

**MICHELLE M. BACKES**, an associate of the firm, received her law degree from Villanova University School of Law. Ms. Backes received her undergraduate degrees in Finance and Art History from Loyola College in Maryland in 2002. Ms. Backes is licensed to practice law in Pennsylvania and New Jersey. She concentrates her practice at Schiffrin Barroway Topaz & Kessler in the area of securities litigation.

**IAN D. BERG**, an associate of the firm, received his law degree from Northwestern University School of Law, and his B.A. from Northwestern University. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Berg practiced at Barack Ferrazzano Kirschbaum Perlman & Nagelberg LLC, in Chicago. He is licensed to practice law in Illinois and Pennsylvania. Mr. Berg concentrates his practice in the area of securities litigation.

**ROBERT W. BIELA**, an associate of the firm, received his law degree from the Penn State Dickinson School of Law, where he served on the editorial board of the Environmental Law and Policy Journal. Mr. Biela received his undergraduate degree from West Chester University. Prior to joining the firm, Mr. Biela was an associate at Mager White and Goldstein, LLP, where he practiced in the areas of complex commercial litigation and securities litigation. Mr. Biela is licensed to practice in Pennsylvania, and focuses his practice in the area of securities litigation.

**KATHERINE B. BORNSTEIN**, an associate of the firm, received her law degree from Emory University School of Law. Ms. Bornstein received her undergraduate degree from the University of Maryland. She is licensed to practice law in Pennsylvania and Maryland. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Bornstein was an associate at Provost & Umphrey Law Firm, LLP, where she worked on a number of complex litigation issues. Ms. Bornstein concentrates her practice at Schiffrin Barroway Topaz & Kessler in the areas of ERISA, antitrust and consumer protection.

**TREVAN BORUM**, an associate of the firm, received a B.A. from Wake Forest University in 1987 and his J.D. from Widener University Law School in 1992. He is licensed to practice law in

Pennsylvania and has been admitted to practice before the United States District Court for The Eastern District of Pennsylvania.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Borum practiced criminal defense at a firm in Philadelphia also served as an Assistant District Attorney in Philadelphia in the Homicide Unit for ten years. At Schiffrin Barroway Topaz & Kessler, Mr. Borum concentrates his practice in mergers and acquisition litigation.

**JONATHAN R. CAGAN**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Cagan received his undergraduate degree, cum laude, from Temple University. Mr. Cagan is licensed to practice law in New Jersey, and is admitted to the Third Circuit Court of Appeals. Mr. Cagan concentrates his practice in the area of securities litigation and specializes in discovery matters.

**EDWARD W. CIOLKO**, an associate of the firm, received his law degree from Georgetown University Law Center, and an MBA from the Yale School of Management. Prior to joining the firm, he served as an Attorney Advisor to Commissioner Sheila F. Anthony at the Federal Trade Commission. He is licensed to practice law in the State of New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey. Mr. Ciolko concentrates his practice in the areas of antitrust, ERISA, and consumer protection.

**ALISON K. CLARK**, an associate of the firm, received her law degree, cum laude, from Boston University School of Law, and received her undergraduate degree in Political Science, with honors, from Lehigh University.  Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Clark was an attorney with a Fairfield County, Connecticut law firm, where she practiced in the areas of civil and commercial litigation, and real estate transactions.

Ms. Clark is licensed to practice law in Connecticut, and has been admitted to practice before the United States District Court for the District of Connecticut. Ms. Clark works in the firm's case development department.

**STEPHEN E. CONNOLLY**, an associate of the firm, received his law degree from Villanova University School of Law, and is a graduate of The Pennsylvania State University. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Connolly was an associate at a Philadelphia firm where he practiced in the areas of complex litigation, securities and antitrust litigation. Mr. Connolly is licensed to practice law in Pennsylvania, and concentrates his practice in the area of antitrust litigation.

**MARK S. DANEK**, an associate of the firm, received his undergraduate degree in Architecture from Temple University in 1996, and his law degree from Duquesne University School of Law in 1999. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Danek was employed as in-house counsel of a real estate investment trust corporation that specialized in the collection of delinquent property tax receivables. He is licensed to practice law in the Commonwealth of Pennsylvania and has been admitted to practice before the Courts of the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the Supreme Court of the United States of America. Mr. Danek concentrates his practice in the area of securities litigation.

**BRADLEY A. DIRKS,** an associate of the firm, received his J.D. from The University of Akron School of Law and a B.A. in Journalism and Political Science, *cum laude*, from the University of Wisconsin. He is a member of the State Bar of New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Dirks worked for an Atlantic City, New Jersey-based law firm where he focused on administrative law and regulatory issues in the casino gaming industry. Mr. Dirks concentrates his practice in the area of shareholder derivative litigation.

**JENNIFER L. ENCK,** an associate of the firm, received her law degree, *cum laude*, from Syracuse University College of Law in 2003 and her undergraduate degree in International Politics from The Pennsylvania State University in 1999. Ms. Enck also received a Masters degree in International Relations from Syracuse University's Maxwell School of Citizenship and Public Affairs. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Enck was an associate with Spector, Roseman & Kodroff, P.C. in Philadelphia, where she worked on a number of complex antitrust, securities and consumer protection cases.

Ms. Enck is licensed to practice law in Pennsylvania. She concentrates her practice in the areas of securities litigation and settlement matters.

**ROBERT J. GRAY,** an associate of the firm, received his law degree from the Temple University School of Law. Mr. Gray received Bachelor of Sciences degree from La Salle University with a dual major of Accounting and Finance. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Gray was an associate at Philadelphia boutique litigation firm practicing in the areas of complex commercial litigation and corporate transactions. Mr. Gray also worked as in-house counsel for a small, publicly-traded holding company.

Prior to beginning his law career, Mr. Gray worked as a forensic accountant for six years, conducting a variety of investigations for numerous governmental agencies and law firms. He received his C.P.A. license in 1997.

Mr. Gray is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area consumer protection.

**JOHN GROSS,** an associate of the firm, received his law degree from Widener School of Law, and his undergraduate degree from Temple University. Mr. Gross is licensed to practice law in Pennsylvania, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Gross was an insurance defense litigation associate at a large, Philadelphia based firm. Mr. Gross now concentrates his practice in the area of antitrust litigation.

