**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| )  | |
| In Re SUNRISE SENIOR LIVING, INC. ) | **Civil Action No. 07-00143 (RBW)** |
| ) | |
| ) | |
| ) | |
| This Document Relates to: ) | |
| ) | |
| ALL ACTIONS ) | |
| ) | |

<u>**DEFENDANT BRADLEY B. RUSH'S MOTION TO DISMISS**</u>

Pursuant to Federal Rule of Civil Procedure Rules 12(b)(2) and 12(b)(6), defendant

Bradley B. Rush ("defendant Rush"), by and through undersigned counsel, hereby moves this

honorable Court to dismiss the Consolidated Shareholder Derivative Complaint (the

"Complaint") for lack of personal jurisdiction and for failure to state a claim against defendant

Rush.

As demonstrated in defendant Rush's Memorandum of Points and Authorities in Support

of the instant Motion, plaintiffs Brockton Contributory Retirement System, Catherine Molner,

and Robert Anderson (collectively "plaintiffs") have set forth no facts demonstrating that this

Court may exercise personal jurisdiction over defendant Rush.  Thus, the Complaint should be

dismissed as to defendant Rush for lack of personal jurisdiction.

As further demonstrated in defendant Rush's Memorandum of Points and Authorities In

Support of the Instant Motion, plaintiffs' Complaint should be dismissed with prejudice because

plaintiffs have failed to state a claim against defendant Rush.  When considering a Rule 12(b)(6)

motion to dismiss, "the material allegations of the complaint are taken as admitted."  <u>Jenkins v.</u>

<u>McKeithen</u>, 395 U.S. 411, 421 (1969).  While the court construes the complaint liberally, <u>id.</u>,

"the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations."  <u>Kowal v. MCI Communications Corp.</u>, 16 F.3d 1271, 1276, (D.C. Cir. 1994).  Even given a liberal construction of the Complaint, plaintiffs have failed to state any claims against defendant Rush, and thus the Complaint must be dismissed with prejudice.

Dated:  August 27, 2007                          Respectfully submitted,

                                                 AKIN GUMP STRAUSS HAUER & FELD, LLP


                                                 /s/ Elizabeth C. Peterson_____
                                                 John M. Dowd (DC Bar 003525)
                                                 Paul W. Butler (DC Bar 493942)
                                                 Elizabeth C. Peterson (DC Bar 460259)
                                                 Robert S. Strauss Building
                                                 1333 New Hampshire Avenue, NW
                                                 Washington, DC 20036
                                                 Telephone:  (202) 887-4000
                                                 Facsimile:  (202) 887-4288

                                                 *Counsel for Defendant Bradley B. Rush*

## CERTIFICATE OF SERVICE

I hereby certify that , DEFENDANT'S MOTION TO DISMISS, DEFENDANT'S

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO

DISMISS, AND PROPOSED ORDER were served this 27th day of August 2007, in accordance

with the Court's CM/ECF Guidelines.  In addition, the forgoing was served this 27th day of

August 2007, via first-class mail, postage prepaid, on:

Maya Saxena
Joseph White
SAXENA WHITE, P.A.
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431

*Co-Lead Counsel for Plaintiffs*

Brian J. Robbins
Felipe J. Arroyo
Ashley R. Palmer
ROBBINS, UMEDA & FIND, LLP
610 West Ash Street, Suite 1800
San Diego, CA 92101

*Co-Lead Counsel for Plaintiffs*

/s/ Elizabeth C. Peterson

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| In Re SUNRISE SENIOR LIVING, INC. | ) ) ) | **Civil Action No. 07-00143 (RBW)** |
| This Document Relates to: | ) ) ) | |
| ALL ACTIONS | ) ) ) | |

**DEFENDANT BRADLEY B RUSH'S MEMORANDUM OF POINTS AND
<u>AUTHORITIES IN SUPPORT OF HIS MOTION TO DISMISS</u>**


AKIN GUMP STRAUSS HAUER & FELD, LLP

John M. Dowd (DC Bar 003525)
Paul W. Butler (DC Bar 493942)
Elizabeth C. Peterson (DC Bar 460259)

Counsel For Defendant Bradley B. Rush

# TABLE OF CONTENTS

INTRODUCTION ...........................................................................................................................1

BACKGROUND ..........................................................................................................................1

ARGUMENT ................................................................................................................................3

I.      PLAINTIFFS HAVE FAILED TO STATE A CLAIM OF SECURITIES FRAUD
UNDER RULE 10B-5 OF THE SECURITIES EXCHANGE ACT ...................................3

        A.      Plaintiffs' Rule 10b-5 Count Must Be Dismissed Because The Complaint
Fails To Allege Actionable Options Backdating Claims Against Defendant
Rush ..................................................................................................................4

        B.      Plaintiffs' Rule 10b-5 Claim Must Be Dismissed Because The Complaint
Fails To Meet The Pleading Requirements Of The Reform Act and Rule
9(b)...................................................................................................................6

II.     PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. RUSH FOR
VIOLATION OF SECTION 14(A) AND RULE 14A-9 OF THE SECURITIES
EXCHANGE ACT.............................................................................................................12

III.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. RUSH FOR
BREACH OF FIDUCIARY DUTY...................................................................................15

IV.   PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. RUSH FOR
INSIDER TRADING.........................................................................................................16

V.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE
FAILED TO DEMONSTRATE THAT THIS COURT HAS PERSONAL
JURISDICTION OVER DEFENDANT RUSH .................................................................20

CONCLUSION...........................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

Albert v. Alex Brown Mgmt. Servs., C.A. Nos. 762-N, 763-N, 2005 WL 2130607 at *4 (Del. Ch. Aug. 26, 2005) .................................................................................................................. 15

Alfus v. Pyramid Tech. Corp., 745 F. Supp. 1511, 1522 (N.D. Cal. 1990)................................... 18

Allison v. Brooktree Corp., 999 F. Supp. 1342, 1350 (S.D. Cal. 1998)........................................ 8

Aronson v. Lewis, 473 A.2d 805, 808 (Del. 1984) ....................................................................... 3

Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987) ...................................... 21

Backman v. Polaroid Corp., 540 F. Supp. 667, 671 (D. Mass. 1982) .......................................... 18

Brehm v. Eisner, 746 A.2d 244, (Del. 2000)................................................................................. 3

Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1005 (9th Cir. 2002) .................................... 19

Burman v. Phoenix Worldwide Indus., 437 F. Supp. 2d 142, 146 (D.D.C. 2006) ........................ 22

Cohane v. Arpeja-California, Inc., 385 A.2d 153, 158 (D.C. 1978) ............................................. 21

Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 455 (D.C. Cir. 1990) .......................................... 22

Desimone v. Barrows, 924 A.2d 908, 941 nn.114-15 (Del. Ch. 2007) .......................................... 6

DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990) ........................................................ 6

*Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005)....................................................... 3

Ernst & Ernst v. Hochfelder, 425 U.S. 185, 194 (1976) ............................................................. 11

Fl. State Bd. of Admin. v. Green Tree, 270 F.3d 645, 661 (8th Cir. 2001) .................................. 10

