## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

In re: SUNRISE SENIOR LIVING, INC.       :
Derivative Litigation                    :
                                        :

_____:     Civil Action No. 07-00143 (RBW)

This Document Relates To:          :
                                        :

      ALL ACTIONS              :

_____:

### UNOPPOSED MOTION FOR LEAVE
### TO FILE A CORRECTED MEMORANDUM IN SUPPORT OF
### THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue,

David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa

M. Klaassen, Pete A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert

R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso

(the "Individual Defendants") respectfully move the Court for leave to file a Corrected

Memorandum of Points and Authorities in Support of the Individual Defendants' Motion to

Dismiss, attached hereto as Exhibit A.

The Individual Defendants' original supporting memorandum, filed earlier this week,

contained certain typographical and other non-substantive errors that should have been, but

unfortunately were not, caught in the final editing process.  The Individual Defendants seek leave

to file the attached corrected version of the memorandum to correct those errors for the benefit of

the Court and the parties in addressing the pending motion to dismiss.

Counsel for plaintiffs have advised counsel for the Individual Defendants that plaintiffs

have no objection to the filing of the Corrected Memorandum.

WHEREFORE, the Individual Defendants ask that the Court grant leave to file, and deem filed, the Corrected Memorandum attached hereto as Exhibit A.

Respectfully submitted,

GIBSON, DUNN & CRUTCHER LLP

_/s/_____
John C. Millian (D.C. Bar No. 413721)
1050 Connecticut Street, N.W.
Washington, D.C. 20036
(202) 955-8500
(202) 467-0539 (fax)

*Attorneys for Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Peter A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso*

Dated: August 31, 2007

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| In re: SUNRISE SENIOR LIVING, INC.    : | |
| Derivative Litigation    : | |
|    : | |
| _____ : | Civil Action No. 07-00143 (RBW) |
| This Document Relates To:    : | |
|    : | |
|      ALL ACTIONS    : | |
| _____ : | |

**[PROPOSED] ORDER GRANTING**
**UNOPPOSED MOTION FOR LEAVE**
**TO FILE A CORRECTED MEMORANDUM IN SUPPORT OF**
**THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS**

       This matter is before the Court upon the Individual Defendants' Motion for Leave

to File a Corrected Memorandum in Support of the Individual Defendants' Motion to Dismiss.

Upon consideration of the motion, it is hereby

       ORDERED that the motion is granted, and it is further

       ORDERED that the Corrected Memorandum, attached to the Motion as Exhibit

A, is deemed filed.

       So ORDERED this _____ day of _____, 2007.

                          _____

                          HON. REGGIE B. WALTON
                          UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 27, 2007, copies of the foregoing Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Pete A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso's  Motion for Leave to File a Corrected Memorandum in Support of the Individual Defendants' Motion to Dismiss and Proposed Order were served via electronic filing and/or via first-class United States mail, postage pre-paid, upon the following:

HOGAN & HARTSON, LLP
George H. Mernick, III
Columbia Square
555 Thirteenth Street, N.W.
Washington, D.C. 20004
Telephone: (202) 637-5726
Facsimile: (202) 637-5910

N. Thomas Connally
Jon M. Talotta
8300 Greensboro Drive, Suite 1100
McLean, VA  22102
Telephone: (703) 610-6100
Facsimile: (703) 610-6200

*Counsel for Nominal Defendant*
*Sunrise Senior Living, Inc.*

DAVIS, COWELL & BOWE, LLP
George R. Murphy
Mark Hanna
Joni S. Jacobs
1701 K Street NW, Suite 210
Washington, DC  20006
Telephone: (202) 223-2620
Facsimile: (202) 223-8651

*Liaison Counsel for Plaintiffs*

WILLIAMS & CONNOLLY
Philip A. Sechler
Vidya Atre Mirmira
725 Twelfth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 434-5000
Facsimile: (202) 434-5029

*Counsel for Defendant David G. Bradley*

AKIN GUMP STRAUSS HAUER & FELD, LLP
John M. Dowd
Jeffrey M. King
1333 New Hampshire Avenue, NW
Washington, DC  20036
Telephone: (202) 887-4000
Facsimile: (202) 887-4288

*Counsel for Defendant Bradley B. Rush*

SCHIFFRIN BARROWAY TOPAZ &
KESSLER, LLP
Lee Rudy
Eric Lechtzin
J. Daniel Albert
280 King of Prussia Road
Radnor, PA  19087
Telephone (610) 667-7706
Facsimile: (610) 667-7056

SAXENA WHITE, P.A.
Maya Saxena
Joseph White
2424 North Federal Highway, Suite 257
Boca Raton, FL 33431
Telephone: (561) 394-3399
Facsimile: (561) 394-3382

ROBBINS, UMEDA & FINK, LLP
Brian J. Robbins
Felipe J. Arroyo
Ashley R. Palmer
610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone: (619) 525-3990
Facsimile: (619) 525-3991

*Co-Lead Counsels for Plaintiff*


_/s/_____
Matthew R. Estabrook
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Street, N.W.
Washington, D.C. 20036
(202) 955-8500

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUNRISE SENIOR LIVING, INC. DERIVATIVE LITIGATION | Civil Action No. 07-00143 Judge Reggie B. Walton |
| This Document Relates To: ALL ACTIONS | |

# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE INDIVIDUAL DEFENDANTS' MOTION TO DISMISS

John C. Millian (DC Bar #413721)
Matthew R. Estabrook (DC Bar #477880)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

*Attorneys for Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Peter A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso*

ORIGINAL DATE: August 27, 2007

DATE OF CORRECTED
MEMORANDUM: August 31, 2007

# TABLE OF CONTENTS

Page

I.    INTRODUCTION AND BACKGROUND .................................................... 1

    A.    The Parties ............................................................................... 1

    B.    The Allegations in Plaintiffs' Complaint ............................................ 2

II.   SUMMARY OF ARGUMENT .................................................................. 4

III.  ARGUMENT ........................................................................................ 6

    A.    Plaintiffs Have Failed to Plead Demand Futility Adequately, and Thus
        This Action Must Be Dismissed for Failure to Make the Requisite Pre-Suit
        Demand Upon Nominal Defendant Sunrise ........................................ 6

    B.    This Case Must Be Dismissed Because the Complaint Fails to Allege That
        Plaintiffs Have Owned Sunrise Stock Continuously from 1997 to the
        Present, And Thus Fails to Allege That Plaintiffs Have Standing to Pursue
        Derivative Claims ..................................................................... 7

    C.    The Complaint Also Must Be Dismissed Because It Fails to Plead Any
        Basis for the Court to Exercise Personal Jurisdiction Over Any of the
        Individual Defendants ................................................................ 8

    D.    The Federal Claims Are Barred by the Applicable Statutes of Limitations ........ 11

        1.    Plaintiffs' § 10(b) Claim (Count I) Is Time-Barred ................................ 12

                a.    Because The Alleged Backdating Occurred More Than
                    Five Years Before the Complaint Was Filed, the § 10(b)
                    Claim is Barred by the Five-Year Statute of Repose .................. 12

                b.    Plaintiffs' § 10(b) Claim Is Also Barred by the Separate
                    Requirement That Claims Be Brought Within Two Years of
                    Discovery of Facts Constituting the Violation ........................... 13

        2.    Plaintiffs' § 14(a) Claim (Count II) Is Time-Barred ................................ 14

                a.    Because the Allegedly Misleading Proxy Statements Were
                    All Issued More Than Three Years Before the Complaint
                    Was Filed, Plaintiffs' § 14(a) Claim is Barred by the Three-
                    Year Statute of Repose Applicable to Negligence-Based
                    Claims Under the Exchange Act ......................................... 14

**Table of Contents**
**(Continued)**

Page

E.  Plaintiffs Have Failed to State a Claim for Any Alleged Federal Securities Law Violation, and Hence Plaintiffs' Federal Causes of Action Must Also Be Dismissed for This Independent Reason ...................................................... 15

  1.  Standard Of Review ............................................................................... 15

  2.  Plaintiffs Have Failed to Plead a § 10(b) Claim (Count I) with the Necessary Specificity ............................................................................ 16

    a.  Plaintiffs Have Not Alleged Reliance with the Requisite Specificity ................................................................................... 17

    b.  Plaintiffs Have Failed Adequately to Allege Misconduct by Any Individual Defendant............................................................. 18

    c.  Plaintiffs Have Failed to Plead Facts Giving Rise to a Strong Inference of Scienter ......................................................... 22

  3.  Plaintiffs Have Failed to Plead a § 14(a) Claim (Count II) .................... 24

    a.  Plaintiffs § 14(a) Claim Fails Because They Do Not Adequately Allege That Any Individual Defendant Made False Statements............................................................................ 25

    b.  Plaintiffs' § 14(a) Claim Fails Because the Complaint Does Not Plead Specific Facts Supporting a Strong Inference of Negligence ................................................................................... 26

    c.  The § 14(a) Claim Also Fails Because Plaintiffs Have Alleged No "Essential Link" Between the Proxy Solicitations and Any Corporate Transaction .............................. 27

  4.  Plaintiffs Have Failed Adequately to Plead a § 20(a) Claim .................. 28

    a.  Plaintiffs' Failure to State A Claim Under § 10(b) or § 14(a) Is Fatal to Their § 20(a) Claim ......................................... 28

    b.  The § 20(a) Claim Must Be Dismissed Because Plaintiffs Have Not Alleged That Faeder, Hulse, Slavin, or Any Of The Director Defendants Is a Controlling Person........................ 28

**Table of Contents**
**(Continued)**

Page

    c.    Plaintiffs' Failure to Plead "Culpable Participation" is Fatal to Their § 20(a) Claim .................................................................. 30

F.    Because Plaintiffs Have Failed to Allege a Federal Claim, the Court Must Dismiss the Entire Case for Lack of Subject Matter Jurisdiction ....................... 30

G.    Even If the Court Were to Exercise Jurisdiction Over the Pendant State Law Causes of Action Asserted in Counts IV-XI of the Complaint, Those Purported Causes of Action Must Be Dismissed for Failure to State a State Law Claim ........................................................................................................ 31

    1.    Plaintiffs' State Law Fiduciary Duty Claims Based on Stock Option Backdating Are Time-Barred ....................................................... 31

        a.    The Allegedly Backdated Options Were Granted Well Outside the Limitations Period ..................................................... 31

        b.    There Are No Grounds for Tolling the Statute of Limitations ................................................................................. 33

        c.    There Was No Fraudulent Concealment ..................................... 34

    2.    Plaintiffs Have Not Pled a Breach of Fiduciary Duty Claim (Count V) ............................................................................................... 35

        a.    Directors Cannot Be Liable for Duty of Care Claims .................. 36

        b.    Plaintiffs Have Not Made Particularized Allegations or Factual Allegations that the Director Defendants Acted with the Required Intent or Bad Faith .......................................... 37

            i.    Joint Venture Accounting ................................................ 38

            ii.    Alleged Misstatements ..................................................... 40

    3.    Plaintiffs Have Not Pled a Claim for Insider Trading (Count XI) ........... 41

        a.    Plaintiffs Have Not Adequately Pled a Claim for Insider Trading Because the Complaint Lacks Allegations Related to Specific Transactions ................................................................ 42

iii

**Table of Contents**
**(Continued)**

Page

         b.      The Insider Trading Claim Should Be Dismissed Because There Is No Harm to Sunrise ........................................................ 42

    4.      Plaintiffs' Unjust Enrichment Claims (Counts VI and VIII) Fail Because They Have Not Adequately Pled an Underlying Breach of Fiduciary Duty .......................................................................... 43

    5.      The Rescission Claims (Counts VII and IX) Must Be Dismissed Because Rescission Is a Remedy Not a Claim ......................................... 44

    6.      The Accounting Claim (Count IV) Must Be Dismissed Because Accounting Is a Remedy Not a Claim ...................................... 45

    7.      Count X for Violation of Delaware Law Should Be Dismissed Because the Issue is Already Before the Court ...................................... 45

IV.    CONCLUSION ........................................................................................... 45

*Privileged and Confidential* *Attorney Work Product*

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Kinder-Morgan, Inc.*,
  340 F.3d 1083 (10th Cir. 2003) ............................................................... 29

*Allegheny Gen. Hosp. v. Phillip Morris, Inc.*,
  228 F.3d 429 (3d Cir. 2000) .................................................................... 43

*Allison v. Brooktree Corp.*,
  999 F. Supp. 1342 (S.D.Cal. 1998) ........................................................... 20

*Atlantigas Corp. v. Nisource, Inc.*,
  290 F. Supp. 2d 34 (D.D.C. 2003) ............................................................. 9

*Bakerman v. Sidney Frank Importing Co.*,
  C.A. No. 1844-N, 2006 Del. Ch. LEXIS 180 (Oct. 10, 2006) ........................ 44

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) .............................................................................. 18

*Began v. Dixon*,
  547 A.2d 620 (Del. 1988) ....................................................................... 34

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007) ........................................................................... 15

*Blue Chip Stamps v. Manor Drug Stores*,
  421 U.S. 723 (1975) .............................................................................. 15

*Brehm v. Eisner (In re Walt Disney Co, Derivative Litig.)*,
  906 A.2d 27 (Del. 2006) ......................................................................... 36

*Burman v. Phoenix Worldwide Indus.*,
  384 F. Supp. 2d 316 (D.D.C. 2005) ..................................................... 16, 25

