## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

In Re SUNRISE SENIOR LIVING, INC.    )    **Civil Action No. 07-00143**
Derivative Litigation    )
_____)
    )
This Document Relates To:    )
    )
    )
ALL ACTIONS    )
_____)

## PLAINTIFFS' MOTION TO PARTIALLY LIFT DISCOVERY STAY

COME NOW THE Plaintiffs Catherine Molner, Robert Anderson, and Janie Morrison, by and through the undersigned counsel, and hereby move the Court for entry of an order authorizing the discovery of documents that Nominal Defendant Sunrise Senior Living, Inc. (i) has produced or will produce to the Securities and Exchange Commission and (ii) has been directed to produce in a parallel case pending in the Delaware Court of Chancery. Counsel for Plaintiffs have met and conferred with counsel for Nominal Defendant, as explained in greater detail in the accompanying Memorandum of Points and Authorities, and Nominal Defendant opposes this motion. In support of the motion, Plaintiffs submit contemporaneously herewith and incorporate herein by reference their Memorandum of Points and Authorities in Support of Plaintiffs' Motion to Partially Lift Discovery Stay.

Dated: May 16, 2008                    Respectfully submitted,

DAVIS, COWELL & BOWE, LLP

___/s/ Mark Hanna_____
George R. Murphy (DC Bar 75200)
Mark Hanna (DC Bar 471960)
Joni S. Jacobs (DC Bar 493846)
1701 K Street NW, Suite 210
Washington, DC 20006
Tel. (202) 223-2620
Fax: (202) 223-8651
*Liaison Counsel*

SCHIFFRIN BARROWAY TOPAZ
& KESSLER, LLP
Eric L. Zagar
Michael C. Wagner
J. Daniel Albert
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

SAXENA WHITE P.A.
Maya Saxena
Joseph E. White III
Christopher Jones
2424 North Federal Highway, Suite 257
Boca Raton, FL  33431
Telephone:  (561) 394-3399
Facsimile:  (561) 394-3382

ROBBINS, UMEDA, & FINK LLP
Jeffrey P. Fink
Felipe J. Arroyo
Ashley R. Palmer
610 West Ash Street, Suite 1800
San Diego, CA  92101

Telephone:  (619) 525-3990
Facsimile:  (619) 525-3991

*Co-Lead Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
In Re SUNRISE SENIOR LIVING, INC.   )     **Civil Action No. 07-00143**
Derivative Litigation               )
_____)
                                    )
This Document Relates To:           )
                                    )
                                    )
ALL ACTIONS                         )
_____)


## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION TO PARTIALLY LIFT DISCOVERY STAY

Plaintiffs submit this Memorandum in support of their Motion to Partially Lift Discovery Stay to permit the discovery of documents that Nominal Defendant Sunrise Senior Living, Inc. ("Sunrise" or the "Company") has produced to the Securities and Exchange Commission ("SEC") and has been directed to produce in a parallel case pending in the Delaware Court of Chancery (the "Delaware Action"). For the following reasons, Plaintiffs' motion should be granted.

## I.    INTRODUCTION

An automatic discovery stay under Section 21(d)(b)(3)(B) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B), currently prevents the parties from seeking discovery in this action. Plaintiffs move to partially lift the PSLRA's discovery stay to seek (i) documents relating to the

Special Committee's[1] findings that have been ordered to be produced by Sunrise in the Delaware Action and (ii) documents that Sunrise has produced to the SEC in the course of the SEC's investigation.[2] Because Sunrise has produced and will be producing such documents, the policy interests underlying the PSLRA's stay are not implicated in this matter, and a partial lifting of the stay of discovery is necessary to avoid undue prejudice to Plaintiffs.

## II. RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This is a shareholders' derivative action brought for the benefit of nominal defendant Sunrise against certain members of its Board and certain of its executive officers seeking to remedy Defendants' breaches of fiduciary duties, unjust enrichment, statutory violations, and other violations of law. Sunrise, a Delaware corporation with its principal executive offices located in McLean, Virginia, is a provider of senior living services.

The first of these consolidated actions was commenced in this Court on January 19, 2007. Plaintiffs allege, among other things, that the Individual Defendants wrongfully backdated Sunrise stock option grants to Sunrise's directors and senior management, enriching those persons to Sunrise's substantial detriment. On October 26, 2007, Plaintiffs filed an Amended Consolidated Complaint, which was accepted for filing by this Court's Order dated March 28, 2008. Defendants' response to the Amended Consolidated Complaint is due on or before May 31, 2008.

As Sunrise has publicly acknowledged, and as is described in the Amended Consolidated Complaint, the SEC has initiated a formal investigation into Sunrise concerning Sunrise's historic stock option granting practices and other historic accounting practices. Amended

---

[1] The "Special Committee" refers to the committee of Sunrise Board of Directors created to "review recent insider sales of Sunrise stock and the Company's historical practices related to stock option grants," as announced by the Company on December 11, 2006. Amended Consolidated Complaint, ¶ 229.

Consolidated Complaint, ¶ 235.  In a press release dated May 29, 2007, Sunrise announced that the SEC had requested documents from Sunrise and that the Company was cooperating with the SEC. *See* Affidavit of Mark Hanna ("Hanna Aff.") at Exhibit A.

Sunrise's historic stock option granting practices are also at issue in the Delaware Action, *Young v. Klaassen, et al.*, C.A. No. 2770-VCL (Del. Ch. Ct. filed Mar. 6, 2007).   The Delaware Action, which was commenced well after this action in this Court, is brought against the same Individual Defendants and raises substantively identical factual allegations and claims as those raised here.   The defendants in the Delaware Action moved to dismiss the complaint, relying in part on the Special Committee's "findings," despite the fact that the Special Committee produced no written report reflecting such findings.   The plaintiffs in the Delaware Action moved to compel the production of the documents relied on by the Special Committee, and on April 25, 2008, the Chancery Court granted the motion to compel and directed that all "documents that relate to the special committee'[s] findings" be produced to the plaintiffs in the Delaware Action. *Young v. Klaassen, et al.*, C.A. No. 2770-VCL, slip op. at 7[3] (Del. Ch. Ct. April 25, 2008).

Thus, of the three proceedings directly implicating Sunrise's historic stock option granting and other accounting practices, i.e., this action, the Delaware Action, and the SEC proceedings, only here are Plaintiffs unable to obtain pertinent documents from Sunrise. Plaintiffs seek only evenhandedness in moving to partially lift the PSLRA's discovery stay.

