# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                )

In Re SUNRISE SENIOR LIVING, INC.   )
Derivative Litigation                 )        Civil Action No. 1:07CV00143
_____)        Judge Reggie B. Walton
                                )

This Document Relates To:        )
                                )

    ALL ACTIONS               )
_____)

## NOMINAL DEFENDANT SUNRISE SENIOR LIVING, INC.'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO PARTIALLY LIFT DISCOVERY STAY

George H. Mernick, III (DC Bar 294256)
HOGAN & HARTSON, LLP
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone:    (202) 637-5726
Facsimile:    (202) 637-5910

N. Thomas Connally (DC Bar 448355)
Jon M. Talotta (DC Bar 473626)
HOGAN & HARTSON, LLP
8300 Greensboro Drive, Suite 1100
McLean, Virginia  22102
Telephone:    (703) 610-6100
Facsimile:    (703) 610-6200

*Attorneys for Nominal Defendant*
*Sunrise Senior Living, Inc.*

Dated: May 30, 2008

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ..................................................................................................... i

INTRODUCTION ...................................................................................................................1

BACKGROUND ....................................................................................................................2

ARGUMENT ..........................................................................................................................6

     I.     Plaintiffs Present No Basis for Lifting the PSLRA Discovery Stay........................7

          A.     Plaintiffs Have Failed to Demonstrate that Lifting the Stay
                  is Necessary to Prevent Undue Prejudice. ...................................................8

          B.     Plaintiffs' Request Is Not Particularized to Any Asserted
                  Prejudice, and Lifting the Stay Will Burden Sunrise, the
                  Beneficial Plaintiff Here. ...........................................................................11

          C.     Discovery is Unnecessary to Preserve Evidence. ......................................13

     II.     Under Rule 23.1, No Discovery Is Available Until the Plaintiffs'
            Derivative Standing Has Been Resolved on a Motion to Dismiss........................14

CONCLUSION......................................................................................................................16

REQUEST FOR ORAL HEARING .........................................................................................16

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>CASES</u>

<u>Air Line Pilots Ass'n v. Miller</u>, 523 U.S. 866 (1998)................................................. 12

<u>Arias v. Dyncorp</u>, 517 F. Supp. 2d 221 (D.D.C. 2007) ............................................. 15

<u>Aronson v. Lewis</u>, 473 A.2d 805 (Del. 1984)........................................................... 15

<u>Breault v. Folino</u>, No. 01-00826, 2002 WL 31974381 (C.D. Cal. Mar. 15, 2002) ..................... 12

<u>Brehm v. Eisner</u>, 746 A.2d 244 (Del. 2000) ............................................................. 15

<u>Brudno v. Wise</u>, No. 03-19953, 2003 WL 1874750 (Del. Ch. Apr. 1, 2003)............................ 12

<u>CFS-Related Sec. Fraud Litig.</u>, 179 F. Supp. 2d 1260 (N.D. Okla. 2001) ............................... 7, 10

<u>Gaubert v. Fed. Home Loan Bank Bd.</u>, 863 F.2d 59 (D.C. Cir. 1988) ................................... 15

<u>Hisler v. Gallaudet Univ.</u>, 344 F. Supp. 2d 29 (D.D.C. 2004)......................................... 12

<u>In re Altera Corp. Deriv. Litig.</u>, No. 06-03447, 2006 WL 2917578 (N.D. Cal. Oct. 11, 2006) ..... 7

<u>In re AOL Time Warner, Inc. Sec. & ERISA Litig.</u>, No. 02-05575, 2003 WL 21729842 (S.D.N.Y. July 25, 2003) ................................................................................ 9

<u>In re Bank of America Corp. Sec. Litig.</u>, MDL-1264 (E.D. Mo. July 19, 1999).......................... 8

<u>In re E.F. Hutton Banking Practices Litig.</u>, 634 F. Supp. 265 (S.D.N.Y. 1986)........................ 12

<u>In re Enron Corp. Sec., Deriv. & ERISA Litig.</u>, Nos. MDL-1446, 01-03624, 2002 WL 31845114 (S.D. Tex. Aug. 16, 2002)....................................................................... 8, 10

<u>In re Fannie Mae Sec. Litig.</u>, 362 F. Supp. 2d 37 (D.D.C. 2005)....................................... 8, 9, 13

<u>In re First Energy Corp. Sec. Litig.</u>, 229 F.R.D. 541 (N.D. Ohio 2004) ................................ 10

<u>In re Kauffman Mut. Fund Actions</u>, 479 F.2d 257 (1st Cir. 1973)....................................... 14

<u>In re LaBranche Sec. Litig.</u>, 333 F. Supp. 2d 178 (S.D.N.Y. 2004)..................................... 10

<u>In re Openwave S'holders Deriv. Litig.</u>, 503 F. Supp. 2d 1341 (N.D. Cal. 2007) ....................... 14

In re Royal Ahold N.V. Sec. & ERISA Litig., 220 F.R.D. 246 (D. Md. 2004).......................... 9, 13

In re Trump S'holders Deriv. Litig., No. 96-07820, 1997 WL 442135 (S.D.N.Y. Aug. 5, 1997) ...................................................................................................... 7, 13

In re Vivendi Universal Sec. Litig., 381 F. Supp. 2d 129 (S.D.N.Y. 2003) ................................... 9

In re WorldCom, Inc. Sec. Litig., 234 F. Supp. 2d 301 (S.D.N.Y. 2002) ................................. 8, 9

Levine v. Smith, 591 A.2d 194 (Del. 1991)................................................................................. 15

Massey v. Merrill Lynch & Co., Inc., 464 F.3d 642 (7th Cir. 2006)........................................... 12

Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717 (S.D. Cal. 1996) ........... 10, 11

Rales v. Blasband, 634 A.2d 927 (Del. 1993) ............................................................................. 14

Sarantakis v. Gruttadauria, No. 02-01609, 2002 WL 1803750 (N.D. Ill. Aug. 5, 2002) ....... 11, 14

SG Cowen Sec. Corp. v. U.S. Dist. Ct. N.D. Cal, 189 F.3d 909 (9th Cir. 1999) ................. 7, 8, 9

Vacold LLC v. Cerami, No. 00-04024, 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001)................. 10

Winer Family Trust v. Queen, No. 03-04318, 2004 WL 350181 (E.D. Pa. 2004)....................... 13

Young v. Klaassen, No. 2770-VCL, 2008 WL 1874598 (Del. Ch. Ct. April 25, 2008) ............... 6

## STATUTES

15 U.S.C. § 78u-4(b)(3)(B)................................................................................................. 7, 8, 13

15 U.S.C. 78u-4(a)(3)(B)(iii)....................................................................................................... 8

Delaware Court of Chancery Rule 23.1 ...................................................................... 1, 6, 14, 15

Fed. R. Civ. P. 23.1................................................................................................... 1, 6, 14, 15

Fed. R. Civ. P. 26(d) .................................................................................................................. 15

## OTHER AUTHORITIES

H.R. Conf. Rep. No. 104-369, at 37 (1995)............................................................................... 11

S. Rep. No. 104-98, at 14 (1995) ............................................................................................... 11

**<u>INTRODUCTION</u>**

Plaintiffs have no right or reason to conduct discovery in this case at this time.  In order to obtain discovery, the plaintiffs must first establish their derivative standing and the validity of their claims as alleged.  Those issues will be determined when the Court rules on the defendants' motions to dismiss the plaintiffs' most recent amended complaint, motions that are due to be filed on June 16, 2008.  Until then, discovery is prohibited by the Private Securities Litigation Reform Act ("PSLRA"), as well as case law applying Delaware Court of Chancery Rule 23.1 and the analogous Rule 23.1 of the Federal Rules of Civil Procedure.

Fundamentally, plaintiffs' motion ignores the fact that this is a putative derivative suit and that the plaintiffs purport to represent Sunrise Senior Living, Inc. ("Sunrise" or the "Company").  Sunrise is not prejudiced in any way by the statutorily mandated stay of discovery.  To the contrary, Sunrise faces significant prejudice if the discovery the plaintiffs seek is permitted.  This is not a situation where two different classes of securities plaintiffs are competing for recovery from a company in financial distress, such that fairness would dictate that their cases proceed in tandem on relatively equal information.  The <u>Young</u> suit in the Delaware Chancery Court (the "Delaware Suit"), in which a limited procedural right to certain documents has been granted, is a putative derivative suit, just like this one.  Any recovery by the plaintiffs in the Delaware Suit ("Delaware Plaintiffs") will go to the same entity, Sunrise, as would a recovery in this suit.

Nor are the plaintiffs in this case competing for recovery with the Securities and Exchange Commission ("SEC").  The plaintiffs in this case ostensibly seek recovery <u>for</u> Sunrise, while the SEC is <u>investigating</u> Sunrise.  Plaintiffs failed to provide a plausible explanation as to why it benefits Sunrise to produce documents, provided to the SEC, to putative shareholder plaintiffs who have yet to establish that they have derivative standing or have stated valid claims.

Indeed, the "prejudice" motivating the plaintiffs' motion in this case is only to their counsel, who do not want plaintiffs' counsel in the Delaware Suit to have a "head start" on a potential recovery for Sunrise, and thus a head start on a claim for attorneys' fees. Apparently concerned that they may lose the race to claim fees, plaintiffs' counsel in this suit now seek to one-up their counterparts in the Delaware Suit by requesting what amounts to full merits discovery, including depositions, before motions to dismiss are resolved.

Just as plaintiffs here have failed to specifically identify any actual prejudice to Sunrise, they have likewise failed to explain how the discovery they request would be used to remedy any such prejudice. Plaintiffs' request for discovery is a patent "fishing expedition" and a transparent attempt to use discovery for leverage, in direct contravention of the PSLRA and well-established law regarding the conduct of derivative litigation.

For these reasons, and as explained below in more detail, Plaintiffs' motion should be denied in its entirety.

## BACKGROUND

Since August 2006, six shareholder derivative suits and two securities class actions have been filed asserting the alleged backdating of stock options at Sunrise. One of the derivative suits has already been dismissed for failure to make the required presuit demand. None of the cases has progressed past initial motions.

**Special Committee Investigation.** On November 20, 2006, the Service Employees International Union, CLC ("SEIU") sent Sunrise's Board of Directors a letter questioning certain of Sunrise's historical options grants. SEIU also simultaneously distributed the letter to news outlets. On December 11, 2006, Sunrise's Board announced the appointment of a special independent committee (the "Special Committee") to review matters including the Company's historical practices related to stock options grants questioned by SEIU. See

- 2 -

December 11, 2006 Sunrise News Release, Ex. 1 hereto.  The Special Committee's investigation later expanded to cover the historical accounting treatment of certain matters unrelated to options grants.  See March 2, 2006 Sunrise News Release, Ex. 2 hereto.  On September 28, 2007, Sunrise issued a press release providing an update on the Special Committee investigation and related matters, which included a report of the Special Committee's findings with respect to Sunrise's historic stock options grants.  On October 1, 2007, Sunrise filed a Form 8-K with the SEC that incorporated the September 28, 2007 press release.  See Form 8-K, Ex. 3 hereto.

**SEC Investigation.**  On December 11, 2006, the same day the appointment of the Special Committee was announced, Sunrise announced that the SEC had requested information regarding issues including those raised in the SEIU letter.  See December 11, 2006 Sunrise News Release, Ex. 1.  On May 29, 2007, the SEC initiated a formal investigation relating to Sunrise. See May 29, 2007 Sunrise News Release, Ex. 4 hereto.  The SEC investigation remains ongoing. Sunrise has produced a substantial volume of documents to the SEC in connection with the investigation.

**Virginia Circuit Court Cases.**  The first assertion of any claims alleging stock options backdating at Sunrise was made in a derivative suit filed on August 11, 2006, by Schiffrin & Barroway (one of the lead counsel firms in this suit as well) in the Circuit Court for Fairfax County, Virginia.  Von Guggenberg v. Klaassen, et al., Case No. CL-2006-10174.  On September 6, 2006, after Sunrise moved to dismiss the Von Guggenberg suit, but before the Circuit Court ruled on Sunrise's motions, Schiffrin & Barroway filed another derivative suit in the same Circuit Court, on behalf of a second purported shareholder plaintiff, asserting similar claims of alleged options backdating and related improper conduct.  Molner v. Klaassen, et al., Case No. CL-2006-11244.  On September 15, 2006, the Virginia Circuit Court dismissed Von

Guggenberg for failure to make demand and on statute of limitations grounds. 1/   Molner subsequently filed an uncontested notice of non-suit (permitted by right under Virginia law) and then re-filed her suit in this Court.

**D.C. Federal Court Cases.**  In January and February 2007, two Sunrise securities class actions 2/ and three Sunrise derivative actions (including Molner's) 3/ were filed in this Court.

Securities Class Actions.  The two class actions were consolidated on July 31, 2007.  Case No. 07-CV-00102-RBW, Docket No. 29.  The parties entered into a stipulation whereby the plaintiffs would file an amended consolidated complaint 45 days after Sunrise issued restated financials.  Id., Docket No. 35.  The class action plaintiffs are scheduled to file an amended consolidated complaint on June 6, 2008, and the defendants' responses are due on July 21, 2008.  Id.