**MARK K. GYANDOH,** an associate of the firm, received his undergraduate degree from Haverford College and his law degree from Temple University School of Law. During law school Mr. Gyandoh served as the research editor for the Temple International and Comparative Law Journal and published Foreign Evidence Gathering: What Obstacles Stand in the Way of Justice?, 15 Temp. Int'l & Comp. L.J. (2001). Mr. Gyandoh also served as Co-President of the

International Law Society and Editor of the group's monthly newsletter. Mr. Gyandoh is licensed to practice in New Jersey and Pennsylvania. Prior to joining Schiffrin and Barroway, Mr. Gyandoh was an associate at Gerolamo, McNulty, Divis & Lewbart. Prior to that, Mr. Gyandoh served as a judicial clerk for the Honorable Dennis Braithwaite of the Superior Court of New Jersey Appellate Division. Recently, in March 2004, Mr. Gyandoh participated in a conference in Prague, Czech Republic, titled Redefining Europe, where he presented a paper titled Incorporating the Principle of Co-Equal Branches into the European Constitution: Lessons to be Learned from the United States. The paper was published in a book of selected papers from the conference titled Redefining Europe. Mr. Gyandoh concentrates his practice with Schiffrin Barroway Topaz & Kessler in the area of ERISA, antitrust and consumer protection.

**BENJAMIN J. HINERFELD** is an associate at the firm, and concentrates his work in securities litigation. In 1996, he graduated from the University of Pittsburgh School of Law, where he served as Lead Note and Comment Editor of the *Journal of Law and Commerce*. From 1996 to 1997, he clerked for the Hon. Sandra Schultz Newman of the Supreme Court of Pennsylvania. Prior to joining SBTK, Mr. Hinerfeld worked in a securities litigation firm in Wilmington, Delaware.

From 2000 to 2003, Mr. Hinerfeld was a writing consultant with the Undergraduate Writing Center at the University of Texas at Austin. During that time he also co-authored, with Dr. Sarah Jane Rehnborg and Catherine Fallon, "Investing in Volunteerism: The Impact of Service Initiatives in Selected Texas State Agencies" a report prepared by The RGK Center for Philanthropy and Community Service, LBJ School of Public Affairs. He received his bachelor's degree from Vassar College and a master's degree in American History from the University of Texas at Austin.

Mr. Hinerfeld is licensed to practice law in Pennsylvania.

**MICHAEL J. HYNES**, an associate of the firm, received his law degree from Temple University School of Law, and is a graduate of Franklin and Marshall College. Mr. Hynes is licensed to practice law in Pennsylvania, New Jersey and Montana, and has been admitted to practice in the United States Court of Appeals for the Ninth Circuit, and the United States District Courts for the Eastern and Middle Districts of Pennsylvania. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Hynes practiced law at Cozen O'Connor, where he concentrated on bankruptcy and commercial litigation. He was an attorney with the Defenders' Association of Philadelphia from 1991 to 1996, where he defended thousands of misdemeanor and felony cases. At Schiffrin Barroway Topaz & Kessler, Mr. Hynes concentrates his practice in the area of antitrust litigation.

**TARA P. KAO**, an associate of the firm, received her J.D. in 2006 from Villanova University School of Law, where she was a Managing Editor of Student Works for the Villanova Law Review. Ms. Kao received her Bachelor of Science in Business/Finance, *cum laude*, from Carnegie Mellon University. Ms. Kao is licensed to practice law in Pennsylvania, and concentrates her practice in the area of antitrust litigation.

**JENNIFER L. KEENEY**, an associate of the firm, received her law degree, *cum laude*, from Temple University Beasley School of Law, and her undergraduate degree in History, with honors, from Washington University in St. Louis in 2003. Ms. Keeney is licensed to practice in

Pennsylvania. She concentrates her practice at Schiffrin Barroway Topaz & Kessler in the area of securities litigation.

**HAL J. KLEINMAN**, an associate of the firm, received his law degree from The John Marshall Law School, and his undergraduate degree from Ithaca College. Mr. Kleinman is licensed in Illinois and Pennsylvania, and has been admitted to practice before the United States District Court for the Northern District of Illinois, the United States District Court for the Eastern District of Pennsylvania, the Court of Appeals for the Seventh Circuit, the Court of Appeals for the Third Circuit, and the United States Court of Claims.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Kleinman practiced law in Chicago, where his practice concentrated in the area of Complex Litigation, Mass *Torts and Class Actions. Mr. Kleinman was a member of the law and briefing committee that successfully obtained class certification in In re Hartmarx Securities Litigation, Case No. 01 C 7832 (N.D. Ill.).* In addition, he was appointed to the Class Counsel Management Committee in *Cress, et al. v. Sara Lee Corporation, Case No. 98 L 15072 (Cir. Ct., Cook County, Ill.).* For his work in this matter, Mr. Kleinman was asked to be a guest lecturer at the University of Chicago Law School's Class Action Controversies Seminar and to discuss the Sara Lee litigation. He also was responsible for representing hundreds of clients in various Mass Torts, including MDL-1431, *In re Baycol Products Liability Litigation; MDL-1373, In re Bridgestone/Firestone, Inc. ATX, ATX II and Wilderness Tires Products Liability Litigation; MDL-1203, In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Products Liability Litigation; and MDL-926, In re Silicone Gel Breast Implants Product Liability Litigation.* Mr. Kleinman concentrates his practice in the area of Mass Torts.

**ERIC LECHTZIN**, an associate of the firm, received his law degree from the Temple University School of Law. Mr. Lechtzin received his undergraduate degree in Political Science and Economics, magna cum laude, from Temple University, where he received Phi Beta Kappa honors. Mr. Lechtzin is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania and the District of New Jersey.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Lechtzin was an associate with the firm of Grant & Eisenhofer, P.A., where his practice was concentrated in federal securities class actions and corporate governance litigation. Mr. Lechtzin spent the first ten years of his career at two large Philadelphia law firms where he represented corporate and public sector clients in a wide range of complex commercial litigation, including toxic torts, labor and employment, insurance, and environmental law. Mr. Lechtzin has extensive trial experience and has argued appeals before the Supreme Court of Pennsylvania and other appellate courts. Mr. Lechtzin concentrates his practice with Schiffrin Barroway Topaz & Kessler in the area of securities class action litigation.

**JAMES A. MARO, JR.,** an associate of the firm, received his law degree from the Villanova University School of Law in 2000. He received a B.A. in Political Science from the Johns Hopkins University in 1997. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Maro was an attorney at a Montgomery County law firm, where he practiced in the areas of civil and

commercial litigation.

Mr. Maro is licensed to practice law in Pennsylvania and New Jersey and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania. He concentrates his practice in the area of antitrust litigation.

**RICHARD A. MANISKAS**, an associate of the firm, received his law degree from Widener University School of Law, and received his undergraduate degree from the University of Pittsburgh. While in law school, Mr. Maniskas served as Internal Editor of the Widener Journal of Public Law. He is licensed to practice law in Pennsylvania and the District of Columbia, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Mr. Maniskas works in the firm's case development department.

**JAMES H. MILLER**, an associate of the firm, received his J.D. in 2005 from Villanova University School of Law, where he was enrolled in Villanova University's J.D./M.B.A. program. Mr. Miller received his Master of Business Administration from Villanova University in 2005, and received his Bachelor of Chemical Engineering from Villanova University in 2002. Mr. Miller is licensed to practice law in Pennsylvania and concentrates his practice in the areas of Mergers & Acquisitions and Stockholders' Derivative Actions.