Hockey v. Medhekar, 30 F. Supp. 2d 1209, 1217 (N.D. Cal. 1998) .............................................. 7

In re Atmel Corp. Derivative Litig., No. C-06-4592, 2007 WL 2070299 at *8 (N.D. Cal. July 16, 2007) ............................................................................................................................ 14

In re Baan Co. Secs. Litig., 103 F. Supp. 2d 1, 17 (D.D.C. 2000)................................................. 8

In re Exxon Mobil Corp. Secs. Litig., 387 F. Supp. 2d 407, 424 (D.N.J. 2005)........................... 14

In re Global Crossing, Ltd. Secs. Litig., 313 F. Supp. 2d 189, 196-97 (S.D.N.Y. 2003).............. 14

In re Greater Se. Comm. Hosp. Corp. I, 353 B.R. at 324, 339 (Bankr. D.C. 2006) ..................... 15

In re McKesson HBOC, Inc. Secs. Litig., 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) ........... 14

In re Oracle Corp., 867 A.2d 904, 934 (Del. Ch. 2004), aff'd 872 A.2d 960 (Del. 2005) ........... 19

In re Oxford Health Plan Secs. Litig., 187 F.R.D. 133, 144 (S.D.N.Y. 1999) ............................. 18

In re SmarTalk Teleservices, Inc. Secs. Litig., 124 F. Supp. 2d 527, 545 (S.D. Ohio 2000).......... 8

In re Textainer P'ship Secs. Litig., No. C-05-0969, 2005 WL 3801596 at *5 (N.D.Cal. Dec. 12, 2005) ............................................................................................................................ 14

In re Verestar, Inc., 343 B.R. 444, 476 (Bankr. S.D.N.Y. 2006) ................................................. 15

In re Verifone, 784 F. Supp. 1471, 1489 (N.D. Cal. 1992), aff'd 11 F.3d 865 (9th Cir. 1993)..... 18

In re Zoran Corp. Deriv. Litig., No. C-06-05503, 2007 WL 1650948 at *22-23 (N.D.Cal. June 5, 2007) ............................................................................................................................ 14

Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 703 (2d Cir. 1994) ................ 17

Knollenberg v. Harmonic Inc., 152 Fed. Appx. 674, 682 (9th Cir. 2005) .................................... 14

Laventhal v. Gen. Dynamics Corp., 704 F.2d 407, 414 (8th Cir. 1983) ....................................... 17

Lewis v. Ward, C.A. No. 15255, 2003 WL 22461894 at *4 (Del. Ch. Oct. 29, 2003) ................. 15

Meng v. Schwartz, 116 F. Supp. 2d 92, 97 (D.D.C. 2000) .......................................................... 20

Pereira v. Cogan, 294 B.R. 449, 520 (S.D.N.Y. 2003)................................................................ 15

Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005) .......................................................................... 15

Phillips v. Scientific Atlanta, Inc., 374 F.3d 1015, 1018 (11th Cir. 2005) .............................. 8, 11

Poling v. Farrah, 131 F. Supp. 2d 191, 193-94 (D.D.C. 2001) ................................................... 20

Quinto v. Legal Times, 506 F. Supp. 554, 558 (D.D.C. 1981)...................................................22

R2 Invs. LDC v. Phillips, 401 F.3d 638, 641 (5th Cir. 2005) .....................................................17

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129-30 (2d Cir. 1994)..................................12

Southland Secs., Inc. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 365-66 (5th Cir. 2004) ... 8, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504 (2007)............... 4, 8, 11, 12

United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966) .....................................................20

United States v. Falcone, 257 F.3d 226, 229 (2nd Cir. 2001) .....................................................17

Von Guggenberg v. Klaassen, C.A. No. CL-2006-10174 (Va. Cir. Ct. Sept. 15, 2006) ................ 1

Von Guggenberg v. Klaassen, No. 062587 (Va. Apr. 27, 2007)....................................................1

Wiggins v. Equifax, Inc., 853 F.Supp. 500, 503 (D.D.C. 1994) ..................................................22

Wilson v. Comtech Telecommunications Corp., 648 F.2d 88, 95 (2d Cir. 1981) .........................18

Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1440 (9th Cir. 1987) .......................................7

Young v. Klaassen, C.A. No 2770-VCL (Del. Ch. filed Mar. 6, 2007) .........................................1

## STATUTES

15 U.S.C. § 78aa ......................................................................................................................20

15 U.S.C. § 78t-1 ................................................................................................................ 17, 18

15 U.S.C. § 78u-4 ............................................................................................................... passim

28 U.S.C. § 1658 ........................................................................................................................5

Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737.............. 4, 7

Insider Trading and Securities Fraud Enforcement Act of 1988, Pub. L. 100-704, 102 Stat. 4677
   (1988)……………………………………………………………………………………....17

## OTHER AUTHORITIES

S. Rep. No. 104-98 at 8, 10 (1995) ..............................................................................................4

## RULES

Del. Ch. Ct. R. 23.1.....................................................................................................................3

Fed. R. Civ. P. 9(b).....................................................................................................................4

## REGULATIONS

17 C.F.R. § 240.10b-5 .................................................................................................................3

## <u>INTRODUCTION</u>

The instant action is one of numerous putative shareholder derivative and class actions filed against Sunrise Senior Living, Inc. ("Sunrise" or the "Company"), and various past and present officers and directors of Sunrise.[1]  Like the other actions, the plaintiffs herein make unsubstantiated claims that certain director and officer stock option grants were backdated. Plaintiffs also raise bare conclusory allegations of violations of Rule 10b-5 of the Securities Exchange Act.  Tellingly absent from plaintiffs' Complaint is any assertion that defendant Bradley Rush received backdated options, participated in the alleged backdating scheme, or that he made material misstatements or omissions with the intent to deceive or defraud Sunrise's shareholders.  As such, the Complaint fails to state any claims for relief against defendant Bradley Rush and must be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6).

Moreover, plaintiffs have failed to set forth any facts demonstrating that this Court has personal jurisdiction over defendant Bradley Rush, and thus the Complaint should be dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(2) as well.

## <u>BACKGROUND</u>

Defendant Bradley B. Rush ("defendant Rush") first joined Sunrise in July 2003 as Executive Vice President of the Properties Division.  In July 2004 he was promoted to acting Chief Investment Officer, and in January of 2005 he became the permanent Chief Investment

---

[1]  In addition to the suits filed in this Court, a similar action is pending in Delaware Chancery Court.  <u>See Young v. Klaassen</u>, C.A. No 2770-VCL (Del. Ch. filed Mar. 6, 2007).  Yet another backdating case was filed in Virginia State Court, but was dismissed because the plaintiff shareholders failed to make a pre-suit demand on the Company's Board.  <u>See Von Guggenberg v. Klaassen</u>, C.A. No. CL-2006-10174 (Va. Cir. Ct. Sept. 15, 2006).  The Virginia Supreme Court subsequently denied the plaintiffs' petition for appeal.  <u>See Von Guggenberg v. Klaassen</u>, No. 062587 (Va. Apr. 27, 2007).  Defendant Bradley Rush is not named as a defendant in the Delaware or Virginia actions.