*Burman v. Phoenix Worldwide Indus., Inc.*,
  437 F. Supp. 2d 142 (D.D.C. 2006) .................................................. 8, 9, 10

*Davis Inc. v. Young*,
  412 A.2d 1187 (D.C. 1980) ..................................................................... 34

*Desimone v. Barrows*,
  924 A.2d 908 (Del. Ch. 2007) ................................................................. 38

*Doolin v. Envtl. Power Ltd.*,
  360 A.2d 493 (D.C. 1976) ....................................................................... 33

*DSAM Global Value Fund v. Altris Software, Inc.*,
  288 F.3d 385 (9th Cir. 2002) ................................................................... 41

*Durning v. Citibank, Int'l*,
  990 F.2d 1133 (9th Cir. 1993) ................................................................. 12

**Table of Authorities**
**(Continued)**

Page(s)

*EEOC v. St. Francis Xavier Parochial Sch.,*
117 F.3d 621 (D.C. Cir. 1997) ..................................................................................... 16

*Ernst & Ernst v. Hochfelder,*
425 U.S. 185 (1976) .............................................................................................. 22, 30

*Falkowski v. Imation Corp.,*
309 F.3d 1123 (9th Cir. 2002) ............................................................................... 13, 18

*Filloramo v. Johnston, Lemon & Co.,*
700 F. Supp. 572 (D.D.C. 1988) ................................................................................. 34

*Fla. State Bd. Of Admin. v. Green Tree Fin. Corp.,*
270 F.3d 645 (8th Cir. 2001) ...................................................................................... 21

*Freeman v. Decio,*
584 F.2d 186 (7th Cir. 1978) ...................................................................................... 43

*Friedman v. Manfuso,*
620 F. Supp. 109 (D.D.C. 1985) ..................................................................... 32, 34, 35

*Gassmann v. Eli Lilly & Co.,*
407 F. Supp. 2d 203 (D.D.C. 2005) .................................................................... 32, 33

*Gen. Elec. Co. v. Cathcart,*
980 F.2d 927 (3d Cir. 1992) ....................................................................................... 28

*GTE New Media Services, Inc. v. BellSouth Corp.,*
199 F.3d 1343 (D.C. Cir. 2000) .................................................................................. 11

*Hoffa v. Fitzsimmons,*
673 F.2d 1345 (D.C. Cir. 1982) .................................................................................. 32

*Howard v. Everex Sys., Inc.,*
228 F.3d 1057 (9th Cir. 2000) .................................................................................... 28

*In re Adelphia Commc'ns Corp. Securities & Derivative Litig.,*
398 F. Supp. 2d 244 (S.D.N.Y. 2005) ......................................................................... 29

*In re Advanta Corp. Sec. Litig.,*
180 F.3d 525 (3d. Cir. 1999) ...................................................................................... 23

*In re Atmel Corp. Derivative Litig.,*
No. C 06-4592 JF(HRL), 2007 WL 2070299 (N.D. Cal. July 16, 2007) ........................... 23, 24

*In re Baxter Int'l S'holders Litig.,*
654 A.2d 1268 (Del. Ch. 1995) .................................................................................. 37

*In re Computer Science Corp. Derivative Litig.,*
CV 06-05288 MRP (Ex). 2007 U.S. Dist. LEXIS 25414 (C.D. Cal. Mar. 26, 2007) ............... 8

**Table of Authorities**
**(Continued)**

Page(s)

*In re Cornerstone Propane Partners, L.P. Sec. Litig.,*
  355 F. Supp 2d. 1069 (N.D. Cal. 2005) ................................................................. 39

*In re Cray Inc. Derivative Litig.,*
  431 F. Supp. 2d 1114 (W.D. Wash. 2006) .............................................................. 42

*In re Ditech Networks, Inc. Derivative Litig.,*
  2007 WL 2070300 (N.D. Cal. June 16, 2007) ....................................................... 37

*In re Fed. Nat'l Mortgage Ass'ns Sec. Derivative and "ERISA" Litig.,*
  MDL No. 1668, 2007 U.S. Dist. LEXIS 55464 (D.D.C. July 31, 2007) ......................... passim

*In re Gemstar-TV Guide, Int'l Inc., Sec. Litig.,*
  No. CV 02-02775 MRP (PLAx), 2003 U.S. Dist. LEXIS 25884 (C.D. Cal Aug. 15, 2003) ... 27

*In re Gen. Motors (Hughes) S'holder Litig.,*
  No. Civ. A. 20269, 2005 WL 1089021 (Del. Ch. May 4, 2005), aff'd 897 A.2d 162 (Del.
  2006) ..................................................................................................... 35

*In re Greater Se. Cmty. Hosp. Corp.,*
  353 B.R. 324 (Bankr. D. C. 2006) .................................................................. 32, 33

*In re Hypercom Corp. Sec. Litig.,*
  No. CV-05-0455-PHX-NVW, 2006 U.S. Dist. LEXIS 45482 (D. Ariz. July 5, 2006) ...... 39, 41

*In re McKesson HBOC, Inc. Sec. Litig.*
  126 F. Supp. 2d 1248 (N.D. Cal 2000) ............................................................ 26, 27

*In re Oracle Corp. Derivative Litig.,*
  867 A.2d 904 (Del. Ch. 2004), *aff'd,* 872 A.2d 960 (Del. 2005) ................................. 42

*In re Premiere Techs. Inc. Sec. Litig.,*
  No. 1:98-cv-1804-JOF, 2000 WL 33231639 (N.D. Ga. Dec. 8, 2000) ....................... 20, 26

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.,*
  387 F. Supp. 2d 1130 (D. Colo. 2005) ............................................................. 29, 30

*In re Sagent Tech., Inc. Derivative Litig.,*
  278 F. Supp. 2d 1079 (N.D. Cal. 2003) ................................................................. 7

*In re Zoran Corp. Derivative Litig.,*
  No. C-06-05503, 2007 U.S. Dist. LEXIS 43402 (N.D. Cal. June 5, 2007) ................... 15, 44

*King v. Kitchen Magic, Inc.,*
  391 A.2d 1184 (D.C. 1978) ........................................................................... 34

*Kopff v. Battaglia,*
  425 F. Supp. 2d 76 (D.D.C. 2006) ..................................................................... 9

*Kowal v. MCI Commc'ns Corp.,*
  16 F.3d 1271 (D.C. Cir. 1994) ......................................................................... 16

**Table of Authorities**
**(Continued)**

Page(s)

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350 (1991)..................................................................................... 12

*Lewis v. Ward*,
   No. Civ. A. 15255, 2003 WL 22461894 (Del. Ch. Oct. 29, 2003)..................................... 37, 38

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
   437 F.3d 588 (7th Cir. 2006) ............................................................................ 19, 20

*Malpiede v. Townson*,
   780 A.2d 1075 (Del. 2001) .............................................................................. 35

*Meng v. Schwartz*,
   116 F. Supp. 2d 92 (D.D.C. 2000)....................................................................... 31

*Mills v. Electric Auto-Lite Co.*,
   396 U.S. 375 (1970)..................................................................................... 27

*Mullin v. Washington Free Weekly, Inc.*,
   785 A.2d 296 (D.C. 2001) .............................................................................. 32, 33

*Poling v. Farrah*,
   131 F. Supp. 2d 191 (D.D.C. 2001)...................................................................... 11

*Primedical, Inc. v. Allied Inv. Corp.*,
   Civ. A. No. 90-1802(NHJ), 1994 WL 149139 (D.D.C. Mar. 31, 1994)................................. 32

*Rhodes v. Silkroad Equity, LLC*,
   C.A. No. 2133-VCN, 2007 Del. Ch. LEXIS 96 (July 11, 2007) ........................................ 45

*Sao Paulo of the Federative Republic of Braz. v. Am. Tobacco Co.*,
   919 A.2d 1116 (Del. 2007) .............................................................................. 43

*SEC v. Yuen*,
   221 F.R.D. 631 (C.D. Cal. 2004)......................................................................... 27

*Southland Sec. Corp. v. INSpire Ins. Solutions*,
   365 F.3d 353 (5th Cir. 2004) ........................................................................... 20

*Stone v. Ritter*,
   911 A.2d 362 (Del. 2006) .............................................................................. 37

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S. Ct. 2499 (2007)................................................................................. 16, 22

*Thompson, Cobb, Bazilio & Assocs., P.C. v. Grant Thornton LLP*,
   Civil No. 99-8(RMU/JMF), 2002 WL 458997 (D.D.C. Mar. 25, 2002)................................. 32

*Trenwick Am. Litig. Trust .v. Ernst & Young LLP.*,
   906 A.2d 168 (Del. Ch. 2006), *aff'd*, No. 49520062007 WL 2317768 (Del. Aug. 14, 2007) . 37

**Table of Authorities**
**(Continued)**

Page(s)

*United Liberty Life Ins. Co. v. Ryan*,
    985 F.2d 1320 (6th Cir. 1993) ..................................................................... 11

*Vess v. Ciba-Geigy Corp.*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................... 17, 37, 39

*Washington Bancorporation v. Washington*,
    Civ. Action No. 88-3111, 1989 U.S. Dist. LEXIS 11437 (D.D.C. 1989) ............................... 28

*Wheelabrator Techs. Inc. S'holders Litig.*,
    C.A. No. 11495, 1992 WL 212595 (Del. Ch. Sept. 1, 1992)..................... 37

*Wiggins v. Equifax Inc.*,
    853 F. Supp. 500 (D.D.C. 1994) ................................................................. 11

**Statutes**

15 U.S.C. § 78aa ....................................................................................... 11

15 U.S.C. § 78t(a) ..................................................................................... 28

15 U.S.C. § 78u-4 *et seq.* ......................................................................... 16

15 U.S.C. § 78u-4(b)(2) ...................................................................... 17, 22

28 U.S.C. 1367 .......................................................................................... 31

28 U.S.C. 1658(b) ............................................................................ 12, 14, 15

D.C. Code § 12-301(8) (2007)............................................................. 32, 33

D.C. Code § 13-422 (2007)....................................................................... 8, 10

D.C. Code § 13-423 (2007)................................................................... 8, 9, 10

Del. Code. Ann. § 327 ................................................................................. 7

Del. Code. Ann. tit. 8 § 102(b)(7) (2007) ................................................. 36

Fed. R. Civ. P. 12(b)(2)............................................................................... 8

Fed. R. Civ. P. 12(b)(6)............................................................................. 16

Fed. R. Civ. P. 23.1 .......................................................................... 6, 7, 8

**Other Authorities**

16 James Wm. Moore, *Moore's Federal Practice* § 106.66[1],
    pp. 106-86 (3d ed. 2007)............................................................................ 31

3A William M. Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 1174 (2006)......... 43

Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Peter A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso (hereinafter, the "Individual Defendants")[1] move the Court for dismissal of plaintiffs' Consolidated Shareholder Derivative Complaint (the "Complaint").

## I. INTRODUCTION AND BACKGROUND

### A.    The Parties

This shareholder derivative action is brought by three plaintiffs, Broxton Contributory Retirement System, Catherine Molner, and Robert Anderson.  Complaint ¶ 14.  Each is alleged to be a shareholder of Sunrise "at all relevant times," but otherwise the Complaint contains no information about them, and their names do not appear at all in the body of the Complaint.

"Nominal defendant" Sunrise is a Delaware corporation with its principal place of business in McLean, Virginia.  Sunrise is a provider of senior living services with over 415 communities in the United States, Canada, the United Kingdom, and Germany.  *Id.* ¶ 15.

The "Individual Defendants," as defined in the Complaint, include 21 current or former directors and/or officers of Sunrise (19 of whom join in the present motion and memorandum). Although the Complaint improperly attempts to lump all of these defendants together, as discussed further below, it is important to understand that the various individuals plaintiffs have sued are differently situated—they served at Sunrise at different time periods, they served in

---

[1] As used in the Complaint, the term "Individual Defendants" also includes former Sunrise director David G. Bradley and former Sunrise chief financial officer Bradley B. Rush, each of whom is separately represented in this action.  We understand that Messrs. Bradley and Rush are each filing separate motions to dismiss.

many different capacities (i.e., outside director; management director; compensation committee member or not; audit committee member or not; member of management in various roles such as chief financial officer, general counsel, etc.), and they had widely varying stock option awards, stock holdings, and stock sales.

**B.      The Allegations in Plaintiffs' Complaint**

This is primarily a stock option backdating case.  Plaintiffs' Complaint follows a pattern now familiar in a number of option backdating cases:  Based on a "statistical analysis" of long-available public data, plaintiffs "pick" a subset of stock options granted by Sunrise many years ago—between May 1997 and November 2001—and seek to claim based on that statistical analysis (coupled with conclusory statements about group conduct and intent) that those option grants must have been backdated.  *See* Complaint ¶¶ 66-78.  The Complaint sets forth the exercise price of each option and summarily states that the options were "backdated" to an especially advantageous date, such as "one of the lowest prices of Sunrise stock for the fiscal quarter," *Id*. ¶ 68, or "prior to a precipitous rise in the price of Sunrise stock."  *Id*. ¶ 71.  After cataloguing the grants on the fourteen cherry-picked dates, plaintiffs assert, "[e]ach and every one of the aforementioned stock option grants were dated just before a significant increase in Sunrise stock price and/or at or near Sunrise's lowest closing price of the pertinent fiscal quarter or year."  *Id*. ¶ 79.  Plaintiffs then assert—and ask the court to infer—that the reason for these "extraordinary patterns" is that the purported grant dates were not the actual dates of the grants.  *Id*.  "Rather, at the behest of the Individual Defendants, the Stock Option Committee, with the knowledge and approval of the other members of the Board, knowingly and deliberately backdated the stock option grants."  *Id*.  Plaintiffs assert that their statistical analysis reflects "strong evidence" of backdating—but they decline to share their analysis with the Court or subject it to review by defendants.  *Id*. ¶ 6.