On May 15, 2008, counsel for Plaintiffs met and conferred by telephone with counsel for Sunrise concerning Plaintiffs' motion, as is required by Local Rule 7(m).  Counsel for Plaintiffs, in that telephone call, explained the particular basis for the motion, the relief sought, and cited

---

[2] After reviewing the documents produced by Sunrise, Plaintiffs will evaluate the need for and identities of potential deponents and, if appropriate, will request leave to take limited depositions.
[3]  The Chancery Court's Memorandum and Order is attached to the Hanna Aff. as Exhibit B.

two decisions cited herein as support for Plaintiffs' position.  Counsel for Sunrise responded in an email on May 16, 2008 that Plaintiffs' demand for documents produced to the SEC and documents produced to the plaintiffs in the Delaware Action is "inappropriate." Sunrise, accordingly, opposes this motion.  Plaintiffs' motion now follows.

## III.    ARGUMENT

### A.    Courts May Modify the Discovery Stay Imposed by the PSLRA

Congress enacted the discovery stay provisions of the PSLRA in an effort to curtail what it perceived as abusive and non-meritorious lawsuits.  Conf. Rep. H. Rept. No. 104-369, ¶ 301 (Nov. 28, 1995).  To achieve its goals, the PSLRA included provisions to stay all discovery pending a ruling denying defendants' motion to dismiss or a motion to lift the stay.  By including the stay, Congress sought to prevent plaintiffs from (1) using the possibility of a costly discovery process to force defendants into a coercive settlement, and (2) using the filing of a suit and the subsequent discovery to engage in "fishing expeditions" for evidence to support claims not yet alleged.  *See* H. Rept. No. 104-369, at 374; S. Rept. No. 104-98, at 14 (1995); *see also In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002) ("WorldCom I"); *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 106 (D. Mass. 2002); *Singer v. Nicor, Inc.*, No. 02-5168, 2003 U.S. Dist. LEXIS 26189, at *3 (N.D. Ill. April 23, 2003) ("The goal of the PSLRA's discovery stay is to prevent the unnecessary imposition of discovery costs in both money and time on defendants in securities fraud cases, given that such costs often coerce settlements by innocent parties").

The PSLRA discovery stay, however, is not absolute.  The PSLRA provides that all discovery is stayed during the pendency of a motion to dismiss "unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent

- 4 -

undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B); *see also In re Grand Casinos, Inc. Secs. Litig.*, 988 F. Supp. 1270, 1272 (D. Minn. 1997) ("if Congress had intended an absolute stay on discovery, it would not have authorized a judicial reprieve").  Reading the Congressional Record together with the statutory language, courts have lifted or modified the PSLRA's discovery stay where the PSLRA's policy interests would not be furthered by continued enforcement of the stay, the defendant would not be unduly burdened by modifying or lifting the stay, or the continued enforcement of the stay would cause the plaintiff to suffer undue prejudice. *See In re LaBranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004) (noting that "[c]ourts have modified the discovery stay in securities class actions involving concurrent investigations by governmental agencies when doing so would not frustrate Congress' purposes in enacting the PSLRA"); *see also Lernout & Hauspie*, 214 F. Supp. 2d at 106 (court permitted limited discovery where "[n]either of the perceived abuses addressed by Congress is present"); *WorldCom*, 234 F. Supp. 2d at 305; *Singer*, 2003 U.S. Dist. LEXIS 26189, at *3; *In re Enron Corp. Sec. Litig.*, No. 01-3624, 2002 U.S. Dist. LEXIS 26261, at *32 (S.D. Tex. Aug. 16, 2002); *Vacould LLC v. Cerami*, No. 00-4024, 2001 U.S. Dist. LEXIS 1589, at *25 (S.D.N.Y. Feb. 16, 2001).

Thus, the PSLRA provides courts with discretion in allowing discovery to go forward prior to a judicial determination of the sufficiency of a plaintiff's complaint.  *See, e.g.*, *In re Silicon Graphics, Inc. Sec. Litig.*, 970 F. Supp. 746, 760 (N.D. Cal. 1997) ("the discovery stay provision provides courts with some discretion to permit necessary discovery in advance of a ruling on dismissal"); *In re Grand Casino,*,988 F. Supp. at 1272.  Indeed, courts have not hesitated to modify the discovery stay when doing so would not frustrate the above-stated purposes. *See, e.g.*, *WorldCom I,* 234 F. Supp. 2d at 305 (granting motion for limited discovery,

since "[n]either rationale underlying the PSLRA's discovery stay provision is contravened by plaintiffs' application"); *Lernout & Hauspie*, 214 F. Supp. 2d at 106; *Vacold LLC,* 2001 U.S. Dist Lexis 1589 at *24 (discovery stay modified where request "does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

Here, lifting the PSLRA discovery stay for the limited purposes sought by Plaintiffs is necessary to prevent Plaintiffs from suffering undue prejudice.  In addition, allowing limited discovery would neither frustrate Congress' purposes in enacting the PSLRA nor impose an undue burden upon Defendants, particularly in light of the concurrent Special Committee and SEC investigations and the ongoing Delaware Action.  Thus, partially lifting the stay to permit Plaintiffs to seek documents already produced by Sunrise during the course of the SEC's inquiry and the Delaware Action is appropriate.

**B.      Plaintiffs Will Suffer Undue Prejudice if this Court Does Not Partially Lift the PSLRA Discovery Stay**

If this Court does not partially lift the discovery stay, Plaintiffs will suffer substantial undue prejudice.  Courts considering whether to lift the PSLRA discovery stay have found that plaintiffs should be allowed discovery where documents have been produced in connection with government investigations or in substantially similar parallel actions pending in state court.  For example, in *In re BankAmerica Corp. Securities Litigation*, MDL No. 1264, (E.D. Mo. July 19, 1999) (Order),[4] plaintiffs in a federal securities class action asked that the discovery stay be modified to allow them to participate in ongoing discovery in a related state securities action, claiming that the state plaintiffs were getting a "head start" on discovery.  *Id*. at 2.  The court granted the motion, finding that the federal plaintiffs would be prejudiced if the stay remained in

place while discovery was proceeding in the state case. *Id.* at 3. The court allowed the federal plaintiffs to conduct discovery to the extent the state court plaintiffs were conducting discovery, and ordered that "[t]he federal plaintiffs shall be allowed access to all documents produced to the [state] plaintiffs under the existing requests for production propounded in the [state] actions as well as any other discovery that occurs pursuant to any coordinated discovery order before the resolution of defendants' motion to dismiss." *Id.* at 4.