Derivative Suits.  The three derivative suits filed in this Court were consolidated on May 11, 2007.  Docket No. 20.  The lead plaintiffs ("Plaintiffs") filed a Consolidated Shareholder Derivative Complaint on June 29, 2007.  Docket No. 26.  On August 27, 2007, nominal defendant Sunrise and the individual defendants filed preliminary motions seeking to dismiss the suit on several grounds. Docket Nos. 36, 38, 40-42.  On October 26, 2007, Plaintiffs attempted to file a second amended complaint.  Docket No. 59.  Plaintiffs subsequently

---

1/    Von Guggenberg's petition for appeal to the Virginia Supreme Court was denied on April 27, 2007.

2/    The two class actions were captioned United Food & Commercial Workers Union Local 880-Retail Food Employers Joint Pension Fund, et al. v. Sunrise Senior Living, Inc., et al., Case No. 1:07CV00102 and First New York Securities, L.L.C. v. Sunrise Senior Living, Inc., et al., Case No. 1:07CV000294.

3/    The three derivative actions were captioned Brockton Contributory Retirement System v. Paul J. Klaassen, et al., Case No. 1:07CV00143, Catherine Molner v. Paul J. Klaassen, et al., Case No. 1:07CV00227, and Robert Anderson v. Paul J. Klaassen, et al., Case No. 1:07CV00286.

sought leave to amend.  Docket No. 50.  On March 28, 2008, the Court held that the plaintiffs did

not need leave to amend and denied the then-pending motions to dismiss without prejudice.

Docket No. 58.  The amended complaint was deemed filed on March 28, 2008.  Id.  Sunrise and

the individual defendants are scheduled to file preliminary motions in response to the amended

complaint on June 16, 2008.  Docket No. 61.

       **Delaware Chancery Court Case.**  The Delaware Suit, filed on March 6, 2007 in

Delaware Chancery Court and captioned Young, et al. v. Klaassen, et al., C.A. No. 2770-N, was

the sixth derivative suit filed by purported shareholder plaintiffs on behalf of Sunrise.  The

allegations in the initial complaint in the Delaware Suit were virtually identical to those in the

Molner complaint filed by Schiffrin & Barroway in the Virginia Circuit Court.  Sunrise and the

individual defendants filed motions to dismiss the Delaware Suit on June 6, 2007 and June 13,

2007.  The Delaware Plaintiffs amended their original complaint on September 17, 2007.  On

November 2, 2007, Sunrise and the individual defendants in the Delaware Suit moved to dismiss

the amended complaint.  Those motions have been fully briefed and remain pending.

       In response to the Delaware Plaintiffs' allegations regarding the existence of the

Special Committee investigation, Sunrise and certain individual defendants noted the public

disclosure of the Special Committee's findings relating to Sunrise's historic stock options grants

in their motion papers.  The Delaware Plaintiffs subsequently filed a motion to strike those

references, or to compel the production of documents relating to the Special Committee's

findings.  See Young, Pls.' Mot. to Strike, Ex. 5 hereto.   Sunrise opposed the motion, noting that

it was not asking the Chancery Court to accept the truth of the Special Committee's findings, but

rather objecting to the Delaware Plaintiffs' effort to draw inferences of wrongdoing from the

mere existence of the Special Committee investigation without mentioning the publicly disclosed

findings of the Special Committee.  <u>Young</u>, Sunrise Opp'n to Mot. to Strike at 3, Ex. 6 hereto.

Sunrise, however, did not object to having the references to the Special Committee findings

stricken from its motion papers.  <u>Id.</u> at 4-5.

   Rather than striking the references to the Special Committee findings in Sunrise's

papers, the principal relief sought by the Delaware Plaintiffs and relief to which Sunrise had

agreed, the Chancery Court ordered the production of certain documents relating to the Special

Committee's findings.  <u>See</u> <u>Young v. Klaassen</u>, No. 2770-VCL, 2008 WL 1874598, at *3 (Del.

Ch. Ct. April 25, 2008).  The Delaware Plaintiffs did not request, and the Chancery Court did not

order, the production of documents provided by Sunrise to the SEC, nor did the Chancery Court

open discovery generally.  Rather, the Chancery Court provided the Delaware Plaintiffs "a

limited procedural right" based on the court's findings concerning the substance of the motions

pending before it.  <u>Id.</u> ("Due to the limited nature of the references in defendants' motions to

dismiss…the Court will grant a limited procedural right to plaintiffs – access to documents that

defendants have expressly relied upon in support of their motion to dismiss.").

   On May 16, 2008, in response to the Chancery Court's April 25, 2008 order and

memorandum opinion, Sunrise produced a limited set of documents to the Delaware Plaintiffs.

<u>See</u> May 16, 2008 Letter from George H. Mernick to Karen E. Fisch, Ex. 7 hereto.

## <u>ARGUMENT</u>

   Plaintiffs have no basis to lift the PSLRA stay on discovery, nor any basis to

obtain discovery before they have established their derivative standing under Rule 23.1.  Having

known about the Special Committee's investigation and the SEC's inquiry since they first filed

suit in early 2007, Plaintiffs cannot now claim that they must have documents relating to those

matters merely because other derivative plaintiffs have been granted access to a limited set of

documents under circumstances not present here.  Motions to dismiss the operative complaint

have not yet been filed in this case, and thus the basis for the limited procedural right granted to the Delaware Plaintiffs does not exist here.

Furthermore, concern that the limited production ordered by the Chancery Court somehow gives the Delaware Plaintiffs a "head start" over the Plaintiffs in this case does not give rise to any legitimate claim of prejudice to Sunrise, on whose behalf these derivative suits have been filed. 4/ To the contrary, Sunrise would be substantially prejudiced if the stay is lifted and discovery is allowed before Plaintiffs have established their derivative standing and right to proceed.

**I.      Plaintiffs Present No Basis for Lifting the PSLRA Discovery Stay.**

The PSLRA requires the court to stay discovery in all lawsuits alleging claims under federal securities law until the case has survived a motion to dismiss. 5/ 15 U.S.C. § 78u-4(b)(3)(B).  By enacting the PSLRA discovery stay, "Congress…intended that complaints in…securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." SG Cowen, 189

---

4/       The pace of progress of this case is the result of decisions of Plaintiffs' counsel, including: filing derivative claims without first making a request to inspect the books and records of Sunrise under Del. Code Ann. tit. 8 § 220; filing first in Virginia, losing, and then re-filing in this Court; and responding to the defendants' motions to dismiss with an amended complaint.

5/       Although this case is a shareholder derivative suit, Plaintiffs acknowledge that the PLSRA stay provision applies to bar discovery in this case because federal jurisdiction is alleged solely on the basis of Plaintiffs' federal securities claims. In re Altera Corp. Deriv. Litig., No. 06-03447, 2006 WL 2917578, at *1 (N.D. Cal. Oct. 11, 2006) (applying stay to pendent state law claims asserted with federal securities claims in derivative suit); see SG Cowen Sec. Corp. v. U.S. Dist. Ct. N.D. Cal, 189 F.3d 909, 913 n.1 (9th Cir. 1999) ("Congress' attempt to address concerns of discovery abuse would be rendered meaningless if securities plaintiffs could circumvent the stay simply by asserting pendent state law claims in federal court in conjunction with their federal law claims."); In re Trump S'holders Deriv. Litig., No. 96-07820, 1997 WL 442135, at *1 (S.D.N.Y. Aug. 5, 1997) (applying PSLRA stay in derivative suit because plaintiffs alleged federal securities law claims); CFS-Related Sec. Fraud Litig., 179 F. Supp. 2d 1260, (N.D. Okla. 2001) (applying PSLRA stay in derivative suit because no independent basis for jurisdiction over state law claims).

F.3d at 912.  Courts may allow discovery before a motion to dismiss <u>only</u> if the plaintiff

demonstrates that discovery is necessary to preserve evidence or prevent undue prejudice.  15

U.S.C. § 78u-4(b)(3)(B).  "The burden of establishing the need for a partial lifting of the

discovery stay…is a heavy one," <u>In re Fannie Mae Sec. Litig.</u>, 362 F. Supp. 2d 37, 38 (D.D.C.

2005).  In this case, lifting the stay – even "partially" – is not necessary to prevent prejudice or

preserve evidence.  <u>Any</u> alteration to the PSLRA stay in this case would defeat Congress' intent.

**A.    Plaintiffs Have Failed to Demonstrate that Lifting the Stay is Necessary to Prevent Undue Prejudice.**

Plaintiffs are not prejudiced, unduly or otherwise, as a result of the limited access

to documents ordered in the Delaware Suit, much less by Sunrise's productions to the SEC.

Both derivative suits seek recovery on behalf of the same party in interest, Sunrise, and it does

not matter to Sunrise which derivative suit (this one, or the Delaware suit) is resolved first.

Unlike cases cited by Plaintiffs, this is not a situation in which there are different

classes of securities plaintiffs seeking recovery from the same financially distressed corporate

defendant.  <u>See</u> <u>In re WorldCom, Inc. Sec. Litig.</u>, 234 F. Supp. 2d 301 (S.D.N.Y. 2002)

(simultaneous ERISA and securities actions); <u>In re Enron Corp. Sec., Deriv. & ERISA Litig.</u>,

Nos. MDL-1446, 01-03624, 2002 WL 31845114, at *1 (S.D. Tex. Aug. 16, 2002) (simultaneous

securities, ERISA, and derivative actions). <u>6/</u>   Here, any recovery from the individual defendants

in either derivative suit goes to Sunrise.  No prejudice to Sunrise can result from a limited

---

<u>6/</u>     Plaintiffs cite one case finding undue prejudice unrelated to a defendant's financial
distress, but that case is inapposite.  In <u>In re Bank of America Corp. Sec. Litig.</u>, MDL-1264 (E.D.
Mo. July 19, 1999), the court lifted the stay on a federal <u>class</u> <u>action</u> because the plaintiffs were
falling behind a parallel state action, brought by plaintiffs who owned significantly less stock in
the defendant company than the federal class plaintiffs – effectively allowing plaintiffs with less
financial interest to act as lead plaintiffs in a securities class action contrary to the PSLRA.  <u>Id.</u> at
3 (citing 15 U.S.C. 78u-4(a)(3)(B)(iii) ("for purposes of [appointing a lead class plaintiff,]…the
most adequate plaintiff…is the person or group of persons that…has the largest financial interest
in the relief sought")).  Section 78u-4(a)(3)(B)(iii) does not apply to derivative suits.

production in one derivative case (made in connection with pending motions to dismiss) but not in the other.  Plaintiffs fail to cite any case finding derivative plaintiffs to be unduly prejudiced by a PSLRA discovery stay.

Even setting aside the fundamental difference between class action plaintiffs and derivative plaintiffs, the Plaintiffs are not unduly prejudiced by the PSLRA discovery stay.  The mere lack of information that might be useful in planning the litigation or settlement discussions is insufficient to lift the stay.  Fannie Mae, 362 F. Supp. 2d at 39 (rejecting plaintiffs' claim of undue prejudice solely from not being on "equal footing" with regulatory agencies). 7/

A PSLRA stay causes undue prejudice only when there is a substantial risk that, after the stay, the defendant will have insufficient funds to make the plaintiffs whole.  See In re WorldCom, Inc. Sec. Litig., 234 F.Supp.2d 301, 306 (S.D.N.Y. 2002) (undue prejudice because securities plaintiff "face[d] the very real risk that it will be left to pursue its action against defendants who no longer have anything or at least as much to offer," given defendant's already-declared bankruptcy and imminent, court-ordered settlement discussions with ERISA plaintiffs); see also In re Royal Ahold N.V. Sec. & ERISA Litig., 220 F.R.D. 246, 252 (D. Md. 2004) (undue prejudice because "[defendant's] aggressive divestitures, rather like WorldCom's

---

7/      See also SG Cowen, 189 F.3d at 913 ("[A]s a matter of law, failure to muster facts sufficient to meet the [PSLRA's] pleading requirements cannot constitute the requisite 'undue prejudice' to the plaintiff justifying a lift of the discovery stay under [the PSLRA]"); In re AOL Time Warner, Inc. Sec. & ERISA Litig., No. 02-05575, 2003 WL 21729842, at *1 (S.D.N.Y. July 25, 2003) (claim of undue prejudice "premature" because, unlike WorldCom, defendant was not bankrupt and settlement talks between defendant and government agencies were only in initial stages); In re Vivendi Universal Sec. Litig., 381 F. Supp. 2d 129, 130-31 (S.D.N.Y. 2003) (no undue prejudice because "no evidence that plaintiffs face the same prospect, as in WorldCom…, that they would be left without remedy in light of settlement discussions or other intervening events, such as bankruptcy or attempt to take control over plaintiff by acquisition").

bankruptcy, create[d] a risk that delay may limit recovery"). 8/  Here, the Plaintiffs have not and cannot make such an assertion.

In stark contrast to the prejudice found in the cases they cite, Plaintiffs argue only that they will be unable to "meaningfully participate" in the governmental and state court proceedings until they receive the requested documents.  Pls.' Mot. at 8.  This assertion merely raises more questions:  What "participation" are Plaintiffs seeking?  How will the requested production assist them in that "participation"?  Why will these <u>derivative</u> Plaintiffs be prejudiced if they postpone "participating" on behalf of Sunrise until their complaint survives a motion to dismiss and they have established their derivative standing?