**JODI MURLAND** an associate of the firm, received her law degree from Temple University School of Law, where she served as a note/comment editor of the Temple Law Review. Ms. Murland received her undergraduate degree, magna cum laude, in Communication Rhetoric from the University of Pittsburgh. Prior to joining Schiffrin Barroway Topaz & Kessler Ms. Murland was an associate in the Business Litigation Practice Group at Wolf, Block, Schorr and Solis-Cohen, LLP. Ms. Murland is licensed to practice law in Pennsylvania and is admitted to practice in the United States District Court for the Eastern District of Pennsylvania and the Third Circuit Court of Appeals. She concentrates her practice in the area of securities litigation.

**CASANDRA A. MURPHY**, an associate of the firm, received her law degree from Widener University School of Law in 1998. She received her undergraduate degree from Gettysburg College in 1995. Prior to joining Schiffrin Barroway Topaz & Kessler, LLP, Ms. Murphy was an associate at Post & Schell, P.C. where she practiced general casualty litigation. Ms. Murphy is licensed to practice in Pennsylvania and New Jersey, and has been admitted to practice before the United State District Court for the Eastern District of Pennsylvania. Ms. Murphy has lectured for the Pennsylvania Bar Institute and the Philadelphia Judicial Conference. She concentrates her practice at Schiffrin Barroway Topaz & Kessler in the area of antitrust litigation.

**CHRISTOPHER L. NELSON**, an associate of the firm, received his law degree from Duke University School of Law, and his undergraduate degree in Business, Economics, and the Law from Washington University in St. Louis. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Nelson practiced with the Philadelphia law firm of Berger & Montague, P.C., where he was a securities litigator.

Mr. Nelson is admitted to practice law in the Commonwealth of Pennsylvania, the Supreme Court of the United States, the United States Court of Appeals for the Fourth, Fifth and Ninth Circuits, and the United States District Court for the Eastern District of Pennsylvania.

Mr. Nelson concentrates his practice in the area of securities litigation, and is Lead or Co-Lead Counsel in numerous pending nationwide class action securities cases.

**NICHOLAS S. PULLEN,** an associate of the firm, received his law degree, cum laude, from the Georgetown University Law Center in 2000. Upon graduation, Mr. Pullen worked at two prominent Philadelphia law firms. In 2003, he joined the administration of Governor Edward G. Rendell, where he served as Chief Counsel to the Pennsylvania Commission on Crime and Delinquency. Most recently, Mr. Pullen served as campaign manager for the Jim Eisenhower for Attorney General Campaign. He is licensed to practice law in Pennsylvania, and has been admitted to practice in the United States District Court for the District of Colorado. Mr. Pullen serves in the firm's Institutional Relations department.

**KAREN E. REILLY,** an associate of the firm, received her law degree from Pace University School of Law, where she was a member of the Moot Court Board and National Moot Court Team. Ms. Reilly received her undergraduate degree from the State University of New York College at Purchase. She is licensed to practice law in Pennsylvania, New Jersey, New York, Connecticut and Rhode Island, and has been admitted to practice before the United States District Courts for the Eastern District of Pennsylvania, District of New Jersey, Southern and Eastern Districts of New York, and the District of Connecticut. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Reilly practiced at Pelino & Lentz, P.C., in Philadelphia, where she litigated a broad range of complex commercial cases. Ms. Reilly concentrates her practice in the area of securities litigation.

**STEVEN D. RESNICK,** an associate of the firm, received his law degree from The Dickinson School of Law of The Pennsylvania State University, and his undergraduate degree, *cum laude*, from West Chester University. Mr. Resnick is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States Court of Appeals for the Third Circuit, the United States District Court for the District of New Jersey and the United States District Court for the District of Nebraska. Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Resnick was an associate at the firm of German, Gallagher & Murtagh, where his practice concentrated in the defense of medical malpractice, products liability and premises liability. Mr. Resnick now concentrates his practice in the area of mass tort litigation.

**EMANUEL SHACHMUROVE**, an associate of the firm, received his law degree from The University of Michigan Law School, where he was an Associate Editor of the Michigan Journal of Law Reform. Mr. Shachmurove received his Bachelor of Science in Economics, *cum laude*, from The Wharton School at the University of Pennsylvania, where he was a Joseph Wharton Scholar.

**BHARATI O. SHARMA**, an associate of the firm, received her law degree from the American University Washington College of Law, a Master of Public Administration from The George Washington University, and her undergraduate degree from the University of Pittsburgh. Ms. Sharma is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the District of New Jersey.

Ms. Sharma is a former judicial law clerk to the Honorable Stephen Skillman, Superior Court of New Jersey, Appellate Division, and a former member of American University's International

Law Review. She is the founder and current President of the South Asian Bar Association of Philadelphia. Ms. Sharma also serves on the Executive Committees of the North American South Asian Bar Association and the Philadelphia Bar Association Young Lawyer's Division.

Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Sharma practiced complex civil litigation at a Philadelphia law firm. She now concentrates her practice in the areas of pharmaceutical and product liability litigation.

**SANDRA G. SMITH**, an associate of the firm, received her law degree from Temple University School of Law, where she was Editor-In-Chief of The Temple Environmental Law and Technology Journal. Ms. Smith is also a graduate of St. Joseph's University, where she received her B.A. in History. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Smith practiced as a securities litigator with the Philadelphia law firm of Berger & Montague, P.C. Ms. Smith is licensed to practice in Pennsylvania and is admitted to practice before the United States District Court for the Eastern District of Pennsylvania. Ms. Smith concentrates her practice in the area of mergers and acquisition litigation.

**BENJAMIN J. SWEET**, an associate of the firm, received his juris doctor from The Dickinson School of Law, and his BA, *cum laude*, from the University Scholars Program of The Pennsylvania State University. While in law school, Mr. Sweet served as Articles Editor of the *Dickinson Law Review*, and was also awarded Best Oral Advocate in the ATLA Junior Mock Trial Competition.