Officer. Only eight months later, on August 4, 2005, defendant Rush was promoted again, this time to Chief Financial Officer ("CFO"). See Compl. ¶ 30.

Given that defendant Rush did not assume the position of CFO until August 2005, it is far from surprising that plaintiffs are able to muster only a very few passing references to defendant Rush throughout their voluminous Complaint. While plaintiffs rope defendant Rush into various undifferentiated defendant classes designated the "Individual Defendants," "Insider Trading Defendants," "Accounting Defendants," and "Officer Defendants," the patent absence of allegations raised specifically against defendant Rush reveals the fatal flaw of this case. Quite simply, plaintiffs have no cognizable claims against defendant Rush. [2]

Claims of options backdating lie at the heart of plaintiffs' Complaint. But first and foremost, plaintiffs neither allege that defendant Rush received backdated options nor that he approved the alleged backdating scheme. Second, plaintiffs' purported backdating claims are barred by the applicable statute of limitations. Third, plaintiffs base their backdating claims on an undocumented and self-serving statistical analysis, Compl. ¶ 6, but offer no other evidence to demonstrate that the option grants are in fact backdated. See id. ¶¶ 59-99. Because they are based on these unfounded options backdating claims, all of the Counts alleged against defendant Rush should be dismissed. In addition, Counts I and II, alleging violations of Rules 10b-5 and 14a-9 are not pled with the sufficiency required by the Private Securities Litigation Reform Act and must be dismissed for that reason as well. In Count V, plaintiffs allege that the Individual Defendants breached their fiduciary duties by authorizing the purported backdated option grants, and in Counts IV, VI, and VII, plaintiffs assert related equitable claims for an accounting, unjust

---

[2] None of the Counts in the Complaint are specifically alleged against defendant Rush, but Counts I, II, IV, V, VI, VII, and XI are alleged against the "Individual Defendants" or the "Insider Selling Defendants" classes, which are defined to include defendant Rush. Counts III, VIII, IX, and X are not alleged against the defendant classes in which defendant Rush is included.

enrichment, and rescission. Even if plaintiffs had alleged viable options backdating claims, plaintiffs do not allege defendant Rush received backdated options, or that he took any actions to further, or even had the authority to approve, the purported options backdating scheme. Finally, in Count XI plaintiffs make a generic claim of insider trading against the "Insider Selling Defendants." As demonstrated herein, this Count is flawed in that it fails to specify a legal basis for such insider trading claim. But further, under any potential theory of insider trading, the plaintiffs fail to sufficiently plead an insider trading claim against defendant Rush and thus Count XI must be dismissed as well.[3]

## ARGUMENT

### I.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM OF SECURITIES FRAUD UNDER RULE 10B-5 OF THE SECURITIES EXCHANGE ACT

In Count I of the Complaint, plaintiffs allege that Sunrise Senior Living and certain of its directors and officers, including defendant Rush, have violated Section 10(b) of the Securities Exchange Act of 1934, and Rule 10b-5 thereunder. 17 C.F.R. § 240.10b-5. To state a claim of securities fraud under Rule 10b-5 of the Securities Exchange Act, a plaintiff must: 1) identify a materially false statement or omission made by the defendant; 2) show that the defendant acted with requisite scienter; 3) demonstrate a connection between the alleged statement or omission and the plaintiff's purchase or sale of securities; 4) demonstrate reliance on the misrepresentation or omission in making that purchase or sale of the security; 5) show an economic loss; and 6) show that such loss was caused by the material misrepresentation or omission. See, e.g., Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005).

---

[3] This Complaint should be dismissed on the additional ground that plaintiffs have failed to either (i) make a pre-suit demand on Sunrise's board of directors to take appropriate action to address plaintiffs'r concerns, or (ii) allege particularized facts explaining why making such a demand would be futile. See Del. Ch. Ct. R. 23.1; Aronson v. Lewis, 473 A.2d 805, 808 (Del. 1984), rev'd on other grounds by Brehm v. Eisner, 746 A.2d 244, (Del. 2000). Defendant Rush adopts and incorporates herein the arguments on this issue set forth in Nominal Defendant Sunrise's Memorandum of Points and Authorities in Support of Motion to Dismiss.

Fraud claims, like those plaintiffs purport to allege here, must be pled with heightened particularity. Fed. R. Civ. P. 9(b). Moreover, the Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737 (codified throughout 15 U.S.C. and 18 U.S.C.) ("PSLRA" or the "Reform Act"), imposes stringent pleading requirements on claims brought under Rule 10b-5.[4] The PSLRA dictates that any complaint that fails to meet these heightened standards must be dismissed. See 15 U.S.C. § 78u-4(b)(3)(A).

It is difficult to discern what, among plaintiffs' conclusory allegations, supports a Rule 10b-5 violation. It appears, however, that plaintiffs believe their flawed allegations of options backdating satisfy the Rule 10b-5 elements. These backdating allegations are not even raised against defendant Rush. Moreover, plaintiffs have failed to specify what material false statements or omissions defendant Rush made, let alone how any statements or omissions he made were false or misleading. In addition, plaintiffs' allegations are utterly void of any suggestion that defendant Rush acted with sufficient fraudulent intent. Plaintiffs' conclusory and self-serving allegations fail to state a claim against defendant Rush upon which relief can be granted, and thus Count I of the Complaint must be dismissed.

## A. PLAINTIFFS' RULE 10b-5 COUNT MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO ALLEGE ACTIONABLE OPTIONS BACKDATING CLAIMS AGAINST DEFENDANT RUSH

Count I should be dismissed because it is based upon options backdating claims that are not actionable. First, and most significantly, plaintiffs' allegations of options backdating do not

---

[4] The PSLRA was intended to ward against "the evils flowing from abusive securities litigation" in the form of strike suits that "wreak havoc on our Nation's boardrooms." S. Rep. No. 104-98 at 8, 10 (1995), as reprinted in 1995 U.S.C.C.A.N. 679, 687, 689. The PSLRA seeks to curb those evils by adopting rigorous pleading requirements designed to provide courts with the tools necessary to weed out meritless actions, like the instant action, at their inception. See id. at 6-7, 14; see Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2504 (2007) (Congress enacted the PSLRA "[a]s a check against abusive litigation practices by private parties"). Accordingly, the Reform Act imposes stringent pleading standards for actions brought pursuant to the Securities Exchange Act of 1934. See 15 U.S.C. § 78u-4.

implicate defendant Rush.  Plaintiffs do not allege that defendant Rush received backdated

options.  See Compl. ¶¶ 59-87.  Nor do plaintiffs allege that defendant Rush, who was neither a

member of the Board or the Stock Options Committee, played a role in approving the allegedly

backdated options.  See id. ¶¶ 64-65 (alleging that the Stock Option Committee backdated certain

option grants and that "[t]he entire Board knowingly and deliberately approved the backdating

scheme") (emphasis supplied).  In fact, the last alleged backdated option grant is purported to

have occurred in 2001, see id. ¶ 78, over two years before defendant Rush even began working

for Sunrise, and over four years before he assumed the position of CFO.  See id. ¶ 30.

Second, plaintiffs' backdating claims are barred by the applicable statute of limitations.