From the alleged fact of this backdating plaintiffs claim that various public filings by Sunrise were necessarily false and misleading.  Plaintiffs assert that the purported backdating "violated the terms of the Company's stock option plans, resulted in options grants with lower exercise prices . . . and improperly reduced the amounts the [recipients] had to pay to the Company upon the exercise of the options,"  Complaint ¶ 79, and hence that Sunrise's annual proxy statements representing that stock option grants were made in compliance with the stock option plans were false and misleading.  *Id*. ¶ 102.  Similarly, plaintiffs claim that SEC Form 4s filed by defendants disclosing the grants were false because they did not reveal the "true grant dates" of the allegedly backdated options.  *Id*. ¶ 104-05.  And plaintiffs allege that the improperly backdated options were not accounted for correctly, leading Sunrise to "materially understate Sunrise's compensation expense and materially overstate the Company's net income or materially understate its net loss" in financial statements filed with the SEC.  *Id*. ¶ 91.

Quite independent and unrelated to the core "options backdating" aspects of this case, plaintiffs tack onto their Complaint the allegation—based solely on disclosures made by Sunrise itself—that in more recent times the Individual Defendants "caused" Sunrise to engage in "improper accounting of the company's real estate joint ventures" in violation of Generally Accepted Accounting Principals ("GAAP").  Complaint ¶ 91-92.  Plaintiffs allege that this alleged improper joint venture accounting led Sunrise to "materially understate Sunrise's compensation expense and materially overstate the Company's net income or materially understate its net loss" in financial statements filed with the SEC.  *Id*. ¶ 91.

Based on these allegations, the Complaint contains eleven "Counts," three asserted under federal law and the rest under Delaware state law.  Counts I, II and III attempt to assert claims under §§ 10(b), 14(a), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"),

respectively. Counts IV-XI attempt to assert a myriad of state law "claims" which, stripped to their essence, consist of (a) a claim for breach of fiduciary duty, (b) a claim for insider trading, and (c) various other "claims" that consist of little more than either requests for remedies (accounting, rescission) or disguised breach of fiduciary duty claims ("unjust enrichment").

## II. SUMMARY OF ARGUMENT

All of plaintiffs' federal securities claims must be dismissed, for several independent reasons. First, plaintiffs' Exchange Act claims are precluded by the applicable statutes of limitations. The events at issue—stock options granted during the period 1997-2001—all occurred long ago, and claims based on those events are plainly barred by the statute of limitations applicable to Exchange Act claims. Second, even if these claims were not time-barred, they must still be dismissed because plaintiffs fail to allege their claims with the particularity needed to satisfy the stringent standards of Federal Rule of Civil Procedure 9(b), the Exchange Act, and the Private Securities Litigation Reform Act, either as to (a) whether any Individual Plaintiff engaged in any misconduct, or (b) whether any Individual Defendant acted with the requisite degree of scienter. In addition, plaintiffs' § 10(b) claim fails because plaintiffs have not adequately alleged the key element of reliance, and (somewhat similarly) plaintiffs' § 14(a) claim fails because plaintiffs have not adequately pleaded that the purportedly misleading proxy statements were an "essential link" to a qualifying transaction. Finally, because the underlying § 10(b) and § 14(a) claims fail, plaintiffs' "secondary liability" § 20(a) claim necessarily fails as well; that claim also must be dismissed for the separate reason that plaintiffs have not adequately alleged that any of the supposed controlling persons "culpably participated" in any underlying violation, as required for a § 20(a) claim.

Because plaintiffs have not stated a claim under the federal securities laws, this Court lacks subject matter jurisdiction over plaintiffs' remaining state law claims and should dismiss

those claims on this ground.  Should the Court reach those claims, however, they must also be dismissed on the merits.

Plaintiffs set forth an assortment of claims sounding in state law.  The centerpiece of these claims is Count V, which purports to set forth a claim for breach of fiduciary duty. Plaintiffs claim that the Individual Defendants breached their fiduciary duties by "engaging in a scheme to grant backdated stock options to themselves and/or certain other officers and directors of the Company and cover up their misconduct." Complaint ¶ 192.  Plaintiffs allege that the Individual Defendants also engaged in other behavior that breached their duties to Sunrise, including "colluding with each other to improperly account for [certain of] Sunrise's real estate joint venture start-up losses and real estate sale gains," "colluding with each other to violate GAAP and" tax law for accounting for backdated options, and "colluding with each other to produce and disseminate . . . false financial statements . . . false proxy statements . . . and false Form 4's"  *Id*. ¶ 148.

Plaintiffs' fiduciary breach claim must be dismissed.  To the extent that the alleged breach is based on the same purported "backdating scheme" at the heart of the plaintiffs' § 10(b) and § 14(a) claims, it fails for the same reasons:  it is barred by the applicable statute of limitations, and plaintiffs have failed to allege the conduct with sufficient particularity, as required by the Federal Rules of Civil Procedure and prevailing law.  Similarly, plaintiffs also have failed to plead with particularity their claims that the Individual Defendants colluded to improperly account for certain joint ventures and colluded to produce, disseminate, and file false financial statements and proxy statements.  Plaintiffs are left with the bare allegations that certain accounting may not have complied with GAAP, and that some securities filings contained

inaccuracies. These allegations are insufficient to state a claim for breach of fiduciary duty, and the claim must be dismissed.

Plaintiffs press additional claims as well, none with any merit. In Count XI, plaintiffs claim that certain defendants traded Sunrise stock on inside information. This claim must be dismissed because plaintiffs do not allege that Sunrise, on whose behalf the plaintiffs bring this derivative suit, was harmed by the alleged conduct. Counts VI and VIII claim that recipients of allegedly backdated or ultra vires options have been unjustly enriched, but these claims merely restate the fiduciary breach claim in the language of equity. Because that claim must be dismissed, so must the equitable equivalent. Finally, Count IV seeks an accounting, while Counts VII and IX seek rescission of all contracts pertaining to the allegedly backdated options. These three claims should be dismissed because accounting and rescission are remedies rather than causes of action. Thus, all of plaintiffs' purported state law claims, like their federal law claims, are subject to dismissal. Accordingly, the Court should dismiss the Complaint.

## III. ARGUMENT

**A.      Plaintiffs Have Failed to Plead Demand Futility Adequately, and Thus This Action Must Be Dismissed for Failure to Make the Requisite Pre-Suit Demand Upon Nominal Defendant Sunrise**

As addressed in the separate Memorandum of Points and Authorities in Support of the Motion to Dismiss Or, In the Alternative, to Stay By Nominal Defendant Sunrise Senior Living, Inc. ("Sunrise's Memorandum"), this action is subject to dismissal because (1) plaintiffs have failed to make pre-suit demand upon Sunrise as required by Fed. R. Civ. P. 23.1 and applicable Delaware law, and (2) plaintiffs' attempt to excuse this failure to make demand based on assertions of "demand futility" must be rejected. In the alternative, should this case not be dismissed on this (or another) basis, the Court should stay the present action until the related

class action litigation also pending before this Court is finally resolved.  The Individual

Defendants hereby join in the arguments on these points set forth in Sunrise's Memorandum.

**B.    This Case Must Be Dismissed Because the Complaint Fails to Allege That Plaintiffs Have Owned Sunrise Stock Continuously from 1997 to the Present, And Thus Fails to Allege That Plaintiffs Have Standing to Pursue Derivative Claims**

To have standing to bring a derivative action, plaintiffs must have owned stock at the

time of the alleged wrong and continue to own it throughout the litigation.  Fed. R. Civ. P. 23.1;

Del. Code. Ann. § 327.  To satisfy this requirement at the pleading stage, plaintiffs are therefore

required to plead (1) when they purchased their stock, and (2) that they have owned that stock

continuously up to the present time.

> A derivative plaintiff has no standing to sue for misconduct that occurred prior to the time he became a shareholder of the corporation.  Thus, the complaint must indicate when plaintiffs bought stock . . . , and must state that they have owned stock continuously since the date of the filing of the lawsuit (if they have).

*In re Sagent Tech., Inc. Derivative Litig.,* 278 F. Supp. 2d 1079, 1096 (N.D. Cal. 2003) (internal

citations omitted).  Here, plaintiffs seek to bring derivative claims based on, *inter alia*, the

alleged backdating of Sunrise stock options during the period "from May 1997 through

November 2001."  Complaint ¶ 5; *see also id*. ¶¶ 2, 6, 7, 66-79 (claims based on events from

1997 and later).  Thus, to establish standing, plaintiffs must allege and prove that they have

owned Sunrise stock continuously from May 1997 to date.

Plaintiffs' Complaint does not satisfy this requirement.  Rather than setting forth specific

allegations regarding plaintiffs' stock ownership, the Complaint contains only the vague

assertion that plaintiffs "are, and were at all relevant times, shareholders of nominal defendant

Sunrise."  Complaint ¶14; *see also id.* ¶ 161 ("Plaintiffs are owners of Sunrise common stock

and were owners of Sunrise common stock at all times relevant hereto").  Such conclusory

language falls far short of the specificity required to establish that plaintiffs have standing to

bring derivative claims.  *See In re Computer Science Corp. Derivative Litig*., CV 06-05288 MRP

(Ex), 2007 U.S. Dist. LEXIS 25414, at *42 (C.D. Cal. Mar. 26, 2007) (rejecting as insufficient

allegations that each plaintiff "is, and was during the relevant period," or "is, and was at all times

relevant" a shareholder of nominal defendant).  Indeed, plaintiffs' decision to use the ethereal

phrase "at all relevant times," rather than to plead *facts*, suggests if anything that plaintiffs are

aware that they *cannot* meet the requisite stock ownership requirement to bring the derivative

claims sought to be asserted here.  Because plaintiffs have in any event failed even to allege that

they owned Sunrise stock continuously from 1997 to the present as required under Fed. R. Civ.

P. 23.1 and Delaware Code Section 327, the Complaint must be dismissed for lack of standing.

**C.    The Complaint Also Must Be Dismissed Because It Fails to Plead Any Basis for the
        Court to Exercise Personal Jurisdiction Over Any of the Individual Defendants**

This case must also be dismissed, pursuant to Fed. R. Civ. P. 12(b)(2), because plaintiffs

have not made allegations sufficient to invoke this Court's personal jurisdiction over any of the

Individual Defendants.

In this Court, personal jurisdiction may be based either upon the Court's "general

jurisdiction" over an individual pursuant to D.C. Code § 13-422 (2007), or upon "specific

jurisdiction" as defined in the District of Columbia's long-arm statute, D.C. Code § 13-423

(2007).  *Burman v. Phoenix Worldwide Indus., Inc*., 437 F. Supp. 2d 142, 147 (D.D.C. 2006)

(Walton, J.).  "General jurisdiction" can be exercised over a defendant who is "domiciled in,

organized under the laws of, or maintain[s] his or its principal place of business in" the District

of Columbia.  D.C. Code § 13-422 (2007).  "Specific jurisdiction" can be exercised

(a)    . . . . over a person, who acts directly or by an agent, as to a claim for relief
         arising from the person's:

       (1)    transacting any business in the District of Columbia;
       (2)    contracting to supply services in the District of Columbia;

(3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; . . . .

(b) When jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him.

D.C. Code § 13-423 (2007).

Plaintiffs bear the burden of establishing the Court's personal jurisdiction over each of the Individual Defendants.  Plaintiffs cannot adequately allege the existence of personal jurisdiction simply by parroting the language of the statute or otherwise offering mere generalized boilerplate.  Rather, as this Court has made clear, plaintiffs "must allege specific facts on which personal jurisdiction can be based; [they] cannot rely on conclusory allegations." *Burman*, 437 F. Supp. at 147 (quoting *Atlantigas Corp. v. Nisource, Inc*., 290 F. Supp. 2d 34, 42 (D.D.C. 2003)).  *See also Kopff v. Battaglia*, 425 F. Supp. 2d 76, 80-81 (D.D.C. 2006) ("plaintiffs must allege specific facts upon which personal jurisdiction may be based") (internal quotations and citations omitted).  Further, the requisite "specific facts" must be set forth separately for each defendant; "plaintiffs cannot aggregate factual allegations concerning multiple defendants in order to demonstrate personal jurisdiction over any individual defendant." *Id*. at 81.

Nothing in the Complaint remotely alleges the requisite "specific facts" necessary to provide a basis for this Court to exercise either "general" or "specific" jurisdiction over any of the Individual Defendants, much less all of those defendants.  The Complaint is utterly bereft of any factual allegations *at all* connecting this action to the District of Columbia—indeed, the

phrases "Washington, D.C." or "District of Columbia" do not even appear in the body of the Complaint.

The only allegations in the Complaint that even potentially relate to the question of personal jurisdiction *at all* are found in one paragraph of the Complaint that attempts, in classic boilerplate language, merely to support *venue* in this Court. That paragraph states, in its entirety:

> 13.    Venue is proper in this district because a substantial portion of the transactions and wrongs complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this district. One or more of the defendants either resides in or maintains executive offices in this district, and defendants have received substantial compensation in this district by engaging in numerous activities and conducting business here, which had an effect in this district.