Likewise, in *FirstEnergy*, the court found that, since documents had already been produced by defendants in connection with a government investigation and plaintiffs were not fishing for new claims, the PSLRA discovery stay did not prevent plaintiffs from obtaining those documents. *In re First Energy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004); *see also Singer*, 2003 U.S. Dist. LEXIS 26189, at *5 (lifting discovery stay, holding the plaintiffs "may well be unfairly disadvantaged if they do not have access to the documents that the governmental and other agencies already have" and there is no undue burden on defendants in producing identical documents to plaintiffs); *In re WorldCom Sec. Litig.*, 293 B.R. 308, 314 (S.D.N.Y. 2003) ("WorldCom II") (PSLRA stay "modified to permit plaintiffs in the Securities Litigation to obtain copies of certain documents and materials that WorldCom has already produced to governmental authorities and certain documents produced in connection with WorldCom's internal investigation").

While the SEC and the plaintiffs in the Delaware Action proceed with their investigations and determine appropriate remedies for Defendants' wrongful conduct, including potentially settling with certain Individual Defendants, Plaintiffs will suffer undue prejudice if they are left behind in the process without access to documents relating to the Special Committee's

---

[4] A copy of the referenced order is attached to the Hanna Aff. as Exhibit C.

investigation and findings. *See Worldcom I*, 234 F. Supp. 2d at 305 ("Without access to documents already made available to the U.S. Attorney, the SEC, and in whole or in part to the WorldCom's Creditors Committee and the documents that will in all likelihood soon be in the hands of the ERISA plaintiffs, [plaintiff] ***would be prejudiced*** by its inability to make informed decisions about its litigation strategy in a rapidly shifting landscape") (emphasis added). Notably, in the Delaware Action, the Chancery Court has directed that defendants produce documents relating to the Special Committee's findings. Moreover, the SEC is conducting a formal investigation of Sunrise's historical stock option granting and other accounting practices and has requested relevant documents from Sunrise, and Sunrise is reportedly cooperating with the SEC in this regard, presumably including the production of documents. These developments further demonstrate the importance of permitting Plaintiffs discovery in the instant action, as the SEC's formal investigation and discovery in the Delaware Action continue to move forward. To allow Plaintiffs the opportunity to meaningfully participate in the rapidly shifting landscape involving governmental investigations and parallel state-court actions, this Court should partially lift the PSLRA discovery stay to place Plaintiffs on equal footing with the SEC and the plaintiffs in the Delaware Action.

Additionally, as recognized by the *Vacold* court, failure to allow discovery also results in undue prejudice by shielding defendants from liability. Specifically, the *Vacold* court noted:

> This request does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint. Rather, the removal of the PSLRA's discovery stay is warranted on grounds of undue prejudice, because the failure to allow discovery … may ***unfairly insulate defendants from liability for securities fraud*** as alleged by plaintiffs in the Complaint. … Accordingly, the Court orders that the stay be lifted in order to allow plaintiffs to conduct discovery on this limited issue.

- 8 -

2001 U.S. Dist. LEXIS 1589, at *24-*25; *see also Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein*, 917 F. Supp. 717, 721 n. 3 (S.D. Cal. 1996) (discovery stay causes undue prejudice where it may "shield[] [defendants] from eventual liability for any material violations of the securities laws").  Accordingly, to avoid undue prejudice to Plaintiffs and to allow Plaintiffs the opportunity to make informed decisions regarding the course of this litigation, this Court should partially lift the PSLRA discovery stay to permit Plaintiffs to obtain the same documents that the Chancery Court directed be produced to the plaintiffs in the Delaware Action, as well as any documents Sunrise has produced to the SEC.  Moreover, as many of the events giving rise to Plaintiffs' claims occurred almost ten years ago, documents may be lost and recollections of these events may continue to fade as Defendants inevitably move to dismiss Plaintiffs' Amended Consolidated Complaint.  *Clark v. Lutcher*, 77 F.R.D. 415, 418 (M.D. Pa. 1977) ("As time progresses, evidence becomes stale, memories dim, and the search for truth, always a difficult task, becomes more and more burdensome.").

Any further delay in producing documents in this matter would unduly prejudice Plaintiffs.  Accordingly, this Court should partially lift the PSLRA discovery stay.

### C.    Modifying the Discovery Stay Will Not Contravene PSLRA Policy

Congress enacted the PSLRA partially in an attempt to discourage shareholder suits following sharp declines in the price of a company's stock due to missing an earnings projection or other negative news.  Such suits, so-called "strike suits," generally allege that a fraud or misstatement by the company caused the stock price's drop.  *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  By implementing the PSLRA, Congress sought to deter these strike suits, many times filed either in the hope that the high cost of responding to discovery would force corporate defendants to settle, or that discovery could be used as a fishing expedition to glean

additional facts from the company to bolster a complaint that was otherwise deficient and susceptible to a motion to dismiss.  *See WorldCom I*, 234 F. Supp. 2d at 305; *see also* H.R. Conf. Rep. No. 104-369, at 37, *reprinted in* 1995 U.S.C.C.A.N. 730, 736.

This action is not the type of suit Congress sought to discourage.  Rather, this is a shareholders' derivative action, brought on behalf of nominal defendant Sunrise, which seeks to remedy the alleged stock option backdating engaged in by the Company's current and former officers and directors.  Moreover, Defendants cannot in good faith posit that the policies behind the PSLRA would be violated by allowing limited discovery to occur.  As the documents Plaintiffs seek have already been produced in the SEC's formal investigation, and have been ordered to be produced to the plaintiffs in the Delaware Action, limited discovery of those very same documents is clearly not an attempt by Plaintiffs to coerce a settlement from Defendants through the imposition of massive discovery costs.  These documents are, assumedly, already in the possession of the SEC, will soon be in the possession of the plaintiffs in the Delaware Action and have previously been reviewed and compiled by Sunrise.[5]  As Judge Melinda Harmon noted in *Enron*:

> While recognizing that the PSLRA's discovery stay protected Defendants from unnecessary discovery costs, Lead Plaintiff argues that here the burden would be slight because Enron has already found, reviewed, and organized the documents.  The Court agrees.  ***In a sense this discovery has already been made***, and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse.

*Enron*, 2002 U.S. Dist. LEXIS 26261, at *32.  Accordingly, because these documents have already been compiled and produced to third parties, the cost to the Company to produce these

---

[5] As noted in *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 250 (D. Md. 2004), documents "produced in connection with internal and external investigations … describes a 'clearly defined universe of documents.'"

same documents to Plaintiffs would be minimal.

Congress designed the PSLRA discovery stay to prevent plaintiffs from conducting wide-ranging "fishing expeditions" in order to drum up additional sustainable claims and protect defendants from abusive discovery demands seeking to extort early settlements. These two scenarios are not present in this case. Plaintiffs' request for limited discovery cannot properly be viewed as a "fishing expedition" to find evidence to support claims not yet alleged. Plaintiffs have asserted meritorious and non-frivolous derivative claims stemming directly from the Company's backdating and other accounting practices. Plaintiffs' 147 page, 365 paragraph Amended Consolidated Complaint contains detailed allegations regarding Defendants' backdating and other accounting improprieties, which independently support Plaintiffs' claims irrespective of the discovery Plaintiffs seek. As Plaintiffs have already pleaded well-founded particularized allegations regarding Defendants' backdating and other accounting improprieties, Congress' goal of avoiding "fishing expeditions" is not implicated in this matter.