Simply put, Plaintiffs cannot establish that the statutorily mandated stay of discovery in this suit threatens to impede the ultimate redress of Sunrise's alleged injuries. 9/

---

8/      See also In re LaBranche Sec. Litig., 333 F. Supp. 2d 178, 183 (S.D.N.Y. 2004) (based on defendant's $63 million settlement with SEC and New York Stock Exchange, undue prejudice if discovery was delayed); Singer v. Nicor, Inc., No. 02-05168, 2003 WL 22013905, at *3 (N.D. Ill. April 23, 2003) (undue prejudice when SEC filed civil complaint against defendant and Illinois state agency already fined defendant $27 million); cf. In re Enron Corp. Sec., Deriv., & ERISA Litig., Nos. MDL-1446, 01-03624, 2002 WL 318451114 (S.D. Tex. August 16, 2002) (stay lifted after defendant had already declared bankruptcy).  Plaintiffs cite In re First Energy Corp. Sec. Litig., 229 F.R.D. 541 (N.D. Ohio 2004), which merely cites In re WorldCom, 234 F. Supp. 2d at 305; Singer, 2003 WL 22013905, at *2; Enron, 2002 WL 318451114, and finds undue prejudice.  Id. at 545.  The absence of analysis makes it impossible to determine whether the defendant was facing financial difficulty, but the court's reliance on cases involving defendants in financial difficulty suggests the defendant in First Energy was as well.

9/      Nor will the individual defendants be "shielded from liability" by the PSLRA stay.  Pls.' Mot. at 8-9.  The two cases Plaintiffs cite provide no support: one held that the defendant would not be shielded from liability, see Med. Imaging Ctrs. of Am., Inc. v. Lichtenstein, 917 F. Supp. 717, 721 n.3 (S.D. Cal. 1996) (plaintiffs "would have an adequate opportunity, following a favorable resolution of the Motion to Dismiss, to undertake adequate discovery if it were warranted"), and the other did not deal with parallel proceedings.  See Vacold LLC v. Cerami, No. 00-04024, 2001 WL 167704, at *6 (S.D.N.Y. Feb. 16, 2001).  The Vacold court partially lifted the PSLRA stay to resolve a dispositive factual issue prior to ruling on a motion to dismiss, id. at *7, but the Plaintiffs here cannot claim they need to resolve any such issues.  Moreover, the partial lifting of the PSLRA stay in Vacold has been questioned by other courts.  See CFS, 179 F. Supp. 2d at 1267 ("[t]he Court finds the procedure used in Vacold is questionable.").

There is no prejudice.  See Med. Imaging Ctrs., 917 F. Supp. at 722 (finding plaintiff "failed to show that it would be prejudiced by waiting until a favorable resolution of the Motion to Dismiss before proceeding with its discovery.")

To the contrary, as discussed below, Sunrise faces substantial prejudice if discovery proceeds before Plaintiffs establish derivative standing and the validity of their claims.

**B.      Plaintiffs' Request Is Not Particularized to Any Asserted Prejudice, and Lifting the Stay Will Burden Sunrise, the Beneficial Plaintiff Here.**

In enacting the PSLRA and its discovery stay, Congress sought to (a) protect corporations from discovery costs that often forced them to settle simply to avoid the expense of presenting a meritorious defense, and (b) prevent plaintiffs from filing frivolous lawsuits and embarking on "fishing expeditions" during discovery to determine whether there was anything to substantiate their claims.  H.R. Conf. Rep. No. 104-369, at 37 (1995); S. Rep. No. 104-98, at 14 (1995).  Plaintiffs' request to lift the stay here conflicts with both objectives.

The PSLRA requires that the moving party show prejudice to lift the discovery stay.  The moving party cannot make an end-run around the prejudice requirement by arguing that the producing party would suffer little or no burden if the stay is lifted.  Sarantakis v. Gruttadauria, No. 02-01609, 2002 WL 1803750, at *4 (N.D. Ill. Aug. 5, 2002) ("The plaintiffs' argument that lifting the stay will not prejudice the defendants is irrelevant and does not relieve the plaintiffs of their burden to establish that they will suffer undue prejudice if the stay is not lifted.").  Plaintiffs' assertion that lifting the stay will not unduly burden Sunrise is thus irrelevant and, as discussed below, erroneous.

Not only do the Plaintiffs seek the limited production made to the Delaware Plaintiffs, they also seek the documents Sunrise has provided to the SEC, and, apparently, follow-up depositions.  That is, essentially, merits discovery.  The production of the documents

provided to the SEC is particularly burdensome.  Sunrise has made voluminous productions to

the SEC in response to requests involving issues different from those in dispute in this case.

Therefore, in order to produce documents relating to Plaintiffs' claims, Sunrise would have to

review (again) every document provided to the SEC, in order to identify irrelevant documents.

This would be extraordinarily costly, and precisely the type of discovery expense that Congress

sought to spare parties before a court has determined the legal sufficiency of a plaintiff's

claims. [10]/

           Having failed to identify any specific prejudice caused by the PLSRA discovery

stay, Plaintiffs also fail to explain how the requested discovery alleviates any claimed prejudice.

The Plaintiffs' assertion of standing and the validity of their claims rise or fall based on the

allegations in their amended complaint.  It thus appears that Plaintiffs now seek discovery so

they can attempt to amend their deficient pleadings, including their demand futility allegations,

yet again.  To prevent such "fishing expeditions," the PSLRA expressly provides that any

discovery permitted prior to a motion to dismiss must be "particularized."  15 U.S.C. § 78u-

---

[10]/     Plaintiffs' request for discovery simply confirms the need to stay this derivative suit
generally, until the securities class action currently pending before this Court is resolved.  The
power to stay proceedings is incidental to the power inherent in every court to control the
disposition of the causes on its docket.  Air Line Pilots Ass'n v. Miller, 523 U.S. 866, 879 n. 6
(1998); Hisler v. Gallaudet Univ., 344 F. Supp. 2d 29, 35 (D.D.C. 2004).  Because this suit has
been brought by a purported shareholder on Sunrise's behalf and the beneficial plaintiff here is
Sunrise itself, the Court may stay this suit because it is not in Sunrise's best interests for it to go
forward in light of the pending class action in which Sunrise is a defendant.  See, e.g., Breault v.
Folino, No. 01-00826, 2002 WL 31974381, at *1-2 (C.D. Cal. Mar. 15, 2002) (staying derivative
action because it would divert corporation's resources from defense of direct action); cf. Massey
v. Merrill Lynch & Co., Inc., 464 F.3d 642, 647 (7th Cir. 2006) (derivative plaintiff and
corporation "may have different interests and goals in litigation, and [the shareholder plaintiff]
could act in ways that harm the corporation, even if unintentionally"); Brudno v. Wise, No. 03-
19953, 2003 WL 1874750, at *1 (Del. Ch. Apr. 1, 2003) (staying derivative suit because, if
corporation successfully defended against class action, at least some derivative claims would not
survive); In re E.F. Hutton Banking Practices Litig., 634 F. Supp. 265, 270 (S.D.N.Y. 1986)
(directors would be important witnesses for corporation in direct action, thus derivative suit
might "undercut their veracity and general effectiveness as witnesses" for corporation).

4(b)(3)(B). 11/ "[T]he party seeking discovery…must adequately specify the target of the requested discovery and the types of information" necessary to relieve the alleged prejudice. 12/ Fannie Mae, 362 F. Supp. 2d at 38. 13/

Here there is no prejudice, and even if Plaintiffs had made such a showing, they have failed to identify the particular documents they need to alleviate such alleged prejudice. Under the circumstances, lifting the stay would contravene the PSLRA's fundamental objectives.

## C.    Discovery is Unnecessary to Preserve Evidence.

There is even less basis to suggest that lifting that the PLSRA discovery stay is necessary to preserve evidence.  The need to lift a PLSRA stay to preserve documents is "remote," Trump, 1997 WL 442135, at *2, because the PSLRA mandates that parties preserve evidence during any discovery stay.  See Winer Family Trust v. Queen, No. 03-04318, 2004 WL 350181, at *4 (E.D. Pa. 2004) (citing 15 U.S.C. § 78u-4(b)(3)(C)).  "A party alleging that discovery is necessary to preserve evidence must present more than mere generalizations of fading memories and allegations of possible loss or destruction."  Sarantakis, 2002 WL 1803750

---

11/    That this is a "fishing expedition" cannot reasonably be disputed.  Plaintiffs acknowledge that they seek more than the documents necessary to prevent prejudice: they ask to depose witnesses following their review of the requested documents.  Pls.' Mot. 3 n.2.  Those depositions are totally unsupported by their claim of prejudice, as they do not claim that the Delaware Suit plaintiffs or the SEC have deposed anyone.

12/    The one case cited by Plaintiffs found that a request was sufficiently particularized because the relevance of the requested materials was not in dispute and "the…task of compiling the [requested] materials should already [have been] complete."  Royal Ahold, 220 F.R.D. at 251 n.11. Here, however, the relevance of the requested materials clearly is disputed.

13/    In In re Fannie Mae Securities Litigation, Judge Richard Leon addressed this same issue on almost identical facts, and denied the request as insufficiently particularized.  In that case, securities class action plaintiffs sought to lift the PSLRA stay to obtain all documents that Fannie Mae had produced to several government agencies investigating the company for securities fraud. Fannie Mae, 362 F. Supp. 2d at 38.  "The documents produced in response to those investigations, however, [were] voluminous and possibly irrelevant to the [plaintiffs'] claims." Id. at 39.  Because the documents were not all relevant and the defendant would have to identify which would be relevant, the requested discovery was not particularized and, thus, denied.  Id.

at *2.  In direct contrast to the showing required, Plaintiffs assert only that "documents may be lost and recollections of these events may continue to fade."  Pl.'s Mot. at 9.  As such, the stay in this case should not be lifted.

## II. Under Rule 23.1, No Discovery Is Available Until the Plaintiffs' Derivative Standing Has Been Resolved on a Motion to Dismiss.

In addition to the PSLRA's mandated stay, Plaintiffs' request to conduct discovery should be denied because they have not yet established their standing to sue on behalf of Sunrise.  Plaintiffs admittedly failed to make the required presuit demand on Sunrise's Board of Directors (Am. Consol. Compl. ¶ 285), and thus face Sunrise's motion to dismiss for failure to make demand under Rule 23.1.

As derivative plaintiffs, under well-established Delaware and federal law, Plaintiffs are not entitled to take discovery until their particularized allegations of demand futility are tested and their standing to proceed on behalf of Sunrise is established.  See, e.g., Rales v. Blasband, 634 A.2d 927, 934 n.10 (Del. 1993) ("[D]erivative plaintiffs…are not entitled to discovery to assist their compliance with [Delaware Chancery] Rule 23.1); see also In re Kauffman Mut. Fund Actions, 479 F.2d 257, 263 (1st Cir. 1973) ("[T]he stockholder may not plead in general terms, hoping that, by discovery or otherwise, he can later establish a case. Indeed, if the requirement could be met otherwise, it would be meaningless."); In re Openwave S'holders Deriv. Litig., 503 F. Supp. 2d 1341, 1353 (N.D. Cal. 2007) (staying discovery pending motion to dismiss because "[Federal] Rule 23.1 reflects a Congressional intent that derivative actions pass certain hurdles before being allowed to proceed with the normal course of litigation, including discovery.").

Prohibiting discovery prior to a ruling on a Rule 23.1 motion is critical because "the entire question of demand futility is inextricably bound to issues of business judgment[,

which] is an acknowledgment of the managerial prerogatives of Delaware directors." See Aronson v. Lewis, 473 A.2d 805, 812 (Del. 1984) (interpreting Delaware Chancery Rule 23.1) abrogated on other grounds in Brehm v. Eisner, 746 A.2d 244, 253 (Del. 2000); see also Gaubert v. Fed. Home Loan Bank Bd., 863 F.2d 59, 65 (D.C. Cir. 1988) ("[T]he demand requirement furthers a principle basic to corporate organization, that the management of the corporation be entrusted to its board of directors.") (internal quotations omitted).

Allowing Plaintiffs discovery to establish demand futility would obliterate the strict pleading requirement of Rule 23.1 and effectively transfer control over corporate litigation from Sunrise's current directors, who are charged to manage its affairs, to the putative shareholder Plaintiffs in this case. See Levine v. Smith, 591 A.2d 194, 210 (Del. 1991) ("To [allow discovery] would be a complete abrogation of the principles underlying the pleading requirements of [Delaware Chancery] Rule 23.1."), abrogated on other grounds in Brehm, 746 A.2d at 253.