Prior to joining Schiffrin Barroway Topaz & Kessler, Mr. Sweet practiced in the Pittsburgh office of Reed Smith LLP, where he specialized in complex civil litigation. While at Reed Smith, Mr. Sweet co-authored *Assignability of Non-Compete Covenants*, 74 Pa. Bar. Q. 64 (April 2003). Mr. Sweet is licensed to practice law in the Commonwealth of Pennsylvania, the United States District Court for the Western District of Pennsylvania and the United States Court of Appeals for the Ninth Circuit. Mr. Sweet concentrates his practice in the area of securities litigation and has helped obtain several multi-million dollar settlements on behalf of class members in several nationwide federal securities class actions, including *In re CVS Pharmacy, Inc. Secs. Litig.*, No. 01-11464 (D.Mass. 2005) ($110 million recovery for Class members), *In re Zomax Inc. Secs. Litig.*, No. 04-cv-1155 (D.Minn. 2005) (multi-million dollar cash and stock recovery for Class members), *In re Flextronics Int'l Ltd. Secs. Litig.*, No. 03-cv-2102 (N.D. Cal. 2004) ($4.25 million recovery for Class members) and *In re Black Box Corp. Secs. Litig.*, No. 03-cv-412 (W.D. Pa. 2004) (multi-million dollar recovery for Class Members). Mr. Sweet is currently Lead or Co-Lead Counsel in several pending nationwide class action securities cases, including *In re Tyco Int'l Ltd. Secs. Litig.*, MDL Docket No. 02-1335-B (D.N.H.) and *In re PNC Financial Services Group, Inc. Secs. Litig.*, No. 02cv271 (W.D. Pa.).

**NICOLETTE TROPIANO**, an associate of the firm, received her law degree from Temple University School of Law. Ms. Tropiano received her undergraduate degree in Economics and Business Administration with a concentration in Accounting and Finance from Ursinus College in 2001. Ms. Tropiano is licensed to practice in Pennsylvania. She concentrates her practice in the area of securities litigation, and serves in the firm's lead plaintiff department which involves working with clients, litigation strategy and lead plaintiff issues.

**JOSEPH A. WEEDEN,** an associate of the firm, received his law degree from the University of North Carolina School of Law, where he received the Gressman-Politt Award for outstanding oral advocacy. Mr. Weeden also received his undergraduate degree from the University of North Carolina at Chapel Hill, where he was a Joseph E. Pogue Scholar. Prior to joining the firm, Mr. Weeden was an associate at Kaufman & Canoles, P.C., where he practiced in the areas of commercial and business law. Mr. Weeden is licensed to practice law in Virginia, and concentrates his practice in the area of complex ERISA litigation.

**GERALD D. WELLS, III,** an associate of the firm, received his law degree from Temple University School of Law, where he served on the editorial board of the Environment Law & Technology Journal. He is licensed to practice in Pennsylvania and New Jersey and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District Court of New Jersey, and the United States District Court for the Eastern District of Michigan.

Mr. Wells concentrates his practice in the areas of antitrust, ERISA, and consumer protection and has helped obtain several multi-million dollar settlements on behalf of class members, including the recent settlements in *In re Bristol-Myers Squibb ERISA Litigation*, No. 02-CV-10129 (LAP) ($41.22 million in cash plus structural remedies valued at up to $52 million) and *Falk v. Amerada Hess Corp., et al.,* No. 03-CV-2491-FSH-PS ($2.25 million in cash plus structural remedies valued at up to $23.8 million). Mr. Wells currently serves as counsel in several pending nationwide class action ERISA cases, including *Wilson v. Federal Home Loan Mortgage Corp.,* MDL 1584 (JES) (S.D.N.Y.), *Smith v. Delta Air Lines, Inc.,* No. 04-CV-2592-ODE (N.D. Ga.), and *In re Westar Energy Inc. ERISA Litig.,* No. 03-4032-JAR (D. Kan.).

**ROBIN WINCHESTER,** an associate of the firm, received her law degree from Villanova University School of Law, and received her undergraduate degree in Finance from St. Joseph's University. Prior to joining Schiffrin Barroway Topaz & Kessler, Ms. Winchester served as a law clerk to the Honorable Robert F. Kelly in the United States District Court for the Eastern District of Pennsylvania.

Ms. Winchester is licensed to practice law in Pennsylvania and New Jersey, and has been admitted to practice before the United States District Court for the Eastern District of Pennsylvania. She concentrates her practice in the area of securities litigation, and serves in the firm's lead plaintiff department which involves working with clients, litigation strategy and lead plaintiff issues.

**TERENCE S. ZIEGLER,** an associate of the firm, received his law degree from the Tulane University School of Law. Mr. Ziegler received a Bachelor of Business Administration degree with a concentration in Finance from Loyola University. Mr. Ziegler is licensed to practice law in the State of Louisiana, and has been admitted to practice before the United States Court of Appeals for the Fifth Circuit, the United States District Court for the Eastern District of Louisiana and the United States District Court for the Middle District of Louisiana. Mr. Ziegler concentrates his practice in the areas of consumer protection, ERISA, pharmaceutical pricing and antitrust.

**KEVIN P. CAULEY** serves in the firm's business development and institutional relations department. Mr. Cauley is a graduate of Temple University. Prior to joining the firm, Mr. Cauley

was Director of Business Development for a multi-family office in New York City. Mr. Cauley also has prior experience in institutional fiduciary investment consulting, money manager selection, best trade executions, and asset allocation modeling. He has held the Series 7, 24, 63, and 65 licenses with the NASD. Mr. Cauley has also done political consulting in coordinating and directing various aspects of field operations for local, state, and national campaigns in Southeastern Pennsylvania. He is also an active member of The Pennsylvania Future Fund, A.O.H. Division 88 "Officer Danny Boyle Chapter," The Saint Andrews Society, The Friendly Sons of Saint Patrick, The Clover Club of Philadelphia, The Foreign Policy Research Institute, a Board Member of The Princeton Committee on Foreign Relations, and is an elected member to The Pennsylvania Society and The Union League of Philadelphia, where he serves on the Armed Services Committee.

**ROY JONES** serves in the firm's institutional relations department. Mr. Jones was educated at Oxford and Cambridge Universities in the United Kingdom, and has a broad and deep understanding of the European pension world and its key players. Furthermore, Mr. Jones is an acknowledged expert on global corporate governance trends, where he has advised the Organization for Economic Cooperation and Development and the World Bank, among others. Mr. Jones works closely with many of the firm's European clients.



**Firm Resume**

---

**Saxena White P.A.** ("Saxena White") is a boutique firm specializing in securities and complex litigation, with offices in Boca Raton, San Francisco and Boston. The firm's specialized focus enables it to skillfully and efficiently prosecute corporate wrongdoing on behalf of shareholders, including public institutions and individual investors. Saxena White is active in major litigations in federal and state courts throughout the nation. Many of Saxena White's attorneys came to the firm from other major class action firms, state government agencies or major defense firms. The attorneys at Saxena White bring with them significant experience in successfully litigating major securities fraud cases and obtaining sizeable settlements on behalf of investors.