In 2002, as part of the Sarbanes-Oxley Act, Congress codified the statute of limitations for

private causes of action for securities violations.  Plaintiffs are required to bring their claims

within two years of "the discovery of facts constituting the violation," but in no case later than

five years after the violation.  28 U.S.C. § 1658(b).  Here, the last of the fourteen alleged

backdated options occurred on November 12, 2001.  See Compl. ¶¶ 66-78.  Similarly, the last of

the option grants alleged to have been *ultra vires* occurred on May 11, 2001.  See id. ¶¶ 80-86.

Plaintiffs offer no reason why the statute of limitations should be tolled.  Nor could they given

that, as the Complaint reveals, the alleged backdating claims are based on public information that

was disclosed years ago.  See e.g., Compl. ¶¶ 6, 59-86.  Plaintiffs were thus required to file their

Rule 10b-5 action no later than November 12, 2006, but did not file their first complaint in this

case until January 16, 2007.  Thus, all of plaintiffs' claims related to grants of backdated options

and *ultra vires* options are barred by the statute of limitations.

Third, plaintiffs' allegations of backdating are solely based on cursory statements that

certain cherry-picked options were backdated according to "statistical analysis," the methods of

which are not disclosed.  <u>See</u> Compl. ¶¶ 5,6, 66-78.  As such, plaintiffs' claims are specious at best, and do not properly allege a backdating scheme.  <u>Cf.</u> <u>Desimone v. Barrows</u>, 924 A.2d 908, 941 nn.114-15 (Del. Ch. 2007) (noting that statistical analysis provided dubious support for alleged backdating claims because plaintiffs had failed to allege that their analysis contained all the relevant option grants and failed to explain why, if the options were indeed backdated, defendants had not backdated the options to the most advantageous date).

**B.    PLAINTIFFS' RULE 10B-5 CLAIM MUST BE DISMISSED BECAUSE THE COMPLAINT FAILS TO MEET THE PLEADING REQUIREMENTS OF THE REFORM ACT AND RULE 9(B)**

Pursuant to the PSLRA, any "complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed."  15 U.S.C. § 78u-4(b)(1)(B).  This requirement is supplemented by Rule 9(b), which requires that plaintiffs plead all claims that sound in fraud "with particularity."  To satisfy Rule 9(b), a plaintiff must plead "the who, what, when, where and how: the first paragraph of any newspaper story."  <u>DiLeo v. Ernst & Young</u>, 901 F.2d 624, 627 (7th Cir. 1990).  Plaintiffs have failed to meet that burden with regard to defendant Rush.

**1.    *Plaintiffs Fail To Explain Why Any Alleged Misstatements Are Misleading***

The plaintiffs' voluminous complaint is bereft of any specific identification of the false statements or omissions they claim were made by defendant Rush.  Instead, plaintiffs include defendant Rush within broadly-defined defendant "classes" such as the "Officer Defendants," "Accounting Defendants," "Individual Defendants," and "Insider Selling Defendants," <u>see</u> Compl. ¶¶ 37-39, 122, and assert vague conclusory allegations against these defendant classes. For example, plaintiffs allege: "From 1998 to 2002, the Company, with the knowledge, approval

6

and participation of each of the Individual Defendants, for the purpose and effect of concealing

the improper option backdating, disseminated to shareholders and filed with the SEC annual

proxy statements that falsely reported the dates of stock option grants to the Individual

Defendants and falsely stated that '[s]tock options are granted by the Stock Option Committee at

an exercise price equal to the market price of the Common Stock at the date of the grant.'" Id.

¶ 102.  But the plaintiffs elsewhere admit that defendant Rush was not even employed by the

Company until July 2003.  See id. ¶ 30.[5]

Indeed, Plaintiffs' use of "group pleading" by definition establishes that the Complaint is

fatally lacking in particularity.  Statements or omissions alleged to have been made by the

defendant groups or the Company as a whole cannot be attributed to defendant Rush because the

Reform Act requires specificity with regard to the allegations made against each individual

defendant.  See 15 U.S.C. § 78u-4(b)(1) & (2).  Such group pleadings fail to allege the who,

what, when, where, and how required by the Reform Act and Rule 9(b).

Prior to the enactment of the Reform Act, some courts recognized a group pleadings

presumption, also known as the group statements doctrine, in corporate fraud cases.  Under this

presumption, any actions attributable to the company as whole, such as press releases or annual

reports, were presumed to be attributable to any of the officers or directors of the company.  See,

e.g., Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1440 (9th Cir. 1987), superseded by

statute, Private Securities Litigation Reform Act of 1995, Pub. L. No.  104-67, 109 Stat. 737, as

recognized in Hockey v. Medhekar, 30 F. Supp. 2d 1209, 1217 (N.D. Cal. 1998).  In recent years,

---

[5]  Obviously, given that defendant Rush did not even begin his employment with Sunrise until
July 2003, see Compl. ¶ 30, any misleading statements or omissions alleged to have occurred prior to July
2003, cannot provide a basis for a claim against defendant Rush.  See, e.g., Compl. ¶¶ 96, 98.

however, numerous circuits have found that the Reform Act's particularity requirements eradicated the group pleading presumption with regard to pleading scienter.  See, e.g., Phillips v. Scientific Atlanta, Inc., 374 F.3d 1015, 1018 (11th Cir. 2005); Southland Secs., Inc. v. INSpire Ins. Solutions, Inc., 365 F.3d 353, 365-66 (5th Cir. 2004); Allison v. Brooktree Corp., 999 F. Supp. 1342, 1350 (S.D. Cal. 1998); cf. In re Baan Co. Secs. Litig., 103 F. Supp. 2d 1, 17 (D.D.C. 2000) (finding that group pleading presumption is not incompatible with the PSLRA, but finding pleadings insufficient because they failed to assert specific facts demonstrating that defendant board members and officers were involved in drafting, reviewing, or issuing alleged misleading statements).  But see, In re SmarTalk Teleservices, Inc. Secs. Litig., 124 F. Supp. 2d 527, 545 (S.D. Ohio 2000).

In fact, in the recent Tellabs case, the Supreme Court noted the circuits' disagreement as to whether group pleading meets the pleading requirements of the Reform Act, and expressly refused to disturb the Seventh Circuit's holding that plaintiffs could not rely on the group pleading presumption.  See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499, 2511 n.6 (2007).  Courts have reasoned that the Reform Act invalidates the group pleadings presumption both because it requires greater specificity in general and also because it specifically refers to "the defendant" when establishing the misleading statements and scienter pleading requirements.  See, e.g., Southland Secs., Inc., 365 F.3d at 364-65 ("PSLRA references to 'the defendant' may only reasonably be understood to mean 'each defendant' in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were all sued in a single action or were each sued alone in several separate actions."); Allison, 999 F.Supp. at 1350 ("[T]he continued vitality of the judicially created group-published doctrine is suspect since the PSLRA specifically requires that the untrue

8

statements or omissions be set forth with particularity as to 'the defendant' and that scienter be plead in regards to 'each act or omission' sufficient to give 'rise to a strong inference that <u>the defendant</u> acted with the required state of mind.' 15 U.S.C. § 78u-4(b).") (emphasis added).