These "conclusory allegations"—so obviously disconnected to any specific fact in this case to be utterly meaningless—cannot possibly support finding the existence of personal jurisdiction over the Individual Defendants. *Burman*, 437 F. Supp. at 147.

Given the basic nature of this lawsuit—a shareholder derivative action based primarily upon breach of fiduciary duty claims against the directors and officers of a Delaware corporation headquartered in Virginia—it is hardly surprising that the Complaint contains nothing that would justify pursuing such claims against the Individual Defendants in this forum. The only surprising point, perhaps, is that the Complaint apparently *does not even try* to do so. Without doubt, the Complaint fails to allege any basis for the exercise of personal jurisdiction under D.C. Code §§ 13-422 or 13-423.

For the same reasons, the Complaint fails to allege a basis for personal jurisdiction over nominal defendant Sunrise. Even assuming *arguendo*, however, that the Court can exercise personal jurisdiction over Sunrise, such jurisdictional authority does not extend to the Individual Defendants. Personal jurisdiction over the employees or officers of a corporation in their individual capacities must be based on their own personal contacts with the forum and not on

their acts and contacts carried out solely in a corporate capacity.  *See Wiggins v. Equifax Inc.*, 853 F. Supp. 500, 503 (D.D.C. 1994).  Acts on behalf of Sunrise simply "do not create sufficient contacts" with the District of Columbia to establish personal jurisdiction.  *Id.*

Finally, plaintiffs may believe that Section 27 of the Exchange Act, 15 U.S.C. § 78aa— which vests jurisdiction over Exchange Act cases in the district courts and sets forth requirements for venue—effectively confers personal jurisdiction over any defendant with minimum ties to the United States.  *See, e.g., United Liberty Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993).  This Court has rejected that conclusion.  *See Poling v. Farrah*, 131 F. Supp. 2d 191, 192-93 (D.D.C. 2001) (citing *GTE New Media Services, Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350-51 (D.C. Cir. 2000)).  Rather, this Court's careful reading of Section 27 recognizes that venue would be proper in any district "wherein any act or transaction constituting a violation occurred," *id.* at 193, and that personal jurisdiction would lie only if Section 27's venue requirements were met; that is, "if this district is one in which 'any act or transaction constituting the violation occurred.'"  *Id.*  As discussed above, however, plaintiffs make no allegation that any such "act or transaction" occurred in the District of Columbia.  Because plaintiffs' allegations do not satisfy Section 27's venue requirements, the Court lacks personal jurisdiction over the Individual Defendants under this provision as well, and dismissal is warranted.

**D.    The Federal Claims Are Barred by the Applicable Statutes of Limitations**

As noted above, plaintiffs seek to assert causes of action under three provisions of the Exchange Act:  § 10(b) and SEC Rule 10b-5 promulgated thereunder, the principal "anti-fraud" provision of the statute (Count I); § 14(a), which applies to proxy statements (Count II); and § 20(a), the "controlling person" provision of the Exchange Act (Count II).  As discussed below,

11

it is plain from the face of the Complaint that the § 10(b) claim and the § 14(a) claims are time-barred, and the § 20(a) claim cannot survive without them.

1.  **Plaintiffs' § 10(b) Claim (Count I) Is Time-Barred**

    a.  **Because The Alleged Backdating Occurred More Than Five Years Before the Complaint Was Filed, the § 10(b) Claim is Barred by the Five-Year Statute of Repose**

Count I alleges that all of the Individual Defendants engaged in securities fraud prohibited by § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.  Complaint ¶ 170-175.  Specifically, the Complaint alleges that Sunrise "relied upon the Individual Defendants' fraud in granting the recipients of [sic] backdated and ultra vires stock options to purchase shares of the Company's common stock, as alleged herein," and that the Company has sustained damages as a result.  *Id.* ¶¶ 174-175.  This claim must be dismissed because every instance of alleged backdating occurred outside the applicable limitations period.

As amended by the Sarbanes-Oxley Act of 2002, the Exchange Act provides that a § 10(b) claim must be brought by the *earlier* of (1) two years from the discovery of facts constituting the violation or (2) five years after the violation.  28 U.S.C. § 1658(b).  Because the five-year limitations period serves as a statute of repose, equitable tolling is not available. *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991).

Plaintiffs seek to allege fourteen instances of grants of backdated options, the first of which was dated May 2, 1997, and the last of which was dated November 12, 2001, and also two instances of grants of "ultra vires" stock options, one dated March 3, 1998 and one dated May 11, 2001.  *See* Complaint ¶¶ 66-79, 80-85.  Plaintiffs' earliest § 10(b) claim thus accrued on or about May 2, 1997, and plaintiffs' last claim accrued on or about November 12, 2001.  *See Durning v. Citibank, Int'l*, 990 F.2d 1133, 1136-37 (9th Cir. 1993) (recognizing the federal rule that a cause of action accrues upon completion of the sale of the instrument); *Falkowski v.*

*Imation Corp.*, 309 F.3d 1123, 1129-30 (9th Cir. 2002) (describing grant of option as a "purchase or sale" for purposes of federal securities laws). Accordingly, the five-year statute of repose under 28 U.S.C. § 1658(b) for the *last* of plaintiffs' § 10(b) claims expired no later than on or about November 12, 2006. Plaintiffs' first complaint in this matter, however, was not filed until January 19, 2007. Because plaintiffs commenced this action after the expiration of the limitations period set forth in 28 U.S.C. § 1658(b), their § 10(b) claims must be dismissed.

### b. Plaintiffs' § 10(b) Claim Is Also Barred by the Separate Requirement That Claims Be Brought Within Two Years of Discovery of Facts Constituting the Violation

While the Court need not reach the issue, plaintiffs' § 10(b) claim is also barred by the two-year period in 28 U.S.C. § 1658(b), which runs from the discovery of facts constituting the violation.

In this lawsuit plaintiffs base their "backdating" case upon what they contend is a "striking pattern over four consecutive years—1997-2000—[during which] Sunrise's Board purportedly granted options when Sunrise stock was trading at or near its yearly low price." Complaint ¶ 5. As plaintiffs candidly admit, they identify the specific "eleven out of thirteen option grants dated from May 1997 through November 2001" they allege to be backdated based on a "statistical analysis" that "examines the twenty-day return of each stock option grant listed in the Company's proxy statement for each year of the relevant period." *Id.* ¶¶ 5-6 and n.2; *see also id.* ¶¶ 66-79 (giving specific data for each grant).

*All of this information*—the dates of grants, the exercise price of the grants, and the contemporaneous trading prices of Sunrise common stock—*has been publicly available since the issuance of Sunrise's proxy statements in 2002 and earlier years.* Similarly, the basis for plaintiffs' assertion that one grant from 1998 and another from 2001 were "ultra vires"—in particular, the fact that the prices used for those grants was the closing price on the grant date

13

rather than the closing price the day before as the publicly-filed Sunrise stock option plans purportedly required, *id*. ¶¶ 80-85—likewise has been available since the issuance of those same proxy statements. Thus, the two-year "discovery" limitations period necessary began running no later than 2002, and hence also expired long before this action was commenced in January 2007. For this independent reason, therefore, plaintiffs' § 10(b) claim is time-barred and must be dismissed.

### 2. Plaintiffs' § 14(a) Claim (Count II) Is Time-Barred

#### a. Because the Allegedly Misleading Proxy Statements Were All Issued More Than Three Years Before the Complaint Was Filed, Plaintiffs' § 14(a) Claim is Barred by the Three-Year Statute of Repose Applicable to Negligence-Based Claims Under the Exchange Act

Count II alleges that all of the Individual Defendants violated § 14(a) of the Exchange Act when the Company purportedly issued false proxy statements that failed to disclose the alleged stock option backdating scheme. *See* Complaint ¶¶ 176-181. This claim, like the § 10(b) claim, is time-barred.

In an apparent attempt to take advantage of the lower "negligence" scienter standard applicable in a § 14(a) claim (as compared to the scienter standard that governs plaintiffs' § 10(b) claim), plaintiffs allege in Count II that the Company's issuance of false proxy statements was caused by the Individual Defendants' failure to "exercise [] reasonable care." Complaint ¶ 179. Since plaintiffs' § 14(a) claim thus sounds in negligence, not fraud, the statute of limitations governing § 10(b) and other "fraud" claims, 28 U.S.C. § 1658(b), does not apply here. Instead, 28 U.S.C. § 1658(a), which governs claims that do not sound in fraud, provides the applicable statute of limitations for Count II. Under that provision, plaintiffs' claim must be filed within one year after discovery of the facts constituting the violation, and in no event more

than three years after the violation. *See In re Zoran Corp. Derivative Litig*., No. C-06-05503,

2007 U.S. Dist. LEXIS 43402, at \*68 (N.D. Cal. June 5, 2007).

The Complaint alleges that Sunrise disseminated proxies containing misstatements on

five occasions between April 3, 1998 and April 5, 2002.  Complaint ¶ 102(e).  Plaintiffs' earliest

§ 14(a) claim thus expired no later than April 3, 2001, and plaintiffs' last § 14(a) claim expired

no later than April 5, 2005—long before the present litigation was commenced.  Plaintiffs'

§ 14(a) claim is thus clearly barred by the statute of limitations.[2]

**E.     Plaintiffs Have Failed to State a Claim for Any Alleged Federal Securities Law
Violation, and Hence Plaintiffs' Federal Causes of Action Must Also Be Dismissed
for This Independent Reason**

**1.     Standard Of Review**

A motion to dismiss for failure to state a claim must be granted if the complaint does not

contain "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v.

Twombly*, 127 S. Ct. 1955, 1974 (2007), and there is no "'reasonably founded hope'" that the

plaintiff can make a case, *id.* at 1969 (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S.

723, 741 (1975)).  In considering a motion to dismiss for failure to state a claim upon which

relief can be granted under Federal Rules of Civil Procedure 12(b)(6) and 9(b), this Court must

view the factual allegations in the light most favorable to the plaintiff.  *EEOC v. St. Francis*

---

2   Even if plaintiffs' Section 14(a) claim sounded in fraud, it still would be time-barred.  As
discussed above, the Exchange Act provides that a securities fraud claim must be brought by
the earlier of (1) two years from the discovery of facts constituting the violation or (2) five
years after the violation.  *See* 28 U.S.C. § 1658(b).  Because the initial complaint in this
matter was filed on January 19, 2007, the five-year statute of repose bars claims for alleged
violations before January 19, 2002.  Here, plaintiffs specifically allege that the Company
issued false proxy statements on five occasions:  April 3, 1998; April 6, 1999; April 14,
2000; March 29, 2001; and April 5, 2002.  Because the first four of these were issued before
January 19, 2002, plaintiffs' § 14(a) claims as to those proxy statements are time-barred and
must be dismissed.

*Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997).  However, the Court "need not accept inferences drawn by plaintiff[] if such inferences are unsupported by the facts set out in the complaint."  *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

In addition, as discussed below, plaintiffs' allegations of securities fraud under § 10(b) of the Exchange Act must plead facts from which one can draw a strong inference of scienter. While under Rule 12(b)(6) all inferences must be drawn in the plaintiffs' favor, inferences of scienter survive a motion to dismiss "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007).

## 2.     Plaintiffs Have Failed to Plead a § 10(b) Claim (Count I) with the Necessary Specificity

Even if plaintiffs' § 10(b) claim were not time-barred, it still must be dismissed because plaintiffs have failed to plead their claim in accord with applicable pleading requirements.  To state a claim under Section 10(b) and Rule 10b-5 thereunder, plaintiffs must allege: "(1) the making of a material misrepresentation, or the use of a manipulative or deceptive device; (2) with scienter . . . ; (3) in connection with the purchase or sale of a security; (4) reliance by plaintiff; (5) economic loss; and (6) loss causation (proximate cause)." *See In re Fed. Nat'l Mortgage Ass'ns Sec. Derivative and "ERISA" Litig.*, MDL No. 1668, 2007 U.S. Dist. LEXIS 55464, *45 (D.D.C. July 31, 2007) (hereinafter "*In re Fannie Mae*").

As this Court has noted, Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4 *et seq.*, to curb abusive and meritless lawsuits by enacting heightened pleading requirements for securities cases.  *See Burman v. Phoenix Worldwide Indus.*, 384 F. Supp. 2d 316, 334 (D.D.C. 2005) (Walton, J.).  Among other provisions, the PSLRA requires fraud plaintiffs to specify each misleading statement or omission and specify

why it is misleading.  This is of a piece with Rule 9(b) of the Federal Rules of Civil Procedure,

which requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud

or mistake shall be stated with particularity."  Courts have summarized this standard as requiring

plaintiffs to identify the "who, what, when, where, and how" of each defendant's participation in

the alleged legal violation; absent such allegations, the Complaint cannot survive a motion to

dismiss.  *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).  In addition, the

PSLRA requires that plaintiffs "state with particularity facts giving rise to a strong inference that

the defendant acted with" scienter, the intent to deceive.  15 U.S.C. § 78u-4(b)(2).

Here, plaintiffs' § 10(b) claim must be dismissed for three independent reasons.  First, the

Complaint fails to allege facts that, if true, would support the necessary reliance element of a

§ 10(b) claim.  Second, plaintiffs have not pled the fraud with specificity.  Third and finally,

plaintiffs have not pled facts that lend themselves to a strong inference of scienter.