Accordingly, as discovery is being sought neither to coerce Defendants into a settlement to avoid costly production nor to allow Plaintiffs to embark on a "fishing expedition" to search for evidence bolstering unfounded claims, Congress' policy concerns behind the PSLRA are not present in the instant action. This Court should therefore partially lift the PSLRA stay.

### D.    Modifying the Discovery Stay Will Not Unduly Burden Defendants

When a court considers whether to lift or modify the PSLRA discovery stay, "it is customary to consider whether a production request places an undue burden on the party from which it is requested." *WorldCom I*, 234 F. Supp. 2d at 306. In the instant action, Plaintiffs seek production of documents that have previously been produced to the SEC and that have been directed to be produced in the Delaware Action. Since such documents have already been

assembled, reviewed and copied, it would not be costly or burdensome to provide an identical set

of the documents to Plaintiffs. *See id.* at 302 (the court authorized plaintiffs "to obtain copies of

certain documents and materials which related non-party WorldCom, Inc. … has already

produced to other entities").  Thus, "the burden of production on the defendants should be

relatively slight in this case because the requested materials have been produced already to other

parties." *Royal Ahold*, 220 F.R.D. at 253; *accord Singer*, U.S. Dist. LEXIS 26180, at *2 ("such

production would not place an undue burden on the defendants, since they had already reviewed

and compiled the documents when they produced them to the other agencies").  Where, as here,

the documents sought are part of a prior production, an undue burden on Defendants does not

exist and the documents should be made available for review in this action.

As noted above, Plaintiffs do not seek documents outside of those already produced to

the SEC or to be produced in the Delaware Action.  A partial lifting of the PSLRA discovery

stay to permit Plaintiffs to access and review these documents would therefore not impose any

additional costs or "undue burden" on the Company.

## IV.    CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court grant their

Motion to Partially Lift Discovery Stay, thereby permitting them access to documents already

produced or to be produced by Sunrise to the SEC and to the Plaintiffs in the Delaware Action.

DATED: May 16, 2008                          Respectfully submitted,


                                             DAVIS, COWELL & BOWE, LLP


                                             __/s/ Mark Hanna_____
                                             George R. Murphy (DC Bar 75200)
                                             Mark Hanna (DC Bar 471960)

- 12 -

Joni S. Jacobs (DC Bar 493846)
1701 K Street NW, Suite 210
Washington, DC 20006
Telephone:     (202) 223-2620
Facsimile:     (202) 223-8651

*Liaison Counsel*

SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
Lee D. Rudy
Michael C. Wagner
J. Daniel Albert
280 King of Prussia Road
Radnor, PA  19087
Telephone:     (610) 667-7706
Facsimile:     (610) 667-7056

SAXENA WHITE P.A.
Maya Saxena
Joseph White
Christopher Jones
2424 North Federal Highway, Suite 257
Boca Raton, FL  33431
Telephone:     (561) 394-3399
Facsimile:     (561) 394-3382

ROBBINS, UMEDA, & FINK LLP
Jeffrey P. Fink
Felipe J. Arroyo
Ashley R. Palmer
610 West Ash Street, Suite 1800
San Diego, CA  92101
Telephone:     (619) 525-3990
Facsimile:     (619) 525-3991

*Co-Lead Counsels for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| In Re SUNRISE SENIOR LIVING, INC. ) | **Civil Action No. 07-00143** |
| Derivative Litigation ) | |
| _____) | |
| ) | |
| This Document Relates To: ) | |
| ) | |
| ) | |
| ALL ACTIONS ) | |
| _____) | |

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies, under penalty of perjury, that the foregoing was served

on counsel for Defendants on May 16, 2008, and that no Defendant needs to be served by mail.

DAVIS, COWELL & BOWE, LLP

__/s/ Mark Hanna_____
George R. Murphy (DC Bar 75200)
Mark Hanna (DC Bar 471960)
Joni S. Jacobs (DC Bar 493846)
1701 K Street NW, Suite 210
Washington, DC 20006
Telephone:    (202) 223-2620
Facsimile:    (202) 223-8651

- 1 -

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____
                                        )
In Re SUNRISE SENIOR LIVING, INC.       )        **Civil Action No. 07-00143**
Derivative Litigation                    )
_____)
                                        )
This Document Relates To:                )
                                        )
        ALL ACTIONS                      )
_____)

**ORDER**

AND NOW, this _____ day of _____, 2008, upon consideration of Plaintiffs' Motion to Partially Lift Discovery Stay, and any response thereto, it is hereby ORDERD that the Motion is GRANTED.

It is FURTHER ORDERED that Plaintiffs may serve on Nominal Defendant Sunrise Senior Living, Inc. discovery requests seeking (a) any and all documents that Nominal Defendant has produced or will produce to the United States Securities and Exchange Commission in connection with the Commission's formal investigation into Nominal Defendants' historic stock option granting practices and other historic accounting practices and (b) any and all documents that Nominal Defendant has produced or will produce to the plaintiffs in _Young v. Klaassen, et al._, C.A. No. 2770-VCL (Del. Ch. Ct. filed Mar. 6, 2007), and, further, that Nominal Defendant shall, without objection, timely produce such documents to Plaintiffs in response to the discovery requests authorized herein.

BY THE COURT:

_____
Walton, J.

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                    )
In Re SUNRISE SENIOR LIVING, INC.   )        **Civil Action No. 07-00143**
Derivative Litigation               )
_____)
                                    )
This Document Relates To:           )
                                    )
ALL ACTIONS                         )
_____)

## <u>AFFIDAVIT OF MARK HANNA</u>

I, Mark Hanna, declare under penalty of perjury that the following is true and correct:

1.      Attached as Exhibit A is a true and correct copy of a Form 8-K and accompanying press release dated May 29, 2007 filed by Sunrise Senior Living, Inc. with the Securities and Exchange Commission.

2.      Attached as Exhibit B is a true and correct copy of the Delaware Chancery Court's Order dated April 25, 2008 in the action styled *Young v. Klaassen, et al.*, C.A. No. 2770-VCL (Del. Ch. Ct. March 6, 2007).

3.      Attached as Exhibit C is a true and correct copy of *In re BankAmerica Corp. Securities Litigation*, MDL No. 1264, Order (E.D. Mo. July 19, 1999).