Plaintiffs' right to sue derivatively on Sunrise's behalf, and the validity of their claims as alleged, have yet to be established. Until these matters are resolved on motions to dismiss to be filed on June 16, 2008, Plaintiffs have no right to conduct discovery on Sunrise and thereby burden the company whose interests they purport to champion. 14/

---

14/     Finally, as a procedural matter, absent approval of the Court, or all the parties, "a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). The required Rule 26(f) conference has not yet occurred. Plaintiffs acknowledge that Sunrise's counsel objected to their requests as "inappropriate." Pls.' Mot. at 4. Plaintiffs have not sought, or even acknowledged that they need, the Court's permission to take discovery before the Rule 26(f) conference. Arias v. Dyncorp, 517 F. Supp. 2d 221, 230 (D.D.C. 2007) (motion to compel held "premature" because Rule 26(f) conference had not occurred and the parties had not agreed to begin discovery).

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Partially

Lift Discovery Stay.

## REQUEST FOR ORAL HEARING

Sunrise hereby requests an oral hearing on Plaintiffs' Motion to Partially Lift

Discovery Stay pursuant to Local Civil Rules 7(f) and 78.1.


Respectfully Submitted,

Dated: May 30, 2008                              HOGAN & HARTSON, LLP


/s/      Jon M. Talotta
George H. Mernick, III (DC Bar 294256)
Columbia Square
555 Thirteenth Street, NW
Washington, D.C. 20004
Telephone:   (202) 637-5726
Facsimile:    (202) 637-5910
E-mail:  ghmernick@hhlaw.com

N. Thomas Connally (DC Bar 448355)
Jon M. Talotta (DC Bar 473626)
8300 Greensboro Drive, Suite 1100
McLean, Virginia  22102
Telephone:   (703) 610-6100
Facsimile:    (703) 610-6200
E-mail:  ntconnally@hhlaw.com
E-mail:  jmtalotta@hhlaw.com

*Attorneys for Nominal Defendant*
*Sunrise Senior Living, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the forgoing was served this 30th day of May, 2008, in accordance with the Court's CM/ECF Guidelines.  In addition, the forgoing was served this 30th day of May, 2008, via electronic mail and first-class mail, postage prepaid, on:

George R. Murphy
Mark Hanna
Joni S. Jacobs
DAVIS, COWELL & BOWE, LLP
1701 K Street NW, Suite 210
Washington, DC 20006

*Liaison Counsel for Plaintiffs*


Eric L. Zagar
Michael C. Wagner
J. Daniel Albert
SCHIFFRIN BARROWAY
TOPAZ & KESSLER, LLP
280 King of Prussia Road
Radnor, PA  19087

Maya Saxena
Joseph White
SAXENA WHITE P.A.
2424 North Federal Highway, Suite 257
Boca Raton, FL  33431

Brian J. Robbins
Felipe J. Arroyo
Ashley R. Palmer
ROBBINS, UMEDA, & FINK LLP
610 West Ash Street, Suite 1800
San Diego, CA  92101

*Co-Lead Counsels for Plaintiffs*

John C. Millian
Matthew R. Estabrook
GIBSON DUNN & CRUTCHER, LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036

*Attorneys for Defendants Carl Adams, Ronald V. Aprahamian,
Craig R. Callen, Thomas J. Donohue, Richard A. Doppelt, David
W. Faeder, John F. Gaul, J. Douglas Holladay, Larry E. Hulse,
Paul L. Klaassen, Teresa M. Klaassen, Pete A. Klisares, William
Little, J. Willard Marriott, Jr., Scott F. Meadow, Darcy Moore,
Thomas B. Newell, Robert R. Slager, Christian B.A. Slavin,
Timothy S. Smick, Brian C. Swinton, Tiffany L. Tomasso*

John M. Dowd
Jeffrey M. King
Elizabeth C. Peterson
AKIN GUMP STRAUSS HAUER & FELD, LLP
1333 New Hampshire Avenue, NW
Washington, DC 20036

*Attorneys for Defendant Bradley R. Rush*

Philip A. Sechler
Vidya Atre Mirmira
Scott K. Dasovich
WILLIAMS & CONNOLLY, LLP
725 12th Street, N.W.
Washington, DC 20005

*Attorneys for Defendant David G. Bradley*

/s/    Jon M. Talotta
Jon M. Talotta (DC Bar 473626)
HOGAN & HARTSON, LLP
8300 Greensboro Drive, Suite 1100
McLean, Virginia  22102
Telephone:   (703) 610-6100
Facsimile:    (703) 610-6200
E-mail:  jmtalotta@hhlaw.com

*Attorney for Nominal Defendant
Sunrise Senior Living, Inc.*

- 2 -

# EXHIBIT  1



## News Release

## Sunrise Board Forms Special Committee

MCLEAN, Va., Dec 11, 2006 /PRNewswire-FirstCall via COMTEX News Network/ -- Sunrise Senior Living, Inc. (NYSE: SRZ) today announced that its Board of Directors has appointed a special independent committee to review recent insider sales of Sunrise stock and the Company's historical practices related to stock option grants. The Board's decision followed receipt of a letter from a union shareholder that was simultaneously sent to news outlets, which resulted in media coverage and a subsequent request by the Securities and Exchange Commission (SEC) for information about matters raised in the media reports. The special committee has retained independent outside legal counsel to assist in its review.

Sunrise is committed to sound corporate governance and transparency and the Board has determined that a comprehensive review by a special committee and independent counsel is the most appropriate way to address these matters in a timely manner.

The review by the special committee will be conducted in parallel with the Company's ongoing efforts to complete the previously announced restatement of its financial statements. In view of these ongoing efforts and the special committee review, the Company now anticipates that its restated 2005 Form 10-K will be delayed beyond year-end, but still expects to be current in all of its filings with the SEC by March 1, 2007.

About Sunrise

Sunrise Senior Living, a McLean, Va.-based company, employs more than 40,000 people. As of September 30, 2006, Sunrise operated 436 communities in the United States, Canada, Germany and the United Kingdom, with a combined capacity for more than 50,000 residents. Sunrise also had 46 communities under construction in these countries with a combined capacity for more than 6,000 additional residents. Sunrise offers a full range of personalized senior living services, including independent living, assisted living, care for individuals with Alzheimer's and other forms of memory loss, as well as nursing, rehabilitative and hospice care. Sunrise's senior living services are delivered by staff trained to encourage the independence, preserve the dignity, enable freedom of choice and protect the privacy of residents. To learn more about Sunrise, please visit http://www.sunriseseniorliving.com.

Certain matters discussed in this press release, including as to the timing of completion of its restatement and filing of Sunrise's restated 2005 Form 10-K and Form 10-Qs for the first three quarters of 2006, may be forward- looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. Although Sunrise believes the expectations reflected in such forward-looking statements are based on reasonable assumptions, there can be no assurances that its expectations will be realized. Sunrise's actual results could differ materially from those anticipated in these forward- looking statements as a result of various factors, including, but not limited to risks that are detailed in the Company's annual report on Form 10-K filed with the Securities and Exchange Commission. The Company assumes no obligation to update or supplement forward-looking statements that become untrue because of subsequent events.

SOURCE Sunrise Senior Living, Inc.

Lisa Mayr, Vice President, Investor Relations and Capital Markets of Sunrise Senior Living, Inc., +1-703-744-1787

# EXHIBIT 2



## News Release

## Sunrise Provides Update on Special Independent Committee Review

MCLEAN, Va., March 2 /PRNewswire-FirstCall/ -- Sunrise Senior Living, Inc. (NYSE: SRZ), today announced that its Board of Directors has expanded the scope of the previously-established Special Independent Committee of the Board. As Sunrise continues its efforts toward restating its financial statements for prior periods, the Special Committee's mandate has been enlarged to include the review of facts and circumstances relating to the historical accounting treatment of certain categories of transactions in the pending restatement. In addition, the Board has directed the Special Committee to develop recommendations for the Board regarding any necessary remedial measures, including those pertaining to internal controls and processes over financial reporting that it may determine to be warranted.

As previously reported, Sunrise has received comments from the Securities and Exchange Commission (SEC) with respect to certain filings, including its Form 10-K, as originally filed for the year ended December 31, 2005. Sunrise has responded to these comments and as part of the comment process will submit preliminary recast 2005 financial information to the SEC for its review (which will include a summary of the items to be restated and their anticipated impact). Once the SEC's review of these materials is completed, Sunrise will prepare full financial statements, including footnotes and disclosures, for completion of Sunrise's restated 2005 Form 10-K. The filing of the restated 2005 Form 10-K will also require completion or substantial completion by the Special Independent Committee of its review. The Company expects to file the 2006 Form 10-Qs and Form 10-K for the year ended December 31, 2006 as soon as possible following the filing of the restated 2005 Form 10-K. The Company is not able to predict at this time the timing of these steps or when these filings will be made, but does not anticipate that the expanded scope of the Special Committee will extend the timing of the Company's efforts to become current in all of its filings with the SEC.

About Sunrise

Sunrise Senior Living, a McLean, Va.-based company, employs approximately 40,000 people. At December 31, 2006, Sunrise operated 440 communities in the United States, Canada, Germany and the United Kingdom, with a combined capacity for more than 52,000 residents. At year end, Sunrise also had 41 communities under construction in these countries with a combined capacity for more than 6,000 additional residents. Sunrise offers a full range of personalized senior living services, including independent living, assisted living, care for individuals with Alzheimer's and other forms of memory loss, as well as nursing, rehabilitative and hospice care. Sunrise's senior living services are delivered by staff trained to encourage the independence, preserve the dignity, enable freedom of choice and protect the privacy of residents. To learn more about Sunrise, please visit http://www.sunriseseniorliving.com.

Forward-Looking Statements

Certain matters discussed in this press release, including as to the nature of the restatement adjustments, the timing of completion of the restatement and filing of Sunrise's restated 2005 Form 10-K, Form 10-Qs for the first three quarters of 2006 and 2006 Form 10-K, may be forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. Although Sunrise believes the expectations reflected in such forward-looking statements are based on reasonable assumptions, there can be no assurances that its expectations will be realized. Sunrise's actual results could differ materially from those anticipated in these forward-looking statements as a result of various factors, including, but not limited to, identification of any additional matters requiring restatement, the length of time needed for Sunrise to complete the restatement, and for Ernst & Young LLP to complete their procedures for any reason, including the detection of new errors or adjustments, the time required for the special independent committee to complete its review and for the Company to clear comments with the SEC and other risks that are detailed in the Company's annual report on Form 10-K filed with the SEC. The Company assumes no obligation to update or supplement forward-looking statements that become untrue because of subsequent events.

SOURCE Sunrise Senior Living

CONTACT: Lisa Mayr, Vice President, Investor Relations and Capital Markets of Sunrise Senior Living, +1-703-744-1787

# EXHIBIT  3



# FORM 8-K

## SUNRISE SENIOR LIVING INC - SRZ

**Filed: October 01, 2007 (period: September 28, 2007)**

Report of unscheduled material events or corporate changes.

# Table of Contents

8-K

**Item 8.01.**    Other Events.

**Item 9.01.**    Financial Statements and Exhibits.

SIGNATURES

INDEX TO EXHIBITS

EX-99.1 (Exhibits not specifically designated by another number and by investment companies)

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
### WASHINGTON, D.C. 20549

# FORM 8-K

### CURRENT REPORT PURSUANT TO SECTION 13 OR 15 (d)
### OF THE SECURITIES EXCHANGE ACT OF 1934

Date of Report (Date of earliest event reported): **September 28, 2007**

# SUNRISE SENIOR LIVING, INC.
(Exact name of registrant as specified in its charter)

| **Delaware** | **1-16499** | **54-1746596** |
|---|---|---|
| (State or other jurisdiction of incorporation or organization) | (Commission File Number) | (I.R.S. Employer Identification No.) |

**7902 Westpark Drive**
**McLean, Virginia 22102**
(Address of principal executive offices) (Zip Code)

**(703) 273-7500**
(Registrant's telephone number, including area code)

**Not Applicable**
(Former name or former address, if changed since last report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions:

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

**Item 8.01. Other Events.**

On September 28, 2007, Sunrise Senior Living, Inc. (the "Company") issued a press release providing a status report on the investigation by the Special Independent Committee of the Company's Board of Directors and providing updates on management's internal control review efforts and on legal proceedings. A copy of the Company's press release dated September 28, 2007 is attached as Exhibit 99.1 hereto and is incorporated herein by reference.

**Item 9.01. Financial Statements and Exhibits.**

(a) Not applicable

(b) Not applicable

(c) Not applicable

(d) Exhibits.

| Exhibit No. | Description |
|---|---|
| 99.1 | Company press release dated September 28, 2007 |

2

Source: SUNRISE SENIOR LIVIN, 8-K, October 01, 2007

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned thereunto duly authorized.

SUNRISE SENIOR LIVING, INC.
(Registrant)

Date: October 1, 2007                    By:    /s/ John G. Gaul

John G. Gaul
General Counsel

3

Source: SUNRISE SENIOR LIVIN, 8-K, October 01, 2007

**INDEX TO EXHIBITS**

| Exhibit No. | Exhibit Name | Page No. |
|---|---|---|
| 99.1 | Company press release dated September 28, 2007 | |

4

Source: SUNRISE SENIOR LIVIN, 8-K, October 01, 2007

**SUNRISE PROVIDES STATUS REPORT ON SPECIAL INDEPENDENT COMMITTEE INVESTIGATION; PROVIDES UPDATES ON MANAGEMENT'S INTERNAL CONTROL REVIEW EFFORTS AND ON LEGAL PROCEEDINGS**

MCLEAN, Va., September 28, 2007 /PRNewswire-FirstCall/ -- Sunrise Senior Living, Inc. (NYSE: SRZ) today announced an update on the status of the independent investigation being conducted by the Special Independent Committee of its Board of Directors, provided an update on management's Sarbanes-Oxley Section 404 internal control review efforts and provided an update on legal proceedings.