---

**What Courts Have Said About the Work Done on Behalf of Investors by Saxena White Attorneys**

Courts have regularly recognized Saxena White attorneys for the high caliber of legal representation provided to class members in securities fraud actions. For example, in approving the settlement of the *Cyberguard Securities Litigation* in April 2004, in which Saxena White attorneys served as Co-Lead Counsel, United States Magistrate Judge Andrea M. Simonton in the Southern District of Florida commented:

> I think that the result was an outstanding result. ... [Q]uite frankly, I think that if you didn't have that caliber of counsel on the plaintiffs' side, there is no way that these shareholders would be looking at the recovery that they are and, in my experience, it is a substantial recovery.

Transcript of hearing in *Cheney v. Cyberguard Corp.*, Case No. 98-6879-CIV-Gold (April 16, 2004) at 47.

---

Similarly, in approving the settlement of *Sherleigh Associates v. Windmere-Durable Holdings Inc.*, in September 2002, United States District Court Judge Joan A. Lenard commented:



EXHIBIT
A (B)



> . . . "I want to commend counsel in this protracted complex litigation for the excellent results for the plaintiffs. I also want to commend counsel for all of your hard work, your integrity, and your good counsel for your respective clients. . . "

Transcript of hearing in *Sherleigh Associates v. Windmere-Durable Holdings Inc.,* Case No. 98-2273-CIV-Lenard (September 10, 2002) at 14.

Similar praise of Saxena White attorneys has been made of their efforts in the derivative action context. In approving the settlement in *Klien v. FPL Group, Inc.,* United States District Court Judge Alan S. Gold recognized that the action presented "complex and novel legal issues…[where] the likelihood of success for Plaintiffs at the outset of the case was very low." In approving the exceptional settlement that was eventually reached after years of hard fought litigation, Judge Gold stated:

> "Plaintiffs' counsel, a highly experienced group of lawyers with national reputations in larges securities class actions, recovered an unprecedented amount of money for shareholders as a result of this settlement - $22.25 million in addition to sweeping corporate governance changes which FPL Group has agreed to implement."

*Klien v. FPL Group, Inc.* Case # 02-20170-civ-Gold, (SD Fla. Nov. 23, 2004) (Order and Final Judgment of Dismissal) at 9.

## The Firm's Attorneys

## Maya S. Saxena

Ms. Saxena is the former Managing Partner of the Boca Raton, Florida office of one of the nation's largest securities litigation firms. Ms. Saxena was instrumental in recovering over $200 million on behalf of investors, including, among others, in the following cases:

- *In re Sunbeam Securities Litigation,* 176 F. Supp. 2d 1323 (S.D. Fla. 2002); Defendants' motions to dismiss were denied (two members of the board of directors were dismissed). Significant discovery was undertaken, including the review of approximately one million pages of documents and the depositions of approximately 90 fact witnesses over nearly 200 deposition days. After approximately eight months of negotiations, a settlement was entered into with defendant Arthur Andersen LLP for $110 million - one of the largest

Saxena
White

Boca Raton
Boston
San Francisco

settlements ever with an accounting firm - and $31 million from the remaining defendants (including a $15 million personal contribution from former CEO Al Dunlap, agreed to only days prior to the start of trial);

- *In re AFC Enterprises, Inc. Securities Litigation,* No. 1:03-CV-0817-TWT (N.D. Ga. 2003). The majority of defendants' motions to dismiss were denied in this action, which involved a major financial restatement of AFC's previously reported financial results. Co-Lead counsel obtained a settlement of $15 million on behalf of the class;

- *In re Windmere-Durable Holdings, Inc. Sec. Litigation,* No. 98-2273 (S.D. Fla. 2002). Plaintiffs' alleged that defendants failed to reveal material facts concerning a recent acquisition. The case resulted in a settlement of $10.5 million after the conclusion of merits and expert discovery;

- *In re PSINet, Inc. Securities Litigation,* No. 00-1850-A (E.D. Va 2002). Plaintiffs alleged that defendants' failed to reveal the true financial condition of PSINet and one of its recent acquisitions. After the conclusion of merits, class, and expert discovery, the case settled for $17.8 million;

- *In re Pinnacle Holdings Inc. Securities Litigation,* No. 8:01-cv-624 (M.D. Fla. 2002). Co-Lead counsel obtained as settlement of $11 million prior to the commencement of discovery, including significant contributions from the Company's auditor and underwriters;

- *In re PSS World Medical Inc. Securities Litigation,* No. 3:01-cv-795 (M.D. Fla. 2001). Co-Lead Counsel obtained a settlement of $6.75 million;

- *In re Hamilton Bancorp Securities. Litigation.,* No. 01-0156 (S.D. Fla. 2001). Co-Lead Counsel obtained a settlement of $8.5 million in this accounting fraud action, despite the bankruptcy of the principal defendant and a recission action filed by the Company's insurance carrier;

- *Cheney v. Cyberguard Corp.,* No. 98-6879 (S.D. Fla. 1998). Co-Lead Counsel obtained a settlement of $11 million after the close of discovery;

- *In re Tropical Sportswear Int'l Securities Litigation,* No. 8:03-cv-1958 (M.D. Fla. 2002). Defeated motions to dismiss; $8 million settlement pending despite bankruptcy of the Company.

Prior to joining her previous law firm, Ms. Saxena was employed as an Assistant Attorney General in Ft. Lauderdale, Florida. As an Assistant Attorney General, Ms. Saxena represented the State of Florida, its agencies and officers in civil cases at the appellate and trial level, and prepared *amicus curiae* briefs in support of state policies at issue in state and federal court cases. Ms. Saxena also represented the Florida Highway Patrol and other law enforcement agencies in civil forfeiture trials.



Boca Raton
Boston
San Francisco

Ms. Saxena graduated from Syracuse University *summa cum laude* in 1993 with a dual degree in policy studies and economics, and graduated from Pepperdine University School of Law in 1996.

Ms. Saxena is a member of the Florida state bar, and is admitted to practice before the U.S. District Courts for the Southern, Northern and Middle Districts of Florida, as well as the Eleventh and Fifth Circuit Courts of Appeal. She is a member of the Palm Beach County Bar Association, and the American Bar Association. Ms. Saxena was recently recognized in the *South Florida Business Journal*'s "Best of the Bar" as one of the best lawyers in South Florida.

---

## Joseph E. White III

Formerly associated with one of the nation's leading securities fraud class action litigation firms, Mr. White has represented shareholders in securities fraud class actions against numerous publicly traded companies, yielding multi-million dollar settlements, including UniCapital Corp., Hamilton Bancorp, Profit Recovery Group, AES Corp., Tropical Sportswear International Corp., and AFC Corp.

Along with advising public and union pension funds on securities law matters, Mr. White has also assisted shareholders in achieving equitable treatment in minority shareholder buy-out actions and derivative actions achieving meaningful corporate governance reform. Mr. White's clients include multi-billion dollar private investment funds, union pension, annuity and welfare funds, as well as municipal and county public pension funds. Mr. White regularly lectures on topics of interest to pension trustees, including "The Role of Public Pension Funds in Corporate Governance," "The Benefits of Portfolio Monitoring for Public Pension Funds" and "Tools for Assisting Pension Fund Trustees in Monitoring Securities Litigation." Mr. White is an associate member and educational lecturer for the Florida Public Pension Trustees Association.