Here, the Complaint is replete with conclusory allegations raised against the Company or broadly defined classes of defendants. These allegations do not sufficiently plead material misleading statements or omissions by defendant Rush. Moreover, even if they did, plaintiffs fail to allege any specific facts that demonstrate why these statements are misleading. For example, plaintiffs suggest that certain of the Company's financial statements were misleading because they failed to disclose that various directors and officers had received improperly backdated stock options. <u>See</u> Compl. ¶¶ 65, 91-92, 96-99. However, plaintiffs offer no viable explanation of how any one of the option grants was backdated. <u>See id.</u> ¶¶ 59-79. Plaintiffs simply assert that the selected options were "purportedly" granted on a given date, but offer no reason why the record date of the option grant is not accurate. The absence of such allegations reveals that plaintiffs have no basis from which to infer that the options were actually backdated, and the lack of particularity renders the claims insufficient under the PSLRA. By extension, plaintiffs' attempt to plead other claims based upon these backdating allegations are likewise insufficient. For example, plaintiffs allege that the Company's annual reports were false because they fail to report options backdating. <u>See</u>, <u>e.g.</u>, Compl. ¶ 96. But such an allegation of false statements is deficient because it is drawn from the insufficient backdating allegations.

Second, in the two instances where the Complaint specifies statements alleged to have been made personally by defendant Rush, plaintiffs have failed to plead how or why such statements were misleading or false. First, plaintiffs allege that defendant Rush's certification for the Company's 2005 Form 10-K was false. <u>See</u> Compl. ¶ 99. But plaintiffs fail to specify how

the certification was false or misleading when issued.  Rather, the Complaint makes conclusory allegations against the "Individual Defendants" and the Company of improper accounting of joint ventures and backdating options, see Compl. ¶¶ 90-98, and then makes a blanket assertion that the "Individual Defendants knew, or were reckless in not knowing, that the financial statements . . . were materially false and misleading."  Id. ¶ 98.  Conclusory and "catch-all" assertions like these do not meet the Reform Act's pleading requirements.  See Fl. State Bd. of Admin. v. Green Tree, 270 F.3d 645, 661 (8th Cir. 2001) ("In the context of securities fraud, we must disregard 'catch-all' or 'blanket' assertions that do not live up to the particularity requirements of the [Reform Act].").

The Complaint also asserts that defendant Rush made a statement on May 11, 2006.  In response to an analyst's question about a new accounting methodology that the Company had decided to implement, Rush responded,

> [The accounting methodology] has been available for a number of years.  And again, with the scrutiny that Paul [Klaassen] and Tom [Newell] mentioned earlier, it came into consideration late in 2005.  And when we took a look at it, we thought we should look deeper.

Compl. ¶ 107. But the Complaint never alleges that this statement was false or in any way misleading, much less the reasons why it was misleading.

Accordingly, to the extent that plaintiffs have even alleged that defendant Rush made misleading statements or omissions, they have failed to plead how or why such statements were false.  Therefore, Count I must be dismissed against defendant Rush.

2.    *Plaintiffs Fail To State Particular Facts Supporting A Strong Inference Of Scienter*

To establish a Rule 10b-5 claim under the Reform Act, a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2).  Moreover, a plaintiff must demonstrate that a defendant

acted with the intent to "deceive, manipulate or defraud." <u>Ernst & Ernst v. Hochfelder</u>, 425 U.S. 185, 194 (1976). In <u>Tellabs</u>, the Supreme Court held that courts must consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter," but that courts "must take into account plausible opposing inferences." <u>Tellabs, Inc.</u>, 127 S. Ct. at 2509-10. Accordingly, "[a] complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." <u>Id.</u> at 2510.

Plaintiffs have failed to plead facts giving rise to a strong inference that defendant Rush acted with the intent to deceive, manipulate, or defraud. In fact, plaintiffs fail to allege scienter on the part of defendant Rush at all. Rather, they simply raise generalized assertions that the undifferentiated "Individual Defendants acted with scienter in that they either had actual knowledge of the fraud set forth herein, or acted with reckless disregard for the truth . . . ." Compl. ¶ 173; <u>see also id.</u> ¶ 98 (alleging that "Individual Defendants" signed Sunrise's Form 10K and "knew, or were reckless in not knowing, that the financial statements . . . were materially false and misleading."). As discussed above in Section I.B, "group pleadings" do not satisfy the Reform Act's pleading requirements. <u>See also</u> <u>Phillips</u>, 374 F.3d at 1018 ("[T]he most plausible reading in light of congressional intent is that a plaintiff, to proceed beyond the pleading stage, must allege facts sufficiently demonstrating each defendant's state of mind regarding his or her alleged violations.") (footnote omitted); <u>Southland Secs., Inc.</u>, 365 F.3d at 365 ("The 'group pleading' doctrine conflicts with the scienter requirement of the PSLRA because, even if a corporate officer's position supports a reasonable inference that he likely would be negligent in not being involved in the preparation of a document or aware of its contents, the PSLRA state of mind requirement is severe recklessness or actual knowledge.").

Quite tellingly, a searching review of the Complaint reveals barely a mention of defendant Rush, let alone a strong inference that he acted with intent to defraud or deceive. As noted above, the Complaint alleges that defendant Rush's certification for the Company's 2005 Form 10-K was false, see Compl. ¶ 99, and that defendant Rush made a statement on May 11, 2006 about a new accounting methodology that the Company had decided to implement, see id. ¶ 107. Yet plaintiffs fail to allege any facts that show defendant Rush had any reason to believe the certification was false when he signed it. As noted above, plaintiffs have not even alleged that defendant Rush's May 11, 2006 statement was false, let alone pled facts that suggest defendant Rush made the statement on May 11, 2006 with an intent to deceive or defraud.

Simply put, the speculative and conclusory allegations that pervade plaintiffs' Complaint do not satisfy the Reform Act's particularity requirements. See Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1129-30 (2d Cir. 1994) (A "pleading technique [that] couple[s] a factual statement with a conclusory allegation of fraudulent intent" does not "support the inference that the defendants acted recklessly or with fraudulent intent."). Plaintiffs are able to raise nothing more than ambiguous blanket statements that the "Individual Defendants" acted with knowledge of, or reckless disregard for, misrepresentations in Sunrise's financial statements. The absence of specific allegations against defendant Rush is fatal to their claims against him. See Tellabs, Inc., 127 S.Ct. at 2511 (noting that "omissions and ambiguities count against inferring scienter"). Plaintiffs have failed to sufficiently plead a strong inference of scienter and thus Count I must be dismissed as to defendant Rush.

## II.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. RUSH FOR VIOLATION OF SECTION 14(A) AND RULE 14A-9 OF THE SECURITIES EXCHANGE ACT

In Count II of the Complaint, plaintiffs allege that the "Individual Defendants" violated Section14(a) and Rule 14a-9 by filing proxy statements between 1998 and 2002 that omitted "the

fact that the Individual Defendants were causing Sunrise to engage in an option backdating scheme." Compl. ¶ 178; see id. ¶¶ 102-03, 176-81.  Claims under Section 14a of the Exchange Act are subject to the heightened pleading standards of the PSLRA.  See 15 U.S.C. § 78u-4(b) (the PSLRA applies in "any private action arising under this chapter.").[6]  Just as plaintiffs' Rule 10b-5 claims miss the mark, so too do plaintiffs' allegations of Section 14 (a) violations fail to meet the Reform Act's pleading requirements.