### a.    Plaintiffs Have Not Alleged Reliance with the Requisite Specificity

A principal problem with plaintiffs' § 10(b) claim—as well as its § 14(a) claim, as

discussed below—is that the Complaint does not, and cannot, adequately allege the *reliance*

element of a federal securities cause of action.  The reason for this is that the very concept—that

"Sunrise," which can only hear, read, think and act through its people, (*i.e.,* the senior executives

at the Company) was somehow misled into entering into securities transactions in "reliance" on

misstatements supposedly made by those same people *to themselves*—is at bottom simply

nonsensical.

To successfully plead a claim under § 10(b), a plaintiff must allege that he, she or it—in

this case Sunrise itself as the nominal defendant—relied on misstatements made by the

defendants in connection with the purchase or sale of a security.  *See Basic Inc. v. Levinson*, 485

U.S. 224, 243 (1988) ("reliance is an element of a Rule 10b-5 cause of action . . . [and] provides

the requisite causal connection between a defendant's misrepresentation and a plaintiff's

injury.").  In an attempt to plead such reliance, plaintiffs allege vaguely in their summary

allegations set forth under the "Count I" heading that "[t]he Company relied on the Individual

Defendants' fraud in granting the recipients of backdated and ultra vires stock options [the right--

*sic*] to purchase shares" of Sunrise stock.  Complaint ¶ 174.  To state that "the Company relied

on the Individual Defendants' fraud," however—whatever it means to "rely on a fraud"—is not

to allege that Sunrise relied on a *misstatement*, as must be alleged to state a claim.  Further,

nowhere either under the heading "Count I" or in the body of the Complaint is any such *relied-

upon* misstatement identified.

Plaintiffs do, of course, attempt to assert that *Sunrise itself* issued misleading proxy

statements and financial statements, Complaint ¶¶ 90-103, and also assert that the Individual

Defendants filed incorrect Form 4s with the SEC, *id.* ¶ 104.  The supposed errors in these

statements, however, if they existed at all, were known by "Sunrise" (*i.e.*, its people), and

furthermore these statements reported transactions that had *already occurred*.  For multiple

reasons it is thus illogical to suggest that Sunrise could have "relied" on such purported

misstatements in granting the options challenged in this case.  *See Falkowski*, 309 F.3d at 1130

(noting that a fraud is "in connection" with a transaction if it "coincides" with the transaction).

Because plaintiffs have failed to allege a statement upon which Sunrise relied, their § 10(b) claim

must be dismissed.

      **b.**      **Plaintiffs Have Failed Adequately to Allege Misconduct by Any Individual Defendant**

Despite the PSLRA's particularity requirements, plaintiffs' Complaint is replete with

generalized allegations, such as the claim that the Individual Defendants "collud[ed] with each

other to backdate stock option grants." Complaint ¶ 148(b).  Similarly, plaintiffs allege that, "at the behest of the Individual Defendants, the Stock Option Committee, with the knowledge and approval of the other members of the Board, knowingly and deliberately backdated stock option grants. . ." *Id*. ¶ 79; *see also id.* ¶ 64.  In making these and other similarly broad allegations, plaintiffs engage in so-called "group pleading," which is an attempt to allege claims against multiple defendants absent specific facts as to some (or in this case any) of them based on assertions of conspiracy or other collective conduct.

Plaintiffs' reliance on the so-called "group pleading" doctrine is misplaced for two reasons.  First, the purpose of the doctrine is to facilitate the pleading of fraud based on published misstatements "conveyed in prospectuses, registration statements, annual reports, press releases, or other 'group-published' information."  *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 602 (7th Cir. 2006).  As described above, plaintiffs cannot allege that the purported victim of the alleged fraud (Sunrise) relied on any such "group published" information.  Second, each of the two U.S. Courts of Appeal that have considered the "group pleading" doctrine have concluded that it is incompatible with the particularity requirements of the PSLRA.  As the Fifth Circuit has explained:

> [The "group pleading" doctrine] cannot withstand the PSLRA's specific requirement that the untrue statement or omissions [at issue in a securities fraud case] be set forth with particularity as to "the defendant" and that scienter be pleaded with regard to "each act or omission" sufficient to give "rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b).  These PSLRA references to "the defendant" may only reasonably be understood to mean "each defendant" in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were all sued in a single action or were each sued alone in several separate actions.

*See Southland Sec. Corp. v. INSpire Ins. Solutions*, 365 F.3d 353, 364-65 (5th Cir. 2004) "The PSLRA requires the plaintiffs to distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud"); *Id*. at 365 (internal quotation omitted).

Although the district courts have not ruled uniformly on the applicability of the "group pleading" doctrine, this Court is among the many that have aligned themselves with the *Southland* and *Makor* courts. *See In re Fannie Mae*, 2007 U.S. Dist. LEXIS 55464, at *49-50; *In re Premiere Techs. Inc. Sec. Litig*., No. 1:98-cv-1804-JOF, 2000 WL 33231639, at *8-11 (N.D. Ga. Dec. 8, 2000); *Allison v. Brooktree Corp*., 999 F. Supp. 1342, 1350 (S.D. Cal. 1998).

Seen in the light of *Southland* and *Fannie Mae*, plaintiffs' generalized allegations fall well short of the PSLRA's requirements.  Plaintiffs broadly allege, for example, that "at the behest of the Individual Defendants, the Stock Option Committee, with the knowledge and approval of the other members of the Board, knowingly and deliberately backdated stock option grants. . ."  Complaint ¶ 79; *see also id.* ¶ 64.  In this blanket allegation, plaintiffs do not identify which Individual Defendants requested which stock option grants to be backdated.  Nor do they identify which Board Members approved which instances of backdating.  Indeed, a review of the Complaint reveals not a single non-conclusory allegation that any Individual Defendant knew that he was either granting, approving, or receiving backdated grants.

Plaintiffs' allegation that the Individual Defendants "collud[ed] with each other to backdate stock option grants," *Id*. ¶ 148(b), fares no better.  Plaintiffs do not plead any facts to describe the role any Individual Defendant played in the alleged collusive scheme, let alone each Individual Defendant's role.  Thus, plaintiffs' fraud allegations fail to "distinguish among those they sue and enlighten each defendant as to his or her particular part in the alleged fraud." *Southland*, 365 F.3d at 365 (internal quotation omitted). Because the Court must "disregard

'catch-all' or 'blanket' assertions that do not live up to the particularity requirements" of the PSLRA, *Fla. State Bd. Of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 660 (8th Cir. 2001) (citation omitted), plaintiffs simply have not adequately alleged misconduct by *any* of the Individual Defendants. All they do, in reality, is offer rank speculation, which this Court has made clear cannot survive a motion to dismiss.

The problem with plaintiffs' "group pleading" allegations is underscored when considering the vastly different tenures of the Individual Defendants. Many of the Individual Defendants were not even affiliated with Sunrise during some or all of the alleged backdating. For example, Defendant Adams did not join the Company until 2000, Complaint ¶ 31, and Defendant Gaul joined the Company in 2002, *Id.* ¶ 29, yet both are among the "Individual Defendants" at whose "behest" stock option grants supposedly were backdated as early as 1997. *See Id.* ¶ 79. Similarly, defendant Smick's service with the Company ended in 1998, *Id.* ¶ 34, and yet plaintiffs include him among the Individual Defendants purportedly involved in the backdating scheme as late as 2001. *See Id.* ¶ 79. The same point could be made by examining the tenure of other defendants, and then comparing their dates of service with the obviously inconsistent allegations lodged against them. This exercise brings home what the courts have held—the type of indiscriminate, broad-brush allegations lodged here are not meaningful allegations at all for purposes of attempting to state a claim under the federal securities laws. Plaintiffs' "group pleading" is inconsistent with the imperatives of the PSLRA, and the Complaint in reality offers nothing else. The Complaint thus fails adequately to allege misconduct as to any of the Individual Defendants, and must be dismissed on this ground among others.

### c.     Plaintiffs Have Failed to Plead Facts Giving Rise to a Strong Inference of Scienter

The PSLRA requires plaintiffs suing for securities fraud to state with particularity facts supporting a "strong inference" that the defendant acted with scienter, 15 U.S.C. § 78u-4(b)(2), that is, the intention "to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193, n.12 (1976). This Court has held that scienter must be pled as to *each* alleged fraudulent act or omission, "sufficient to give rise to a strong inference that the defendant acted with at least *extreme* recklessness." *See In re Fannie Mae*, 2007 U.S. Dist. LEXIS 55464, at*49-50. *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2510 (2007) (stating that PSLRA requires "plaintiffs to plead with particularity facts that give rise to a 'strong'—i.e., a powerful or cogent—inference"). Plaintiffs fail to meet this standard because (1) they fail to allege scienter specifically for each of the Individual Defendants; (2) they rely on inadequate "fraud by title" allegations; and (3) their remaining bare allegations of scienter are conclusory statements that are not supported by facts. The § 10(b) claim therefore must be dismissed on this ground as well.

The Complaint alleges that the Individual Defendants were "directly responsible for the fraud alleged herein" because they "were among the senior management and/or directors of the Company." ¶ 173. The Complaint further alleges that, "[t]hrough their positions of control and authority as officers and/or directors of the Company, each of the Individual Defendants was able to and did control the conduct complained of herein." ¶ 172. (*See also Id.* ¶¶ 16-36, all of which allege, "because of [defendant's] positions, [he or she] knew, consciously disregarded, [was] reckless and grossly negligent in not knowing, or should have known about" alleged misconduct.) These "fraud by title" allegations attribute responsibility for the fraud on the Individual Defendants solely by virtue of the positions they held with the Company. Scienter,

however, cannot be inferred solely because a defendant is a corporate officer or director.  *See Fannie Mae*, 2007 U.S. Dist. LEXIS 55464, at *50; *see also In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 539 (3d. Cir. 1999) ("[A]llegations that a securities-fraud defendant, because of his position within the Company, 'must have known' [about the fraud] are 'precisely the types of inferences which [courts], on numerous occasions, have determined to be inadequate . . .'" to survive a motion to dismiss) (citation omitted).

In a decision issued last month in another stock option backdating case, a California federal district court ruled that virtually identical § 10(b) allegations "do not satisfy the specificity requirement of Rule 9(b) or of the PSLRA."  *In re Atmel Corp. Derivative Litig.*, No. C 06-4592 JF(HRL), 2007 WL 2070299, at *6 (N.D. Cal. July 16, 2007) (compare with Complaint ¶¶ 170-175).  In *In re Atmel*, the court determined that the plaintiffs' allegations "neither identify what roles each defendant played in the alleged backdating scheme, nor allege facts giving rise to a strong inference of scienter on the part of each defendant."  2007 WL 2070299, at *6.  Indeed, even though Atmel had issued public statements suggesting that some options had been backdated, the court held that "that apparent fact does not permit the [] plaintiffs to name any number of individual defendants without providing adequate detail regarding their role and knowledge of the alleged backdating."  *Id.*  On this basis the court dismissed the § 10(b) claim in the *Atmel* matter, and this Court should dismiss plaintiffs' § 10(b) claim for the same reasons.

Plaintiffs' remaining allegations similarly never rise above the merely conclusory.  For example, the Complaint alleges that "the Stock Option Committee . . . with the knowledge and approval of the other members of the Board, knowingly and deliberately . . . backdat[ed] grants of stock options."  Complaint ¶ 64.  The Complaint goes on to allege that "[t]he members of the

Board who were not on the Stock Option Committee had actual knowledge of the backdating"
and that "[t]he entire Board knowingly and deliberately approved the backdating scheme."  *Id.*
¶ 65.  And the Complaint repeats, with little elaboration, that "at the behest of the Individual
Defendants, the Stock Option Committee, with the knowledge and approval of the other
members of the Board, knowingly and deliberately backdated stock option grants. . ." *Id.* ¶ 79.

The mere repetition of the claim that defendants acted "knowingly and deliberately" does
not remedy the allegations' fundamentally conclusory nature.  Plaintiffs do not allege at which of
the Individual Defendant's "behest" the options were backdated.  They do not allege how, when,
or by whom such a request was made.  And tellingly, plaintiffs fail to allege facts that would tend
to suggest—let alone give rise to a strong inference—that any member of the Stock Option
Committee knew that the option grants it approved were backdated.  Similarly, the Complaint
alleges no facts to support the contention that any member of the Board "knowingly and
deliberately approved" improper backdating.  Without such specific allegations, the Complaint
does not demonstrate the required "extreme recklessness" state of mind on the Defendants' part.
*See Fannie Mae*, 2007 U.S. Dist. LEXIS 55464, at *51 (dismissing allegations as to Audit
Committee that failed to address similar questions.); *Burman*, 384 F. Supp. 2d at 334 (rejecting
allegation that defendants "'knowingly and with intent to deceive, failed to disclose'"
information as "nothing more than a conclusory allegation.")

Because plaintiffs have failed to allege with specificity misconduct on the part of any
Individual Defendant, have failed to allege fraud with specificity, and have failed to allege
scienter with particularity, plaintiffs' § 10(b) claim must be dismissed.