In accordance with 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: May 16, 2008                    Respectfully submitted,

                                       __/s/ Mark Hanna_____
                                       Mark Hanna (DC Bar 471960)
                                       DAVIS, COWELL & BOWE, LLP
                                       1701 K Street NW, Suite 210

Washington, DC 20006
Tel. (202) 223-2620
Fax: (202) 223-8651
*Liaison Counsel*

# EXHIBIT A

*UNITED STATES*
***SECURITIES AND EXCHANGE COMMISSION***
*WASHINGTON, D.C. 20549*

## FORM 8−K

**CURRENT REPORT PURSUANT TO SECTION 13 OR 15 (d)**
**OF THE SECURITIES EXCHANGE ACT OF 1934**

Date of Report (Date of earliest event reported)***: May 25, 2007***

# SUNRISE SENIOR LIVING, INC.

(Exact name of registrant as specified in its charter)

| *Delaware* | *1−16499* | *54−1746596* |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification No.) |

***7902 Westpark Drive***
***McLean, Virginia 22102***
(Address of principal executive offices) (Zip Code)

*(703) 273−7500*
(Registrant's telephone number, including area code)

***Not Applicable***
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8−K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)
☐ Soliciting material pursuant to Rule 14a−12 under the Exchange Act (17 CFR 240.14a−12)
☐ Pre−commencement communications pursuant to Rule 14d−2(b) under the Exchange Act (17 CFR 240.14d−2(b))
☐ Pre−commencement communications pursuant to Rule 13e−4(c) under the Exchange Act (17 CFR 240.13e−4(c))

*Item 8.01. Other Events.*

On May 25, 2007, Sunrise Senior Living, Inc. (the "Company") was advised by the staff of the Securities and Exchange Commission (the "SEC") that the SEC has commenced a formal investigation. The Company previously announced on December 11, 2006 that it had received a request from the SEC for information about insider stock sales, timing of stock option grants and matters relating to the Company's historical accounting practices that had been raised in media reports in the latter part of November 2006 following receipt of a letter by the Company from Service Employees International Union. The Company has fully cooperated, and intends to continue to fully cooperate, with the SEC.

The Company's press release, dated May 29, 2007, related to the matters discussed under this Item 8.01 is filed herewith as Exhibit 99.1.

*Item 9.01. Financial Statements and Exhibits.*

(a) Not applicable

(b) Not applicable

(c) Not applicable

(d) Exhibits.

| *Exhibit No.* | *Description* |
| --- | --- |
| 99.1 | Press release dated May 29, 2007 |

*SIGNATURES*

    Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

                                        SUNRISE SENIOR LIVING, INC.
                                        (Registrant)

Date: May 29, 2007                      By:      /s/ John F. Gaul
                                                 John F. Gaul
                                                 General Counsel

*Exhibit Index*

| Exhibit No. | Description |
| --- | --- |
| 99.1 | Press release dated May 29, 2007 |

*Exhibit 99.1*

***Sunrise Announces Update on SEC Investigation***

MCLEAN, Va., May 29 /PRNewswire−FirstCall/ −− Sunrise Senior Living, Inc. (NYSE: SRZ), today announced that on May 25, 2007 it was advised by the staff of the Securities and Exchange Commission (the "SEC") that the SEC has commenced a formal investigation. Sunrise previously announced on December 11, 2006 that it had received a request from the SEC for information about insider stock sales, timing of stock option grants and matters relating to Sunrise's historical accounting practices that had been raised in media reports in the latter part of November 2006 following receipt of a letter by Sunrise from Service Employees International Union. Sunrise has fully cooperated, and intends to continue to fully cooperate, with the SEC.

About Sunrise

Sunrise Senior Living, a McLean, Va. − based company, employs approximately 40,000 people. As of March 31, 2007, Sunrise operated 444 communities in the United States, Canada, Germany and the United Kingdom, with a combined capacity for more than 52,000 residents. At quarter end, Sunrise also had 42 communities under construction in these countries with a combined capacity for more than 6,300 additional residents. Sunrise offers a full range of personalized senior living services, including independent living, assisted living, care for individuals with Alzheimer's and other forms of memory loss, as well as nursing, rehabilitative and hospice care. Sunrise's senior living services are delivered by staff trained to encourage the independence, preserve the dignity, enable freedom of choice and protect the privacy of residents. To learn more about Sunrise, please visit http://www.sunriseseniorliving.com.

SOURCE Sunrise Senior Living, Inc.

CONTACT: Lisa Mayr, Vice President, Investor Relations and Capital Markets of Sunrise Senior Living, Inc., +1−703−744−1787

# EXHIBIT B

EFiled: Apr 25 2008 3:53PM EDT
Transaction ID 19576469
Case No. 2770-VCL

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

PETER V. YOUNG and                )
ELLEN ROBERTS YOUNG,              )
                                   )
              Plaintiffs,          )
                                   )
         v.                        )     C.A. No. 2770-VCL
                                   )
PAUL J. KLAASSAN, TERESA M.        )
KLAASSAN, DAVID W. FAEDER,         )
TIMOTHY S. SMICK, THOMAS B.        )
NEWELL, BRIAN C. SWINTON,          )
CHRISTIAN B.A. SLAVIN, LARRY E.    )
HULSE, TIFFANY L. TOMASSO,         )
ROBERT R. SLAGER, CARL ADAMS,      )
RONALD V. APRAHAMIAN, CRAIG        )
R. CALLEN, DAVID G. BRADLEY,       )
J. DOUGLAS HOLLADAY, and           )
THOMAS J. DONOHUE,                 )
                                   )
              Defendants,          )
                                   )
         and                       )
                                   )
SUNRISE SENIOR LIVING, INC.,       )
                                   )
              Nominal Defendant.   )

## MEMORANDUM OPINION AND ORDER

**Submitted: April 8, 2008**
**Decided: April 25, 2008**

Joseph A. Rosenthal, Esquire, Carmella P. Keener, Esquire, ROSENTHAL,
MONHAIT & GODDESS, P.A., Wilmington, Delaware; Laurence D. Paskowitz,
Esquire, Roy L. Jacobs, Esquire, PASKOWITZ & ASSOCIATES, New York,
New York; Samuel R. Simon, Esquire, JACOBS LAW GROUP, PC., Philadelphia,
Pennsylvania; Karin E. Fisch, Esquire, Orin Kurtz, Esquire, Natalie Marcus,
Esquire, ABBEY SPANIER RODD & ABRAMS, LLP, New York, New York,
*Attorneys for Peter V. Young and Ellen Roberts Young.*