**Special Independent Committee Investigation**

As previously disclosed, in December 2006, Sunrise's Board of Directors established a Special Independent Committee to review certain allegations made by the Service Employees International Union ("SEIU") that questioned the timing of certain stock option grants to Sunrise directors and officers over a period of time, and stock sales by certain directors in the months prior to the May 2006 announcement of the Company's accounting review. As also previously disclosed, in March 2007, Sunrise's Board of Directors expanded the scope of the Special Independent Committee's mandate to include the review of facts and circumstances relating to the historical accounting treatment of certain categories of transactions in the pending restatement, and to develop recommendations regarding any remedial measures, including those pertaining to internal controls and processes over financial reporting, that it may determine to be warranted. The Special Independent Committee, advised by its independent counsel, WilmerHale, has been conducting that investigation. In support of the investigation, WilmerHale engaged FTI Consulting, Inc. and Huron Consulting Group, forensic accounting firms, to provide technical accounting guidance and analysis, as well as to assist with document collection and review, interview support, and transaction review.

The Special Independent Committee has now concluded the fact-finding portion of its investigation with respect to three issues. The first involves the timing of certain stock option grants. The second involves the facts and circumstances with respect to two significant categories of errors in the pending restatement relating to real estate accounting: accounting for the effect of certain Sunrise guarantees and commitments on timing of sale accounting and recognition of income upon sale of real estate; and accounting for allocation of profits and losses in those ventures in which Sunrise's partners received a preference on cash flow. The third involves whether directors and executive officers had non-public knowledge of possible accounting errors related to these real estate transactions prior to Sunrise's May 2006 announcement of its accounting review.

As described in greater detail below, the Special Independent Committee found:

- no evidence of backdating or other intentional misconduct with respect to the grants on the 38 grant dates examined, including those specifically questioned by the SEIU, or the possible errors identified by the Special Independent Committee in the accounting for stock options;

- no evidence of an intention to reach an inappropriate accounting result with respect to the two categories of real estate accounting errors reviewed, no knowledge that these accounting errors were incorrect at the time they were made, and no evidence that information was concealed from review by the external auditors at the time the accounting judgments were made; and

- no evidence that any director or officer who traded in the months prior to the announcement of the accounting review had material non-public information relating to either of these two categories of real estate accounting errors.

The investigation of the Special Independent Committee is continuing with respect to certain other categories of restatement items and issues identified in work done to date, primarily related to certain accruals and reserves, which may produce material adjustments to the Company's historical financial statements in addition to those previously disclosed by the Company, and with respect to remedial recommendations. Based on the current status of its review, the Special Independent Committee expects to complete its review by December 15, 2007.

The Special Independent Committee believes that its investigation of the three issues reported on today was comprehensive and thorough. The investigation included the collection and review, by manual inspection, electronic word search and other means, of more than 2.5 million electronic and hard copy documents and interviews of 37 individuals, including current and former employees, current and former directors and audit engagement team members of its external auditor, Ernst & Young, LLP ("E&Y"). The Special Independent Committee held frequent in-person meetings throughout the course of the investigation, as well as regular update calls and other communications with WilmerHale and its experts. The Company and its officers, employees and directors cooperated fully with the investigation. The Special Independent Committee and WilmerHale also received good cooperation from other individuals, including E&Y professionals and former employees of the Company.

Options Investigation. With respect to its options investigation, the Special Independent Committee comprehensively examined grants made on 14 grant dates comprising approximately 46% of the options granted during the period from June 1996 (when the Company went public through an IPO) to May 2006. Those grants included all of the grants specifically questioned by SEIU, including all grants at the four lowest quarterly closing stock prices for Sunrise stock in each quarter that involved more than 80,000 shares (split-adjusted) regardless of the recipients; and all of the grants at the four lowest monthly closing stock prices in each month that involved grants to directors or executive officers regardless of size, or grants of more than 500,000 shares (split-adjusted) in aggregate. The Special Independent Committee also reviewed certain limited written material on additional grants made on 24 other grant dates, which represent all of the remaining post-IPO grants involving 20 or more employees, officers and/or directors and/or one or more senior Sunrise officers. Based on its review of this written material for the 24 different grant dates, the Special Independent Committee concluded that no further review of those grants was warranted. The Special Independent Committee found no evidence of backdating or other intentional misconduct in connection with the award of grants that were examined.

2

Source: SUNRISE SENIOR LIVIN, 8-K, October 01, 2007

The Special Independent Committee identified a number of accounting issues under U.S. Generally Accepted Accounting Principles ("GAAP") in connection with certain of these option grants. The Special Independent Committee concluded that these accounting issues did not result from intentional misconduct by Company employees. Evidence developed during the course of the investigation indicates that these accounting issues were caused, or contributed to, by a variety of different factors, including but not limited to the improper application of GAAP, lack of technical expertise regarding appropriate GAAP standards, inadequate or poor recordkeeping, and inadequate controls. The grants identified by the Special Independent Committee investigation with possible accounting issues that have the potential to affect the accuracy of the Company's previously reported financial results include:

- The September 1998 option repricing, after which a substantial period of time elapsed from the date the Stock Option Committee approved the repricing and when most employees signed their repricing acknowledgments, and during which the Company's stock price increased substantially.

- Grants made in 2000 and 2001 in connection with an opportunity provided to certain employees with options exercisable above the then applicable market price to cancel those options and receive new, market-priced options.

- Three grants in which the exercise price for the options was set at the closing price for the Company's stock on the date of the grant, rather than at the closing price of the trading date immediately prior to the date of the grant, as contemplated by the terms of the Company's stock option plans.

- Certain grants which lacked sufficient documentation to determine when the stock option grant was authorized.

- Certain grants in connection with which the Company corrected administrative errors retroactively, which included adding grants to new hires who had been inadvertently omitted from a recommendation list and correcting the number of options granted to individuals.

- Certain grants in which the Company modified the terms of a grant after it was made.

- Certain grants in which the Company granted options to consultants but accounted for such options as grants issued to employees.

The Special Independent Committee has provided its findings to the Company. As disclosed in the Company's July 25, 2007 press release, the Company has concluded that errors were made in connection with the accounting for the September 1998 repricing and certain other stock option grants.

The Company is in the process of quantifying the amount of the non-cash stock compensation expense that it will be required to record as part of its restatement related to the 1998 repricing and these other stock option grants, which amount is likely to be material. The Company has retained Navigant Consulting, Inc. to assist with stock compensation matters. Once the Company has quantified such amount and E&Y has reviewed the Company's calculation, the Company will promptly report such amount. The Company is also reviewing whether there are any tax impacts with respect to the accounting errors relating to stock options.

3

Source: SUNRISE SENIOR LIVIN, 8-K, October 01, 2007

Review of Two Significant Categories of Real Estate -Related Accounting Errors. The Special Independent Committee also has concluded its fact finding on:

- the accounting for the effect of certain Sunrise guarantees and commitments on timing of sale accounting and recognition of income upon sale of real estate; and

- the accounting for allocation of profits and losses in those ventures in which Sunrise's partners received a preference on cash flow.

Errors in the first category resulted from erroneous judgments made by the Company regarding the proper application of GAAP to account for sales of real estate where Sunrise had continuing involvement in the real estate in the form of guarantees and preferences to partners. The nature of certain guarantees and their duration and the recognition of the sales and/or income from the sales of the property were not concealed from review by the external auditors at the time the accounting judgments were made. Based on the totality of the evidence available to the Special Independent Committee, the Special Independent Committee concluded that this large group of errors did not result from an intention to reach an inappropriate accounting result and that the erroneous accounting judgments in this category were not known to be incorrect at the time they were made.

Errors in the second category resulted from failure by the Company to understand relevant accounting guidance regarding accounting for preferences in distributions of income to joint venture partners. The preferences were contained in written transaction documents and the accounting analyses for these preferences were documented in writing and reviewed by the company's external auditors in a timely manner. Based on the totality of the evidence available to the Special Independent Committee, the Special Independent Committee concluded that these errors did not result from an intention to reach an inappropriate accounting result and that the erroneous accounting analyses were not known to be incorrect at the time they were prepared.

Review of Insider Trading by Certain Directors and Executive Officers. The Special Independent Committee investigated whether certain directors and executive officers had material, non-public knowledge of the two real estate accounting errors discussed above when they sold Sunrise stock in the months prior to May 2006 when Sunrise announced its accounting review. The Special Independent Committee concluded that Sunrise's executive officers and members of its Board of Directors had no such knowledge at the time that any of those trades were made.

**Sarbanes-Oxley Section 404 Internal Control Review Efforts of Management**

As previously disclosed by the Company, the occurrence of a restatement of previously issued financial statements is a strong indicator that material weaknesses in internal controls exist. In connection with the Company's pending restatement of its historical financial statements, the Company's management is evaluating management's report on internal controls included in the Company's previously filed Annual Report on Form 10-K for the year ended December 31, 2005 to assess the effectiveness of its internal control over financial reporting as of December 31, 2005. To date, the Company's management has preliminarily identified the following three control deficiencies:

4

- Lack of personnel with sufficient technical accounting expertise to determine and document the appropriate application of accounting principles. This deficiency impacted the Company's accounting for real estate sales, capitalization of direct and indirect costs of real estate projects, equity accounting for variable interest entities, accounting for guarantees and accounting for stock options.

- Lack of policies and procedures to ensure proper accounting of significant transactions. This deficiency impacted the Company's accounting for real estate sales and equity accounting.

- Lack of a sufficient level of experienced personnel to enable the Company to close its books in a timely and accurate manner.

Additional control deficiencies may be identified by the Company's management or the Special Independent Committee as part of its ongoing review. At the present time, the Company's management expects to conclude that some of the identified control deficiencies were material weaknesses as of December 31, 2005. In addition, E&Y's audit reports are also expected to concur with management's preliminary conclusions regarding weaknesses in internal controls over financial reporting by the Company as of December 31, 2005. The Audit Committee and management have been evaluating appropriate remediation measures to address these control deficiencies and intend to develop and oversee a comprehensive remediation plan to address these control deficiencies.

The Company's management believes the accounting errors previously disclosed by the Company indicate a need to improve the quality and staffing of the Company's internal accounting resources. The following are among the changes implemented by the Company to date, which are in addition to any remedial measures that may be recommended by the Special Independent Committee and adopted by the Board following completion of the Special Independent Committee investigation:

- *New Chief Financial Officer*. As previously disclosed, on September 6, 2007, Richard J. Nadeau was hired as the Company's new Chief Financial Officer.

- *New Chief Accounting Officer*. As previously disclosed, in April 2006, Julie A. Pangelinan was hired as the Company's new Chief Accounting Officer.

- *Expansion of Accounting Policy Group*. The Company has expanded its accounting policy group from one professional to six professionals, including five certified public accountants.

- *SOX Compliance*. In October 2006, the Company hired a Senior Director of SOX Compliance, who reports to the Chief Accounting Officer.

5

Source: SUNRISE SENIOR LIVIN, 8-K, October 01, 2007

- *Other Additional Accounting Personnel.* In June 2006, the Company added the position of Assistant Controller. In October 2006, the Company named a new Controller. The Company has also added four additional staff members in the financial reporting group, three additional corporate staff members in the international reporting group and three additional staff members in the operations accounting group.

Separately, at the Board level and as previously disclosed, in June 2007, the Company's Board of Directors appointed Stephen D. Harlan as a new member of the Board and as a member of the Audit Committee. In connection with his appointment to the Audit Committee, the Board determined that Mr. Harlan qualified as an "audit committee financial expert" as defined under the rules of the SEC.

As also previously disclosed, effective September 5, 2007 Sunrise's Board of Directors also appointed Lynn Krominga as a new member of the Board. On September 28, 2007, the Board of Directors appointed Ms. Krominga as a member of the Audit Committee.

## Update on Legal Proceedings

CGB Occupational Therapy. As previously disclosed, Sunrise is a defendant in a lawsuit filed by CGB Occupational Therapy, Inc. ("CGB") in September 2000 in the U.S. District Court for the Eastern District of Pennsylvania. CGB provided therapy services to two nursing home communities in Pennsylvania that were owned by RHA Pennsylvania Nursing Homes ("RHA") and managed by one of Sunrise's subsidiaries. In 1998, RHA terminated CGB's contract. In its lawsuit, CGB alleged, among other things, that in connection with that termination, Sunrise tortiously interfered with CGB's contractual relationships with RHA and several of the therapists that CGB employed on an at-will basis. In a series of court decisions during 2002 through 2005, CGB was awarded compensatory damages of $109,000 and punitive damages of $2 million. In 2005, Sunrise appealed the punitive damages award. On August 23, 2007, a panel of the U.S. Court of Appeals for the Third Circuit vacated the $2 million punitive damages award and remanded the case with instructions that the district court enter a new judgment for punitive damages in the amount of $750,000. On September 5, 2007, CGB filed a petition for rehearing with the U.S. Court of Appeals for the Third Circuit. That petition was denied on September 24, 2007. Either party may file a petition for certiorari in the Supreme Court by December 24, 2007.