Mr. White earned an undergraduate degree in Political Science from Tufts University before obtaining his *Juris Doctor* from Suffolk University School of Law. Before concentrating his practice in securities fraud, Mr. White represented national insurance companies in pursuit of fraudulent claims from the initial investigations and denial of claims, into litigation and through trial.

Mr. White is a member of the bar of the Commonwealth of Massachusetts and the State of Florida, as well as the United States District Courts for the Southern, Middle and Northern Districts of Florida, and the District of Massachusetts. Mr. White is also a member of the United States Circuit Courts of Appeal for the First and Eleventh Circuits.

---



Boca Raton
Boston
San Francisco

## Ariel Acevedo

Prior to joining Saxena White, Mr. Acevedo represented aggrieved shareholders at one of the nation's leading class action firms. Mr. Acevedo has represented numerous plaintiffs in employment discrimination litigation in federal and state courts. Additionally, he has participated in the negotiation of settlement agreements in securities actions, including *In re Clarus Corporation, In re Hamilton Bancorp,* and *In re UniCapital Corporation.* Before concentrating his practice on securities fraud and employment discrimination class actions, Mr. Acevedo was employed at a large international law firm in New York, representing and counseling various multi-national corporations in complex, products liability litigation in the United States and other countries. During and after college, Mr. Acevedo was employed as a financial analyst at various brokerage firms and in the banking industry.

Mr. Acevedo earned his bachelor of business administration in finance and investments from Baruch College of the City University of New York in 1991 and his *Juris Doctor* from Fordham University School of Law in 1995. Mr. Acevedo is a member of the state bars of New York and Florida. He is also admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York and the Northern, Middle and Southern Districts of Florida. He is also a member of the American Bar Association.

## Christopher S. Jones

Before joining Saxena White, P.A. Mr. Jones was a Partner at one of the nation's leading class action law firms. Mr. Jones' practice focuses on class action litigation, including securities class actions, consumer class actions, and corporate derivative litigation. His recent class action victories and settlements include:

- *In re Red Hat Securities Litigation,* Case No. 04-473 (E.D.N.C. 2006) (defeating motions to dismiss; case pending);

- *In re Friedman's, Inc. Securities Litigation,* 2005 U.S. Dist. LEXIS 19503, 2005 WL 2175936 (N.D. Ga. 2005) (defeating motions to dismiss; case pending);

- *In re AFC Enters. Securities Litigation,* 348 F. Supp. 2d 1363 (N.D. Ga. 2004) (defeating motions to dismiss; $15 million settlement);

- *In re Catalina Mktg. Corp. Securities Litigation,* 390 F. Supp. 2d 1110 (M.D. Fla. 2005) (defeating motions to dismiss; case pending);

- *In re Tropical Sportswear Int'l Securities Litigation,* 2005 U.S. Dist. LEXIS 6129 (M.D. Fla. 2005) (defeating motions to dismiss; $8 million settlement);

- *In re AES Corp. Securities Litigation,* Case No. 1:03-CV-284 (S.D. In. 2004) ($5 million settlement);



- *In re Intercept Securities Litigation*, Case No. 1:03-CV-567 (N. D. Ga. 2004) ($5.5 million settlement);

- *In re Mirant Securities Litigation*, 2003 U.S. Dist. LEXIS 26263 (N.D. Ga. 2003) (defeating motions to dismiss; case pending);

- *In re UniCapital Corp. Securities Litigation*, Case No. 00-2054 (S.D. Fla. 2002) (defeating motions to dismiss; $5.2 million settlement); and

- *In re Hamilton Bancorp Securities Litigation*, 194 F. Supp. 2d 1353 (S.D. Fla. 2002) (defeating motions to dismiss; $8.5 million settlement).

Mr. Jones also has extensive experience prosecuting complex corporate derivative actions. Notably, he was one of the lead counsel in the widely reported case involving FPL Group, Inc. (NYSE:FPL), a large public utility holding company. After nearly three years of intense litigation, which included reported victories on Defendants' motions to dismiss (*Klein v. FPL Group, Inc.*, 2004 U.S. Dist. LEXIS 919, 2004 WL 302292 (S.D. Fla. 2004)), and key discovery motions (*Klein v. FPL Group, Inc.*, 2003 U.S. Dist. LEXIS 19979 (S.D. Fla. 2003)), eight FPL executives, and their insurer, returned $22.25 million dollars in compensation to the company. The settlement represents a groundbreaking recovery because it implemented sweeping corporate governance provisions at FPL, and is the largest amount of money ever returned to a public company by members of its management in an executive compensation type lawsuit.

Mr. Jones is also the creator and author of *The PSLRA Nugget*, a well known blog which provides cutting edge information and analysis on recent securities class action opinions. Regular *Nugget* subscribers and readers include hundreds of attorneys from the plaintiff and the defense bars, the Securities and Exchange Commission and other government agencies, economic analysts, D&O insurance companies, university professors, Fortune 500 general counsel, pension funds, and national news organizations.

Prior to practicing at his previous law firm, Mr. Jones was as an attorney with a prominent corporate defense firm in St. Louis, Missouri. At that firm, he practiced in a variety of areas, including complex litigation, class actions, and appellate litigation. His reported victories there spanned federal and state courts, including *Clay v. Philip Morris Inc.*, 188 F.R.D. 483 (S.D. Ill. 1999); *West Virginia-Ohio Valley Area I.B.E.W. Welfare Fund v. R.J. Reynolds Tobacco Co.*, 188 F.R.D. 425 (S.D. W. Va. 1999), *Conway v. Royalite Plastics, Inc.*, 12 S.W. 3d 314 (Mo. 2001), and *Fletcher v. Conoco Pipeline Co.*, 129 F. Supp. 2d 1255 (W.D. Mo. 2001), *aff'd* 323 F.3d 661 (8th Cir. 2003).

Mr. Jones graduated from University of Akron, *cum laude*, in 1991 with a Bachelor of Arts in Economics, and earned his law degree from DePaul University in 1996.

Mr. Jones is a member of the state bars of Florida, New York, Illinois, Georgia, and Missouri. He is also admitted to practice before the following United States District Courts:



Southern District of Florida, Middle District of Florida, Northern District of Florida, Northern District of Illinois, Southern District of Illinois, Northern District of Georgia, and the Eastern District of Missouri.

---

## Tara Isaacson

Ms. Isaacson graduated from Syracuse University in 1996, and from Washington College of Law at American University in 1999. Prior to joining Saxena White, Ms. Isaacson was an associate in the Boca Raton office of one the nation's leading class action litigation firms. Ms. Isaacson currently focuses her practice on securities fraud class actions. She is a member of the Maryland and Florida bars, as well as the United States District Courts in Maryland and Florida.