Count II is insufficiently pled as to defendant Rush.  First, all of the allegedly false proxy statements were issued between 1998 and 2002.  See Compl. ¶¶ 102-03.  Further, plaintiffs allege that the backdating option "scheme" occurred between 1997 and 2001.  See id. ¶¶ 59-86, 100, 101, 178.  Thus the proxy statements were issued and the alleged scheme occurred before defendant Rush was even employed by Sunrise.  See id. ¶ 30.  Defendant Rush simply cannot be responsible for any alleged scheme or misrepresentations or omissions that occurred before he was employed at Sunrise.

Second, as with the Rule 10b-5 claim, plaintiffs have employed "group pleading" in Count II and failed to allege any misrepresentations or omissions made in any proxy statements specifically by defendant Rush.  See discussion supra at Section I.B.

Third, plaintiffs have failed to state the reasons why any proxy statements were materially false or misleading.  At best, plaintiffs do no more than to allege that between 1999 and 2006, "[e]ach proxy statement sent to shareholders … contained materially false and misleading disclosures or omitted information about Sunrise's stock option practices…."  Compl. ¶ 101.  Plaintiffs set forth no facts explaining how the proxy statements were false.  Because the PSLRA's heightened pleading requirements concerning misleading statements and omissions

---

[6] "This chapter" is Chapter 2B of Title 15 and Section 14a of the Securities Exchange Act (15 U.S.C. §78n) is included within Chapter 2B.

apply to Section 14(a) claims just as they do to securities fraud claims, see Knollenberg v. Harmonic Inc., 152 Fed. Appx. 674, 682 (9th Cir. 2005); In re Textainer P'ship Secs. Litig., No. C-05-0969, 2005 WL 3801596 at *5 (N.D.Cal. Dec. 12, 2005), plaintiffs' Section 14(a) claims fail for lack of particularity.

Fourth, plaintiffs' Compliant is utterly devoid of any allegations supporting a strong inference that defendant Rush was negligent with regard to the issuing of the proxy statements. See In re Zoran Corp. Deriv. Litig., No. C-06-05503, 2007 WL 1650948 at *22-23 (N.D.Cal. June 5, 2007) (to state Section 14a claim, plaintiff must plead particular facts supporting a "strong inference" of each defendant's negligence); In re McKesson HBOC, Inc. Secs. Litig., 126 F. Supp.2 d 1248, 1267 (N.D. Cal. 2000).   Here, the Complaint does no more than to assert the blanket allegation that the "Individual Defendants" failed to exercise "reasonable care" in issuing the proxy statements.  Compl. ¶ 179.  At no point do plaintiffs allege negligence on the part of defendant Rush in the issuing of the proxy statements — nor could they, given that he was not even an employee at Sunrise when the statements were issued.

Finally, as discussed above, plaintiffs' options backdating claims are not alleged against defendant Rush and are time-barred.  See discussion supra at Section I.A.  Because Count II depends entirely on the flawed allegations of options backdating, plaintiffs' Section 14(a) and Rule 14a-9 claims must fail.[7]

---

[7]  Even assuming *arguendo* that plaintiffs had sufficiently pled a Section 14(a) claim against defendant Rush, the Section 14(a) claims are time barred because plaintiffs were required to file such claims no more than three years after the alleged violation. See In re Atmel Corp. Derivative Litig., No. C-06-4592, 2007 WL 2070299 at *8 (N.D. Cal. July 16, 2007) (dismissing Section 14(a) claim that alleged false statements made more than three years prior to filing complaint); In re Exxon Mobil Corp. Secs. Litig., 387 F. Supp. 2d 407, 424 (D.N.J. 2005); In re Global Crossing, Ltd. Secs. Litig., 313 F. Supp. 2d 189, 196-97 (S.D.N.Y. 2003); see also arguments set forth in Brief Of Individual Defendants Klaassen et al., adopted and incorporated herein by reference.

### III.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. RUSH FOR BREACH OF FIDUCIARY DUTY

In Count V, plaintiffs allege that the "Individual Defendants" breached their fiduciary duties of loyalty and good faith by "engaging in a scheme to grant backdated stock options to themselves and/or certain other officers and directors of the Company and cover up their misconduct." Compl. ¶ 192. Plaintiffs have failed to sufficiently allege that defendant Rush breached his duties of good faith and loyalty. Thus this Count too must be dismissed.

Officers, as well as directors, of a corporation hold a triad of primary fiduciary duties: that is, the duty of care, loyalty, and good faith, to the corporation and its shareholders. See, e.g., In re Greater Se. Comm. Hosp. Corp. I, 353 B.R. at 324, 339 (Bankr. D.C. 2006) (citations omitted). Where breach of fiduciary claims are based on alleged fraudulent conduct, they must be pled with particularity, as dictated by Federal Rule of Civil Procedure 9(b). See Lewis v. Ward, C.A. No. 15255, 2003 WL 22461894 at *4 (Del. Ch. Oct. 29, 2003). Further, to plead a claim of breach of fiduciary duty, a plaintiff must allege facts that demonstrate an officer defendant had "'discretionary authority over, and the power to prevent, the complained of transactions.'" In re Verestar, Inc., 343 B.R. 444, 476 (Bankr. S.D.N.Y. 2006) (quoting Pereira v. Cogan, 294 B.R. 449, 520 (S.D.N.Y. 2003) vacated on other grounds sub nom. Pereira v. Farace, 413 F.3d 330 (2d Cir. 2005). Moreover, plaintiffs must allege facts that support an inference that the officer was "grossly negligent" and performed his duties with "'a devil-may-care attitude or indifference to duty amounting to recklessness.'" Albert v. Alex Brown Mgmt. Servs., C.A. Nos. 762-N, 763-N, 2005 WL 2130607 at *4 (Del. Ch. Aug. 26, 2005) (citations omitted).

Here, plaintiffs' breach of fiduciary duty claim fails as against defendant Rush for three reasons. First, plaintiffs have wholly failed to allege actionable options backdating. Second, the options backdating allegations do not implicate defendant Rush in any event because plaintiffs

do not allege that defendant Rush ever received backdated options.  See Compl. ¶¶ 59-86.  Third, far from setting forth particularized allegations of gross negligence, plaintiffs have nowhere alleged that defendant Rush knew about the alleged backdated options, about any violations of relevant Stock Option Plans, or even that he had discretionary authority or power over the granting of options.  Indeed, plaintiffs do not allege that defendant Rush played any role whatsoever in approving the allegedly backdated options or perpetrating the alleged backdating scheme.  See id. ¶¶ 64-65 (alleging that "the Stock Option Committee" knowingly backdated options and that "[t]he entire Board knowingly and deliberately approved the backdating scheme.").