### 3.     Plaintiffs Have Failed to Plead a § 14(a) Claim (Count II)

Count II attempts to allege that the Individual Defendants "caused" the Company to issue
proxy statements between 1998 and 2002 that contained material misstatements and therefore

24

violated § 14(a) of the Exchange Act.  Complaint ¶¶ 100, 177.  This claim, brought against all of the Individual Defendants, must be dismissed for three reasons.  First, as discussed above the Complaint improperly adopts a "group pleading" approach that does not allege with particularity the unlawful conduct by any particular one of the Individual Defendants.  Second, the Complaint does not allege facts to support a "strong inference" of negligence, as required by case law interpreting the PSLRA.  Finally, plaintiffs fail to allege that the purported proxy misstatements constituted an "essential link" in accomplishing a corporate transaction that ultimately harmed the Company.

> ### a.     Plaintiffs § 14(a) Claim Fails Because They Do Not Adequately Allege That Any Individual Defendant Made False Statements

Plaintiffs again rely on the "group pleading" doctrine to allege that the Individual Defendants collectively "prepared and/or reviewed" misleading proxies and "caused" them to be sent to shareholders in violation of § 14(a).  Complaint ¶ 100.  As discussed above, this Court has held that the group pleading is incompatible with the particularity requirements of the PSLRA.  *See In re Fannie Mae*, 2007 U.S. Dist. LEXIS 55464, at *50.  Accordingly, under the PSLRA, "any alleged false statements must be set forth <u>with particularity as to each defendant</u>."  *Id*. (emphasis added).

Plaintiffs' allegations do not meet this stringent standard.  Their proxy fraud allegations allege merely that the Individual Defendants collectively "prepared, approved and/or signed Sunrise's annual quarterly SEC reports during the relevant period," Complaint ¶ 90, and that they "knowingly and deliberately caused the Company to disseminate materially false and misleading statements in [these] periodic filings."  *Id*.  Although plaintiffs identify several statements that they believe to be misleading, they do not allege facts to suggest the role that any particular defendant played in "prepar[ing], approv[ing] and/or [signing]" any of these statements.  Indeed,

plaintiffs do not even distinguish between the different roles presumably played by the Officer

Defendants, the Director Defendants, or any other subset of the Individual Defendants such as

Audit Committee members.  Because plaintiffs have not alleged adequate facts supporting a

§ 14(a) claim against any specific defendants, the claim must be dismissed.  *In re Fannie Mae*,

2007 U.S. Dist. LEXIS 55464, at *50; *see also In re Premiere*, 2000 WL 33231639, at *8-11

(dismissing §14(a) claims that were not pled as to the specific defendant).

> **b.    Plaintiffs' § 14(a) Claim Fails Because the Complaint Does Not
> Plead Specific Facts Supporting a Strong Inference of
> Negligence**

Consistent with the PSLRA, a "Section 14(a) plaintiff must plead with particularity facts

that give rise to a strong inference of negligence."  *See In re McKesson HBOC, Inc. Sec. Litig*.

126 F. Supp. 2d 1248, 1267 (N.D. Cal 2000).  Plaintiffs fail to do so.  The Complaint alleges

only that "[i]n the exercise of reasonable care, the [aggregated] Individual Defendants should

have known that the proxy statements were materially false and misleading,"  Complaint ¶ 179,

but lacks any particularized allegations on a defendant-by-defendant basis regarding each

defendant's state of mind.  Such general allegations do not satisfy the PSLRA's particularity

requirements.  *See McKesson*, 126 F. Supp. 2d at 1267 (rejecting similarly formulated claim); *In

re Gemstar-TV Guide, Int'l Inc., Sec. Litig*., No. CV 02-02775 MRP (PLAx), 2003 U.S. Dist.

LEXIS 25884 (C.D. Cal. Aug. 15, 2003) (dismissing § 14(a) claim that lacked specific factual

allegations regarding defendants' state of mind); *see also SEC v. Yuen*, 221 F.R.D. 631, 636-37

(C.D. Cal. 2004) (dismissing § 14(a) complaint based on general and conclusory allegations

regarding defendants' role in a fraudulent scheme).  Because plaintiffs fail to allege any facts that

give rise to an inference of negligence—let alone a "strong" one—plaintiffs' § 14(a) claim must

be dismissed for this second, independent reason.

c.    **The § 14(a) Claim Also Fails Because Plaintiffs Have Alleged No "Essential Link" Between the Proxy Solicitations and Any Corporate Transaction**

Finally, to plead a § 14(a) violation, plaintiffs must allege that the purported proxy misstatements constituted an "essential link" in accomplishing a corporate transaction that ultimately harmed the Company.  *See Mills v. Electric Auto-Lite Co*., 396 U.S. 375, 385 (1970). Because plaintiffs allege no such transaction here, the claim must be dismissed.

Plaintiffs claim in conclusory fashion the allegedly deficient proxy statements "were an essential link in the accomplishment of the continuation of the Individual Defendants' unlawful stock option backdating scheme."  Complaint ¶ 180.  The gist of the "essential link" argument apparently is that the proxy statements permitted the directors to be re-elected and thus allowed them to perpetuate their alleged scheme.  *See Id*. ¶ 101.

This is precisely the type of allegation that courts have found insufficient to establish the necessary "essential link" to support a claim under § 14(a).  Courts have made clear that the mere fact that omissions in proxy materials, by permitting directors to win re-election, indirectly cause harm to the company through the directors' continued unlawful acts does not create "a sufficient nexus" with the alleged harm to the Company.  *Gen. Elec. Co. v. Cathcart*, 980 F.2d 927, 933 (3d Cir. 1992); *see also Washington Bancorporation v. Washington*, Civ. Action No. 88-3111, 1989 U.S. Dist. LEXIS 11437, *62 (D.D.C. 1989) ("it is insufficient to allege that had the directors not been elected, they would not have been around to carry out the injurious actions"). Rather, a § 14(a) claim will lie "only when the votes for a specific corporate transaction requiring shareholder authorization, such as a corporate merger, are obtained by a false proxy statement, and that transaction was the direct cause of the pecuniary injury for which recovery is sought."  *Gen. Elec. Co.*, 980 F.2d at 933.  No corporate merger or other such corporate transaction is alleged in the Complaint.  Because the plaintiffs have alleged only that the proxy

statements led to the re-election of directors, and not to a specific corporate transaction, their § 14(a) claim must be dismissed.

### 4. Plaintiffs Have Failed Adequately to Plead a § 20(a) Claim

In Count III, plaintiffs seek to claim that the Director Defendants and Messrs. Faeder, Slavin, and Hulse are liable as "controlling persons" under § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a). As with plaintiffs' other attempts to plead a cause of action under the federal securities laws, the § 20(a) claim must be dismissed for multiple reasons.

#### a. Plaintiffs' Failure to State A Claim Under § 10(b) or § 14(a) Is Fatal to Their § 20(a) Claim

First, plaintiffs' § 20(a) claim fails because their other Exchange Act claims fail. Section 20(a) is a "secondary liability" statute premised on the existence of an underlying federal securities violation. As set forth above, however, plaintiffs have failed to allege a primary violation of either § 10(b) or § 14(a), and any such claims would be time-barred in any event. Plaintiffs' secondary liability claim under § 20(a) must therefore also be dismissed. *See, e.g., Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

#### b. The § 20(a) Claim Must Be Dismissed Because Plaintiffs Have Not Alleged That Faeder, Hulse, Slavin, or Any Of The Director Defendants Is a Controlling Person

Plaintiffs' § 20(a) claim also fails for a second, independent reason. Even if plaintiffs had properly alleged a violation of § 10(b) or § 14(a), and even if such a claim survived the statute of limitations, the § 20(a) claim must be dismissed because plaintiffs have not adequately alleged that Faeder, Hulse, Slavin, or any of the Director Defendants is a controlling person for purposes of § 20(a).

To allege that an individual is a controlling person, plaintiffs "must allege facts that indicate that the defendant[s] had possession, direct or indirect, of the power to direct or cause

the direction of the management and policies of a person." *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 387 F. Supp. 2d 1130, 1149 (D. Colo. 2005) (internal quotations omitted). Here, plaintiffs rely on a mere recitation of each of individuals' corporate titles, *see* Complaint ¶¶ 16-26, 32, 33, 36, and a boilerplate allegation that each is a controlling person "by virtue of their positions with Sunrise and their specific acts." *Id.* ¶ 183. This is not enough to state a claim under § 20(a). First, "[a] person's status as an officer, director, or shareholder, absent more, is not enough to trigger liability under § 20." *In re Adelphia Commc'ns Corp. Securities & Derivative Litig.*, 398 F. Supp. 2d 244, 262 (S.D.N.Y. 2005) (internal quotation marks and citation omitted); *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1008 (10th Cir. 2003) ("[t]he assertion that a person was a member of a corporation's board of directors, without any allegation that the person individually exerted control or influence over the day-to-day operations of the company, does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act."). Second, plaintiffs do not describe any of the "specific acts," Complaint ¶ 182, that would establish that Faeder, Hulse, Slavin, or any of the Director Defendants specifically possessed the "power to direct or cause the direction of the management and policies" of the primary violator. *See In re Qwest Commc'ns*, 387 F. Supp. 2d at 1149. In the absence of such allegations, the § 20(a) claim must be dismissed. *See Id.* (dismissing § 20(a) claim when plaintiff merely alleged that the defendant was the company's Executive Vice President, General Counsel, Chief Administrative Officer, and Corporate Secretary, but omitted specific allegation of allegations "that indicate that [the defendant] had control over any of the primary violators who committed the violations alleged in the Complaint").

### c. Plaintiffs' Failure to Plead "Culpable Participation" is Fatal to Their § 20(a) Claim

Finally, plaintiffs' § 20(a) claim also fails because plaintiffs have not alleged that any of the Director Defendants—let alone officers Faeder, Slavin, and Hulse—"culpably participated" in the alleged underlying fraud. This Court recently held that "plaintiffs must adequately plead 'culpable participation' on the part of the defendants in the [alleged] underlying primary securities violation" in order to allege a violation of § 20(a). *Fannie Mae*, 2007 U.S. Dist. LEXIS 55464, at *60. The Court's analysis notes that the Supreme Court has characterized § 20(a) as a "state-of-mind provision" which requires proof of "something more than negligence." *Id*. at *62 (citing *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976)). Because the PSLRA's heightened pleading requirements apply to "any private action arising under [the federal securities laws] in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind," *id*. at *64 (citing, *inter alia*, 15 U.S.C. § 78u-4(b)(2)), those requirements apply to § 20(a) claims, and therefore plaintiffs alleging a § 20(a) violation must plead "'particularized facts' of a defendant's culpable participation." *Id*.

Plaintiffs have alleged no such "particularized facts" here. Instead, as discussed above in Section E.2, they provide nothing more than (1) inadequate "fraud by title" allegations and (2) conclusory allegations that the defendants' conduct was "knowing and deliberate." Neither of these is sufficient to overcome PSLRA's heightened pleading standard. Thus, plaintiffs' § 20(a) claim must be dismissed for yet this third reason.

### F. Because Plaintiffs Have Failed to Allege a Federal Claim, the Court Must Dismiss the Entire Case for Lack of Subject Matter Jurisdiction

As explained above, plaintiffs' attempts to plead § 10(b), § 14(a), and § 20(a) claims against the Individual Defendants are fatally flawed and must be dismissed. Given this, the Court lacks the federal question jurisdiction on which the case is premised, Complaint ¶ 5, and

thus lacks original jurisdiction to hear the pendant state law claims. On that basis, the Court

accordingly should also dismiss the remainder of plaintiffs' Complaint. *See* 28 U.S.C. § 1367

(granting the court the discretion to decline to exercise supplemental jurisdiction over pendant

state-law claims); 16 James Wm. Moore, *Moore's Federal Practice* § 106.66[1], pp. 106-86 to

106-89 (3d ed. 2007) (same); *Meng v. Schwartz*, 116 F. Supp. 2d 92, 97 (D.D.C. 2000)

(declining to hear pendant state law claims after dismissal of federal RICO claim).

**G.    Even If the Court Were to Exercise Jurisdiction Over the Pendant State Law Causes of Action Asserted in Counts IV-XI of the Complaint, Those Purported Causes of Action Must Be Dismissed for Failure to State a State Law Claim**

**1.    Plaintiffs' State Law Fiduciary Duty Claims Based on Stock Option Backdating Are Time-Barred**

Counts IV through XI attempt to allege various Delaware causes of action against the

Individual Defendants. At the root of each of these claims—with the exception of Count X,

which alleges a failure to hold an annual meeting—is the allegation that the Individual

Defendants engaged in a stock option backdating scheme from which they profited unjustly at

the expense of the company. *See, e.g.,* Complaint ¶¶ 186, 192, 197, 200, 203, 206, 216. To the

extent that these claims are based on the alleged backdating scheme or on grants of allegedly

ultra vires options, however, plaintiffs' state law claims must fail because the purportedly

unlawful grants were granted well outside of the applicable limitations period, and are thus time-

barred.

**a.    The Allegedly Backdated Options Were Granted Well Outside the Limitations Period**

"[A] federal court must apply the statute of limitations that the court of the forum state

would apply[]" to state law claims. *Friedman v. Manfuso*, 620 F. Supp. 109, 114 (D.D.C. 1985);

*see also Hoffa v. Fitzsimmons*, 673 F.2d 1345, 1361 n.41 (D.C. Cir. 1982). The District of

Columbia regards the question of whether an action is time-barred as procedural, and thus

applies its own statutes of limitation.  *Hoffa*, 673 F.2d at 1361 n.41; *Friedman*, 620 F. Supp. at 114.