Kenneth Nachbar, Esquire, MORRIS, NICHOLS, ARSHT & TUNNELL, LLP, Wilmington, Delaware; John C. Millian, Esquire, Matthew R. Estabrook, Esquire, GIBSON, DUNN& CRUTCHER LLP, Washington, D.C., *Attorneys for Paul J. Klaassan, Teresa M. Klaassan, David W. Faeder, Timothy S. Smick, Thomas B. Newell, Brian C. Swinton, Christian B.A. Slavin, Larry E. Hulse, Tiffany L. Tomasso, Robert R. Slager, Carl Adams, Ronald V. Aprahamian, Craig R. Callen, J. Douglas Holladay, and Thomas J. Donohue.*

Arthur G. Connolly, III, Esquire, Jeremy D. Anderson, Esquire, CONNOLLY BOVE LODGE & HUTZ, LLP, Wilmington, Delaware; Philip A. Sechler, Esquire, WILLIAMS & CONNOLLY, LLP, Washington, D.C., *Attorneys for David G. Bradley.*

Lawrence C. Ashby, Esquire, Richard D. Heins, Esquire, Richard L. Renck, Esquire, ASHBY & GEDDES, Wilmington, Delaware; George H. Mernick, III, Esquire, HOGAN & HARTSON LLP, Washington, D.C.; N. Thomas Connally, Esquire, Jon M. Talotta, Esquire, HOGAN & HARTSON LLP, McLean, Virginia, *Attorneys for Sunrise Senior Living, Inc.*


LAMB, Vice Chancellor.

This opinion addresses the plaintiffs' motion to compel the production of documents in connection with pending motions to dismiss for failure to make a demand.[1] As in *Fleischman v. Huang*,[2] the defendants' briefs in support of those motions expressly and repeatedly rely on the reportedly favorable findings of the special board committee that investigated the matters alleged in the complaint. In the interests of justice, and in accordance with *Fleischman*, the court will permit discovery of the documents prepared in connection with the special committee's findings concerning the matters alleged in the complaint.[3]

## I.

In response to a demand made by an institutional stockholder asking the board to inquire, *inter alia*, into the timing of certain stock option grants at Sunrise Senior Living Inc., the nominal defendant in this case, the company formed a special investigative committee in December of 2006. The plaintiffs, Peter V. Young and Ellen Roberts Young, individual stockholders in Sunrise, did not make a demand on the board but, instead, filed their original complaint on March 7, 2007, and their amended complaint on September 17, 2007. The amended

---

[1] While the plaintiffs move in the alternative for a motion to strike, the court will, as discussed in this opinion, direct the defendants to produce documents related to the work of the special committee.

[2] 2007 WL 2410386 (Del. Ch. Aug. 22, 2007).

[3] During the April 8 teleconference in connection with the motion to compel, the court learned that the special committee did not prepare a written report and, thus, the defendants will be expected to produce all documents prepared in support of the special committee's findings.

1

complaint alleges breaches of fiduciary duty by Sunrise officers and directors in

connection with the allegedly improper issuance of options, as well as claims based

on unjust enrichment and rescission. The complaint mentions the formation of the

special committee and the company's public announcement regarding the same,

but does not discuss the findings of the special committee, which had not yet been

released. The complaint reads, in pertinent part:

> On December 11, 2006, Sunrise announced an SEC investigation of
> the Company and the appointment of a special committee whose
> bifurcated purpose was to review insider sales of Sunrise stock and
> the Company's historical practices relating to stock option grants
> . . . .[4]

The complaint also recites the contents of Sunrise's public announcement of the

formation of the special committee.

　　The defendants (including the nominal defendant) filed motions to dismiss

pursuant to Court of Chancery Rule 23.1 on October 5, 2007, and filed their

opening briefs on November 2.[5] By that time, Sunrise had released the findings of

---

[4] Compl. ¶ 86.

[5] The court notes the oddity of the procedural posture of this case. First, in response to what can only be characterized as a demand, the Sunrise board of directors formed a special investigative committee consisting of a single recently-appointed director (later augmented by the addition of a second newly-appointed director). Second, that committee did not prepare a written report; instead, its purported "findings" were reported in a public filing (which does not disclose either the composition of the committee or the absence of a written report). Third, when this derivative action was begun, all of the defendants (including the corporation) moved to dismiss on grounds of demand excusal although the corporation's motion to dismiss was, evidently, not authorized by any disinterested person or body. Fourth, in their briefs, the defendants relied on the committee's "findings" but omitted any mention of the composition of the committee or the absence of a written report. Needless to say, this posture is not one that will easily support a conclusion that the complaint should be dismissed for failure to make a demand on the board of directors.

2

the special committee, which reportedly found "no evidence of backdating or
other intentional misconduct."[6] While Sunrise made two arguably benign
references in its opening brief to the findings of the special committee,[7] its reply
brief and the individual defendants' reply brief improperly rely upon the truth of
the committee's findings. Specifically, the company's reply brief states:
"[p]articularly in light of the special independent committee's investigation and
findings, Plaintiffs must present particularized allegations of demand futility in
order to establish derivative standing."[8] In addition, the individual defendants'
reply brief argues that the plaintiffs cannot put forward sufficiently detailed
allegations of backdating "given that an investigation commissioned by a Special
Committee of the Board and conducted by independent counsel has 'found no
evidence of backdating or other intentional misconduct in connection with the
award of grants that were examined,' including all of the grants challenged by the
plaintiffs."[9]

  Following these statements, the plaintiffs filed the instant motion to compel.
The plaintiffs seek the "documents constituting and supporting the purported

---

[6] Pls.' Motion Ex. 3.
[7] Sunrise's opening brief generally states that "[t]he committee found no evidence of intentional
backdating or other misconduct in connection with the options grants examined." Sunrise
Opening Br. 8. It also states: "[a]s noted . . . the independent special committee found no
evidence of intentional backdating." *Id.* at 20 n.15.
[8] Sunrise Reply Br. 2.
[9] Individual Defs.' Reply Br. 1 (quoting Sunrise Form 8-K (Sept. 28, 2007) (filed Oct. 1, 2007)).

factual findings and report by the special committee, arising out of the special committee's investigation into the backdating of options . . . ."[10]  According to the plaintiffs, the defendants clearly rely upon the special committee's findings for their truth.  The plaintiffs argue that the complaint merely recites Sunrise's public announcement concerning the formation of the special committee, making the defendants' references impermissible on a motion to dismiss.  The plaintiffs contend, relying primarily on *Fleischman*, that the defendants' reliance on the special committee's findings in their motion to dismiss warrants production of the related documents.

During the April 8 teleconference, the defendants offered to strike the references to the special committee in their submissions, but, since the court finds that these references warrant discovery, it is necessary to briefly outline their arguments.  Foremost, the defendants argue that the plaintiffs' motion amounts to mere "misdirection" because their dismissal arguments do not depend on the truth or accuracy of the special committee's findings and independently warrant dismissal.  The defendants also contend that the references to the special committee are not offered for their truth and that the court could, in any case, take judicial notice of the publicly disclosed findings.