Trinity OIG Investigation and *Qui Tam* Action. As previously disclosed, on September 14, 2006, Sunrise acquired all of the outstanding stock of Trinity Hospice, Inc. ("Trinity") for a purchase price of approximately $76 million. As a result of this transaction, Trinity became an indirect, wholly owned subsidiary of Sunrise. On January 3, 2007, Trinity received a subpoena from the Phoenix field office of the Office of the Inspector General of the Department of Health and Human Services ("OIG") requesting certain information regarding Trinity's operations in three locations for the period between January 1, 2000 through June 30, 2006, a period that is prior to the Company's acquisition of Trinity. The Company was advised that the subpoena was issued in connection with an investigation being conducted by the Commercial Litigation Branch of the U.S. Department of Justice and the civil division of the U.S. Attorney's office in Arizona. The subpoena indicates that the OIG is investigating possible improper Medicare billing under the Federal False Claims Act ("FCA"). In addition to recovery of any Medicare reimbursements previously paid for false claims, an entity found to have submitted false claims under the FCA may be subject to treble damages plus a fine of between $5,500 and $11,000 for each false claim submitted. Trinity has complied with the subpoena and continues to supplement its responses as requested.

6

Source: SUNRISE SENIOR LIVIN, 8-K, October 01, 2007

On September 11, 2007, Trinity and Sunrise were served with a Complaint filed on September 5, 2007 in the United States District Court for the District of Arizona. That filing amended a Complaint filed under seal on November 21, 2005 by four former employees of Trinity under the *qui tam* provisions of the FCA. The *qui tam* provisions authorize persons ("relators") claiming to have evidence that false claims may have been submitted to the United States to file suit on behalf of the United States against the party alleged to have submitted such false claims *Qui tam* suits remain under seal for a period of at least 60 days to enable the government to investigate the allegations and to decide whether to intervene and litigate the lawsuit, or, alternatively, to decline to intervene, in which case the *qui tam* Plaintiff, or "relator," may proceed to litigate the case on behalf of the United States. *Qui tam* relators are entitled to 15% to 30% of the recovery obtained for the United States by trial or settlement of the claims they file on its behalf. On June 6, 2007, the Department of Justice and the U.S. Attorney for Arizona filed a Notice with the Court advising of its decision not to intervene in the case, indicating that its investigation was still ongoing. This action followed previous applications by the U.S. Government for extensions of time to decide whether to intervene. As a result, on July 10, 2007, the Court ordered the Compliant unsealed and the litigation to proceed. The matter is therefore currently being litigated by the four individual relators. However, under the FCA, the U.S. Government could still intervene in the future. The amended Complaint alleges that during periods prior to the acquisition by Sunrise, Trinity engaged in certain actions intended to obtain Medicare reimbursement for services rendered to beneficiaries whose medical conditions were not of a type rendering them eligible for hospice reimbursement and violated the FCA by submitting claims to Medicare as if the services were covered services. The relators allege in their amended Complaint that the total loss sustained by the United States is probably in the $75 million to $100 million range. The original Complaint named KRG Capital, LLC (an affiliate of former stockholders of Trinity) and Trinity Hospice LLC (a subsidiary of Trinity) as defendants. The amended Complaint names Sunrise Senior Living, Inc., KRG Capital, LLC and Trinity as defendants. The lawsuit is styled *United States ex rel. Joyce Roberts, et al., v. KRG Capital, LLC, et al.*, CV05 3758 PHX-MEA (D. Ariz.).

Sunrise is unable at this time to estimate the possible loss or range of loss relating to this matter.

IRS Audit. By letter dated August 28, 2007, the Company was advised that the Internal Revenue Service will be auditing its federal income tax return for the year ended December 31, 2005. The Company believes that the audit will consider the pending restatement of the Company's historical financial statements. On September 27, 2007, the Company was orally advised that the IRS will also be auditing the Company's employment tax returns.

Lawsuit Filed by Former CFO. On September 18, 2007, Bradley B. Rush, the Company's former Chief Financial Officer, filed suit against the Company in the Circuit Court of Fairfax County, Virginia, relating to the termination of his employment. As previously

Source: SUNRISE SENIOR LIVIN, 8-K, October 01, 2007

disclosed, on April 23, 2007, Mr. Rush was suspended with pay. The action was taken by the Board of Directors following a briefing of the independent directors by Wilmer Hale, independent counsel to the Special Independent Committee. The Board concluded, among other things, that actions taken by Mr. Rush were not consistent with the document retention directives issued by the Company. Mr. Rush's employment thereafter was terminated on May 2, 2007. Mr. Rush's lawsuit asserts that his termination was part of an alleged campaign of retaliation against him for purportedly uncovering and seeking to address accounting irregularities, and it contends that his termination was not for "cause" under the Company's Long Term Incentive Cash Bonus Plan and prior awards made to him of certain stock options and shares of restricted stock, to which he claims entitlement notwithstanding his termination. Mr. Rush also asserts a claim for defamation arising out of comments attributed to the Company concerning the circumstances of his earlier suspension of employment. His complaint seeks compensatory damages in an amount of not more than $13 million, and punitive damages in an amount of not more than $350,000. The Company believes that the allegations in Mr. Rush's complaint lack both factual and legal merit, and it intends to defend vigorously against his claims.

## About Sunrise Senior Living

Sunrise Senior Living, a McLean, Va.-based company, employs approximately 40,000 people. As of June 30, 2007, Sunrise operated 453 communities in the United States, Canada, Germany and the United Kingdom, with a combined capacity for more than 53,000 residents. At quarter end, Sunrise also had 38 communities under construction in these countries with a combined capacity for 6,000 additional residents. Sunrise offers a full range of personalized senior living services, including independent living, assisted living, care for individuals with Alzheimer's and other forms of memory loss, as well as nursing, rehabilitative and hospice care. Sunrise's senior living services are delivered by staff trained to encourage the independence, preserve the dignity, enable freedom of choice and protect the privacy of residents. To learn more about Sunrise, please visit http://www.sunriseseniorliving.com.

## Forward-Looking Statements

Certain matters discussed in this press release - including the expected timing for completion of the Special Independent Committee's review - may be forward-looking statements within the meaning of the Private Securities Litigation Reform Act of 1995. Although Sunrise believes the expectations reflected in such forward-looking statements are based on reasonable assumptions, there can be no assurances that its expectations will be realized. Sunrise's actual results could differ materially from those anticipated in these forward-looking statements as a result of various factors, including, but not limited to, completion of the Company's restatement of its historical financial statements, identification of any additional matters requiring restatement, the length of time needed for Sunrise to complete the restatement and for Ernst & Young LLP to complete its procedures for any reason, including the detection of new errors or adjustments, the time required for the Special Independent Committee to complete its review, including with respect to any necessary remedial measures, and for the Company to clear comments with the SEC, the findings of the Special Independent Committee review, including with respect to any necessary remedial measures, the time required for the Company to prepare and file an amended 2005 Form 10-K and its Form 10-Qs for the first three quarters of 2006, its 2006 Form 10-K and its Form 10-Qs for the first and second quarters of 2007 and its Form 10-Qs for subsequent quarters that are delayed, the outcome of the SEC's investigation, the outcome of pending putative class

8

action and derivative litigation, the outcome of the Trinity OIG investigation and *qui tam* proceeding, the outcome of the IRS audit of the Company's tax return for the tax year ended December 31, 2005 and employment tax returns, the outcome of the exploration of strategic alternatives, the delisting of the Company's stock from the NYSE in the event the Company does not file its 2006 Form 10-K prior to the expiration of its NYSE listing extension, the Company's ability to comply with the terms of the amendment of its bank credit facility or to obtain a further extension of the period for providing the lenders with required financial information, development and construction risks, acquisition risks, licensing risks, business conditions, competition, changes in interest rates, the Company's ability to manage its expenses, market factors that could affect the value of the Company's properties, the risks of downturns in general economic conditions, satisfaction of closing conditions, availability of financing for development and acquisitions and other risks detailed in the Company's annual report on Form 10-K filed with the SEC. The Company assumes no obligation to update or supplement forward-looking statements that become untrue because of subsequent events.

**SOURCE:** Sunrise Senior Living

**CONTACT:** Lisa Mayr, Vice President, Investor Relations and Capital Market, Sunrise Senior Living, +1-703-744-1787 CO: Sunrise Senior Living

Created by 10KWizard   www.10KWizard.com

# EXHIBIT  4



# News Release

## Sunrise Announces Update On SEC Investigation

MCLEAN, Va., May 29 /PRNewswire-FirstCall/ -- Sunrise Senior Living, Inc. (NYSE: SRZ), today announced that on May 25, 2007 it was advised by the staff of the Securities and Exchange Commission (the "SEC") that the SEC has commenced a formal investigation. Sunrise previously announced on December 11, 2006 that it had received a request from the SEC for information about insider stock sales, timing of stock option grants and matters relating to Sunrise's historical accounting practices that had been raised in media reports in the latter part of November 2006 following receipt of a letter by Sunrise from Service Employees International Union. Sunrise has fully cooperated, and intends to continue to fully cooperate, with the SEC.

About Sunrise Senior Living

Sunrise Senior Living, a McLean, Va. - based company, employs approximately 39,000 people. As of March 31, 2007, Sunrise operated 444 communities in the United States, Canada, Germany and the United Kingdom, with a combined capacity for more than 52,000 residents. At quarter end, Sunrise also had 42 communities under construction in these countries with a combined capacity for more than 6,300 additional residents. Sunrise offers a full range of personalized senior living services, including independent living, assisted living, care for individuals with Alzheimer's and other forms of memory loss, as well as nursing, rehabilitative and hospice care. Sunrise's senior living services are delivered by staff trained to encourage the independence, preserve the dignity, enable freedom of choice and protect the privacy of residents. To learn more about Sunrise, please visit http://www.sunriseseniorliving.com.

SOURCE Sunrise Senior Living

CONTACT: Lisa Mayr, Vice President, Investor Relations and Capital Market, Sunrise Senior Living, +1-703-744-1787 CO: Sunrise Senior Living

# EXHIBIT  5

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| PETER V. YOUNG and ELLEN ROBERTS YOUNG, Derivatively on Behalf of Defendant SUNRISE SENIOR LIVING, INC., <br><br> Plaintiffs, <br><br> -v- <br><br> PAUL L. KLAASSEN, TERESA M. KLAASSEN, DAVID W. FAEDER, THOMAS B. NEWELL, BRIAN C. SWINTON, CHRISTIAN B.A. SLAVIN, LARRY E. HULSE, TIFFANY L. TOMASSO, ROBERT R. SLAGER, CARL ADAMS, RONALD V. APRAHAMIAN, CRAIG R. CALLEN, DAVID G. BRADLEY, J. DOUGLAS HOLLADAY and THOMAS J. DONOHUE, <br><br> Defendants, <br><br> SUNRISE SENIOR LIVING, INC., <br><br> Nominal Defendant. | C.A. No. 2770-VCL |

**PLAINTIFFS' MOTION TO STRIKE PORTIONS OF THE MEMORANDA OF LAW FILED BY SUNRISE SENIOR LIVING, INC., THE INDIVIDUAL DEFENDANTS, AND DEFENDANT BRADLEY, OR IN THE ALTERNATIVE TO COMPEL THE PRODUCTION OF DOCUMENTS**

Plaintiffs Peter V. Young and Ellen Roberts Young ("Plaintiffs"), by their undersigned counsel, bring this motion to strike all references to the "findings" of the Special Independent Committee of Sunrise's Board of Directors (the "Special Committee"), from the memoranda of law submitted by Sunrise Senior Living, Inc., the Individual Defendants, and David G. Bradley (collectively, the "Defendants"). This motion seeks in the alternative to compel production of the documents constituting and supporting the purported factual findings and report (collectively, the "Report and

Supporting Documents") by the Special Committee, arising out of the Special Committee's investigation into the backdating of options alleged in Plaintiffs' Amended Shareholder Derivative Complaint (the "Complaint").

The basis for this motion is two-fold. First, a motion to dismiss must be confined to the allegations in the complaint and any documents that are incorporated by reference into the complaint. Here, however, Defendants have relied upon a report that was not referred to in the Complaint, and the Special Committee's findings are subject to reasonable dispute. Second, Defendant Sunrise Senior Living, Inc. ("Sunrise" or the "Company") relied upon the Report and its conclusions in its motion to dismiss and specifically asks the Court to accept the findings of the Committee as true, yet Sunrise has refused to produce the Report and Supporting Documents to Plaintiffs. Without the Report and Supporting Documents, and whatever other related discovery may be needed, the Court and Plaintiffs cannot fully inquire into the scope and nature of the work of the Committee and cannot ascertain whether the inquiry was diligent and conducted in good faith, and whether any conclusions reached were reasonable.