---

## Peter A. Lagorio

Formerly a partner with a firm concentrating in securities and product liability class actions, he has successfully represented investors in a wide variety of complex securities class actions and shareholder derivative suits, obtaining many significant monetary recoveries often under very challenging factual and legal circumstances, including *In re Blech Securities Litigation,* 187 F.R.D. 97 (S.D.N.Y. 1999), 961 F. Supp. 569 (S.D.N.Y. 1997) (co-lead counsel in recovering over $15 million in complex market manipulation case against clearing firm, market makers and affiliates where central participants in scheme were insolvent); *Degulis v. LXR Biotechnology, Inc.,* 928 F. Supp. 1301 (S.D.N.Y. 1996) (companion case); *Hynes v. The Enstar Group, Inc.,* 90-C-1204-N (M.D. Ala.) (co-lead counsel in recovery of over $23 million in complex securities fraud case involving defunct company); *Cooper v. Kana,* 3:98-CV-2804 (N.D. Tex.) (co-lead counsel in recovering large percentage of investors' losses arising out of initial public offering of company that became insolvent due to accounting irregularities); *Lynn v. Infinity Investors Ltd.,* 3:97-CV-226 (E.D. Tenn.) (co-lead counsel in recovering majority of investors' losses against convertible debenture purchasers in market manipulation and breach of contract case despite bankruptcy of securities issuer and plan of reorganization that sought to dismiss the case); *Schulte v. Oxford Development Corp.,* 97-1333 (D. Md. 1998), order approving settlement affirmed, 135 F.3d 770 (4th Cir. 1998) (co-lead counsel in obtaining comprehensive settlement valued at over $11 million on behalf of limited partners in connection with complex real estate partnership restructuring transaction); *Caven v. Miller,* No. H-96-CV-3464 (S.D. Tex.) (co-lead counsel in shareholder derivative action recovering $18 million of benefits on behalf of successor company in merger); *Rosenblum v. Equis Financial Group,* No. 98-8030 (S.D. Fla.) (one of three counsel actively involved in achieving comprehensive class and derivative settlements in connection with complex equipment leasing partnership restructuring transaction); *In re Xchange, Inc. Sec. Litig,* 1:01-CV-10322 (D. Mass.) (local counsel actively involved in obtaining $8.5 million settlement in case involving securities of bankrupt software company). Mr. Lagorio has also successfully represented both investors and securities professionals in NASD securities arbitration proceedings. In addition, he has advised securities issuers and investment



Boca Raton
Boston
San Francisco

professionals on various areas of federal and state securities law compliance, including private placements.

Mr. Lagorio has also been actively involved in the successful prosecution of various nationwide class actions arising out of defective product and/or deceptive trade practice claims, including *Muccioli v. Sony Computer Entertainment America, Inc.*, Civil Action No. 413148 (San Mateo County, Cal. Superior Court) (obtaining free service and repairs and extended warranty period and partial cash refunds of past repair costs to purchasers of video game consoles); and *Michaels v. Phoenix Home Life Mutual Insurance Co.,* Index No. 5318-95 (N.Y. Sup. Ct., Albany County), 1997 N.Y. Misc. LEXIS 171 (1996) (approving comprehensive class settlement in litigation involving sale of life insurance policies); *Natal v. Transamerica Occidental Life Insurance Co.*, Index No. 694829 (San Diego, CA Superior Court) (same); *Coleman v. GAF Building Materials Corp.,* CV-96-0954 (Mobile County, Alabama Circuit Court) (defective roofing shingles settlement with benefits estimated at present value of $75 million); *Sebago, Inc. v. Beazer East, Inc.,* No. 96-10069 (D. Mass.) (defective foam roof insulation settlement with benefits estimated at present value of $240 million).

Mr. Lagorio is a 1977 graduate (*cum laude*) of Boston College where he received a Bachelor of Science degree from the School of Management concentrating in Accounting, and a 1994 graduate of New England School of Law (J.D.). Mr. Lagorio is a member of the bar of the Commonwealth of Massachusetts, the U.S. District Court for the District of Massachusetts and the U.S. Court of Appeals for the First Circuit. He is a member of the American Bar Association, Massachusetts Bar Association and the Boston Bar Association. Prior to practicing law, Mr. Lagorio had several years experience working as a financial analyst, securities broker and investment advisor. Mr. Lagorio is Of Counsel to Saxena White.

---

## Lynda Carey Paris

Lynda Carey Paris actively works on various class action cases involving securities, consumer protection, and related matters. Ms. Paris has previously practiced in various areas of insurance defense and personal injury law litigation. Prior to attending law school Ms. Paris worked several years as a legal assistant at a law firm handling patent litigation and prosecution. Ms. Paris is a 1995 graduate (*cum laude*) of Merrimack College in North Andover, Massachusetts, where she received a Bachelor of Arts degree in History, and a 2001 graduate of Suffolk University Law School (J.D.) Ms. Paris is a member of the bar of the Commonwealth of Massachusetts and the U.S. District Court for the District of Massachusetts. Ms. Paris is Of Counsel to Saxena White.

---

Boca Raton
Boston
San Francisco

Saxena
White

---

### Michael Schumacher Jr.

Michael Schumacher Jr. concentrates his practice in employee benefits law, with a focus on institutional investors and their participation and recovery in securities fraud and ERISA class actions. Prior to joining Saxena White, Mr. Schumacher obtained extensive experience in areas ranging from administration and compliance for Taft Hartley benefit funds, to meeting fiduciary obligations for Taft Hartley fund trustees.

Mr. Schumacher earned a B.A. at the University of California, Berkeley, and a J.D. at the University of Southern California Law School. He currently resides in San Francisco, California.