Plaintiffs have failed to sufficiently allege defendant Rush breached his fiduciary duties and thus Count V must be dismissed.[8]

## IV.    PLAINTIFFS HAVE FAILED TO STATE A CLAIM AGAINST MR. RUSH FOR INSIDER TRADING

In Count XI, plaintiffs allege generically that the "Insider Selling Defendants" engaged in insider trading.  Although plaintiffs fail to allege the basis for their insider trading claim, their conclusory and speculative allegations fail under any theory of insider trading and thus Count XI must be dismissed as against defendant Rush.

---

[8]  In Counts IV, VI, and VII, plaintiffs allege equitable claims against the "Individual Defendants" for accounting, unjust enrichment, and rescission, respectively.  These claims are based upon plaintiffs' options backdating claims and seek an accounting of the option grants, disgorgement by the option recipients of the proceeds thereof, and rescission of the stock option grants.  See Compl. ¶¶ 184-89, 196-201.  Accounting and rescission, which are actually equitable remedies, as well as unjust enrichment, are all claims that are dependent upon plaintiffs' breach of fiduciary duty claim.  As such, and as further demonstrated in the Brief of Individual Defendants Klaassen et al., these Counts necessarily fail because the underlying breach of fiduciary duty claim fails. Even assuming arguendo that these claims had any merit, however, given that defendant Rush did not receive any of the alleged backdated options, Counts IV, V, and VII do not lie against defendant Rush (who cannot provide the relief plaintiffs seek in any event) and must be dismissed.

First, plaintiffs fail to allege an implied private cause of action for insider trading.[9]  To

state an implied claim for securities fraud under Section 10(b) and Rule 10b5, plaintiffs must

begin by alleging the five key elements of a 10(b) violation.  These elements are traditionally

stated as (1) misstatement or omission; (2) of material fact; (3) made with scienter; (4) on which

plaintiff relied; and (5) that proximately caused plaintiff's injury.  See, e.g., R2 Invs. LDC v.

Phillips, 401 F.3d 638, 641 (5th Cir. 2005).  The plaintiffs must also show that the defendant's

actions were taken "in connection with" the purchase or sale of securities.  See, e.g., United

States v. Falcone, 257 F.3d 226, 229 (2nd Cir. 2001).  In the instant Complaint plaintiffs fail to

state a claim for insider trading against defendant Rush under Rule 10b-5 because, as

demonstrated supra, plaintiffs have failed to properly allege a material misstatement or omission

made with scienter that satisfies the Reform Act's pleading requirements.  Moreover, plaintiffs

have failed to sufficiently plead the nature of material insider information that defendant Rush

was allegedly aware of and how such information motivated his sale of securities.

Second, plaintiffs fare no better at alleging a claim of insider trading pursuant to Section

20A of the Securities Exchange Act of 1934 for two reasons.  First, to state a claim under Section

20A, plaintiffs must plead a predicate violation of the federal securities law.  See, e.g., Jackson

Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 703 (2d Cir. 1994) ("The language of the

statute thus is quite plain that to state a claim under Section 20A, a plaintiff must plead a

predicate violation of the '34 Act or its rules or regulations.").  Further, plaintiffs must plead the

---

[9] Prior to 1988, courts recognized "implied" private causes of action. that were judicially recognized, and not statutory.  See, e.g., Laventhal v. Gen. Dynamics Corp., 704 F.2d 407, 414 (8th Cir. 1983).  The Insider Trading and Securities Fraud Enforcement Act of 1988, Pub. L. 100-704, 102 Stat. 4677 (1988), added Section 20A to the Securities Exchange Act of 1934, and thereby created the first statutory, private cause of action for insider trading. See 15 U.S.C. § 78t-1.  Section 20A left intact the previously existing "implied" causes of action for insider trading. See 15 U.S.C. § 78t-1(d).  As demonstrated herein, plaintiffs have failed to allege either an implied cause of action for insider trading or a Section 20A insider trading claim.

predicate violation according to the heightened pleading requirements of the Reform Act.  <u>See</u> 15

U.S.C. § 78u-4(b) ( the PSLRA applies in "any private action arising under this chapter.").[10]  As

discussed <u>supra</u>, plaintiffs have failed to plead a predicate violation of Rules 10b-5 or 14a-9 of

the Securities Act with particularity, and thus fail to state a claim for insider trading under

Section 20A.

     In addition, a claim of insider trading under Section 20A requires a showing that the

plaintiff bought or sold securities contemporaneously with the defendant.  <u>See</u> 15 U.S.C. § 78t-1.

Courts have construed this requirement strictly.  <u>Alfus v. Pyramid Tech. Corp.</u>, 745 F. Supp.

1511, 1522 (N.D. Cal. 1990).  While courts have disagreed on the precise cut-off point for

satisfying the contemporaneous requirement, <u>compare</u>, <u>e.g.</u>, <u>Backman v. Polaroid Corp.</u>, 540 F.

Supp. 667, 671 (D. Mass. 1982) (two business days later not contemporaneous) <u>with</u> <u>In re</u>

<u>Oxford Health Plan Secs. Litig.</u>, 187 F.R.D. 133, 144 (S.D.N.Y. 1999) ("Five trading days is a

reasonable period between the insider's sales and the plaintiff's purchase to be considered

contemporaneous . . ."), a gap of weeks or a month will not satisfy the contemporaneous

requirement, <u>see</u>, <u>e.g.</u>, <u>In re Verifone</u>, 784 F. Supp. 1471, 1489 (N.D. Cal. 1992), <u>aff'd</u> 11 F.3d

865 (9th Cir. 1993) (trades fourteen days or more apart not contemporaneous); <u>Wilson v.</u>

<u>Comtech Telecommunications Corp.</u>, 648 F.2d 88, 95 (2d Cir. 1981) (one month later not

contemporaneous).  In the instant Complaint, plaintiffs failed to show on what dates either they

or the Company purchased Sunrise stock that would entitle them to a finding that such purchases

were contemporaneous with defendant Rush's sales of stock between September 8, 2005 and

---

[10] "This chapter" is Chapter 2B of Title 15 § 10(b) of the Securities Exchange Act (15 U.S.C. § 78j(b)) is included within Chapter 2B.

September 12, 2005.  Thus, plaintiffs fail to state a claim for insider trading against defendant

Rush under Section 20A.

      Third, an insider trading claim pursuant to Rule 14e-3 of the Securities Exchange Act

similarly fails because plaintiffs have not alleged a contemporaneous purchase or sale of

securities.  While Rule 14e-3 does not explicitly incorporate the contemporaneous language of

Section 20A, courts have held that the contemporaneous sale requirement applies nonetheless.

See Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1005 (9th Cir. 2002).

      Finally, plaintiffs have failed to allege a state law claim of insider trading.  To bring a

state law claim for insider trading, plaintiffs must show that "1) the corporate fiduciary possessed

material, nonpublic company information; and 2) the corporate fiduciary used that information

improperly by making trades because she was motivated, in whole or in part, by the substance of

that information."  In re Oracle Corp., 867 A.2d 904, 934 (Del. Ch. 2004), aff'd 872 A.2d 960

(Del. 2005).  Plaintiffs have stated in only conclusory fashion that defendant Rush possessed

material non-public information without specifying what insider information defendant Rush

possessed.  Further, they have failed to specifically allege how defendant Rush's sale of securities

was motivated "by the substance of that information."  Plaintiffs have thus failed to plead a state

law claim of insider trading.