 In the District of Columbia, claims "for which a limitation is not otherwise specifically prescribed," including claims for breach of fiduciary duty, are governed by a three-year statute of limitations.  *See* D.C. Code § 12-301(8) (2007); *In re Greater Se. Cmty. Hosp*. Corp., 353 B.R. 324, 351 (Bankr. D. C. 2006) (acknowledging that the District of Columbia applies a three-year statute of limitations to actions for breach of fiduciary duty); *Thompson, Cobb, Bazilio & Assocs., P.C. v. Grant Thornton LLP*, Civil No. 99-8(RMU/JMF), 2002 WL 458997 at *2 (D.D.C. Mar. 25, 2002) (same); *Primedical, Inc. v. Allied Inv. Corp.*, Civ. A. No. 90-1802(NHJ), 1994 WL 149139 at *2 (D.D.C. Mar. 31, 1994), aff'd, 50 F.3d 1096 (D.C. Cir. 1995).  The limitations period begins to run, and any claim accrues, when the alleged injury actually occurs. *Gassmann v. Eli Lilly & Co*., 407 F. Supp. 2d 203, 208 (D.D.C. 2005); *see also Mullin v. Washington Free Weekly, Inc*., 785 A.2d 296, 298, 299 n.4 (D.C. 2001) ("Generally, the cause of action accrues . . .  at the time of the occurrence of a judicially recognizable injury or event constituting a breach of duty.  The statute commences at that time even though the plaintiff is unaware of the accrual of his or her cause of action." (internal quotations omitted) (quoting 2 Calvin C. Corman, *Limitation of Actions* § 11.1.1 (1991)); *see also In re Greater Se. Cmty. Hosp. Corp.,* 353 B.R. at 351 n.38 (noting that Delaware law bars filings more than three years after an alleged breach of fiduciary duty and suggesting its similarity to the District of Columbia statute

of limitations).[3]  The same limitations period applies to plaintiffs' equitable claims.  *See Doolin v. Envtl. Power Ltd.*, 360 A.2d 493, 495-97 (D.C. 1976).

The Complaint in this action was filed on January 19, 2007, and thus the statute of limitations bars any claims that accrued prior to January 19, 2004.  As described in more detail above, all of the wrongful acts alleged by the plaintiffs took place long before this date and therefore are time-barred.  In particular, the Complaint describes fourteen occasions on which stock option grants were allegedly improperly backdated and two occasions on which stock options were allegedly granted ultra vires, all of which took place between May 2, 1997 and November 12, 2001 and which were publicly disclosed shortly thereafter.  *See generally* Complaint ¶¶ 67-85.  Any liability for this conduct was thus extinguished by November 12, 2004, over two years before the Complaint in this case was filed.  *See* D.C. Code § 12-301(8) (2007).  Therefore, plaintiffs' claims based on these instances of allegedly improper backdating are time-barred and must be dismissed.

### b.    There Are No Grounds for Tolling the Statute of Limitations

In cases with allegations involving fraud, the limitations period may be tolled if the plaintiffs did not know, nor reasonably could have known the facts giving rise to the cause of action.  *See Filloramo v. Johnston, Lemon & Co.*, 700 F. Supp. 572, 578 (D.D.C. 1988); *see also King v. Kitchen Magic, Inc.*, 391 A.2d 1184, 1186 (D.C. 1978).  Furthermore, "[w]here the basis of a cause of action is fraudulently concealed from a plaintiff[]" such that the plaintiff cannot

---

[3] Only when "the relationship between the fact of injury and the alleged tortious conduct [is] obscure," *Gassmann*, *Gassmann v. Eli Lilly & Co.*, 407 F. Supp. 2d 203, 208 (D.D.C. 2005), do District of Columbia courts apply the discovery rule in which the statute of limitations does not begin to run "until plaintiffs know or reasonably should have known that they suffered injury due to the defendants' wrongdoing." *Mullin*, 785 A.2d at 299 (internal quotations omitted) (alteration in original).

know, or by the exercise of due diligence could not have discovered the wrong, the statute of limitations may be tolled. *See Davis Inc. v. Young*, 412 A.2d 1187, 1191-92 (D.C. 1980); *Friedman*, 620 F. Supp. at 114.

The Complaint itself belies any attempt to toll the statute of limitations. First, as discussed above, plaintiffs' allegations of improper backdating are premised on information— grant dates, grant prices, and stock market closing prices—that was publicly disclosed years ago. The Company's securities filings put plaintiffs on inquiry notice of the terms of the option grants; thus, plaintiffs reasonably could have known the facts giving rise to the cause of action. *See Friedman*, 620 F. Supp. at 114 ("The test of due diligence measures the plaintiff's efforts to uncover his cause of action against what a reasonable person would have done in his situation given the same information." (internal quotations omitted)). Here, the only newly-discovered "fact" is plaintiffs' theory of recovery, embodied in plaintiffs' allegation that the previously-disclosed option grant dates are "indicative of a pattern indicative of backdating." *See* Complaint ¶ 6. This is insufficient to toll the statute of limitations. *See, e.g., Began v. Dixon*, 547 A.2d 620, 623-34 (Del. 1988) ("If all parties were allowed to toll the statute until they learned of the legal theory of a proposed action . . . there would be no purpose to the statute of limitations.").

### c.    There Was No Fraudulent Concealment

Nor can plaintiffs allege fraudulent concealment. To do so, plaintiffs would have to plead that the Defendants engaged in some "affirmative act tending to conceal the cause of action or a misrepresentation" rising to the level of some "trick or connivance intended to exclude suspicion and to prevent discovery of the cause of action by the use of ordinary diligence." *Friedman*, 620 F. Supp. at 114 (internal quotations omitted). But the Complaint simply lacks any non-conclusory allegations that any of the Individual Defendants was engaged

in any "affirmative act" or "misrepresentation" rising to the level of a "trick or connivance intended to exclude suspicion and to prevent discovery of the cause of action." *Id.*  Moreover, plaintiffs' descriptions of allegedly improper backdating is based solely on information that was publicly available, further undermining any attempt to allege a "trick or connivance."  Because plaintiffs were on inquiry notice of the facts that underlie their claims, they cannot argue that the limitations period should be tolled, and plaintiffs' claims must be dismissed as time-barred.

## 2. Plaintiffs Have Not Pled a Breach of Fiduciary Duty Claim (Count V)

Count V of the Complaint alleges that the Individual Defendants "breached their fiduciary duties [to Sunrise] by, among other things, engaging in a scheme to grant backdated stock options to themselves and/or certain other officers and directors of the Company and cover up their misconduct." Complaint ¶ 192; *see also id.* ¶ 148(b) (alleging that the Individual defendants "collude[ed] with each other to backdate stock option grants.").[4]  Elsewhere, the Complaint alleges that the Individual Defendants engaged in other behavior that breached their duties to Sunrise, including "colluding with each other to improperly account for [certain of] Sunrise's real estate joint venture start-up losses and real estate sale gains," "with each other to violate [Generally Accepted Accounting Principles] and" tax law for accounting for backdated options, and "colluding with each other to produce and disseminate . . . false financial statements . . . false proxy statements . . . and false Form 4's" Id. ¶ 148.  To the extent that this count is

---

[4]  Plaintiffs style Count V as a claim against all of the Individual Defendants for "breach of fiduciary duty and/or aiding and abetting."  A claim for aiding and abetting a breach of fiduciary duty may only be asserted against non-fiduciaries.  However, all of the Individual Defendants are (or were) officers and/or directors of Sunrise Senior Living, Inc., and therefore are (or were) fiduciaries.  Plaintiffs claim for "aiding and abetting" therefore must be dismissed.  *See In re Gen. Motors (Hughes) S'holder Litig.*, No. Civ. A. 20269, 2005 WL 1089021, at *21 (Del. Ch. May 4, 2005), aff'd 897 A.2d 162 (Del. 2006); *Malpiede v. Townson*, 780 A.2d 1075, 1096 (Del. 2001).

based on alleged breaches of the duty of care, it is barred by Delaware law and the Company's

certificate of incorporation.  To the extent that this count alleges a breach of the duty of loyalty,

it sounds in fraud and yet fails to meet the particularity standards of Rule 9(b) and the "scienter"

state-of-mind requirements of Delaware law.

### a.    Directors Cannot Be Liable for Duty of Care Claims

Delaware General Corporation Law § 102(b)(7) provides that a company's certificate of

incorporation may eliminate its directors' personal liability for any breach of fiduciary duties

except:

> (i) for any breach of the director's duty of loyalty to the corporation or its
> stockholders; (ii) for acts or omissions not in good faith or which involve
> intentional misconduct or a knowing violation of law; (iii) [improper dividends or
> stock redemptions]; or (iv) for any transactions from which the director derived an
> improper personal benefit.

8 Del. C. § 102(b)(7) (2007).  A company may thus "exculpate [its] directors from monetary

damage liability for a breach of the duty of care."  *In re Walt Disney Co, Derivative Litig.*, 906

A.2d 27, 65 (Del. 2006).  Sunrise's certificate of incorporation closely tracks § 102(b)(7) and

provides in relevant part:

> *No director of the Corporation shall be liable to the Corporation or its
> stockholders for monetary damages for breach of fiduciary duty as a director,*
> provided that this provision shall not eliminate or limit the liability of a director
> (a) for any breach of the director's duty of loyalty to the Corporation or its
> stockholders; (b) for acts or omissions not in good faith or which involve
> intentional misconduct or a knowing violation of law; (c) under Section 174 of
> the Delaware General Corporation Law; or (d) for any transaction from which
> the director derived an improper personal benefit.

Exh. A (emphasis added).[5]  Because Sunrise's certificate of incorporation contains an

exculpatory provision that eliminates liability for its directors to the full extent allowed under

Delaware law, any claim against Sunrise's directors based on the duty of care must fail as a

matter of law.

<strong>b.      Plaintiffs Have Not Made Particularized Allegations or Factual<br>Allegations that the Director Defendants Acted with the<br>Required Intent or Bad Faith</strong>

In the stock options backdating context, a fiduciary duty claim sounds in fraud, and

therefore it must be pled with particularity.  *See In re Ditech Networks, Inc. Derivative Litig.*,

2007 WL 2070300, at *10 (N.D. Cal. June 16, 2007) (holding Rule 9(b) standard applied

because options backdating claims sound in fraud); *accord Lewis v. Ward*, No. Civ. A. 15255,

2003 WL 22461894, *4 (Del. Ch. Oct. 29, 2003) (examining complaint "against the

particularized pleading standard of Rule 9(b)").  Plaintiffs must plead the "who, what, when,

where, and how" of each defendant's participation in the allegedly disloyal conduct.  *Vess*, 317

F.3d at 1106 (9th Cir. 2003).  Plaintiffs have failed to plead such facts here.

In addition, a violation of the duty of loyalty and good faith "requires conduct that is

qualitatively different from, and more culpable than, the conduct giving rise to a violation of the

fiduciary duty of care."  *Stone v. Ritter*, 911 A.2d 362, 369 (Del. 2006).  This is similar to the

scienter requirement under the Exchange Act, as amended by the PSLRA.  *See Trenwick Am.

Litig. Trust .v. Ernst & Young LLP.*, 906 A.2d 168, 207-08 (Del. Ch. 2006), *aff'd*, No.

49520062007 WL 2317768 (Del. Aug. 14, 2007).  "[B]ecause they are protected by the

---

[5]  Exhibit A hereto is the Certificate of Incorporation of Sunrise Senior Living, Inc., which is filed with the Secretary of State of Delaware, and of which the Court may take judicial notice.  *See In re Baxter Int'l, Inc. S'holders Litig.*, 654 A.2d 1268, 1270 (Del. Ch. 1995); *In re Wheelabrator Techs. Inc. S'holders Litig.*, C.A. No. 11495, 1992 WL 212595, at *3 (Del. Ch. Sept. 1, 1992).

exculpation clause, the directors can only be held liable if they act with a state of mind that is

disloyal to their obligations to the corporation.  In [the backdating context], that would likely

require a finding that the compensation committee knew that the options violated the stock

option plan and that the options were being accounted for in a manner that was improper, or that

their failure to obtain that information resulted from their knowing abdication of their directorial

duties." *Desimone v. Barrows,* 924 A.2d 908, 933 (Del. Ch. 2007).  Here, however, there are

simply no particularized or non-conclusory allegations that any of the Director Defendants knew

that the options violated the stock option plan or that the defendants acted with a culpable state

of mind.  Further, plaintiffs have alleged no "red flags" that would result in knowing abdication

of the Director Defendants' duties.

As described above in Section E.2, plaintiffs have failed to allege stock option backdating

with sufficient particularity to satisfy the requirements of Rule 9(b), and also have failed to plead

scienter in connection with stock option backdating, in accord with the PSLRA.  For the same

reasons, plaintiffs have failed to plead a breach of fiduciary duty with regard to stock option

backdating.  *Lewis*, 2003 WL 22461894, at *4 (examining fiduciary duty complaint "against the

particularized pleading standard of Rule 9(b)").  As set forth below, plaintiffs also have failed to

plead with particularity their claims that the Individual Defendants colluded to improperly

account for certain joint ventures and colluded to produce, disseminate, and file false financial

statements and proxy statements.