---

[10] Pls.' Motion 1-2.

## II.

In reviewing the parties' respective arguments, this court is instructed by Chancellor Chandler's decision in *Fleischman*, which involved strikingly similar facts. In that case, there were allegations of backdating and the corporation directed the audit committee to investigate the timing of certain option grants. Due to the defendants' reliance in their dismissal briefs on the findings of the audit committee, which were outside the complaint, the court granted limited discovery into the "report or reports upon which" the audit committee based its publicly announced findings.[11] In reaching this decision, the court noted that the plaintiff's motion to compel did not seek discovery "related to the facts alleged in the complaint," rather it sought "documents inserted into litigation by defendants" that were "not even in existence at the time the complaint was filed."[12] The court found that the defendants improperly inserted these matters into the litigation by relying on the audit committee's favorable findings to support their motion to dismiss. For example, in their opening brief, the defendants "argued that where a board has pursued a prompt and complete investigation of problems relating to the grant of stock options, the proposition that a board faces a substantial likelihood of liability is diminished."[13]

---

[11] *Fleischman*, 2007 WL 2410386, at *2.

[12] *Id.* at 3.

[13] *Id.* at 2. The Supreme Court also refused the interlocutory appeal for failing to meet the requirements of Supreme Court Rule 42(b). *See Fleischman v. Huang*, 2007 WL 2588851, at *1 (Del. 2007) (TABLE).

The defendants in *Fleischman*, like the defendants in this case, argued that their repeated references to the committee's findings were not offered for their truth, "but to show that plaintiff's complaint drew unreasonable inferences from . . . earlier public filings."[14]  Here, as in *Fleischman*, this "is inconsistent with any fair reading" of the defendants' submissions to this court.[15]  The previously cited excerpts clearly demonstrate that the defendants offered the special committee's findings for their truth.[16]  Similarly unfounded is the defendants' argument that they included these references to counter the purported suggestion in the amended complaint "that the mere existence of the special committee's investigation somehow lends credence to the Plaintiffs' circumstantial backdating allegations."[17]  The plaintiffs' complaint makes a single direct reference to the special committee's investigation of the backdating allegations and it merely restates information released by Sunrise.  Indeed, the bulk of the reference to the special committee is a direct quotation from a Sunrise press release.

It is well settled that "if a party presents documents in support of its Rule 12(b)(6) motion and the trial court considers the documents, the proceeding is

---

[14] *Fleischman,* 2007 WL 2410386, at *1.

[15] *Id.*

[16] In addition, since the special committee's findings are subject to reasonable dispute, they are not subject to judicial notice. *See id.* at 3.

[17] Sunrise Opp'n 3.

converted to a Rule 56 motion for summary judgment . . . ."[18]  In addition, "before

the Court considers a motion for summary judgment, the non-moving party should

normally have some opportunity for discovery."[19]  Due to the limited nature of the

references in the defendants' motions to dismiss, as in *Fleischman*, the court will

"'grant[] a limited procedural right to plaintiff – access to documents that

defendants have expressly relied upon in support of their motion to dismiss.'"[20]  In

this case, as previously noted, this consists of any documents that relate to the

special committee' findings.

## III.

For the foregoing reasons, the motion to compel is GRANTED.  IT IS SO

ORDERED.

---

[18] *Vanderbilt Income & Growth Assocs. v. ARVIDA/JMB Managers, Inc.*, 691 A.2d 609, 613 (Del. 1996).
[19] *Fleischman*, 2007 WL 2410386, at *3.
[20] *Ryan v. Gifford*, 2008 WL 43699, at *5 (Del. Ch. Jan. 2, 2008) (quoting *Fleischman*, 2007 WL 2410386, at *4).

# EXHIBIT C

FILED

JUL 1 9 1999

U. S. DISTRICT COURT
EASTERN DISTRICT OF MO
ST. LOUIS

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

IN RE BANKAMERICA )
CORP. SECURITIES  ) **MDL No. 1264**
LITIGATION    )

## ORDER

   Before the Court is plaintiffs' motion to lift stay of discovery. For the reasons that follow, this motion is granted.

   Plaintiffs in the above-captioned consolidated proceeding filed class action suits against BankAmerica in several different federal courts for alleged securities violations. These actions were consolidated in this Court by the Judicial Panel on Multidistrict Litigation on February 12, 1999. Seven concurrent state court class actions prosecuted by persons with a lesser financial stake than the federal plaintiffs are currently proceeding in California state court. Defendants filed a motion to dismiss in the federal action on May 21, 1999, thereby triggering the automatic discovery stay provision of the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 77z-1(b)(1); 78u-4(b)(3)(B). This statute provides that

> . . . all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds, upon the motion of any party, that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.

Id. Limited documentary discovery is ongoing in the California cases at this time.

#40

The federal plaintiffs allege that the stay should be lifted because undue prejudice would result from the California plaintiffs obtaining a "head start" in the discovery process. Defendants dispute that such a "head start" is sufficient prejudice to justify lifting the stay. This Court finds that it is sufficient.

The legislative history provides that the stay is to be lifted only upon a finding that exceptional circumstances exist which would result in undue prejudice to the moving party. H. Rep. 104-369, at 63. The only courts to address the definition of "undue prejudice" under this portion of the PSLRA have found that undue prejudice sufficient to lift the stay is an "improper or unfair detriment." In Re Rational Software Sec. Litig, 28 F. Supp. 2d 562, 566 (N.D. Cal. 1998); Medical Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717, 720 (S.D. Cal. 1996). These courts also pointed out that one way a plaintiff could meet this standard is by showing that defendants would be shielded from liability if the stay remained in place. Rational Software, 28 F. Supp. 2d at 567; Medical Imaging Ctrs., 917 F. Supp. at 721 n.3. One court has also stated that the party seeking to lift the stay must point to particularized discovery necessary to prevent undue prejudice before the stay can be lifted. Mishkin v. Ageloff, 220 B.R. 784, 792-93 (S.D.N.Y. 1998).

Although defendants attempt to argue that the sole method of showing undue prejudice under the PSLRA is to show that defendants would be shielded from liability, this Court does not agree. Rational Software and Medical Imaging Ctrs. never stated that this was the only showing that would satisfy the undue prejudice standard. Rational Software, 28 F. Supp. 2d at 566 ("[A] plaintiff may demonstrate the existence of undue prejudice by

2

showing that refusal to allow discovery will shield the defendants from liability for securities fraud.") (emphasis added); <u>Medical Imaging Ctrs.,</u> 917 F. Supp. at 721 n.3 (stating that if plaintiffs had shown that defendants would be shielded from liability, the court would find undue prejudice). Consequently, the fact that plaintiffs have made no showing that lack of discovery would shield defendants from liability is not dispositive of this motion to lift stay.