In support of their motion, Plaintiffs state as follows:

## BACKGROUND

1.      Plaintiffs brought this action based on the harm incurred by Sunrise as a result of the Individual Defendants' options backdating scheme. Sunrise has been embroiled in a series of battles and investigations resulting from alleged misconduct by those charged with running the Company. Among Sunrise's problems are allegations of improper financial conduct levied against Sunrise by a union shareholder, a governmental investigation, investor demands for director resignations, announced restatements due to

2

improper accounting and the termination of Sunrise's Chief Financial Officer ("CFO") "for cause."

2.     On December 11, 2006, Sunrise announced the appointment of the Special Committee, whose purpose was to review insider sales of Sunrise stock and the Company's potential backdating of stock option grants. Sunrise appointed the Special Committee after it was informed that the U.S. Securities and Exchange Commission (the "SEC") was launching an investigation into Sunrise's recent insider stock sales and potential backdating of stock options.

3.     Plaintiffs' Amended Shareholder Derivative Complaint alleges that the Individual Defendants engaged in a pattern of backdating option grants dating back to 1999. In connection with these backdated option grants, the Individual Defendants caused the Company to issue materially false and misleading financial statements, which were filed with the SEC for the Company's fiscal year 1998 through fiscal year 2006. Plaintiffs alleged further that the Individual Defendants realized over $172 million in illicit proceeds through the sale of stock at a time when they knew of material non-public information concerning the improper backdating of options which led to the financial statements issued by Sunrise and its stock price being falsely inflated.

4.     As cited in the Complaint, Plaintiffs' expert determined that of the twenty-one option grants at Sunrise, where Defendants had flexibility in choosing grant dates, from the time of its initial public offering until the passage of the Sarbanes-Oxley Act (after which Sunrise was required to file Form 4s for each option grant by the end of the second business day following the option grant date) six have been priced on the date on which Sunrise's stock traded at its lowest point for the calendar month of the grants. The

3

odds of that occurring without manipulation through backdating are 1 in 2,265. Similarly, since 2000, but prior to the passage of the Sarbanes-Oxley Act, of the eight option grants (again excluding annual meeting grants), four have been priced on the lowest trading day of the calendar month. The odds of that occurring without manipulation through backdating are 1 in 2,690. Plaintiffs allege that these statistically significant results indicate manipulation of option grants.

### Defendants' Briefs

5.      Several sets of defendants separately moved to dismiss the Complaint. In its opening brief in support of its motion to dismiss, Sunrise mentioned the findings of the Special Committee as to option grants made on 14 dates, and averred that the Special Committee purportedly found "no evidence of intentional backdating or other misconduct in connection with the options grants examined." *See* Opening Brief in Support of Motion to Dismiss or, in the Alternative, to Stay by Nominal Defendant Sunrise Senior Living, Inc. at 8. This assertion was then repeated by Sunrise on page 20 n. 15 of its opening brief.[1]

6.      Plaintiffs immediately requested that Sunrise produce the Report and Supporting Documents by telephone conversation and E-mail on November 12, 2007. Ex 1. On November 13, 2007, Sunrise notified Plaintiffs of its refusal to produce the Report and Supporting Documents on the grounds that (1) Sunrise has not moved to stay this action based on the Special Committee Investigation pursuant to the *Zapata* line of cases; (2) Sunrise's motion mentions the Report "only to highlight the fact that the

---

[1]    Defendant David G. Bradley likewise urged dismissal on the basis of the Special Committee's purported findings. Opening Brief in Support of His Motion to Dismiss the Amended Complaint, or in the Alternative, to Stay the Proceeding at 2.

4

existence of a special committee investigation does not, in and of itself, support any inference of wrongdoing…"; and (3) the Report was publicly disclosed in an October 1, 2007 SEC form 8-K report (the "8-K"). Ex. 2. The 8-K referenced by defendants does not append the Report, but only summarizes its conclusion. Ex. 3.

7.    On February 19, 2008, Sunrise, the Individual Defendants, and Bradley filed their reply briefs. Despite their counsel's representation that the Report was not at issue in these motions, Sunrise and the Individual Defendants dedicate significant portions of their reply briefs to the Special Committee's conclusions as a purported basis for granting their motions to dismiss. *See* Reply Brief in Support of Motion to Dismiss or, in the Alternative to Stay by Nominal Defendant Sunrise Senior Living, Inc. at 1, 2, 6, 15, 17; Reply Brief in Support of the Individual Defendants' Motion to Dismiss Amended Shareholder Derivative Complaint or, in the Alternative, to Stay Proceedings at 1, 13, 15, 16. Defendants have refused to provide Plaintiffs with the Special Committee's Report or any of the purported documentation underlying the Special Committee's Report. Indeed, it is unclear if the Special Committee even drafted a written report stating its conclusions because the Company's 8-K and the attached press release announcing the findings (filed with the SEC on October 1, 2007) failed to state whether a written report had actually been issued by the Special Committee.

## ARGUMENT

8.    Defendants' reliance on the Special Committee's Report and Supporting Documents is "contrary to the rule that briefing on a motion to dismiss is confined to the allegations of the complaint and any documents incorporated by reference into the complaint." *Fleischman v. Jen-Hsun Huang*, 2007 WL 2410386, *4 (Del. Ch. Aug. 22,

2007) (Ex. A hereto).  Defendants repeatedly assert in their reply briefs that the Special Committee found "no evidence" of backdating.[2]  However, the Special Committee's Report and findings were not mentioned in the Complaint. Indeed, the Special Committee's conclusions were disclosed after the Complaint was filed, but before the Defendants' motions to dismiss were filed.  Moreover, the Court should not take judicial notice of the Report or the Special Committee's findings because they are "subject to reasonable dispute." *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 169 (Del. 2006).

9.      Defendants are not merely reciting background material for the Court, but are attempting to use the Special Committee's conclusion (based on factual findings that have not been provided to the Plaintiffs or the Company's shareholders) to claim that the action should be dismissed at the pleading stage. For example, Sunrise argues that "[p]articularly in light of the special independent committee's investigation and findings, Plaintiffs must present particularized allegations of demand futility in order to establish derivative standing."  Reply Brief in Support of Motion to Dismiss or, in the Alternative, to Stay By Nominal Defendant Sunrise Senior Living, Inc. at 2.  Sunrise's attempt to use the Special Committee's findings as a means to raise the standard for excusing demand must fail. *See Fleischman*, 2007 WL 2410386 at *3, n. 15 ("It is worth noting that a

---

[2]  The phrasing of this assertion calls to mind the adage that "absence of evidence is not evidence of absence."   Evidence may be lacking for a variety of reasons, including spoliation.     Indeed, in suspending CFO Bradley Rush from his position, Sunrise specifically "concluded that actions taken by Mr. Rush were not consistent with the document retention directives issued by the Company." Sunrise Senior, Form 8-K, April 26, 2007.  Thus, the Committee may have found no evidence of backdating simply because contemporaneous documentation was not available to it.

'Rule 23.1 Motion' is merely shorthand for a subspecies of motion to dismiss under Rule

12(b)(6).").

10.    Defendants are asking the Court to draw the same types of conclusions

from the Report as did the defendants in *Fleischman*.  There, Chancellor Chandler

rejected similar arguments and denied the defendants' efforts to exculpate themselves at

the pleading stage based upon the findings of a committee that had not been tested or

reviewed by anyone:

> None of these conclusions can be reached solely by recognizing that the
> company released a summary of a report in public filings.  For the Court
> to make the inferences defendants demand in their brief, I must assume
> that the Report and subsequent summary contained fair descriptions of the
> scope and nature of the Audit Committee's investigation and that the
> conclusions reached were reasonable, as opposed to litigation-inspired
> whitewash.  Without an assertion as to the truth of these statements, they
> are simply irrelevant.  Moreover, as described above, defendants did rely
> upon the truth of the filing.  Indeed, defendants faulted plaintiff for not
> taking account of the Audit Committee's *findings*, arguing that plaintiff
> should somehow shadow-box with a report that defendants had not
> provided.

*Fleischman*, 2007 WL 2410386 at \*2 (footnote omitted; emphasis in original).

11.    Here too, plaintiffs cannot be asked to "shadow-box" with a Report that

has not been provided to them and has not been tested in any way.  Defendants have

relied upon the committee's investigation and findings in support of their motion to

dismiss, have described the Report in the most conclusory terms and, as in *Fleischman*,

have "proffered evidence regarding an ultimate issue of fact relevant to claims asserted in

the complaint, but have refused to share the actual evidence with the Court or with the

plaintiff." *Fleischman*, 2007 WL 2410386 at \*4 (explaining further that "[i]t would be

fundamentally unfair for defendants to use the Audit Committee investigation—the

details of which remain carefully hidden from view—to exculpate themselves from

liability, while simultaneously refusing to turn over to plaintiff or the Court the very documents that allegedly substantiate defendants' defenses."). Accordingly, the Court should strike all references to the Special Committee and its findings from the Defendants' briefs or, in the alternative, permit discovery.[3]

12.    It should be noted further that the Individual Defendants go so far as to challenge Plaintiffs' good faith in bringing this action. The Individual Defendants contend, "there is no reason to believe that plaintiffs could so allege in good faith [the backdating of stock options] given that an investigation commissioned by the Special Committee of the Board and conducted by independent counsel has found no evidence of backdating." Reply Brief in Support of the Individual Defendants' Motion to Dismiss Amended Shareholder Derivative Complaint or, in the Alternative, to Stay Proceedings at 1. The defendants in *Fleischman* similarly tried to fault the plaintiff for not blindly accepting the findings of the "committee." *Id.* at *2. The Court ultimately found the defendants' position to be "startlingly arrogant and plainly contrary to the rule that briefing on a motion to dismiss is confined to the allegations of the complaint and any documents incorporated by reference into the complaint." *Id.* at *4. Although the Individual Defendants have challenged Plaintiffs' good faith, it is the Defendants who refused to produce the "evidence" upon which they rely and who waited until their reply briefs to proclaim their innocence based up the findings of a one-man Special Committee.

---

[3]    To the extent that Defendants are relying on the Report for its truth, Plaintiffs should be permitted to take limited discovery in order to test the independence and good faith of the Special Committee's members and to examine the objective reasonableness of the conclusions that the Special Committee reached. *Sutherland v. Sutherland*, 2007 WL 1954444 (Del. Ch. July 2, 2007) (Ex. B hereto).

## CONCLUSION

For all of the foregoing reasons, the Court should strike from Sunrise's, the Individuals Defendants', and Bradley's memoranda of law all references to the Special Committee or, in the alternative, compel Sunrise to produce the Report and Supporting Documents relied upon by the Special Committee in reaching its conclusions.

Dated: March 6, 2008

ROSENTHAL, MONHAIT & GODDESS, P.A.

By: _Carmella P. Keener_
Carmella P. Keener (DSBA No. 2810)
919 North Market Street
Suite 1401, Citizens Bank Center
Wilmington, Delaware 19899
(302) 656-4433

Attorneys for Plaintiffs

**OF COUNSEL:**

**PASKOWITZ & ASSOCIATES**
Laurence D. Paskowitz
Roy L. Jacobs
20 East 42nd Street, 46th Floor
New York, New York 10016
(212) 685-0969

**JACOBS LAW GROUP, PC**
Samuel R. Simon
1800 John F. Kennedy Boulevard, Suite 404
Philadelphia, PA 19103
(215) 569-9701

**ABBEY SPANIER RODD & ABRAMS, LLP**
Karin E. Fisch
Orin Kurtz
Natalie Marcus
212 East 39th Street
New York, New York 10016
(212) 889-3700

## CERTIFICATE OF SERVICE

I, Carmella P. Keener, hereby certify that on this 6th day of March, 2008, I caused the

below-listed documents:

      1.    Plaintiffs' Motion to Strike Portions of the Memoranda of Law Filed by Sunrise
Senior Living, Inc., the Individual Defendants, and Defendant Bradley, or in the Alternative to
Compel the Production of Documents; and

      2.    this Certificate of Service

to be served on the following via *LexisNexis* File & Serve:

Lawrence C. Ashby, Esquire  
Richard L. Renck, Esquire  
Ashby & Geddes  
500 Delaware Avenue  
Wilmington, DE 19801  

Kenneth J. Nachbar, Esquire  
Morris, Nichols, Arsht & Tunnell LLP  
1201 N. Market Street  
Wilmington, DE 19801  

Arthur G. Connolly, III, Esquire  
Jeremy D. Anderson, Esquire  
Connolly Bove Lodge & Hutz LLP  
The Nemours Building  
1007 North Orange Street  
Wilmington, DE 19801  

*/s/ Carmella P. Keener*  
Carmella P. Keener (DSBA No. 2810)

# EXHIBIT  6

EFiled:  Mar 11 2008  5:39PM EDT
Transaction ID 18950283
Case No. 2770-VCL

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PETER V. YOUNG and | ) | |
| ELLEN ROBERTS YOUNG, | ) | |
| | ) | |
| Derivative Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL J. KLAASSEN, et al., | ) | C.A. No. 2770-VCL |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SUNRISE SENIOR LIVING, INC., | ) | |
| | ) | |
| Nominal Defendant. | ) | |

**SUNRISE SENIOR LIVING, INC.'S MEMORANDUM IN OPPOSITION
TO PLAINTIFFS' MOTION TO STRIKE OR, IN THE ALTERNATIVE,
TO COMPEL THE PRODUCTION OF DOCUMENTS**

ASHBY & GEDDES
Lawrence C. Ashby (#468)
Richard D. Heins (#3000)
Richard L. Renck (#3893)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
(302-654-1888)

OF COUNSEL
HOGAN & HARTSON LLP
George H. Mernick, III
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
(202-637-5600)

*Attorneys for Sunrise Senior Living, Inc.*

HOGAN & HARTSON LLP
N. Thomas Connally
Jon M. Talotta
8300 Greensboro Drive, Suite 1100
McLean, VA 22102
(703-610-6100)

Dated:  March 11, 2008

{00201325;v1}

## <u>INTRODUCTION</u>

Plaintiffs' motion to strike is a transparent attempt to divert attention from the merits of the motions to dismiss filed by nominal defendant Sunrise Senior Living, Inc. ("Sunrise"), and the Individual Defendants, and thus warrants little consideration.  In their Amended Complaint and their briefing on the motions to dismiss, Plaintiffs had cited the existence of the independent special committee's investigation of Sunrise stock options grants as supporting their circumstantial backdating allegations, arguing that the committee's as yet undisclosed work somehow gave rise to an inference of guilt.  <u>See</u> Am. Compl. ¶¶ 86, 88, 127; Pls.' Opp'n to Sunrise's Mot. to Dismiss ("Pls.' Opp'n") at 8, 18, 26.  Now, however, Plaintiffs object to any reference to the incontestable fact that the special committee publicly disclosed its findings.