---

### Steven M. Taylor

Steven M. Taylor focuses his practice on class action suits involving securities and consumer protection matters. Previously, Mr. Taylor worked in various areas of civil litigation, insurance subrogation, and class action suits involving securities, antitrust, products liability and consumer protection. Mr. Taylor is a 2003 graduate of the New England School of Law (J.D.) in Boston, Massachusetts, and a 1999 Graduate of Bucknell University in Lewisburg, Pennsylvania, where he received a Bachelor of Arts degree in History and Music. Mr. Taylor is a member of the bar of the Commonwealth of Massachusetts and the U.S. District Court for the District of Massachusetts. Mr. Taylor is Of Counsel to Saxena White.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BROCKTON CONTRIBUTORY RETIREMENT SYSTEM, Derivatively on Behalf of Nominal Defendant SUNRISE SENIOR LIVING, INC., | ) ) ) ) | Case No. 1:07-cv-00143-RBW<br><br>Judge Walton |
| Plaintiff, | ) ) ) | |
| v. | ) ) | |
| PAUL J. KLAASSEN, DAVID W. FAEDER, TIMOTHY S. SMICK, THOMAS B. NEWELL, BRIAN C. SWINTON, CHRISTIAN B.A. SLAVIN, LARRY E. HULSE, TIFFANY L. TOMASSO, ROBERT R. SLAGER, CARL ADAMS, RONALD V. APRAHAMIAN, CRAIG R. CALLEN, DAVID G. BRADLEY, J. DOUGLAS HOLLADAY and THOMAS J. DONOHUE, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) | |
| SUNRISE SENIOR LIVING, INC., | ) ) ) | |
| Nominal Defendant. | ) ) | |

*To Be Consolidated With:*

| | |
|---|---|
| CATHERINE MOLNER, Derivatively on<br>Behalf of Nominal Defendant SUNRISE<br>SENIOR LIVING, INC., ) ) ) | Case No. 1:07-cv-00227-RBW<br><br>Judge Walton |

CATHERINE MOLNER, Derivatively on )    Case No. 1:07-cv-00227-RBW
Behalf of Nominal Defendant SUNRISE )
SENIOR LIVING, INC.,                 )    Judge Walton
                                     )
              Plaintiff,             )
                                     )
       v.                            )
                                     )
PAUL J. KLAASSEN, DAVID W.           )
FAEDER, TIMOTHY S. SMICK,            )
THOMAS B. NEWELL, BRIAN C.           )
SWINTON, CHRISTIAN B.A. SLAVIN,      )
LARRY E. HULSE, TIFFANY L.           )
TOMASSO, ROBERT R. SLAGER, CARL )
ADAMS, RONALD V. APRAHAMIAN,         )
CRAIG R. CALLEN, DAVID G.            )
BRADLEY, J. DOUGLAS HOLLADAY         )
and THOMAS J. DONOHUE,               )
                                     )
              Defendants,            )
                                     )
       and                           )
                                     )
SUNRISE SENIOR LIVING, INC.,         )
                                     )
              Nominal Defendant.     )
                                     )

## ORDER

AND NOW, upon consideration of Brockton Contributory Retirement System's and Catherine Molner's Motion to Consolidate Related Cases and to Appoint a Leadership Structure, and any response thereto, and good cause appearing therefore, it is hereby ORDERED and DECREED as follows:

## I.  SERVICE OF PROCESS AND CONSOLIDATION OF ACTIONS

1.      Defendants' counsel shall appear for and accept service on behalf of all Defendants not already served, without waiving any jurisdictional rights.

2.    The above-captioned actions and any other shareholder derivative action on behalf of Sunrise Senior Living, Inc. filed in or transferred to this Court that involves questions of law or fact similar to those contained in the above-captioned actions are hereby consolidated for all purposes, including pretrial proceedings, trial, and appeal.

3.    The caption of these consolidated actions shall be "*In re Sunrise Senior Living, Inc. Derivative Litigation*" and the files of these consolidated actions shall be maintained in one file under Master File No. 07-00143.  Any other actions now pending or later filed in this Court which arise out of or are related to the same facts as alleged in the above-identified cases shall be consolidated for all purposes, if and when they are brought to the Court's attention.

4.    Every pleading filed in the consolidated actions, or in any separate action included herein, shall bear the following caption:

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| **In re SUNRISE SENIOR LIVING, INC.** )<br>**Securities Litigation** )<br> )<br> )<br>**This Document Relates To:** )<br> ) | **Civil Action No.  07-00143** |

When the document being filed pertains to all plaintiffs, the phrase "All Plaintiffs" shall appear immediately below the phrase "This Document Relates To." When a pleading applies to some, but not all, of the plaintiffs, the document shall list the individual plaintiff or plaintiffs immediately below the phrase "This Document Relates To."

5.    All related actions that are subsequently filed in, or transferred to, this District shall be consolidated into Civil Action No. 07-00143. This Order shall apply to every such related action and to all current or subsequently added parties, absent an Order of the Court to the contrary. A party that objects to such consolidation, or to any other provision of this Order, must file an application for relief from this Order within ten days after receiving the Order.

6.    The parties shall file a Notice of Related Cases whenever a case that should be consolidated into this action is filed in, or transferred to, this District. If the Court determines that the case is related, the Clerk shall administratively close any such case and transfer the plaintiff from the closed case to Civil Action No. 07-00143.

## II.  APPOINTMENT OF LEAD PLAINTIFFS, LEAD COUNSEL, AND LIAISON COUNSEL

7.    Plaintiffs Brockton Contributory Retirement System and Catherine Molner shall be appointed as Lead Plaintiffs.

8.    The law firms of Schiffrin Barroway Topaz & Kessler, LLP and Saxena White P.A. shall be appointed as Lead Counsel for Plaintiffs in the consolidated action.

9.    Lead Counsel shall have the authority to speak for Plaintiffs in matters regarding pretrial and trial procedure and settlement negotiations, and shall make all work assignments in such a manner as to facilitate the orderly and efficient prosecution of this litigation and to avoid duplicative or unproductive effort.

10.    Lead Counsel shall be responsible for coordination of all activities and appearances on behalf of Plaintiffs and for the dissemination of notices and orders of this

Court. No motion, request for discovery, or other pretrial proceeding shall be initiated or filed by Plaintiffs except through Lead Counsel.

11.    Lead Counsel shall also be available and responsible for communications to and from this Court. Lead Counsel shall be responsible for the creation and maintenance of a master service list of all parties and their respective counsel.

12.    The law firm of Davis, Cowell & Bowe, LLP shall be appointed as Liaison Counsel and is authorized to receive orders, notices, correspondence, and telephone calls from the Court on behalf of all Plaintiffs and shall be responsible for the preparation and transmission of copies of such orders, notices, correspondence, and memoranda of such telephone calls to Plaintiffs' counsel.

13.    Defendants' counsel may rely upon all agreements made with Lead Counsel or Liaison Counsel, or other duly authorized representatives of Plaintiffs. Such agreements shall be binding on Plaintiffs.

### III. SCHEDULE

14.    Plaintiffs shall no later than forty-five (45) days from the entry of this Order file and serve a Consolidated Complaint which will supersede all existing complaints filed in these actions. Defendants need not respond to any of the pre-existing complaints.

15.    Defendants shall answer or otherwise respond to the Consolidated Complaint no later than forty-five (45) days from the date of service.

16.    In the event that Defendants file and serve any motion directed at the Consolidated Complaint, Plaintiffs shall file and serve their opposition within thirty (30) days after the service of the motion.

17.     If Defendants file and serve a reply to Plaintiffs' opposition, they will do so within thirty (30) days after service of the opposition.

**IT IS SO ORDERED.**

Dated: _____

_____
REGGIE B. WALTON
United States District Judge