      For the foregoing reasons, Count XI must be dismissed as to defendant Rush because

plaintiffs fail to state a claim of insider trading under any possible theory.

## V.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANT RUSH

The Complaint should be dismissed because this Court does not have personal jurisdiction over defendant Rush.[11]

First, with regard to claims asserted pursuant to the Securities Exchange Act, personal jurisdiction is based on the venue and service of process provision set forth in Section 27 of the Act.  15 U.S.C. § 78aa (suits under the Act may be brought in district where "any act or transaction constituting the violation occurred" or where "defendant is found or is an inhabitant or transacts business" process may be served where defendant "is an inhabitant or wherever the defendant may be found").  In Poling v. Farrah, 131 F. Supp. 2d 191, 193-94 (D.D.C. 2001), the court held that personal jurisdiction under the Act lies only where both the venue and service of process provisions are satisfied.  Thus, although the defendant in Poling was neither an inhabitant nor transacted business in the District of Columbia, the Court determined that it had personal jurisdiction over defendant because plaintiff showed that defendant had made telephone calls into the District of Columbia in connection with the alleged violations of the Act.  Thus, as both the venue and service provisions of Section 27 were satisfied, the Poling court held that it had personal jurisdiction over the defendant.  See id. at 193-94.

Here, plaintiffs have made no such showing.  At most, in asserting that "venue" lies in this district, plaintiffs have alleged that "a substantial portion of the transactions and wrongs

---

[11]    The Complaint should also be dismissed pursuant to Federal Rule of Civil Procedure 12 (b)(1) because if this Court dismisses Counts I, II, and III, it no longer has subject matter jurisdiction over this case.  As demonstrated above, plaintiffs' Rule 10b-5 and Section 14(a) claims must be dismissed.  Further, as set forth in the Brief of Individual Defendants Klaassen et al., plaintiffs' Section 20(a) claim must likewise be dismissed.  With the dismissal of these federal claims, plaintiffs cannot bring their case in this Court pursuant to federal question subject matter jurisdiction.  By extension, this Court does not have pendent jurisdiction over plaintiffs' state law claims. See, e.g., United Mine Workers v. Gibbs, 383 U.S. 715, 725-26 (1966).  As such, plaintiffs' state law claims should likewise be dismissed.  See Meng v. Schwartz, 116 F. Supp. 2d 92, 97 (D.D.C. 2000).

complained of herein, including the defendants' primary participation in the wrongful acts alleged herein, occurred in this district." Further, plaintiffs assert that "[o]ne or more of the defendants either resides or maintains an office in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district." Compl. ¶ 13. But these bare, conclusory allegations do not demonstrate venue as to defendant Rush under Section 27 of the Act. Plaintiffs have made no allegations that defendant Rush conducted any transactions in the District of Columbia in connection with the alleged violations of the Securities Act, nor that he is an inhabitant or regularly transacts business in the District of Columbia. As plaintiffs have failed to demonstrate that venue is proper under Section 27 of the Act, they have likewise failed to demonstrate that this court has personal jurisdiction over defendant Rush.

Plaintiffs have also failed to demonstrate personal jurisdiction pursuant to the District of Columbia's long arm statute.[12] To assert personal jurisdiction over a non-resident defendant, service of process must be authorized by statute and must comport with the Due Process Clause of the Fourteenth Amendment. See Cohane v. Arpeja-California, Inc., 385 A.2d 153, 158 (D.C. 1978). The District of Columbia's long-arm statute extends as far as the Due Process Clause allows, see Mouzavires v. Baxter, 434 A.2d 988 (D.C. 1981) (en banc), which means this Court has personal jurisdiction over a defendant who has purposely established minimum contacts with the forum state and when the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Asahi Metal Indus. Co. v. Superior Court of Cal., 480 U.S. 102 (1987) (citations omitted). Plaintiff has the burden of demonstrating a factual basis for such

---

[12] As demonstrated supra, plaintiffs' claims against defendant Rush under the Securities Exchange Act must be dismissed and thus, personal jurisdiction with regard to the remaining claims would be based upon the District of Columbia's long arm statute.

"minimum contacts."  Crane v. N.Y. Zoological Soc'y, 894 F.2d 454, 455 (D.C. Cir. 1990) (citations omitted).

Here, plaintiffs have set forth no facts establishing personal jurisdiction over defendant Rush.  Plaintiffs have made no showing that defendant Rush has any contacts with the District of Columbia.  Plaintiffs cannot establish personal jurisdiction over defendant Rush through conclusory allegations or by blanket statements about all of the defendants.  See Burman v. Phoenix Worldwide Indus., 437 F. Supp. 2d 142, 146 (D.D.C. 2006).  Moreover, even assuming arguendo that plaintiffs had alleged facts sufficient to demonstrate personal jurisdiction over Sunrise, this would not be sufficient to establish personal jurisdiction over defendant Rush.  See Quinto v. Legal Times, 506 F. Supp. 554, 558 (D.D.C. 1981) (granting motion to dismiss for lack of personal jurisdiction over defendant owners and officers of corporation because, although defendants conducted business in District of Columbia on behalf of corporation, no allegation that defendants conducted business as individuals there).  In order for a court to find personal jurisdiction over corporate officers "in their individual capacities, [personal jurisdiction] must be based on their personal contacts with the forum and not their acts and contacts carried out solely in a corporate capacity."  Wiggins v. Equifax, Inc., 853 F.Supp. 500, 503 (D.D.C. 1994) (citations omitted).  Because plaintiffs have failed to demonstrate that defendant Rush has any contacts — let alone minimum contacts — with the District of Columbia, this action should be dismissed against him.

## **CONCLUSION**

For all the foregoing reasons, plaintiffs' Complaint should be dismissed with prejudice.


Dated:  August 27, 2007                         Respectfully submitted,

                                                AKIN GUMP STRAUSS HAUER & FELD, LLP



                                                /s/ Elizabeth C. Peterson
                                                John M. Dowd (DC Bar 003525)
                                                Paul W. Butler (DC Bar 493942)
                                                Elizabeth C. Peterson (DC Bar 460259)
                                                Robert S. Strauss Building
                                                1333 New Hampshire Avenue, NW
                                                Washington, DC 20036

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____    )
                                  )
In Re SUNRISE SENIOR LIVING, INC.  )     Civil Action No. 07-00143 (RBW)
                                  )
_____    )
                                  )
This Document Relates to:          )
                                  )
ALL ACTIONS                        )
_____    )
```

### ORDER

Upon consideration of Defendant Bradley B. Rush's Motion to Dismiss the consolidated complaint, and based upon the entire record herein, for the reasons stated in Defendant Bradley B. Rush's Memorandum of Points and Authorities in support of his motion to dismiss, it is hereby **ORDERED** that:

Defendant's Motion to Dismiss is **GRANTED;** and further that

Plaintiff's' Amended Complaint is **DISMISSED WITH PREJUDICE** as to Defendant Rush.

**SO ORDERED.**

Entered this _____ day of _____, 2007.

_____
THE HONORABLE REGGIE B. WALTON
United States District Judge