### i.    Joint Venture Accounting

Plaintiffs allege that the Individual Defendants breached their fiduciary duties to the

Company by "colluding with each other to improperly account for Sunrise's real estate joint

venture[s]."  Complaint ¶ 148(a); *see also Id*. ¶ 92.  Plaintiffs apparently learned about the

alleged improper accounting from the Company itself, which announced in a May 10, 2006

conference call that it was conducting a review of its past joint venture accounting methods and was adopting a different methodology. *See id.* ¶ 106. Several months later, the Company announced that it was restating earnings based upon issues identified in its review. *See id.* ¶ 111. Plaintiffs allege that the improper accounting was the result of the Individual Defendants' knowing collusion, but this allegation is insufficient and must be disregarded.

Plaintiffs fail to allege that the alleged accounting irregularities signal a breach of the Individual Defendants' duties to Sunrise. Plaintiffs plead no facts regarding the alleged "collu[sion]." They do not allege with particularity the role that was played by any Sunrise officer, Audit Committee member, or Board member. They do not specify who proposed the improper accounting, who carried it out, who was aware of it, and who allowed it to proceed. This falls far short of the "who, what, when, where, and how" of each defendant's participation in the allegedly disloyal conduct, and it cannot withstand a motion to dismiss. *Vess*, 317 F.3d at 1106. To the contrary, plaintiffs have alleged nothing more than a GAAP violation, but this cannot support an inference that any of the Individual Defendants has acted with scienter. Rather, "allegations of GAAP violations must be augmented by facts that shed light on the mental state of defendants, rather than conclusory allegations . . . ." *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp 2d. 1069, 1090 (N.D. Cal. 2005) (internal quotations omitted); *see also In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455-PHX-NVW, 2006 U.S. Dist. LEXIS 45482 (D. Ariz. July 5, 2006) (rejecting allegation that CFO necessarily understood accounting treatment for transaction because of the transaction's importance to the Company.) Therefore, plaintiffs state no claim of fiduciary duty based on the alleged improper accounting of real estate joint ventures.

ii.    **Alleged Misstatements**

Next, plaintiffs allege that the Individual Defendants breached their fiduciary duties to Sunrise by "colluding with each other to produce and disseminate . . . false financial statements . . ." and to "file false proxy statements" and other securities disclosures.  Complaint ¶ 148(d),(e). In essence, plaintiffs allege the Individual Defendants sought to cover up their stock backdating scheme and improper joint venture accounting, and thus resorted to falsifying the Company's financial statements and securities filings.  *See, e.g., Id.* ¶ 57.  As with the alleged backdating scheme and improper accounting themselves, however, the Complaint is long on generalizations and short on the kind of particularized allegations that the law requires.  Although plaintiffs identify many alleged misstatements—*see, e.g., Id.* ¶ 46-56, 102-104—they fail to identify with any particularity the role that each of the Individual Defendants played, if any, in making the purportedly false statement.  Rather, plaintiffs rely on the blanket allegation that the "the Accounting Defendants"—the Klaassens, Aprahamian, Callen, Donohue, Holladay, Little, Klisares, Slager, Newell, Tomasso, Adams, Faeder, Hulse, Swinton, and Slavin—"forced the Company to make material misrepresentations regarding the overall performance of the Company and specifically the performance of Sunrise's real estate joint ventures in relationship to the Company's overall performance."  *Id.* ¶ 45.  As discussed elsewhere in this brief, this kind of group pleading does not meet the particularity requirements of Rule 9(b).

Again, plaintiffs' group pleading problem is underscored by the fact that the Accounting Defendants served Sunrise at different times.  For example, Slager stepped down from the Board of Directors in 2001, *Id.* ¶ 25, and Klisares stepped down in 2004.  *Id.* ¶ 23.  Similarly, among officers, Smick left the Company in 1998, Swinton departed in 2002, Faeder and Slavin stepped down in 2004, and Hulse departed in 2005.  Claims against these individuals for alleged breach of fiduciary duty after their respective departures must be dismissed.  *Id.* ¶¶ 28, 32, 33, 34, 35,

36.  Conversely, Little joined the Board in 2004; claims against him stemming from conduct alleged to have occurred before 2004 must be dismissed.  *See id.* ¶ 21.

Although plaintiffs allege scienter conclusorily, Complaint ¶ 173, they fail to allege <u>facts</u> that give rise to the inference of scienter.  They allege no facts to suggest that any Individual Defendant knew that the allegedly false statements were false when they were made, and that they were the product of fraud rather than an error in judgment or negligence.  *See DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002).[6]  The mere publication of inaccurate accounting figures does not establish scienter.  *See id.*  Thus, plaintiffs have not alleged that the Individual Defendants acted disloyally toward Sunrise by causing the Company to issue false financial statements, proxy statements, or other securities filings.

### 3.    Plaintiffs Have Not Pled a Claim for Insider Trading (Count XI)

In Count XI, plaintiffs allege that Defendants Adams, Aprahamian, Callen, Donohue, Faeder, Gaul, Holladay, Hulse, Klaassen, Klisares, Newell, Rush, Slavin, Smick, Swinton, and Tomasso sold their stock in the Company while in possession of material, non-public information.  This count must be dismissed because the plaintiffs fail to make allegations regarding the specific transactions they purport to be challenging, because they have not alleged scienter on the part of the purported insider sellers, and because Sunrise was not harmed by the alleged insider trading.

---

[6]  Plaintiffs allege that Defendants Klaassen, Hulse, and Rush each signed false certifications pursuant to the Sarbanes-Oxley Act.  *See* Complaint ¶ 99.  As a matter of law, this does not raise a strong inference of scienter.  *In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455-PHX-NVW, 2006 U.S. Dist. LEXIS 45482, *11 (D. Ariz. July 5, 2006) .

> **a.** **Plaintiffs Have Not Adequately Pled a Claim for Insider Trading Because the Complaint Lacks Allegations Related to Specific Transactions**

To plead a claim for insider trading, plaintiffs must allege (1) what non-public information <u>each</u> defendant had at the time of <u>each</u> sale; (2) that the non-public information was material—that is, that it "significantly affected" the stock price—and (3) that defendants sold their shares because of the material, non-public information. *See In re Oracle Corp. Derivative Litig.*, 867 A.2d 904, 933 (Del. Ch. 2004), *aff'd*, 872 A.2d 960 (Del. 2005). Plaintiffs have failed utterly to plead these elements.

With one exception [Callen], plaintiffs do not plead specific facts regarding individual sales allegedly undertaken by each plaintiff. Instead, plaintiffs lump each defendant's stock sales together, specifying only the date range within which the sales allegedly took place. *See* Complaint ¶ 121. The date ranges vary from several months to longer than eight years. As a result, plaintiffs do not even try to allege what particular "insider" information was known to each of the Defendants at the time he or she sold his or her sales, let alone the materiality of the information or the degree to which each defendant undertook each sale because of the non-public information he or she possessed. Because plaintiffs failed to plead any of the necessary elements against any defendant, their insider trading claim must be dismissed.

> **b.** **The Insider Trading Claim Should Be Dismissed Because There Is No Harm to Sunrise**

Because they purport to bring this case on behalf of nominal defendant Sunrise, plaintiffs must plead facts to show how the alleged insider trades harmed Sunrise. They have failed to do so here because insider trading ordinarily causes no harm to the company whose stock is traded. Accordingly, courts have refused to recognize a derivative claim for insider trading. *See, e.g., In re Cray Inc. Derivative Litig.*, 431 F. Supp. 2d 1114, 1132 (W.D. Wash. 2006) (considering

Delaware law); *see also Freeman v. Decio*, 584 F.2d 186, 192-95 (7th Cir. 1978) (dismissing

derivative claim for insider trading for failure to show damage to company); 3A William M.

Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 1174 (2006) ("[M]ost courts

considering the issue have rejected a common law corporate cause of action against directors and

officers for insider trading").  Because plaintiffs have failed to allege specific trades and have

failed to allege damage to Sunrise, this claim must be dismissed.

> **4.      Plaintiffs' Unjust Enrichment Claims (Counts VI and VIII) Fail
> Because They Have Not Adequately Pled an Underlying Breach of
> Fiduciary Duty**

In Counts VI and VII, plaintiffs allege "unjust enrichment" purportedly arising under

Delaware law against the Individual Defendants.  These counts allege that the Individual

Defendants were unjustly enriched by their "receipt and retention" of backdated or ultra vires

stock option grants warranting disgorgement or rescission. *See* Complaint ¶¶ 196-207.  These

claims must be dismissed because they are dependent upon the underlying fiduciary duty claim,

which itself must be dismissed.  The claim must be dismissed as to Defendants Teresa Klaassen,

Little, Klisares, Meadow, and Gaul, for the additional reason that they are not alleged to have

received backdated or ultra vires stock options.

First, because plaintiffs fail to plead a breach of fiduciary duty claim, their equitable

claims of unjust enrichment also must be dismissed.  The Delaware Supreme Court has held that

"an unjust enrichment claim is essentially another way of stating a traditional tort claim." *Sao*

*Paulo of the Federative Republic of Braz. v. Am. Tobacco Co.*, 919 A.2d 1116, 1124-25 (Del.

2007).  Once the tort claim—here, the breach of fiduciary duty claim—is dismissed, analogous

equitable claims must be dismissed as well.  *See, e.g., Allegheny Gen. Hosp. v. Phillip Morris,*

*Inc.*, 228 F.3d 429, 446-47 (3d Cir. 2000) ("[There is] no justification for permitting plaintiffs to

proceed on their unjust enrichment claim once [the traditional tort claims have been dismissed]").  Counts VI and VIII therefore must be dismissed as to all of the Individual Defendants.

Second, although the plaintiffs press their unjust enrichment and rescission claims against all of the Individual Defendants, several defendants did not receive stock options: Teresa Klaassen, Little, Klisares, Meadow, and Gaul.  Having not received allegedly backdated or ultra vires stock option grants, these defendants cannot be said to be "unjustly enriched."  *See Bakerman v. Sidney Frank Importing Co.*, C.A. No. 1844-N, 2006 Del. Ch. LEXIS 180 at *66 (Oct. 10, 2006) (plaintiffs must allege, inter alia, an enrichment of the Defendants and concomitant impoverishment of the Company to make a claim for unjust enrichment).  For this additional reason, Counts VI and VIII must be dismissed as to these defendants.

### 5. The Rescission Claims (Counts VII and IX) Must Be Dismissed Because Rescission Is a Remedy Not a Claim

In Counts VII and IX, plaintiffs seek to rescind "[a]ll contracts that provide for stock option grants to the recipients of backdated [or ultra vires] stock options."  Complaint ¶ 201; *see also id.* ¶ 207.  However, rescission is properly understood as a form of equitable remedy, not a claim under the law.  *See, e.g., In re Zoran Corp. Derivative Litig.*, No. C-06-05503, 2007 U.S. Dist. LEXIS 43402, at *75 (N.D. Cal. June 5, 2007).  For this reason alone, plaintiffs' rescission claims must be dismissed.  In addition, plaintiffs base their rescission claim on 1) the Individual Defendants' alleged breach of fiduciary duty and 2) their receipt of backdated and/or ultra vires stock options.  *See* Complaint ¶ 200, 206.  Because plaintiffs have failed to allege either fiduciary breach or unjust enrichment through receipt of backdated and/or ultra vires stock options, rescission is inappropriate.  Finally, the rescission claims of Counts VII and IX must be dismissed as to Defendants Teresa Klaassen, Little, Klisares, Meadow, and Gaul for the

additional reason that they are not alleged to have received allegedly backdated or ultra vires stock option grants.

**6.    The Accounting Claim (Count IV) Must Be Dismissed Because Accounting Is a Remedy Not a Claim**

Count IV purports to state a claim for accounting.  Plaintiffs claim that the Individual Defendants' alleged backdating scheme damaged the Company and demand "an accounting be made of," among other things, "all stock option grants made to any of the Individual Defendants."  Complaint ¶ 189.  This count must be dismissed because "an accounting is not so much a cause of action as it is a form of relief."  *Rhodes v. Silkroad Equity, LLC*, C.A. No. 2133-VCN, 2007 Del. Ch. LEXIS 96, *43 (July 11, 2007).  As such, it is "inherently dependent" upon the underlying cause of action—here, the fiduciary duty claim.  *Id*.  Because plaintiffs have failed to state a claim for breach of fiduciary duty, as described above, an accounting is not warranted and this "claim" must be dismissed.

**7.    Count X for Violation of Delaware Law Should Be Dismissed Because the Issue is Already Before the Court**

Finally, plaintiffs allege in Count X that the Director Defendants have violated Delaware law because they have "failed to schedule, provide notice of, or hold an annual meeting for 2007."  Complaint ¶ 211.  Plaintiffs have filed a Motion for Summary Judgment on this claim.  The Director Defendants adopt the arguments in nominal defendant Sunrise Senior Living, Inc.'s brief in opposition to Plaintiffs' Motion for Summary Judgment.  Because the issue is already before the court, it is not addressed herein.

## IV.  CONCLUSION

For the foregoing reasons, plaintiff's Complaint must be dismissed.

ORIGINAL DATE:  August 27, 2007

DATE OF CORRECTED MEMORANDUM:  August 31, 2007

Respectfully submitted,

/s/ John C. Millian
John C. Millian (DC Bar #413721)
Matthew R. Estabrook (DC Bar #477880)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C.  20036
 (202) 955-8500

*Attorneys for Defendants Carl Adams, Ronald V. Aprahmian, Craig R. Callen, Thomas J. Donohue, David W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse, Paul L. Klaassen, Teresa M. Klaassen, Peter A. Klisares, William Little, Jr., Scott F. Meadow, Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin, Timothy S. Smick, Brian C. Swinton and Tiffany L. Tomasso*