Plaintiffs have clearly shown the existence of exceptional circumstances[1] resulting in an improper or unfair detriment in this case. One of the core policies of the PSLRA is that the persons with the largest financial interest in the relief sought by the class should control the conduct of the litigation. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The federal plaintiffs represent 2,583,505 shares of BankAmerica stock. The California plaintiffs represent only 198,128 shares.[2] That is, the federal plaintiffs' financial stake in this action is over thirteen times larger than the California plaintiffs' stake. To allow the California plaintiffs early access to the core documents involved in the case and early control over the discovery process would in effect allow the tail to wag the dog. Consequently, the Court finds that failure to lift the stay would result in undue prejudice to the federal plaintiffs.

---

[1]The existence of concurrent federal and state securities class actions is an exceptional circumstance in this Court's opinion. The recently passed Securities Litigation Uniform Standards Act of 1998, P.L. 105-353, 112 Stat. 3227 (1998), would prevent such a situation from occurring in the future. Thus, the precise issue involved in this case is unlikely ever to recur in federal court.

[2]Defendants accuse the California plaintiffs of double counting some shares to make their stake appear larger than it actually is. For the purpose of this Order, the Court will assume that the above cited figures are accurate.

3

Additionally, the Court finds particularized discovery necessary to avoid this prejudice can be fashioned as follows. The federal plaintiffs shall be allowed to conduct discovery only to the extent that the California plaintiffs are conducting discovery. The federal plaintiffs shall be allowed access to all documents produced to the California plaintiffs under the existing requests for production propounded in the California actions as well as any other discovery that occurs pursuant to any coordinated discovery order before the resolution of defendants' motion to dismiss.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiffs' motion to lift stay is granted to the extent that the federal plaintiffs shall have access to the same discovery materials that are or have been provided to the California plaintiffs.

**UNITED STATES DISTRICT COURT**

**Dated:** JULY 19, 1999

4

UNITED STATES DISTRICT COURT -- EASTERN MISSOURI
INTERNAL RECORD KEEPING

**** CONSOLIDATED CASE ****

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 07/19/99 by dbraun
                    4:99md1264    BankAmerica Corp vs

15:77 Securities Fraud

| | |
|---|---|
| Arthur Abbey - | Fax: 212-684-5191 |
| Robert Abrams - | Fax: 212-686-0114 |
| Richard Appleby - | Fax: 212-809-6274 |
| Robert Berg - | Fax: 201-461-9598 |
| Daniel Berger - | Fax: 212-554-1444 |
| Jeffrey Block - | Fax: 617-542-1194 |
| Aaron Brody - | Fax: 212-490-2022 |
| Jules Brody - | Fax: 212-490-2022 |
| Tzivia Brody - | Fax: 212-490-2022 |
| Lisa Buckser - | Fax: 212-554-1444 |
| Vincent Cappucci - | Fax: 212-894-7272 |
| Martin Chitwood - | Fax: 404-876-4476 |
| John Clear -  2828 | Fax: 314-259-2020 |
| Kimberly Cofman -  78763 | Fax: 314-259-5959 |
| Thad Davis - | Fax: 212-403-2000 |
| Marc Edelson - | Fax: 215-230-8735 |
| Andrew Entwistle - | Fax: 212-894-7272 |
| Robert Finkel - | Fax: 212-486-2093 |
| Marvin Frank - | Fax: 212-682-1892 |
| Andrew Friedman - | Fax: 202-408-4699 |
| Robert Frutkin - | Fax: 215-923-9353 |
| Mark Gardy - | Fax: 212-684-5191 |
| Mark Grady - | Fax: 212-684-5191 |
| Martin Green - | Fax: 314-862-1606 |
| Bernard Gross - | Fax: 215-561-3000 |
| Deborah Gross - | Fax: 215-561-3000 |
| Marc Gross - | Fax: 212-661-8665 |
| Peter Harrar - | Fax: 212-686-0114 |
| D. Hufford - | Fax: 212-661-8665 |
| Joe Jacobson -  3471 | Fax: 314-862-1606 |
| David Jaroslawicz - | Fax: 212-732-6746 |
| Daniel Krasner - | Fax: 212-545-4653 |
| Clinton Krislov - | Fax: 312-606-0207 |
| Nicole Lavallee - | Fax: 415-433-6382 |
| William Lerach - | Fax: 619-231-7423 |
| Lester Levy - | Fax: 212-486-2093 |
| Mel Lifshitz - | Fax: 201-461-9598 |
| Michael Matraia - | Fax: 617-542-1194 |
| Joseph McBride - | Fax: 212-682-1892 |
| Christi Mobley - | Fax: 404-876-4476 |
| Klari Neuwelt - | Fax: 212-593-9131 |
| Jeffrey Nobel - | Fax: 860-493-6290 |
| James Notis - | Fax: 212-684-5191 |
| Stephen Oestreich - | Fax: 212-486-2093 |
| Jonathan Plasse - | Fax: 212-818-0477 |
| Barbara Podell - | Fax: 215-923-9353 |
| Michael Pucillo - | Fax: 561-835-0322 |

Brian Robbins -
SCOTT AND SCOTT, LLC
108 Norwich Avenue
Colchester, CT  06415

| | |
|---|---|
| Darren Robbins - | Fax: 619-231-7423 |
| Stephen Rovak -  4218 | Fax: 314-259-5959 |

SCANNED & FAXED BY:
JUL 19 1999
C.D.D.

```
Shane Rowley -                    Fax: 212-686-0114
Samuel Rudman -                   Fax: 212-868-1229
Jeffrey Russell -   4232          Fax: 314-259-2020
Stuart Savett -                   Fax: 215-923-9353
Andrew Schatz -                   Fax: 860-493-6290
Steven Schulman -                 Fax: 212-868-1229
Michael Schwartz -                Fax: 212-486-2093

David Scott -
SCOTT AND SCOTT, LLC
108 Norwich Avenue
Colchester, CT  06415

Jeffrey Smith -                   Fax: 212-686-0114

Lee Squitieri -
ABBEY AND GARDY
212 E. 39th Street
New York, NY  10016

Robert Stein -                    Fax: 312-606-0207
Warren Stern -                    Fax: 212-403-2000
Joseph Tabacco -                  Fax: 415-433-6382
Curtis Trinko -                   Fax: 212-986-0158
Robert Wilson -                   Fax: 618-252-5304
Marc Wolinsky -                   Fax: 212-403-2000
```