In its motion to dismiss, Sunrise does not rely on the truth of the special committee's findings, nor does it need to do so.  The motion to dismiss should be granted independent of those findings.  However, the fact that there has been a public disclosure of the special committee's findings is properly the subject of judicial notice.  Accordingly, there is no reason to strike references to that disclosure, or to order discovery at this stage of the proceedings.

For these reasons, and as explained below in more detail, Plaintiffs' motion should be denied.

## ARGUMENT

I.    **Sunrise's Motion to Dismiss Should Be Granted and Does Not Rely on the Special Committee's Findings.**

Plaintiffs' motion overlooks the obvious. As stated in Sunrise's opening brief, the Amended Complaint should be dismissed, or at least stayed, because:

- Plaintiffs are precluded from asserting demand futility for their derivative claims, because it has already been determined in <u>Von Guggenberg</u> that demand is required for those same claims arising from the same options grants challenged in the instant suit. <u>See</u> Br. in Supp. of Sunrise's Mot. To Dismiss at 12-15.

- Even if not precluded from asserting demand futility, Plaintiffs have not pled sufficient particularized facts excusing their admitted failure to make a presuit demand on Sunrise's board of directors, as required by Chancery Rule 23.1. <u>See</u> <u>id.</u> at 16-38.

- Finally, and in the alternative, the Court should dismiss, or at least stay, this suit in favor of the earlier-filed and more comprehensive shareholder derivative and securities class action claims pending in the U.S. District Court for the District of Columbia. <u>See</u> <u>id.</u> at 39-44.

None of these arguments relies on the existence, much less the truth, of the special committee's findings. Plaintiffs' opposition to Sunrise's motion to dismiss does not refute any of these arguments. Plaintiffs' recent motion is thus merely a last-ditch attempt at misdirection in order to avoid dismissal.

## II.     Sunrise Is Not Asking the Court to Accept the Special Committee's Findings As True.

Plaintiffs' assertions that Sunrise "specifically asks the Court to accept the [the special committee's] findings … as true," <u>see</u> Pls.' Mot. at 2, and is attempting to "use the Special Committee's findings as a means to raise the standard for excusing demand," <u>see</u> <u>id.</u> at ¶ 9, are mischaracterizations.  As noted above, the Amended Complaint suggests that the mere existence of the special committee's investigation somehow lends credence to Plaintiffs' circumstantial backdating allegations.  <u>See</u> Pls.' Mot., Ex. 2.  Sunrise referenced the special committee's publicly disclosed findings only to demonstrate that the existence of the investigation does not, in and of itself, support an inference of backdating.  <u>Id.</u>

Plaintiffs' protest, that they "cannot be asked to 'shadow-box' with a Report that has not been provided to them and has not been tested in any way," <u>see</u> Pls.' Mot. at ¶ 11, is especially ironic, <u>1</u>/ because their own claims of backdating rest principally on an <u>undisclosed</u> "report" of some <u>unidentified</u> "expert."  <u>See</u> Am. Compl. ¶ 7; Pls.' Opp'n at  3-4, 11, 22, 24-26, 44.  It is Sunrise and the Individual Defendants who should not have to shadow-box with conclusory, circumstantial allegations that fail to meet the requirements of Chancery Rule 23.1.

---

<u>1</u>/       Indeed, this protest appears to reflect some frustration that the disclosure of the special committee's findings limited plaintiffs' ability to capitalize on uncertainties to support their circumstantial backdating allegations.  For example, plaintiffs also rely on the mere existence of an SEC investigation, <u>see</u> Am. Compl. ¶¶ 86, 152; Pls.' Opp'n at  2, 36, and do not hesitate to take advantage of the fact that the SEC has not yet disclosed any findings, by asserting – without any basis – that "all defendants [including Sunrise's current directors] face a substantial likelihood of being held liable" as a result of that investigation.  Pls.' Opp'n at 36.

III.    **The Disclosure of the Special Committee's Findings Is Properly the Subject of Judicial Notice, and No Discovery Is Warranted.**

Plaintiffs assert that "the Court should not take judicial notice of the Report or the Special Committee's findings because they are 'subject to reasonable dispute.'  Pls.' Mot. ¶ 8.  Again, Sunrise is <u>not</u> asking the Court to take judicial notice of the truth of the special committee's findings, but merely of the fact that those findings were disclosed.   Plaintiffs relied on the special committee's investigation in their Amended Complaint, and in particular on speculation as to what the existence of the investigation might imply and what its findings might some day reveal, and now there can be no dispute that the findings of that investigation have been publicly disclosed. The fact of that disclosure is properly the subject of judicial notice.  <u>In re General Motors Shareholder Litig.</u>, Del. Supr., 897 A.2d 162, 169 (2006); Del. R. of Evid. 201.

As an alternative, Plaintiffs request that the Court order discovery of documents and testimony relating to the special committee's investigation and findings. Pls.' Mot. ¶ 11, n.3.  However, at this time, Sunrise has not asked the Court to stay this case based on the special committee's investigation, under <u>Zapata Corp. v. Maldonado</u>, 430 A.2d 779 (Del.1981), and its progeny, and thus Plaintiffs' reliance on <u>Sutherland</u> (<u>see id.</u> at n.3) is misplaced.  <u>See</u> Pls.' Mot., Ex. 2.

At this time, the particulars of the special committee's investigation and findings are not at issue.   As explained above, Sunrise's reference to the special committee's findings was proper for its limited purpose, but the grounds for dismissal that Sunrise raises do not rely or depend on the special committee investigation, or its findings, in any way.  To the extent the Court is concerned that any reference in

Sunrise's papers to the special committee's findings could be construed as having been

asserted for the truth of those findings, such reference may be stricken without

objection.  There is thus no reason to order discovery at this stage of the proceedings.

## CONCLUSION

For these reasons, Plaintiffs' motion should be denied in its entirety.

ASHBY & GEDDES
*/s/Richard L. Renck (#3893)*
Lawrence C. Ashby (#468)
Richard D. Heins (#3000)
Richard L. Renck (#3893)
500 Delaware Avenue, 8th Floor
Wilmington, DE 19801
(302-654-1888)

*Attorneys for Sunrise Senior Living, Inc.*

OF COUNSEL
HOGAN & HARTSON LLP
George H. Mernick, III
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
(202-637-5600)

HOGAN & HARTSON LLP
N. Thomas Connally
Jon M. Talotta
8300 Greensboro Drive, Suite 1100
McLean, VA 22102
(703-610-6100)

Dated:  March 11, 2008

EFiled: Mar 11 2008 5:39PM EDT
Transaction ID 18950283
Case No. 2770-VCL

## <u>CERTIFICATE OF SERVICE</u>

I, Richard L. Renck, hereby certify that on the 11th day of March 2008, I caused a true and correct copy of **Sunrise Senior Living, Inc.'s Memorandum In Opposition to Plaintiffs' Motion to Strike Or, In the Alternative, To Compel the Production of Documents** to be served on counsel listed below via LexisNexis File & Serve:

Carmella P. Keener                        Arthur G. Connolly, III
Rosenthal, Monhait & Goddess, P.A.        Connolly Bove Lodge & Hutz LLP
919 Market Street, Suite 1401             1007 North Orange Street
P.O. Box 1070                             Wilmington, DE 19801
Wilmington, DE 19899-1070

Kenneth Nachbar
Morris Nichols Arsht & Tunnell
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899


*/s/ Richard L. Renck (#3893)*
Richard L. Renck (#3893)

# EXHIBIT  7

# HOGAN & HARTSON

Hogan & Hartson LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
+1.202.637.5600 Tel
+1.202.637.5910 Fax

www.hhlaw.com

George H. Mernick
Partner
(202) 637-5726
ghmernick@hhlaw.com

May 16, 2008

***VIA OVERNIGHT DELIVERY***

Karen E. Fisch, Esquire
Abbey Spanier Rodd & Abrams, LLP
212 East 39th Street
New York, NY 10016

      Re:    **Young, et al. v. Klaassen, et al.**

Dear Ms. Fisch:

      Pursuant to the Court's April 25, 2008 Memorandum Opinion and Order (the "Order") entered in the action captioned above, and our subsequent communications, enclosed herewith are the documents that we believe are responsive to the Court's directive. Specifically, we enclose the following:

      1.     The narrative outline dated August 5, 2007 (Bates numbers SSL00001 – SSL00069) that was prepared by Wilmer Cutler Pickering Hale and Dorr LLP ("WilmerHale"), which served as counsel to the Special Independent Committee of Sunrise Senior Living, Inc. ("Sunrise"). The first 43 pages of this narrative outline were utilized by WilmerHale at the Special Independent Committee's August 6, 2007 meeting as the basis for its oral presentation to the Committee reporting on the investigative work that WilmerHale had performed in connection with the Committee's investigation into possible backdating of stock options. The facts reflected in this narrative outline and reported to the Committee formed the basis for the Committee's findings that were reported in the Form 8-K filed on October 1, 2007. Until now, copies of this narrative outline have not been given to anyone outside of WilmerHale.

      The narrative outline's final 26 pages addressed two other topics – accounting issues and tax issues – that were distinct from the findings concerning possible misconduct in connection with backdating of stock options, and accordingly the contents of those pages have been redacted. In addition, as I had advised you would be the case, there are limited redactions made by WilmerHale from the narrative outline, made on grounds of attorney-client privilege, that fall into either of two categories. First, and most often, the redactions are of analysis, conclusions and advice being rendered by WilmerHale to its client, the Special Independent Committee. (Neither I nor other defense counsel or our clients have seen or otherwise had

\\\DC - 063844/000055 - 2728848 v1

Karen E. Fisch, Esquire
May 16, 2008
Page 2

access to those passages.)  The second category involves a smaller number of instances in which the narrative outline was quoting, summarizing or referring to legal advice that previously had been rendered to Sunrise by outside counsel (either McDermott Will & Emery or Hogan & Hartson), or in one instance by an in-house attorney.

2.    Exhibits (Bates numbers SSL00070 through SSL00110) that were given to the members of the Special Independent Committee at the August 6, 2007 meeting to coincide with the WilmerHale oral presentation.  (You will see in the narrative outline occasional shaded areas in which there is a reference to "Tab 1," "Tab 2," etc. – these exhibits correspond to those Tabs.)

3.    Copies of Sunrise documents (Bates numbers SSL00111 through SSL01634) that were referenced in the narrative outline, usually in the footnotes.  Copies of these documents were not given to the members of the Special Independent Committee, but the narrative outline often quoted from or paraphrased them.  These documents consist of e-mails, meeting minutes, contracts, calendar entries and other forms of documents created at the time of the events in question, but do not include memoranda created by WilmerHale during the investigation, which constitute its work product, and which were not given to the Committee members.

For ease of review, we are providing all of the foregoing documents both in hard copy and electronic form.  All of these documents are designated "Confidential – Special Committee Material," pursuant to the Stipulation and Order Governing Use of Documents and Information Relating to the Special Committee of Sunrise Senior Living, Inc., Produced Pursuant to the Court's April 25, 2008 Order, which was agreed to by all of the parties and submitted to the Court earlier today.  Until such time as the Court enters that Stipulation and Order, please proceed on the basis that the protections, duties and obligations of the Stipulation and Order apply to these documents as if it were already entered by the Court.

We believe that these documents provide a detailed account of the steps undertaken in the investigation and of the facts on which the Committee based its findings, and that this production fully complies with, and likely exceeds, the Court's directive.  If after you have reviewed these documents, and contrary to our view, you believe that the production is in some way deficient, we would be happy to discuss the matter with you to try to come to common ground or, if we are unable to do so, to jointly approach the Court for guidance on any open issues.

Sincerely,

George H. Mernick

Enclosures

cc:    Lawrence C. Ashby, Esq.
       John C. Millian, Esq.
       Philip A. Sechler, Esq.